# IN THE UNITED STATED DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **HARRY WILLIAMSON**, <br><br> Plaintiff, <br><br> v. <br><br> **LORAIN COUNTY**, *et al.,* <br><br> Defendants. | CASE NO. 1:23-cv-01507 <br><br> JUDGE JAMES GWIN |

### DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO COUNTS 2, 4, 5, AND 6 OF PLAINTIFF'S COMPLAINT

Pursuant to Fed. R. Civ. P. 12(c), Defendants, David Moore, Matt Lundy, Tom Williams, and James Cordes (collectively the "Moving Defendants") move for judgment on the pleadings as to Counts 2 and 4 of Plaintiff Harry Williamson's Complaint.

- Count 2 asserts a class-of-one equal protection violation concerning Plaintiff's termination from public employment. These claims, however, do not apply to public employment.

- Count 4 asserts a civil claim based on an alleged criminal act, which is subject to a one-year statute of limitations. As this claim pertains to Defendant Cordes, it is time barred.

- The Court should also decline to exercise supplemental jurisdiction over the remaining state law claims because they are not part of the same case or controversy as Williamson's constitutional claims and present complex, novel issues.

**MEMORANDUM IN SUPPORT**

I.  **RELEVANT FACTUAL BACKGROUND**

This is a re-filed case originally brought in the Lorain County Court of Common Pleas on January 31, 2022, and then voluntarily dismissed by Williamson on February 10, 2023. *See Harry Williamson v. Lorain County, et al.,* Case No. 22CV205156 ("Lorain County Case").[1] Similar to that case, this action primarily pertains to Williamson's termination as Lorain County's 911 Director after it was discovered that he was involved in a sexual relationship with Lorain County Commissioner Michelle Hung.

As alleged in Williamson's Complaint, from approximately 2017 through October 30, 2020, Williamson was responsible for various aspects of the County's 911 system while employed by a private outside vendor. (*See* Compl. at ¶ 10; Answer at ¶ 10). During that period, he was also president of the Lorain County AFL-CIO union. (Compl. at ¶ 11). Following Williamson's endorsement of Michelle Hung for County Commissioner in the 2020 election, Williamson claims that he was banned from working in the County's 911 facility at the behest of then-County Administrator, Defendant James Cordes. (*Id*. at ¶¶ 14, 17-22). Williamson left his job with a private outside vendor "days later" on October 30, 2020. (*Id*. at ¶ 23; Answer at ¶ 23).

Through the November 2020 election, Lorain County residents elected Defendant David Moore and Michelle Hung as County Commissioners. Both joined the remaining incumbent County Commissioner, Defendant Matt Lundy. (Compl. at ¶ 26). Thereafter,

---

[1] The Court can take judicial notice of the filing date for the Lorain County Case (January 31, 2022). *Campbell v. Marcinkevicius,* 2022 U.S. Dist. LEXIS 221760, at *2 (N.D. Ohio Dec. 8, 2022) ("A court may . . . consider . . . matters of judicial notice . . . without converting [a] motion to dismiss into a motion for summary judgment.").

Williamson served on the transition team for Defendant Moore and Commissioner Hung. While serving on their transition team, they offered Williamson a position as the Lorain County Director of 911 Services. (*Id*. at ¶¶ 26-27). Williamson admits he began having a romantic relationship with Commissioner Hung during the transition period. (*Id*. at ¶ 29).

On January 4, 2021, the County Commissioners formally appointed Williamson to serve as the 911 Director and appointed Defendant Tom Williams to serve as the new County Administrator. (*Id*. at ¶ 33). Over the next several months, Williamson claims that he learned of various financial mismanagement within the county, which included expenditures he believed constituted "misappropriation of property-tax revenues" and "misuse of taxpayer funds." (*Id*. at ¶¶ 50-56). Williamson claims to have reported these issues to his supervisor, then-County Administrator, Defendant Williams, but Williams failed to act. (*Id*. at ¶¶ 64, 136). Williamson also claims that Defendant Williams tried to exert pressure on him to influence Commissioner Hung to vote for a certain radio system when considering a County 911 radio contract. After Williamson refused to lobby Commissioner Hung, he alleges Defendant Williams began plotting to fire him. (*Id*. at ¶¶ 89-91). Despite being an at-will employee, Williamson contends that the county needed to "fabricate a justification" to terminate him, and "settled on [his] relationship with Commissioner Hung." (*Id*. at ¶ 92).

At the County Commissioners' next meeting, Williamson alleges that the County's outside legal counsel circulated a legal memo to the Commissioners in executive session that analyzed Williamson's termination due to his ongoing affair with Commissioner Hung. The Commissioners then returned to an open meeting and proceeded to vote on Williamson's termination; Defendants Moore and Lundy voted in favor, while Commissioner Hung abstained. (*Id*. at ¶ 107). Instead of recognizing that his termination

resulted from his own decision to carry on an admitted sexual relationship with his supervisor – a sitting County Commissioner – Williamson strings together a series of unrelated events to suggest that he was instead fired for exercising his free speech rights. But as explained below, many of his claims are fatally flawed warranting partial judgment in the Moving Defendants' favor.

## II. LAW AND ARGUMENT

### A. Standard of Review

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings after the pleadings close, but within such time as not to delay trial. *Downey v. Reich Installation Servs., Inc.,* 2009 WL 2922262, at *1–2 (N.D. Ohio Sept. 8, 2009) (citing Fed. R. Civ. P. 12(c)). "The same standard of review applies to both Rule 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss." *Id.*

To survive, Plaintiff's complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Columbia Natural Resources, Inc. v. Tatum*, 58 F. 3d 1101 (6th Cir. 1995). The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F. 2d 10, 12 (6th Cir. 1987). Put another way, bare assertions of legal conclusions are not sufficient. *Lillard v. Shelby County Bd. of Educ.,* 76 F. 3d 716, 726 (6th Cir. 1996). It is only well-pleaded facts which are construed liberally in favor of the party opposing the motion to dismiss. *Id*. The Court is likewise not required to accept as true allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice. *See Moody v. CitiMortgage, Inc., 32* F. Supp. 3d 869, 874-75 (W.D. Mich. 2014) ("court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint.").

A motion for judgment on the pleadings is particularly appropriate when, as here, the statute of limitations bars a plaintiff's claim. *Hady v. Hunt-Wesson,* Inc., 63 F. Supp. 2d 830, 831 (N.D. Ohio 1999). "The Sixth Circuit has long held that 'judgment on the pleadings under Fed.R.Civ.P. 12(c) is uniquely suited to disposing of a case in which a statute of limitations provides an effective bar against a plaintiff's claim.'" *Filer v. Polston,* No. 3:11-CV-170, 2012 WL 1694588, at *3 (S.D. Ohio May 15, 2012).

**B. The Moving Defendants are entitled to judgment in their favor on Count 2 because a class-of-one equal protection claim cannot be brought against a public employer.**

Count 2 asserts a claim under the Equal Protection Clause of the Fourteenth Amendment alleging that the Moving Defendants unlawfully terminated his employment based on his romantic relationship with Commissioner Hung. But the Supreme Court has unmistakably held that class-of-one claims under the Equal Protection Clause do not apply in the public employment context. *See Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 607, 128 S. Ct. 2146, 2156 (2008) ("In concluding that the class-of-one theory of equal protection has no application in the public employment context . . . we are guided . . . by the common-sense realization that government offices could not function if every employment decision became a constitutional matter.") (internal quotes omitted) (citations omitted).

The Equal Protection Clause provides that no State may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1, cl. 4. The general principle is that similarly situated persons should be treated alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). More specifically, the Equal Protection Clause "protects against invidious discrimination among similarly-situated

5

individuals or implicating fundamental rights." *Scarbrough v. Morgan Cnty. Bd. of Educ.,* 470 F.3d 250, 260 (6th Cir. 2006).

A plaintiff asserting claims under the Equal Protection Clause must allege membership in a class that "constitute[s] an identifiable group for equal protection purposes." *Davis v. Prison Health Services*, 679 F.3d 433, 441 (6th Cir. 2012). If the plaintiff cannot establish membership in such a group, his claim will be characterized as a "class-of-one" claim. *Davis,* 679 F.3d at 441; *see also Wood v. Collier*, 836 F.3d 534, 541 (5th Cir. 2016) ("Typically, a class of one involves a discrete group of people, who do not themselves qualify as a suspect class, alleging the government has singled them out for differential treatment absent a rational reason"). This requires a plaintiff to demonstrate "that he has been intentionally treated differently from others who are similarly situated and that there is no rational basis for the difference in treatment." *Benjamin v. Brachman*, 246 F. App'x 905, 927 (6th Cir. 2007). If a similarly-situated individual can be identified, a plaintiff must also "(1) refute every conceivable basis that might support the government action, or (2) demonstrate that the challenged action was motivated by animus or ill-will." *Id*.

It is well established that class-of-one claims may not be brought in the public employment context. *See Engquist,* 553 U.S. at 607 (explaining that such a claim would "jeopardize the delicate balance governments have struck between the rights of public employees and the government's legitimate purpose in promoting efficiency and integrity in the discharge of official duties, and in maintaining proper discipline in the public service."); *see also EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 864 n.15 (6th Cir. 2012) ("The Supreme Court recently held that class-of-one equal-protection claims

6

cannot be raised in the public-employment context."). This theory is "simply contrary to the concept of at-will employment." *Engquist,* 553 U.S. at 607.

Here, Williamson's Complaint does not allege that his termination targeted a suspect classification or an identifiable group for equal protection purposes. Consequently, his equal protection claim must proceed on a class-of-one theory. First, Williamson was employed in an at-will position as the Lorain County 911 Director. The Supreme Court's decision in *Engquist*, however, unequivocally held that class-of-one equal protection claims do not apply to public employment without exception. Second, even if this claim did apply to public employment, Williamson has not identified anyone similarly situated and treated differently. Simply put, there are no constitutional protections for having a sexual relationship with a sitting County Commissioner while employed as the County's 911 Director.

Last, Williamson cannot refute every conceivable basis for his termination or demonstrate that the decision was motivated by animus or ill will. Indeed, Williamson was terminated for his public—and admitted—affair with Commissioner Hung. Williamson's conduct was not only inappropriate but disruptive to his public employment. This is undeniably a rational basis to terminate his at-will employment, and precludes any equal protection claim. *See Trihealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005) (holding "government action subject to equal protection scrutiny under the rational basis test must be sustained if *any* conceivable basis rationally supports it") (emphasis in original).

**C. Count 4 of Williamson's Complaint against Defendant Cordes is untimely and must be dismissed because claims under R.C. § 2307.60 have a one-year statute of limitations.**

7

Count 4 asserts a claim under R.C. § 2307.60 for civil liability for violating R.C. § 2921.45, which is a criminal statute prohibiting public servants from depriving individuals of constitutional rights. This claim fails as a matter of law as it pertains to Defendant Cordes because Williamson brought the claim beyond the statute of limitations.

Courts in this District have consistently applied a one-year statute of limitations to claims under R.C. § 2307.60. *See, e.g., Brack v. Budish*, No. 1:19-CV-1436, 539 F. Supp. 3d 794, 2021 U.S. Dist. LEXIS 92941 at *4 (N.D. Ohio May 17, 2021) ("Both the Northern District of Ohio and Southern District of Ohio apply a one-year statute of limitations to claims under Section 2307.60.") (collecting cases); *Marquardt v. Carlton*, No. 1:18 CV 333, 2019 WL 1491966, at *2 (N.D. Ohio Apr. 2, 2019) ("[T]he applicable statute of limitations for claims brought under O.R.C. § 2307.60(A)(1) is the one-year period identified in O.R.C. § 2305.11(A)."). Ohio state courts have also reached the same conclusion. *See, e.g., Ettayem v. H.E.R., LLC,* 2020-Ohio-4647, ¶ 26 (5th Dist.) ("Those claims are barred by a one-year statute of limitations."); *Steinbrick v. Cleveland Elec. Illuminating Co.*, No. 66035, 1994 Ohio App. LEXIS 3756, *5 (Ohio App. 8th Dist. Aug. 25, 1994); *Duffey v. Pope*, 2012 WL 4442753, at *7 (S.D. Ohio 2012) (noting that Ohio courts "clearly hold that Ohio Revised Code § 2307.60 is a penalty statute and is subject to the one year statute of limitations found in § 2305.11(A)."). There is no reason to deviate from that precedent here.

The allegations in Williamson's Complaint affirmatively show that his R.C. § 2307.60 claim against Defendant Cordes is time-barred. To be sure, Williamson claims that Defendant Cordes removed him from the County 911's facility causing him to quit his job "days later" on October 30, 2020. (Compl. at ¶¶ 17-23). No other facts allege

8

wrongdoing by Defendant Cordes after October 30, 2020. (Compl. at ¶ 143). As a result, the latest Williamson could have brought this claim against Defendant Cordes is October 30, 2021. But Williamson waited until *January 31, 2022* to sue Defendant Cordes first in the Lorain County Common Pleas Court. *See Harry Williamson v. Lorain County, et al.,* Lorain County Court of Common Pleas, Case No. 22CV205156. Because Count 4 against Defendant Cordes was brought outside the one-year statute of limitations, it is time-barred, and with no remaining claims against him, Defendant Cordes should be dismissed entirely from this lawsuit.

**D. The Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims asserted in Counts 4 and 6 because they are not part of the same case or controversy as his constitutional claims and present complex, novel issues.**

In conclusory fashion, Williamson's Complaint asserts only that the Court "has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367." (Compl. at ¶ 7). However, Counts 4 and 6 do not arise from the same case or controversy as Williamson's constitutional claims and are better suited to be adjudicated in state court due to their complexity.[2]

Under 28 U.S.C. § 1367(a), "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." Supplemental jurisdiction "is a doctrine of discretion." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Courts may decline to exercise supplemental jurisdiction if the claim raises a novel or complex issue of state law. 28 U.S.C. § 1367(c)(1). In addition,

---

[2] Count 5 is subject to dismissal outright because a plaintiff may not bring a claim against a political subdivision for an intentional tort, even if the governmental entity is properly named as more fully argued in Lorain County's separately filed Motion to Dismiss.

9

courts consider "the values of judicial economy, convenience, fairness, and comity." *James v. Hampton*, 592 F. App'x 449, 462-63 (6th Cir. 2015) (citations omitted). Importantly, "a court may decide one claim over which it has supplemental jurisdiction on the merits while declining to hear another." *Frenchko v. Monroe,* No. 4:23-cv-781, 2024 U.S. Dist. LEXIS 7313, at *86 (N.D. Ohio Jan. 16, 2024).

Here, the Court's original jurisdiction is based on Williamson's First Amendment retaliation claim under 42 U.S.C. § 1983 in Count 1. (Compl. at ¶¶ 123-127). The alleged misconduct centers around the singular event of Williamson's termination in 2021. Yet, in Count 4, Williamson raises a state law claim under R.C. § 2307.60 for purported (and baseless) criminal acts that were allegedly committed by Defendants collectively violating Williamson's civil rights. (*Id.* at ¶¶ 140-144). Put another way, Count 4 implicates other alleged conduct beyond Wiliamson's termination better suited for state court. Moreover, Williamson's claim under R.C. § 2307.60 presents novel or complex issues of state law, which counsels against the Court exercising its supplemental jurisdiction. Moreover, there is also minimal caselaw analyzing the application of R.C. § 2307.60 as it relates to R.C. § 2921.45, a criminal statute prohibiting interference with civil rights. Taken together, these reasons support declining supplemental jurisdiction over Count 4.

In *Frenchko v. Monroe*, this court recently declined to exercise supplemental jurisdiction over a R.C. § 2307.60 claim based on an underlying criminal violation of R.C. § 2921.45 in a First Amendment retaliation case. 2024 U.S. Dist. LEXIS 7313, at *25 (N.D. Ohio Jan. 16, 2024) (Calabrese, J.). There, the Court declined to exercise supplemental jurisdiction over the R.C. § 2307.60 claim for two reasons. First, it was not clear that the claim was part of the same case or controversy because the federal action concerned a single occurrence, whereas the state law claim alleged a pattern or practice of interference

with civil rights. *Id*. As a result, the Court determined, "[t]o the extent this claim implicates other instances of allegedly unlawful actions, a court with jurisdiction to hear and decide all such matters is best positioned to address the claim." *Id*. Second, the Court declined supplemental jurisdiction due to the complexity of R.C. § 2307.60 and the underdeveloped nature of R.C. § 2921.45. *Id*. ("That statute is underdeveloped, particularly as it involves Section 2921.45 as a claimed underlying criminal act, making its development and application better suited for the State courts in a case such as this.").

Similarly, Williamson's claim for destruction of public records under R.C. § 149.351 in Count 6 also does not relate to his federal claims in addition to naming a party who is not *sui juris*. Indeed, Williamson acknowledges that Count 6 relates entirely to his state-law whistleblower claim: "He sought access to [public records], but he never received them and will never be able to use them as evidence of pretext in this action." (*Id*. at ¶ 152). In addition, R.C. § 149.351 is a complex statute with an extensive framework, making it better suited to be decided in state court. Again, in *Frenchko*, the court noted R.C. § 149.351's complexity as a basis for declining to exercise supplemental jurisdiction over a destruction of public records claim:

> Ohio's public records law has a comprehensive framework regularly litigated in the State courts. The complexity of the case law on this claim, combined with questions about whether the alleged destruction of public records is part of the same case or controversy as the federal constitutional claims before the Court, counsels in favor of declining to exercise supplemental jurisdiction.

2024 U.S. Dist. LEXIS 7313, at *88-89 (N.D. Ohio Jan. 16, 2024).

### III. CONCLUSION

For these reasons, the Moving Defendants respectfully request that the Court enter an order granting judgment in their favor as to Count 2, judgment in favor of Defendant

11

Cordes as to Count 4, and declining to exercise supplemental jurisdiction over the remaining state law claims.

>                             Respectfully submitted,
>
>                             DOOLEY, GEMBALA, MCLAUGHLIN
>                             & PECORA CO., LPA
>
>                             */s/ Matthew A. Dooley*
>                             Matthew A. Dooley (0081482)
>                             Stephen M. Bosak, Jr. (0092443)
>                             Michael R. Briach (0097986)
>                             5455 Detroit Road
>                             Sheffield Village, Ohio 44054
>                             Tel:   (440) 930-4001
>                             Fax:   (440) 934-7208
>                             Email: mdooley@dooleygembala.com
>                                    sbosak@dooleygembala.com
>                                    mbriach@dooleygembala.com
>                             *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed and served on all parties via the Court's electronic filing system on February 20, 2024.

*/s/ Matthew A. Dooley*
Matthew A. Dooley
*Counsel for Defendants*
