```
State of Ohio,        )
                      )
County of Lorain.     )  SS:
```

                    IN THE COMMON PLEAS COURT

**Harry Williamson,**         )
                              )
          Plaintiff,          )
                              )
     vs.                      )  Case No. 22CV205156
                              )
**Lorain County, et al.,**    )
                              )
          Defendants.         )

                              * * *


     A COMPLETE TRANSCRIPT OF PROCEEDINGS HAD IN THE

ABOVE-ENTITLED MATTER ON WEDNESDAY, FEBRUARY 8, 2023,

BEFORE THE HONORABLE THOMAS J. POKORNY, VISITING JUDGE

OF SAID COURT.


APPEARANCES:

Appearing on behalf of the Plaintiff:
By Brian D. Bardwell, Esq.


Appearing on behalf of Defendant Lorain County, David
Moore, Matt Lundy, Tom Williams, James Cordes:
By Brian C. Lee, Esq.


Appearing on behalf of Defendants Ulmer & Berne LLP
and Amanda Martinsek:
By Monica A. Sansalone, Esq.


Also present:

     Amanda Martinsek

     Kenneth Zirm

---

**EXHIBIT**

**E**

2

1       **PROCEEDINGS - FEBRUARY 8, 2023**

2           THE COURT:  This is Williamson versus Lorain

3       County, et al.  For reference, it's Case 22CV205156.

4       The matter is set today for hearing on pending motions

5       involving discovery disputes amongst the parties.

6           Okay.  So the plaintiff can begin with motions

7       that you have filed that are pending.

8           MR. BARDWELL:  Thank you, Your Honor.  So

9       currently we have two motions pending.  One of them --

10      yeah, the first one to address is the motion to compel

11      directed at the Ulmer defendants requesting a privilege

12      log.  That -- the last time we talked, we had a pledge

13      from the Ulmer defendants to supplement the privilege

14      log with a couple of communications that we knew were

15      outstanding, based on the privilege log that the County

16      defendants had produced.

17          We received that supplement, which added, I

18      think, two, with the new e-mails, that are, as I

19      understand it, just essentially thank you communications

20      back and forth between the client and the firm.  But

21      when we review the supplemented production from Ulmer

22      and compare it to the County's production, we can still

23      see that there are several communications that the Ulmer

24      defendants are not disclosing or listing on there or

25      providing us with, you know, an opportunity to review so

—3—

1    that we can challenge --

2            THE COURT:  Are you satisfied, otherwise, with

3    what they have produced as far as the privilege log is

4    concerned?

5            MR. BARDWELL:  There is -- I mean, the structure

6    and format of the privilege log is satisfactory, if

7    that's what you're asking.  It appears that there are

8    several entries from the privilege log that have not

9    been made yet and --

10           THE COURT:  Entries that you say are missing?

11           MR. BARDWELL:  Correct.

12           THE COURT:  And how do you know that?  How do

13   you know that?

14           MR. BARDWELL:  Because the County has produced a

15   privilege log seeking the same communications, and they

16   are listed on the County's log, but not on the Ulmer

17   log.

18           THE COURT:  Okay.  So is there anything that you

19   have not gotten?  You've received them, although the

20   Ulmer defendants, you say, have deleted a couple, right?

21           MR. BARDWELL:  I don't mean to say that they've

22   deleted or intentionally taken anything out.  But we

23   know that they are not -- that the -- yeah, we know that

24   the log is --

25           THE COURT:  Failed to include.  I didn't mean

4

1  anything further either.

2      MR. BARDWELL: Yes. So what we know -- I guess

3  what I'm trying to say is what we don't know is whether

4  at this point between what we know from the County log

5  and what we know from the Ulmer log, we have a full

6  accounting of all the privileged communications, and

7  that's what we're still seeking an order on this.

8      THE COURT: Okay. But what has been filed

9  between the two of those defendants --

10      MR. BARDWELL: Yes.

11      THE COURT: -- there have -- now, what have you

12  received? What explanations have you received? Have

13  they been singled out and there have been positions

14  taken with regard to the privileged nature of these

15  individually?

16      MR. BARDWELL: Yes, there have.

17      THE COURT: So what's left for me to decide?

18      MR. BARDWELL: Whether the Ulmer defendants need

19  to produce a privileged log that lists all of the

20  privileged communications responsive to our request.

21      THE COURT: But you even say that you did get

22  them ultimately but from a different party?

23      MR. BARDWELL: Well, we know that there are

24  additional ones. We know that from another party, but

25  what we don't know is whether, between the two of them,

5

1   we actually have everything at this point.

2              THE COURT:  All right.  Can I hear from them

3   now?

4              MR. BARDWELL:  Go ahead.

5              THE COURT:  Okay.  Let's do it this way.  So how

6   about this?  It seems like we don't have too much of a

7   dispute left here.

8              MS. SANSALONE:  I would argue, Your Honor -- I'm

9   Monica Sansalone, first of all, on behalf of the Ulmer

10  defendants.  I'd like to introduce Ken Zirm, who is the

11  general counsel of Ulmer & Berne here, and Ms.

12  Martinsek, who is a named defendant, who is with me as

13  well today.

14             There was actually never a dispute.  It would be

15  my argument, if you read my brief in opposition, Your

16  Honor, on behalf of the Ulmer defendants, that this

17  motion to compel was a preemptive move on behalf of --

18             THE COURT:  No, no, no.  I don't want to hear

19  about that, please.

20             MS. SANSALONE:  All right.

21             THE COURT:  Counsel, I really don't.

22             MS. SANSALONE:  Okay.

23             THE COURT:  I want to know if I need to make any

24  decision here about what you have produced or failed to

25  produce.  What's your position on that?

6

1          MS. SANSALONE:  So we have supplemented, as

2    Mr. Bardwell said the -- there was a discrepancy about

3    literally two thank you e-mails.  That was supplemented

4    to the privileged log.  The only dispute, for lack of a

5    better term, in which the County put additional

6    communications on, that we did not, relate to an

7    individual that has nothing to do with this lawsuit, a

8    Mr. Cuerney.  So --

9          THE COURT:  All right.  So your position is that

10   you've included everything that you need to?

11         MS. SANSALONE:  Correct.

12         THE COURT:  All right.  And then how about the

13   County?  Do they want to address this as well?

14         MR. LEE:  Yes.  Thank you, Your Honor.  It's

15   Brian Lee on behalf of Lorain County defendants.  As far

16   as any discrepancies, we went back and we looked at

17   anything that was on the Ulmer privilege that was not on

18   the Lorain County and there was nothing that could be

19   found that showed what those communications were, and

20   maybe it was perhaps mistitled.  I don't know.  Either

21   way, there's nothing left to produce.  Everything that's

22   been shown on the privilege log is shown as a complete

23   privilege log for Lorain County.

24         THE COURT:  I'll hear from the plaintiff now in

25   rebuttal, and then we'll move on to the next one.

7

```
1          MR. BARDWELL:  Sure.  So --

2          THE COURT:  If you wish.  If you don't wish to

3    address --

4          MR. BARDWELL:  Yes.  No, I do.  I have a list

5    here, at least a partial list of the items that were not

6    disclosed on the Ulmer log.

7          So one of them is an August 1st, 2021 message

8    between an Ulmer Partner William Edwards and Defendant

9    Martinsek.  That one appears on the County log but not

10   on the Ulmer log.  There is a message from Defendant

11   Martinsek to Defendant Lundy on August 3rd about how to

12   time the release of a statement that was, as we

13   understand it, a statement regarding my client's

14   termination.  That message is also omitted from the

15   Ulmer log.

16         THE COURT:  But you have that information from

17   the County?

18         MR. BARDWELL:  We have that -- we do have that

19   information from the County.

20         THE COURT:  So how could I cure -- how do you

21   want me to cure this situation?  I don't -- I'm not

22   following you.

23         MR. BARDWELL:  All that we're asking for is an

24   order compelling the Ulmer defendants to produce a

25   complete privilege log.  What we want is something that
```

8

1    is on the record that we have that issue closed off so

2    that we know we have a full production and anything that

3    is missing is not the result of any objections or

4    oversights or anything like that.

5          THE COURT:  Good.  Move on to the next one,

6    please.

7          MR. BARDWELL:  Okay.  The -- oh, yes.  So the

8    other motion is the motion with respect to the county

9    defendants.  That was a motion to compel the production

10   of several documents, quite a few categories of

11   documents, in fact.  When we first got our opposition to

12   that motion, the County produced several records, but

13   the vast majority of what we're looking for remains

14   outstanding.  We're looking, for instance, for logs of

15   phone calls on county landlines to and among the parties

16   and also several other employees who are connected to

17   the case.  We haven't received any of those phone

18   records.  Those are records that, as we understand it,

19   are kept and maintained by the County itself.  But we

20   haven't received them and we haven't received, I think,

21   any explanation for why they're still outstanding.  My

22   understanding is we had an agreement to produce them

23   eventually.  There is a different understanding with

24   respect to some of the, like, personal and cell phone

25   records.

1          So we are still waiting on quite a few records

2     in terms of the request for production, and so I've

3     outlined some of that in a pretrial brief I filed

4     shortly before we came in.  We also have a motion for

5     sanctions on the interrogatories that we served.

6          THE COURT:  Wait.  Your motion to compel --

7          MR. BARDWELL:  Yes.

8          THE COURT:  -- on production of documents as far

9     as the County is concerned, you want phone call logs

10    from their landlines.  Is that it?

11         MR. BARDWELL:  We do want that.  There are many

12    categories that are still outstanding.  We have -- yes,

13    there's quite a bit that's still outstanding.

14         THE COURT:  And you want the Court to go over

15    each one of those in order to determine what you're owed

16    if they exist?

17         MR. BARDWELL:  We have -- so I've given a brief

18    summary in the brief that I filed today.  If you want a

19    full accounting of everything, I can follow up with that

20    either probably today or tomorrow.

21         THE COURT:  I want to hear from the County about

22    this part of it, please.  Thank you.

23         MR. LEE:  Your Honor, there is a complete

24    production and has been represented through

25    supplementation, through correspondence to counsel

1   saying whether documents do not exist or if they have,

2   they do exist, they have been produced.  There's been

3   almost 38,000 pages of documents that Lorain County has

4   produced pursuant to these requests.  That includes, as

5   of even this morning, some additional Everstream

6   records, which were requested.  As far as whatever is

7   remaining, I have not seen this brief.  So I don't know

8   what he's alleging.  But as far as the County is

9   concerned, it's very clear in the correspondence of

10  communications that every single response or request for

11  production of documents and interrogatory has been

12  responded to either with the documents, the links to the

13  documents or that they just do not exist.

14          THE COURT:  And if the document does not exist,

15  you have said so?

16          MR. LEE:  Correct.

17          THE COURT:  You have maintained that in your

18  responses?

19          MR. LEE:  Correct.  And the interrogatories.  So

20  there's nothing outstanding that's left on the order to

21  compel and including the sanctions from Lorain County.

22          THE COURT:  The interrogatories have also been

23  answered and are complete?

24          MR. LEE:  Correct.

25          THE COURT:  Good.  Okay.  I'll hear from the

11

1    plaintiff in rebuttal.

2         MR. BARDWELL:  It sounds like there have been

3    some additional productions this morning, which I have

4    not seen yet, and so I'm not in a position to comment on

5    whether they are adequate or sufficient.  The same with

6    the interrogatories.  As of, I think, 6:00 a.m. this

7    morning, though, we were still waiting on verified

8    interrogatory responses from Defendant Cordes and

9    Defendant Williams.

10        THE COURT:  Have those been sent?

11        MR. LEE:  The one correction -- yes, those have

12   all been sent.  The only thing that's outstanding is a

13   verification from Jim Cordes.  He's the only one.  I

14   understand he has health problems.

15        THE COURT:  You just assigned verification that

16   what's true and accurate, that kind of thing?

17        MR. LEE:  Yes.  The interrogatories have already

18   been sent on behalf of Cordes in the beginning of

19   December.

20        THE COURT:  Okay.  Is that what you're talking

21   about?

22        MR. BARDWELL:  We are talking about that, yes.

23   I'm sorry.  We've -- I have not seen -- we've received

24   responses from them but not actual verification -- yes,

25   not verified responses, and that's what we've been

1   waiting on.

2       MR. LEE:  All verifications have been provided

3   except for Mr. Cordes and that's who has health --

4       THE COURT:  I missed it.  "All verifications

5   have been" --

6       MR. LEE:  Have been provided and produced with

7   the exception of Jim Cordes, and that's due to health

8   issues and --

9       THE COURT:  Last name is C-O-R-T-E-Z?

10      MR. LEE:  D-E-S.

11      THE COURT:  Is that the only verification that

12  you're alleging is lacking here?

13      MR. BARDWELL:  The Williams verification also,

14  but it sounds like that may have come up this morning.

15      MR. LEE:  Yes, that was produced.

16      THE COURT:  Pardon?

17      MR. LEE:  That was produced.

18      THE COURT:  Was?

19      MR. LEE:  Yes.

20      MR. BARDWELL:  This morning.

21      MR. LEE:  Yes.

22      MR. BARDWELL:  All right.  And I will review and

23  make sure that we have that.

24      THE COURT:  Okay.  So the Cordes verification is

25  to be submitted then.  We'll set a future date for that

1    one in my findings.  What else?

2         MR. BARDWELL:  So on the interrogatories, we

3    still have issues in terms of the substance on the ones

4    that have been verified.  The County, for instance, has

5    objected and refused to answer any of the

6    interrogatories presented to it.  This is a wrongful

7    termination and whistleblower retaliation case.  The

8    County refuses to lay out the factual basis for my

9    client's termination.

10        THE COURT:  Is this a separate motion you filed

11   or is this included in this motion that we're talking

12   about?

13        MR. BARDWELL:  Right.  Yes.  We ask for the

14   Court to compel and issue sanctions on these

15   interrogatories.

16        THE COURT:  Oh, this is for sanctions?

17        MR. BARDWELL:  Yes.  So we'd ask the Court to

18   enter an order essentially finding that the facts, you

19   know, embraced within these interrogatories are as

20   alleged in the complaint.

21        THE COURT:  Because you say the County has

22   refused --

23        MR. BARDWELL:  Correct.

24        THE COURT:  -- to answer numerous

25   interrogatories?

14

1          MR. BARDWELL:  Yes.  It has not provided a

2    substantive answer to any of the interrogatories

3    presented to it.

4          THE COURT:  This does not -- this only involves

5    the County defendants?

6          MR. BARDWELL:  This -- there is nothing before

7    the Court on the interrogatories directed to the Ulmer

8    defendants.

9          THE COURT:  I'll hear from the County, please.

10          MR. LEE:  Your Honor, the responses have been

11   submitted.  They are substantive.  There may be

12   objections in there, which the County stands upon, based

13   on attorney-client privilege communications, which he's

14   seeking for.  But they have been substantively responded

15   to even since back as early as December and

16   supplementation in January.  So they have been responded

17   to.  The objections, with respect to those questions,

18   including numerous questions, those deal with

19   attorney-client privileged communications, which the

20   County has not waived and will not waive.

21          THE COURT:  And I'll hear from the plaintiff in

22   rebuttal.

23          MR. LEE:  And, Your Honor, if I could add one

24   more thing.

25          THE COURT:  Sorry.  Go ahead.

—15—

1              MR. LEE:  The motion to compel was filed.  The

2    interrogatories and responses were submitted, and I've

3    heard nothing in respect to a deficiency or an argument

4    that there is not a substantive response until this

5    morning right now.

6              THE COURT:  Is that correct?

7              MR. BARDWELL:  I think -- yes, that is correct.

8    We've been waiting to get the verified responses.  We

9    only got those on January 26th.

10             THE COURT:  I'm not talking about those.  We're

11   talking about the objections that the County made to

12   interrogatories based upon privilege.

13             MR. BARDWELL:  Correct.

14             THE COURT:  You've never indicated by anything

15   you filed or by letter to opposing counsel that you

16   object to that?

17             MR. BARDWELL:  We --

18             THE COURT:  And you're bringing it in front of

19   the Court now?  Is that what they're telling me?  Go

20   ahead.

21             MR. BARDWELL:  I'm sorry.  Yes, that is what

22   they're telling you and it is not inaccurate.  We moved

23   for the -- yeah.  We moved the Court to compel the

24   responses to the interrogatories.  I've been waiting on

25   these verifications to know whether the responses that I

1    was getting were actually going to be the responses to

2    which the parties were going to swear, and that just

3    happened.  That was January 26th.  So either last week

4    or the week before.

5         So, no, I've not had a chance yet to go over the

6    responses in substance, but I wanted to raise this while

7    we were here.  Some of these are -- I mean, some of

8    these are -- the privilege arguments in particular, I

9    mean, I think, seem -- the County has stated its

10   position pretty clearly, and it seems that it may be

11   worth reviewing here, but we can fight about them behind

12   the scenes and come back.

13        THE COURT:  Counsel?

14        MR. BARDWELL:  Yes.

15        THE COURT:  You know how happy courts are to

16   deal with discovery disputes, aren't you?

17        MR. BARDWELL:  Not particularly.

18        THE COURT:  You've been around, right?

19        MR. BARDWELL:  Yes.

20        THE COURT:  Okay.  Not real happy to have to

21   deal with them, let alone in situations where there does

22   not appear to even be a controversy here yet.

23        Is there a controversy in the manner in which

24   the interrogatories were objected to on the basis of

25   privilege?

17

1          MR. BARDWELL:  On that point, no, it has not

2     been.

3          THE COURT:  Then I don't want to hear about it.

4          MR BARDWELL:  Okay.

5          THE COURT:  You guys have to work that out

6     yourselves.

7          MR. BARDWELL:  Okay.

8          THE COURT:  Okay.  Then there are other matters

9     under your motion for sanctions.  Any other matters you

10    want to raise at this time?

11         MR. BARDWELL:  Not with respect to the motion

12    for sanctions, no.

13         THE COURT:  Okay.  What else have you got?  Go

14    ahead.

15         MR. BARDWELL:  So we also have -- and this is --

16    you may or may not be excited to hear about it.

17         THE COURT:  I don't think any of you are here to

18    please me, so I wouldn't worry about that.  So go right

19    ahead.

20         MR. BARDWELL:  As you heard when we came in last

21    time, Defendant Williams has launched a piece of

22    satellite litigation naming my client and me and

23    Commissioner Hung as defendants in an abusive process

24    case.

25         THE COURT:  Is that filed in this county?

18

1      MR. BARDWELL:  That is filed in Cuyahoga County.

2  All right.  So in that case, I sent out subpoenas for

3  phone records that we had discussed a need for in this

4  case.  Those subpoenas have all been quashed by Judge

5  Burnside over there.  I've been in touch with Monica and

6  with Brian about whether we're going to send those out

7  in this case.  The Ulmer defendants are objecting to, I

8  think, any level of -- any amount of subpoena for the

9  phone records, for Defendant Martinsek's cell phone

10  records.  We discussed raising it here.  It sounds like

11  you may want us to just continue working it out behind

12  the scenes, and if that's the case, that's fine, but I

13  did want to raise it because I was --

14      THE COURT:  Does that concern this litigation?

15  I mean, it may pour over into this litigation --

16      MR. BARDWELL:  It does, Your Honor.

17      THE COURT:  -- but it's all involving your

18  Cuyahoga case right now, is that it?

19      MS. SANSALONE:  Your Honor, Judge Burnside has

20  quashed those subpoenas because they were grossly

21  overbroad and sought attorney-client privilege

22  information.  She is also currently considering my

23  motion for sanctions against Mr. Bardwell for issuing

24  those subpoenas.  I don't believe he's entitled to those

25  records whatsoever.  We've objected to them in this

19

```
 1    litigation and behind our backs he went without notice

 2    to us and issued those subpoenas in the other

 3    litigation.  Judge Burnside, and I can give you her

 4    orders, was not too pleased with Mr. Bardwell's conduct

 5    in that regard and she's currently considering my

 6    sanctions.  I would ask that this court not permit him

 7    to try to do what he did in that case, which she stopped

 8    in this case.

 9         THE COURT:  But he hasn't done -- you haven't

10    done anything yet?

11         MR. BARDWELL:  That's correct.

12         THE COURT:  There's nothing justiciable in front

13    of me right now.  So I don't want to invite any further

14    issues that I already have to deal with.

15         But what I am interested in, in the interests of

16    justice, is to ensure that one court realizes what

17    another court has done so that there is consistency,

18    okay?  So, I'm asking all of you if there are issues

19    involving that in the future, that I be brought up to

20    date as far as what has happened in the other litigation

21    if it relates to something that is similar in this one.

22    We don't want Judge Burnside doing something different

23    than what I'm doing.  I mean --

24         MS. SANSALONE:  And to that regard, Your Honor,

25    I brought two copies of journal entries from Judge
```

1   Burnside's case that I think you would be interested in.

2   One about the motion to quash and then a different issue

3   in which Mr. Bardwell was declared disqualified from

4   representing Mr. Williamson in the companion case.

5       THE COURT:  That he be what?

6       MS. SANSALONE:  He was disqualified.  Judge

7   Burnside issued an order disqualifying Mr. Bardwell from

8   representing Mr. Williamson, who is the plaintiff in

9   this case, in the other case.  And currently I am

10  researching the question of whether Mr. Bardwell should

11  be disqualified as well in this case based on Judge

12  Burnside's findings.  So I'm happy to provide you, Your

13  Honor with --

14      THE COURT:  I'll take a look at it.  Yes, make

15  sure they're timestamped as you file them, okay?  Just

16  for timing.

17      MS. SANSALONE:  You want me to file her journal

18  entries in this case?

19      THE COURT:  In this case, yes, and then make

20  copies.  I'll take a look at it, sure.  That's not a

21  problem.

22      MS. SANSALONE:  May I approach the bench?

23      THE COURT:  You may.

24      MS. SANSALONE:  I'm happy to give these to you.

25  They deal with both the motion to quash, the subpoena

1    for the cell records, and also Mr. Bardwell's

2    disqualification based on the rules of professional

3    conduct.

4              THE COURT:  Okay.  Other motions that you have?

5              MR. BARDWELL:  That is it.  It sounds like we

6    will just need to set up the subpoena issue and the

7    interrogatories more squarely and we can come back.  I

8    have nothing else.

9              THE COURT:  Okay.  And then -- well, I guess I

10   will take Ulmer defendants first, your motions that you

11   have.

12             MS. SANSALONE:  That would be wonderful, Your

13   Honor.  Thank you.  We have two motions pending.  The

14   first is the motion to compel that we filed, which

15   centers around text messages.  This morning at

16   4:42 a.m., I received a dump of documents that I have

17   been looking for, frankly, since August, Your Honor.  We

18   initially propounded discovery in August and part of

19   that discovery we sought text messages between

20   Mr. Williamson and the extra-marital affair he was

21   having with Commissioner Hung.  At first Mr. Bardwell

22   refused to produce any of these text messages claiming

23   that his client did not have the resources to get these

24   text messages imaged.  He finally agreed to do so.  We

25   have been getting trickles of text messages over the

22

1  last couple months.  We have been discussing, and I have

2  sent him countless e-mails, which are detailed in my

3  affidavit in the motion to compel, for what we believe

4  are improper redactions in those text messages.

5          Low and behold this morning I received -- and I

6  can give you the comparison, Your Honor.  These were the

7  amount of text messages I originally received from

8  Mr. Bardwell with pages and pages of redactions to them.

9  This morning at 4:42 a.m. -- this is actually what I

10  received and what I should have gotten in August and

11  September, and it wasn't until I finally had to take the

12  step and file a motion to compel that I got these.

13          As a result, Your Honor, I do think that the

14  Ulmer & Berne defendants are entitled to sanctions,

15  their attorneys' fees for these months of trying to get

16  basic discovery, very highly relevant text messages

17  which deal with the reason we are here, which is

18  Mr. Williamson's termination as a result of the

19  extra-marital affair that he was having with his

20  superior, Commissioner Hung.  Mr. Bardwell will say,

21  "Oh, these are personal, they're intimate in nature."

22  But I have compared this morning, in the brief time that

23  I have been able to review the 300 pages, it was clear

24  that there were many, many improper redactions done in

25  the initial production.  And in particular, there's a

1  week time period where two decadent sessions occur where

2  these firings are at issue, and the redactions during

3  that time period, from July 28th to August 4th, made in

4  the initial production and now that I received this

5  morning, you compare the two, it was clear I should have

6  gotten them all along and --

7       THE COURT:  But they're not redacted now, what

8  you got?

9       MS. SANSALONE:  There are still redactions made

10  to them.  He is claiming -- Mr. Bardwell is claiming in

11  the brief that he filed with you this morning -- again,

12  at 4:45 this morning, so I haven't had a great chance to

13  digest it -- is that those are intimate and that they're

14  personal and, therefore, they're not relevant.  What

15  he's missing is the affair is the center of this case.

16  The affair was the reason for the termination, the

17  details over the affair, who knew about the affair and

18  when are all the allegations in his complaint.  There's

19  nothing privileged.  This is an extra-marital affair.

20  There is no spousal privilege between Michelle Hung and

21  Mr. Williamson, and they were clearly -- I hate to be

22  cynical, Your Honor, but based on the redactions and the

23  new documents I received this morning, I don't -- I

24  basically don't trust what redactions still remain in

25  these documents.

24

1       But, again, I got them this morning.  There are
2   300 pages of them.  At first glance, I can tell I should
3   have gotten these a long time ago.  I mean, I had Mr.
4   Williamson set for deposition in October, but I haven't
5   been able to get basic paper discovery from
6   Mr. Bardwell.
7       As a result, I do think the Ulmer & Berne
8   defendants are entitled to sanctions for having to wait
9   this long and to file a motion to compel yet to just
10  receive these on the -- you know, looking for a reprieve
11  from the governor on the morning we're headed to court
12  on my motion.
13      THE COURT:  Okay.  I'll hear from the plaintiffs
14  now about this end of it.
15      MS. SANSALONE:  Okay.
16      THE COURT:  I didn't cut you off, did I?  I
17  mean, do you have another motion?
18      MS. SANSALONE:  I do have another motion, but I
19  also want to address a couple things going forward.  Now
20  that I've seen these text messages, it is clear to me
21  that Mr. Williamson has waived his privilege with
22  Mr. Bardwell and potentially with some other lawyers
23  that Mr. Bardwell has refused to identify for me,
24  because he's talking to Michelle Hung about his lawyer's
25  advice.

1        So I need to go through these, but there may be

2   another potential waiver issue here of privilege because

3   he's talking to his paramour, where there is no

4   privilege, about the advice he's getting from his

5   lawyers.  So that will come.

6        THE COURT:  Okay.  And then in response to the

7   motion to compel by Ulmer?

8        MR. BARDWELL:  Yes, Your Honor.  So Monica is

9   correct.  Our position is that the messages that were

10  redacted were personal in nature and were not relevant

11  to any of the claims in the case.  We -- I went through

12  -- given the nature of the relationship between my

13  client and Commissioner Hung, the text message history

14  is quite lengthy.  There are -- you know, they are

15  texting each other constantly on a daily basis it seems.

16  So it has taken a while to get through that entire

17  production.  It has certainly taken longer than I would

18  like and, obviously, longer than the Ulmer defendants or

19  anybody else would have liked, and I concede that point.

20  But we've been going through and making, you know,

21  deliberate redactions for materials that were not

22  responsive to any of the Ulmer defendants' requests.

23  That's what all those redactions were.

24        The messages that you'll see -- so we sent a

25  link to the new productions today as well so the court

1    can review them, if it wants.  But the vast majority of

2    the messages that were redacted, the Court will see are,

3    "Hey, honey, good morning.  I'm thinking of you.  Go

4    have a great day today.  I really believe in you.  How

5    was your day?  Just getting back from work.  Want to

6    meet up.  Let's go to Mateo's.  Let's go to get lunch

7    here at the Mexican place."  That's the vast majority of

8    the messages.  If there are specific --

9           THE COURT:  And those portions were redacted by

10   you?

11          MR. BARDWELL:  Correct.

12          THE COURT:  Are they prejudicial?

13          MR. BARDWELL:  They're not prejudicial.  Yeah,

14   they were just not responsive to the requests, and I was

15   dealing with, you know, hundreds and hundreds of pages.

16   So I knocked out the pages that had nothing that was

17   responsive to the Ulmer defendants' requests.

18          Monica objected to that approach.  I told her

19   that was the approach we were going to be taking several

20   months ago.  When she objected to that, I agreed to go

21   back and review these.  We had a final meet and confer

22   two hours before she filed her motion to compel, and I

23   offered to talk to the client about submitting to a full

24   in-camera review or going back and reviewing the -- or

25   taking other -- pass through the redactions and see what

1     we could remove.  She insisted that we move straight

2     ahead on the motion to compel.

3              Despite that, I continued working with my client

4     to review these things to see whether we were

5     comfortable with sending all this stuff out there.

6     That's where we landed.  We produced all of the

7     documents in the entire range that Monica was asking for

8     and we have unredacted virtually everything.  I have

9     brought copies for you of all the pages that has

10    remained redacted in the production we made.  If the

11    Court wants to take an in-camera review, we are

12    comfortable with that.  I think the Court will find that

13    there's nothing in there that is salient for the case

14    and is generally just, yes, salacious material.

15             THE COURT:  Okay.  Next?

16             MS. SANSALONE:  May I respond, Your Honor, to

17    that?

18             THE COURT:  If you want to, go ahead.

19             MS. SANSALONE:  Okay.  Just briefly.  The point

20    is I had to file the motion to compel to get what I've

21    been asking for since August.  So dumping documents

22    three or four hours before a hearing and saying, "Hey,

23    I've given her everything" is very disingenuous.  There

24    was no legitimate reason for the redactions in the first

25    place.  There is no privilege and there is no reason.

28

1    And, again, Your Honor, I don't care how salacious they

2    are.  His -- Mr. Williamson's affair is the reason we

3    are here, and whether that's embarrassing to him or

4    Commissioner Hung, I'm sorry, but they're the ones who

5    chose to engage in an extra-marital affair in the

6    workplace and, therefore, they're the ones who put this

7    at issue.

8             THE COURT:  Okay.  I'll take your next motion at

9    this time, if you have more.

10            MS. SANSALONE:  I do, Your Honor.  The next

11   motion we have filed is a motion for summary judgment.

12            THE COURT:  I don't want to hear about that

13   today, no.

14            MS. SANSALONE:  Okay.

15            THE COURT:  That hasn't even been responded to,

16   has it?

17            MR. BARDWELL:  It hasn't.

18            MS. SANSALONE:  It has not.

19            THE COURT:  We'll wait on that.  I don't know if

20   I'll give you oral hearings on those, but I'll take a

21   look at them and if I decide that's the est way to do

22   it, the fairest way, then we'll set it again.

23            MS. SANSALONE:  Great.

24            THE COURT:  That's just been filed recently,

25   right?

```
1              MS. SANSALONE:  Right.  When it is fully

2      briefed, I would request oral argument on it.  Thank

3      you, Your Honor.

4              THE COURT:  Okay.  We'll see.  Is that it, then?

5              MS. SANSALONE:  It is.

6              THE COURT:  Okay.  And then how about the

7      County?

8              MR. LEE:  Your Honor, the County does not have

9      any motions pending at this time, although I do foresee

10     motions coming forth based on what I've heard today.

11     But nothing at this time.

12             THE COURT:  Okay.  On the motion to compel

13     production, the plaintiff -- this is directed to the

14     County.  The plaintiff has requested phone call logs of

15     landlines.  Would you tell me, again, if you've

16     responded to it and so on and so forth?

17             MR. LEE:  I have responded saying that we cannot

18     access those.  The Everstream ones, which were produced

19     today, is the closest thing we have to any sort of

20     landline phone records.

21             THE COURT:  You didn't have any?

22             MR. LEE:  We could not access the landline phone

23     records that he was alleging we could.  So, no, there

24     aren't any.  So I've responded saying they're not in our

25     possession, so we cannot access --
```

—30—

```
1          THE COURT:  They don't exist or you can't access
2    it?
3          MR. LEE:  We can't access a breakdown of what
4    these landlines show.
5          THE COURT:  How soon can you produce the Cortes
6    verification?  I know you said that he was out ill
7    maybe?
8          MR. LEE:  Yeah.  I've been trying for the last
9    -- I mean, since the beginning of December and I have
10   not been able to obtain it.  I will keep trying.  I've
11   been trying even as of last night and I don't have a
12   response from him.  I will keep trying.
13         THE COURT:  You can't send it to him and ask him
14   to return it to you?
15         MR. LEE:  Oh, I have.  I've done that several
16   times and I'm not getting a response even with phone
17   calls.
18         THE COURT:  Is he still an employee?
19         MR. LEE:  No, he's not.
20         THE COURT:  Oh.
21         MR. LEE:  He's retired, and I know his health is
22   not wonderful, so I can only presume that that is the
23   reason I'm not getting a return contact.  So I would
24   love to give you a date certain.  I will keep trying my
25   best, but I can't promise anything given the status.
```

1          THE COURT:  All right.  I think that's going to

2     do it.  That's all the rest of questions that I've got.

3     I'll try to get answers for you right away.  You've got

4     a trial date -- we have a trial date set on this, last

5     time we were here, of August 14th, okay?  And be assured

6     that those dates for the final pretrial and the trial

7     dates are going to stay.  I mean, this is the kind of

8     case that in order to continue it and to lengthen the

9     time on it, it's not going to be productive for anybody.

10          So that motion for summary judgment by the Ulmer

11     defendants has been filed like real recently, has it

12     not?

13          MS. SANSALONE:  It has, Your Honor.

14          THE COURT:  So you need time to respond to that?

15          MR. BARDWELL:  We do.

16          THE COURT:  Additional time?

17          MR. BARDWELL:  That would be great.

18          THE COURT:  March 15th, okay?

19          MR. BARDWELL:  That'll work.  Thank you.

20          THE COURT:  And then I'm assuming the Ulmer

21     defendants are going to want to file a reply brief?

22          MS. SANSALONE:  Yes, Your Honor.

23          THE COURT:  End of March, the 30th, is that

24     okay?

25          MS. SANSALONE:  That's fine, Your Honor.  Thank

32

```
1    you.
2            THE COURT:  Thanks, everybody.  That will do it
3    for today.
4            MR. BARDWELL:  Thank you, Your Honor.
5            MS. SANSALONE:  Appreciate it, Your Honor.
6            MR. LEE:  Thank you, Your Honor.
7            MR. BARDWELL:  Does the Court want the redacted
8    messages for an in-camera inspection?
9            THE COURT:  I'm not hearing you.  What did you
10   say?
11           MR. BARDWELL:  I still have the messages that
12   the Ulmer defendants are asking to see unredacted.  I
13   have unredacted versions of them for the Court if it
14   wants them for an in-camera inspection.  I think they
15   would be useful in determining whether any further
16   action is warranted on --
17           THE COURT:  I'm going to order you to produce
18   all of it, okay, unless it's privileged or there's some
19   other good reason to redact it.  What you have stated to
20   the Court is not a good reason legally, because they're
21   sensitive or personal or -- I know of no valid objection
22   to production because of that.  So that's what you're
23   going to be looking at.
24           MR. BARDWELL:  Okay.
25           THE COURT:  And then you can let me know after
```

33

1    you get my decision on it.

2             MR. BARDWELL:  All right.  Thank you.

3             THE COURT:  Okay.  Thanks, everybody.

4             MS. SANSALONE:  Thank you, Your Honor.

5                         *  *  *

6                  (Proceedings concluded.)

7                         *  *  *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

34

```
1                    C E R T I F I C A T E

2    State of Ohio,        )
                           )
3    County of Lorain.     )  SS:

4         I, Angela M. Wachsman, Official Court Reporter in

5    the Court of Common Pleas, Lorain County, Ohio, duly

6    appointed therein, do hereby certify that this is a

7    correct transcript of the proceedings transcribed to the

8    best of my ability in this case.

9         I further certify that this is a complete

10   transcript of the testimony.

11        IN WITNESS WHEREOF, I have subscribed my name this

12   17th day of February, 2023.

13

14

15
                                Angela M. Wachsman
16                    _____
                      Angela M. Wachsman, RPR
17                    Official Court Reporter
                      Lorain County Court of Common Pleas
18                    225 Court Street, 7th Floor
                      Elyria, Ohio  44035
19                    (440) 329-5564

20

21   My commission expires June 17, 2025

22

23

24

25
```