**IN THE UNITED STATED DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **HARRY WILLIAMSON**, | CASE NO. 1:23-cv-01507 |
| Plaintiff, | JUDGE JAMES GWIN |
| v. | |
| **LORAIN COUNTY**, *et al.*, | |
| Defendants. | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Defendants David Moore ("Moore"), Matt Lundy ("Lundy"), Tom Williams ("Williams"), and James Cordes ("Cordes"), move for summary judgment as to Plaintiff Harry Williamson's remaining claims.

**INTRODUCTION**

Only three claims remain from Plaintiff's original complaint. (*See* Doc. 25 and 26). At the core of each claim, Williamson alleges that his termination as the Lorain County 911 Director was based on protected speech or association rather than his *undisclosed* extramarital affair with a sitting County Commissioner. Because he was an at-will employee and further admits to the inappropriate sexual relationship, which violated County policy, his termination was lawful. The Court need not reach his alternative and unsupported theories set forth in his Complaint. But even if inclined to examine the factual basis for each claim, the undisputed facts establish that (1) Williamson's First Amendment rights were not violated, (2) he was not a whistleblower, and (3) his civil

1

rights under the Ohio Constitution remained intact. Moreover, Williamson cannot overcome Defendants' statutory immunity, and thus his claims fail as a matter of law.

## STATEMENT OF FACTS

This case originated in state court, where Plaintiff raised similar allegations but voluntarily dismissed his claims on February 10, 2023. *See Harry Williamson v. Lorain County, et al.,* Case No. 22CV205156 ("Lorain County Case").[1] Like that case, this action pertains to Williamson's termination as 911 Director after the discovery of his sexual relationship with Lorain County Commissioner Michelle Hung. (*See generally* Doc. 1, Compl.).

Prior to his employment as 911 Director, Williamson allegedly worked on various aspects of Lorain County's 911 system while employed by an outside private vendor. (Doc. 1, Compl. at ¶ 10). During that period, he also served as President of the Lorain County AFL-CIO union. (*Id.*, at ¶ 11). Following Williamson's endorsement of Michelle Hung for County Commissioner in the 2020 election, Williamson claims that then-County Administrator, James Cordes, took steps to ban Williamson from working in the County's 911 facility. (*Id.* at ¶¶ 14, 17-22). Williamson retired from private employment on October 30, 2020. (*Id.* at ¶ 23).

Through the November 2020 election, Lorain County residents elected David Moore and Michelle Hung—both Republicans—as county commissioners. (Compl. at ¶ 26). Together, they joined the remaining incumbent, Democratic County Commissioner Matt Lundy. Williamson served on the transition team for Moore and Hung. While

---

[1] The Court can take judicial notice of the filing date for the Lorain County Case (January 31, 2022). *See Campbell v. Marcinkevicius,* 2022 U.S. Dist. LEXIS 221760, at *2 (N.D. Ohio Dec. 8, 2022).

2

serving on their transition team, they offered Williamson a position as the Lorain County Director of 911 Services. (*Id.* at ¶¶ 26-27). Williamson admits he began his romantic relationship with Commissioner Hung during the transition period between the November 2020 election and Commissioner Hung's swearing-in. (*Id.* at ¶ 29).

On January 4, 2021, the County Commissioners formally hired Williamson to serve as the 911 Director and Tom Williams to serve as the new County Administrator. (*Id.* at ¶ 33). Commissioner Hung cast the deciding vote in favor of Williamson's appointment. (Declaration of Matt Lundy, at ¶ 5, Exhibit 1). Over the next several months, Williamson claims that he learned of various instances of financial mismanagement within the County that he believed constituted "misappropriation of property-tax revenues" and "misuse of taxpayer funds." (Doc. 1, Compl., at ¶¶ 50-56). Williamson claims to have reported these issues to his supervisor, then-County Administrator, Tom Williams. (*Id.* at ¶¶ 64, 160). Williamson also claims that Williams tried to exert pressure on him to influence Commissioner Hung to vote for a certain radio system when considering a county contract. After Williamson refused to lobby Commissioner Hung, he alleges Williams began plotting to fire him. (*Id.* at ¶¶ 89-91). Despite being an at-will employee, Williamson contends that the County needed to "fabricate a justification" to terminate him, and "settled on [his] relationship with Commissioner Hung." (*Id.* at ¶ 92). Of course, Williamson's sexual relationship with Commissioner Hung, one of his superiors, and his failure to disclose the relationship were a violation of the County's employment policies and independent grounds to terminate his at-will employment.

After the affair came to light, the County's outside legal counsel shared a memorandum with the Commissioners in executive session that analyzed Williamson's

termination due to his ongoing affair with Commissioner Hung. (Compl. at ¶ 102-104).[2] The Commissioners then returned to an open meeting and proceeded to vote on Williamson's termination. The vote was bipartisan and unanimous with Commissioners Moore and Lundy voting in favor of termination and Commissioner Hung abstaining. (*Id.* at ¶ 107); (Lundy Decl., at ¶ 10; Declaration of David Moore, at ¶ 10, Exhibit 2). Neither Moore nor Lundy were aware of Williamson's affair with Commissioner Hung until it was disclosed in executive session on July 28, 2021. (Moore Decl. at ¶ 8,) (Lundy Decl. at ¶ 8).

Instead of recognizing that his termination resulted from his own decision to carry on an admitted sexual relationship with his supervisor—a sitting County Commissioner—Williamson strings together a series of embellished events to manufacture the appearance that he was discriminated against for exercising his free speech rights. Williamson has no evidence to support these bald allegations, and his remaining claims must fail.

## LAW AND ARGUMENT

### A. Standard of Review

The applicable standard under Rule 56 is well known to the parties and the Court. Summary judgment is appropriate when, in viewing the facts in a light favorable to the non-moving party, no genuine disputes as to any material facts exist and the movant is entitled to judgment as a matter of law. *First Floor Living LLC 22-3216 v. City of Cleveland*, 83 F.4th 445, 454 (6th Cir. 2023); *see also* Fed. R. Civ. P. 53(a). A material fact is one which "might affect the outcome of the suit under the governing law," and a genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the

---

[2] The fact that Williamson learned of information discussed in a confidential executive session is emblematic of the unavoidable conflict created by his affair with Commissioner Hung. Indeed, the disclosure of such information is prohibited by R.C. 102.03, a violation of which is a criminal misdemeanor.

4

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, summary judgment is proper. *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)).

Following the Court's recent decisions, Williamson's remaining claims include Count 1 (First Amendment Retaliation), Count 3 (Ohio Whistleblower Retaliation), and Count 4 (Interference with Civil Rights). (Doc. 26). Williamson's claims are limited to the individual defendants in their capacity as former Lorain County officials. (*Id*.). Each of these claims fail because of the undisputed fact that Williamson was terminated for a legitimate and lawful purpose. While Williamson spins a fanciful tale of constitutional deprivations, whistleblowing, and retaliation, these allegations have no evidentiary support. The undisputed evidence demonstrates that Williamson was an at-will employee and was terminated for an undisclosed and inappropriate sexual relationship.

**B. The Board of Commissioners terminated Williamson's at-will employment because of his inappropriate sexual relationship with Commissioner Hung.**

A claim under Ohio's Whistleblower statute involves the same burden-shifting analysis as other retaliatory discharge claims. *Wood v. Dorcas*, 142 Ohio App. 3d 783, 791-93 (6th Dist. 2001) (finding plaintiff failed to meet his burden of showing a pretextual termination). The putative whistleblower must demonstrate that he engaged in activity that would bring him under the protections of R.C. 4113.52, that he suffered an adverse employment action, and that the protected activity caused the adverse action. *Id*., at 791; *see also Klepsky v. UPS*, 489 F.3d 264, 271 (6th Cir. 2007). An employer avoids liability

5

for whistleblower retaliation by stating a legitimate, non-retaliatory reason for the termination. *Id.* at 272. The burden then shifts back to the employee, who must bring evidence to show the employer's reason was pretext. *Id.*

The Sixth Circuit recognizes three methods by which an employee can show pretext: (1) the employer's proffered reasons had no basis in fact; (2) the proffered reasons did not actually motivate the discharge; and, (3) the proffered reasons were insufficient to motivate a discharge.[3] *Gregory v. Chrysler Corp.*, No. 97-4442, 1999 U.S. App. LEXIS 8025, at *10 (6th Cir. Apr. 21, 1999).

Williamson cannot clear even the prima facie hurdle. Ohio's whistleblower statute requires that a putative whistleblower make a ***written*** report of the alleged misconduct. *E.g.*, *Contreras v. Ferro Corp.*, 73 Ohio St.3d 244, 247, 652 N.E.2d 940 (1995) ("R.C. 4113.52(A)(1)(a) requires that the employee orally notify his or her supervisor or other responsible officer of the employer of the violation and subsequently file with that person a written report…"); *see also Shaffer v. OhioHealth Corp.*, 2004-Ohio-6523, 2004 Ohio App. LEXIS 5961 (10th Dist.), ¶ 22 (recognizing that "R.C. 4113.52 'plainly requires an employee to file a written report in order to gain the benefits of the statute.'"). Williamson has not identified a single written report on the purported "misuse" of County funds or any other purported whistleblowing behavior. (*See* Pl.'s An. to Interrog. No. 17[4], Exhibit 3 (noting that Williamson "does not currently recall the precise manner and date of each communication" related to alleged criminal misconduct reported to superiors)). Without

---

[3] Ohio courts have held that federal case law interpreting Title VII of the Civil Rights Act of 1964 is applicable to cases involving violations under Revised Code Chapter 4112. *Gregory*, U.S. App. LEXIS 8025, at *7.

[4] This is a true and accurate copy of a document produced in discovery. *See* Declaration of Matthew Dooley at ¶ 3, Exhibit 6.

a valid written report, Williamson's whistleblower claim must fail. *See Dorcas*, 142 Ohio App.3d at 790 (recognizing that a plaintiff must show more than "a mere idle conversation…[but] a delivery of accumulated information to a proper authority with an expectation that such authority will act on the information set forth.")

Even if Williamson could meet his prima facie burden, it is undisputed that the Board terminated Williamson for a legitimate, non-discriminatory reason. The County's personnel manual provides that "[a]ll employees are expected to maintain the highest possible ethical and moral standards" . . . and "[c]onduct that interferes with normal business operations, brings discredit to the Office or County, is illegal, or is offensive to the public or fellow employees will not be tolerated." (*See* Ulmer Memorandum, attached to Lundy Declaration as Exhibit A). Employees are prohibited from engaging in any matter which "undermines the integrity of Lorain County government." (*Id.*).

Williamson admits to having a sexual relationship with Ms. Hung, but he never disclosed the fact to Moore, Lundy, or any other County official. (Pl's An. to Request for Adm. No. 4, Exhibit 4[5]; Pl.'s An. to Interrog. No. 14). Moore and Lundy only learned of the affair when Ms. Hung divulged it to them on July 28, 2021. (Moore Decl. at ¶ 8); (Lundy Decl. at ¶ 8).

Upon discovering Williamson's extramarital affair, the Board considered whether disciplinary action should be taken against him. The Board also considered the Ulmer Memorandum regarding Williamson's conduct. In pertinent part, the memorandum observed that:

> Here, termination is warranted since Mr. Williamson's affair with Commissioner Hung undermines the integrity of Lorain County government, brings discredit to the County, and does

---

[5] This is a true and accurate copy of a document produced in discovery. *See* Dooley Decl. at ¶ 3.

not maintain "the highest possible ethical and moral standards."

(Ulmer Memo.). Only six days after discovering the affair and two days after receiving the Ulmer Memorandum, Lundy and Moore voted to terminate Williamson's employment based on Williamson's affair. (Lundy Decl. at ¶¶ 8-12; Moore Decl. at ¶¶ 8-12).

Williamson cannot put forth a shred of evidence that demonstrates a causal link between his alleged whistleblowing and his termination months later. He similarly fails to demonstrate that the reason for his termination was a pretext for his purported whistleblowing activity. Williamson's termination came too long after the alleged whistleblowing to infer a causal connection based on timing. *See Clark Cty. School Dist. C. Breeden*, 532 U.S. 268, 273 (2001) (temporal proximity, on its own, may only be enough to establish a causal link between protected activity and an adverse action when the timing is "very close."); *Payton v. Receivables Outsourcing, Inc.*, 2005-Ohio-4978, ¶ 29 (8th Dist. 2005) (two-day interval was enough to establish causal link from temporal proximity alone); *Thatcher v. Goodwill Industries of Akron*, 117 Ohio App. 525, 535 (three-week interval was enough to establish causal link on its own); *Ningard v. Shin Etsu Silicones*, 2009-Ohio-3171, ¶ 17 (9th Dist. 2020) (finding no causal link where events were separated by more than a few days or weeks); *Boggs v. Scotts Co.*, 2005-Ohio-1264, ¶ 26 (10th Dist. 2005) (holding that additional evidence to prove causation is required after two month interval).

Here, Williamson engaged in a secret sexual relationship with the same Commissioner who cast the deciding vote to hire him. In those months, the pair continued their affair in and out of work. (Pl's Ans. To Adm. No. 5 ("Admit that, during your employment as the Lorain County 911 Director, you had sex with Michelle Hung inside a

8

building owned by Lorain County. – ANSWER: Admit."). Upon discovering the illicit affair, Defendants terminated Williamson within six days. None of the alleged conduct in Williamson's Complaint motivated Moore and Lundy's decision to terminate him. (Moore Decl. at ¶ 12) (Lundy Decl. at ¶ 12). The timeline alone substantiates Defendants' basis for the termination and weighs against Williamson's allegations.

### C. Qualified immunity shields Defendants from First Amendment Liability because Williamson has no constitutional right to engage in an extramarital affair with Commissioner Hung.

To prevail on his First Amendment retaliation claim, Williamson must show that he engaged in a protected activity, an adverse action was taken against him, and that there is a causal connection between these two elements – "that is, the adverse action was motivated at least in part by [his] protected conduct." *See Sensabaugh v. Halliburton*, 937 F.3d 621, 628 (6th Cir. 2019). The burden then shifts to Defendants to demonstrate by a preponderance of evidence that Williamson would have been terminated absent the protected conduct. *See Id.* (citing *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012)). Put another way, Defendants are entitled to summary judgment if Williamson would have been terminated even if he had not engaged in any so-called protected speech. *See Id.* (citing *Harris v. Klare*, 902 F.3d 630, 637 (6th Cir. 2018); *Ehrlich v. Kovack*, 710 Fed. Appx. 646, 650 (6th Cir. 2017) (the proper inquiry is essentially but-for cause); *Sensabaugh*, 937 F.3d at 629 (same).

Additionally, Defendants are presumed to be without any liability under 42 U.S.C. § 1983 unless Williamson can overcome the high bar of qualified immunity. *See Habich v. Wayne Cnty.*, No. 22-1517, 2023 U.S. App. LEXIS 8868, at *3 (6th Cir. Apr. 12, 2023) (plaintiff bears the burden to show that a defendant is not entitled to qualified immunity). A "'defendant is entitled to qualified immunity on summary judgment unless the facts,

9

when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established.'" *Habich v. Wayne Cnty.*, 2023 U.S. App. LEXIS 8868, at *3 (quoting *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021)). A court needs only resolve one of the two elements in defendant's favor in order to grant summary judgment. *Id.*

"A right is clearly established when its contours are sufficiently clear that a reasonable official would understand that his conduct violates that right." *Nailon v. Univ. of Cincinnati*, 715 F. App'x 509, 515 (6th Cir. 2017) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). The proper inquiry is whether "'the violative nature of *particular* conduct is clearly established,' and is examined 'in light of the specific context of the case, not as a broad general proposition. (emphasis in original)'" *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 308, 193 L. Ed. 2d 255 (2015)).

The U.S. Constitution protects only two types of personal associations. *Anderson v. City of LaVergne*, 371 F.3d 879, 881 (6th Cir. 2004). Expressive associations, protected by the First Amendment, relate to speech, assembly, petition for the redress of grievances, and the exercise of religion. *Id.* Intimate associations, on the other hand, are those relationships "that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctly personal aspects of one's life.'" *Id.* (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 619-20, 82 L. Ed. 2d 462, 104 S. Ct. 3244 (1984)).

A state employer does not run afoul of the Constitution by terminating an employee because of a romantic relationship between that employee and another— particularly adulterous ones. *Marcum v. McWhorter*, 308 F.3d 635, 640 (6th Cir. 2002);

10

*Beecham v. Henderson Cnty.*, 422 F.3d 372, 378 (6th Cir. 2005). Indeed, the Sixth Circuit's decision in *Marcum* established that "adulterous" relationships are not afforded the protections of the Constitution. *Marcum v. McWhorter*, 308 F.3d 635, 637-640 (6th Cir. 2002) (rejecting a county sheriff's constitutional claims after he was discharged for engaging in an adulterous relationship).

Likewise, in *Beecham*, the Sixth Circuit considered the constitutional claims brought by a former court clerk who was fired for having an affair with a co-worker's husband. *Id.* at 374. Both women were employed as clerks of court on the same floor of the courthouse, and their supervisor observed that the plaintiff's relationship with the other clerk's husband was causing tension in the courthouse. *Id.* Considering the relationship, the supervisor consulted with the county's attorney who advised that he could terminate the plaintiff without violating any state or federal law. *Id.* Ultimately, courthouse officials terminated the deputy clerk because they found "that it was unacceptably disruptive to the workplace" for her to be involved in a romantic relationship with a man married to another employee of another court down the hall. *Id.* at 378.

Even assuming that the relationship was not adulterous, the court officials did not violate the Constitution because their decision to terminate was based on a plausible policy reason. *Id.* at 378. Relying on numerous other courts in similar circumstances, the *Beecham* court applied a rational basis review to the employer's decision to terminate. *Id.* at 376; *see, e.g., Montgomery v. Carr*, 101 F.3d 1117, 1126 (6th Cir. 1996) (collecting cases). The court officials acted upon a plausible policy reason in terminating the deputy clerk because "it was unacceptably disruptive to the workplace for a[n] [employee]... to be

11

openly and 'deeply involved in a romantic relationship' with [another employee's husband]." *Id.* at 378.

Additionally, the Sixth Circuit characterized the right to intimate associations as stemming from the Fourteenth Amendment, not the First. *Hartwell v. Houghton Lake Cmty. Sch.*, 755 F. App'x 474, 478 (6th Cir. 2018); *see also Ford v. Brown*, No. 4:22-CV-12368, 2024 U.S. Dist. LEXIS 58046, at *18 (E.D. Mich. Jan. 26, 2024) (finding intimate association to be a Fourteenth Amendment right and dismissing plaintiff's First Amendment claim).

Fundamentally, the U.S. Constitution does not protect Williamson's extramarital and sexual affair with Commissioner Hung, especially where the relationship disturbs public policy. (*See* Pl's Ans. to Adm. No. 5 ("Admit that, during your employment as the Lorain County 911 Director, you had sex with Michelle Hung inside a building owned by Lorain County. – ANSWER: Admit."). Defendants could not have violated a clearly established right when no such right exists. Further, Defendants are entitled to immunity as to Williamson's federal claims.

### D. **Williamson's free speech rights played no role in his termination, and he cannot recover under Ohio law.**

A person injured by a criminal act may recover for such injuries in a civil action. R.C. 2307.60. A public servant, acting under color of their office, employment, or authority, is guilty under R.C. 2921.45 for knowingly depriving any person of a constitutional or statutory right.[6]

---

[6] To address the Court's inquiry into the appropriate statute of limitations for an action under R.C. 2307.60, Defendants find this Court's recent decision in *Garner v. Cleveland Clinic Found.* informative. *See* No. 1:23CV2258, 2024 U.S. Dist. LEXIS 96724, at *43-44 (N.D. Ohio May 29, 2024) (Boyko, J.). While "the overwhelming majority of courts that have considered this issue have held that [R.C. 2307.60] was penal…the majority of cases that have so found have either failed to address the above factors entirely, have engaged in minimal analysis, or have felt

12

"Section 2921.45 imposes liability only if the constitutional violation was 'knowing.'" *Jordan v. Murphy*, 145 F. App'x 513, 519 (6th Cir. 2005). The statute's requirement that a public official act knowingly in depriving another of a constitutional or statutory right "is designed to protect public officials who act in the honest belief that their actions are authorized or required by law, but whose conduct is later determined not to have been authorized or required." R.C. 2921.45, 1974 Committee Comment to H511.

"A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "A person has knowledge of circumstances when the person is aware that such circumstances probably exist." *Id*. "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." *Id*.

"Basing the definition of knowledge on probability and the definition of recklessness on likelihood is intentional. Something is 'probable' when there is more reason for expectation or belief than not, whereas something is 'likely' when there is merely good reason for expectation or belief." R.C. 2901.22, 1974 Committee Comment to H511; *Vill. of Sabina v. Kress*, 2007-Ohio-1224, ¶ 28 (12th Dist. 2007) (A person will be held to have acted knowingly only if the given result was probable.).

Absent the "knowing" mental state, claims under R.C. 2921.45 must fail. *Jordan v. Murphy*, 145 F. App'x 513, 519 (6th Cir. 2005); *Sanders v. Cuyahoga Cnty.*, No. 1:21-cv-

---

compelled to predict how the Ohio Supreme Court would rule based on the fact that, at the time they were tasked to predict how the Ohio Supreme Court would rule, no Ohio court held it to be remedial." *Id*. Considering recent appellate authority in *Harris*, the Court found arguments in favor of the remedial nature of R.C. 2307.60 more persuasive. *Id*.; *Harris v. Cunix*, 2022-Ohio-839, ¶ 26, 187 N.E.3d 582, 590.

1254, 2022 U.S. Dist. LEXIS 229052, at *13 (N.D. Ohio Dec. 20, 2022) (holding where plaintiff failed to adequately plead a constitutional violation, consequently, there can be no knowledge and R.C. 2921.45 claim failed).

Williamson fails to put forth any evidence that he was deprived of any rights guaranteed by the Ohio Constitution. *See Nazinitsky v. Integris Baptist Med. Ctr., Inc.*, 852 F. App'x 365, 366-67 (10th Cir. 2021) ("…the nonmovant may not rest on its pleadings, but must bring forward specific facts…"). Furthermore, Williamson's termination has no constitutional implications; it did not deprive him of any free speech right[7] because the termination was based on his adulterous affair with Commissioner Hung. *See Beecham v. Henderson Cnty.*, 422 F.3d 372, 378 (6th Cir. 2005). Moreover, Defendants could not have acted knowingly because the probability that terminating Williamson for his extramarital affair would cause a deprivation of his rights was extremely low – if not zero.

Additionally, Cordes disputes that Williamson was removed from the 911 Center and that any such removal had anything to do with his political speech.[8] To the best of Cordes' recollection, Williamson was asked to leave a county facility for "refusing to follow directions of County employees" and for "unauthorized access to County property without proper approval while he was an employed by CenturyLink." (Cordes's Resp. to Interrog. No. 11[9], Exhibit 5).

---

[7] The Ohio Supreme Court has held that Ohio's right to free speech is no broader than the United States Constitution, and the case law of the First Amendment to the United States Constitution is a proper basis for interpreting Ohio's free speech clause. *Eastwood Mall v. Slanco*, 68 Ohio St. 3d 221, 626 N.E.2d 59 (1994).

[8] Cordes was not the 911 Director at the time, so he would not have made the decision to request that Williamson leave the 911 Center.

[9] This is a true and accurate copy of a document produced in discovery. *See* Dooley Decl. at ¶ 3.

14

Even if Williamson can articulate viable evidence of this purported free speech, he has no such right in the 911 Center. The U.S. Supreme Court identified three types of government-controlled spaces: traditional public, designated public, and nonpublic forums. *Minn. Voters All. v. Mansky*, 585 U.S. 1, 11, 138 S. Ct. 1876, 1885 (2018). The 911 Center is "not by tradition or designation a forum for public communication" – it is a nonpublic forum. *See Id.*

"Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Id*. Accordingly, Cordes could not have run afoul of Williamson's free speech rights by imposing content-based restrictions, if any, on Williamson. *See Id*. (nonpublic forum restrictions may exclude political advocates and forms of political advocacy).

## **CONCLUSION**

For the reasons discussed above, Defendants respectfully request that this Court grant summary judgment in favor of Defendants on all remaining claims.

Respectfully submitted,

DOOLEY, GEMBALA, MCLAUGHLIN & PECORA CO., LPA

/s/ Matthew A. Dooley
Matthew A. Dooley (0081482)
Stephen M. Bosak, Jr. (0092443)
Michael R. Briach (0097986)
5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone: (440) 930-4001
Facsimile: (440) 934-7208
Email: mdooley@dooleygembala.com
sbosak@dooleygembala.com

15

mbriach@dooleygembala.com
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed and served on all parties via the Court's electronic filing system on July 1, 2024.

*/s/ Matthew A. Dooley*
Matthew A. Dooley
*Counsel for Defendants*