IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **HARRY WILLIAMSON,**<br>    *Plaintiff,*<br>v.<br>**LORAIN COUNTY,** *et al.*,<br>    *Defendants.* | Case No.: 1:23-cv-01507-JG<br><br>Judge James S. Gwin<br>Magistrate Judge Jennifer Dowdell Armstrong |
| **HARRY WILLIAMSON'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ||

  Plaintiff Harry Williamson respectfully moves for an order denying Defendants' Motion for Summary Judgment, or in the alternative, defer considering the motion until the completion of discovery. As laid out below, Defendants have failed to carry their burden on a Rule 56 motion, and evidence of the facts necessary to oppose the motion are unavailable to Mr. Williamson because Defendants have refused to engage in any good-faith exchange of discovery in this action.

### FACTS

  Mr. Williamson adopts the facts as laid out in his declaration, attached as Exhibit 1.

### STANDARD OF REVIEW

  A district court may not grant a motion for summary judgment under Rule 56 unless the moving party satisfies its heavy initial burden of showing that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 726 (6th Cir. 2000) ("If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion.").

For instance, in *Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir. 1972), a prisoner brought 1983 claims against officers for ignoring 17 hours of complaints about head injuries that eventually required surgery and caused lasting brain damage. The trial court granted summary judgment for the defendants, holding that they were entitled to judgment because the plaintiff had failed to rebut affidavits showing that officers had actually provided medical at some point during that 17-hour window. But the Sixth Circuit reversed, holding that unrebutted affidavits are insufficient to trigger summary judgment unless they actually "negate … the essential allegations of the complaint":

> It is true that the affidavits controvert appellant's contention that he did not receive medical care for approximately seventeen hours. What they do show is that the time lapse was twelve hours. It is further true that they tend to show that *the day shift* … acted properly and with some sensitivity to Fitzke's plight. These affidavits do not, however, deny the appellant's allegations regarding Fitzke's treatment at the time of his arrest.

*Fitzke at* 1078.

Only after the moving party has satisfied its burden does any burden fall to the nonmoving party, who can defeat the motion by identifying "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## LAW & ARGUMENT

**I.   Because they fail to meet their initial burden of demonstrating the absence of a genuine issue of material fact, Defendants are not entitled to summary judgment.**

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

For instance, in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970), a customer sued a five-and-dime, alleging that it had refused to serve her because she was a white woman shopping with black students and that it had conspired with police to have her arrested when she left. Based on the store manager's unrebutted testimony denying that he had communicated with the police, the trial court granted summary judgment, rejecting the complaint's allegations that the arresting officer's presence in the store when she tried to get service suggested a conspiracy. The Second Circuit affirmed, but the U.S. Supreme Court reversed, holding that because their affidavits failed to squarely address and refute the complaint's allegations, the defendants had failed to carry their initial burden under Rule 56:

> Respondent here did not carry its burden because of its failure to foreclose the possibility that there was a policeman in the Kress store while petitioner was awaiting service, and that this policeman reached an understanding with some Kress employee that petitioner not be served."

*Adickes* at 157.

Although the store presented evidence from its manager and the police involved in the arrest, the Court noted conspicuous "unexplained gaps" in its evidence: the police denied neither being in the store at the time an agreement was allegedly reached nor influencing the store's decision not to serve the plaintiff, and the store employees who actually interacted with the plaintiff never denied communicating with the police about the plaintiff. *Adickes* at 158.

Here, Defendants have likewise failed to carry their initial burden to make a showing "that excludes any real doubt as to the existence of any genuine issue of material fact."[1] Whether one looks at Mr. Williamson's claim for First Amendment retaliation, for whistleblower retaliation, or for interference with his civil rights, the key allegations are essentially the same:

---

[1] *Vakilian*, 335 F.3d at 520.

1. That Mr. Williamson engaged in protected conduct, whether by promoting union-backed political candidates, by blowing the whistle about misappropriation of funds from Lorain County's 911 levy, or by refusing Defendant Williams's demands that he lobby Commissioner Hung to support Defendant Moore's political agenda.[2]
2. That because Mr. Williamson engaged in that activity, Defendants took adverse action against him by leaking embarrassing information about him and by interfering with his work, both as a contractor for the County and then as its employee.[3]
3. That Defendants used Mr. Williamson's relationship with Commissioner Hung as a pretext for his termination, despite having been aware of it throughout his employment.[4]

But Defendants never point to any evidence that eliminates the possibility of any of these facts being true. They do not deny that Mr. Williamson promoted the candidacy of political opponents, they do not deny that Mr. Williamson repeatedly blew the whistle on the misappropriation of 911 funds, and they do not deny that Mr. Williamson refused Defendant Williams's demands to lobby Commissioner Hung on the MARCS radio contract or other issues Defendant Moore wanted to push through the Board of Commissioners.[5]

Nor do they deny that they undertook any of the adverse actions alleged in the complaint. They do not deny that they booted him from the 911 center where he worked as a contractor. They do not deny that leaked embarrassing information about him to the press. They do not deny that they terminated his contract.

The most they can offer is a pair of identical statements from Defendant Moore and Defendant Lundy that they based their decisions to terminate Mr. Williamson's employment

---

[2] Complaint, ¶¶ 124, 136, 143–144.
[3] Complaint, ¶¶ 125–127, 138, 143–144.
[4] Complaint, ¶¶ 92–93.
[5] Defendants do complain that Mr. Williamson has not yet identified the written report on which he bases his whistleblower claim, but this is a transparent bit of sleight of hand. On their own motion for summary judgment, it is their burden to prove that none of Mr. Williamson's reports ever happened.

"solely upon his extramarital affair with Commissioner Hung, which [they] believed violated Lorain County employment policies."[6] But even if the Court believes that they are telling the truth when they deny a causal connection between Mr. Williamson's protected activity and the adverse actions they took against him, that would not be enough to preclude a genuine issue of material fact, for two reasons:

- **First,** because it does nothing to address Mr. Williamson's allegations that Defendant Lundy and Defendant Moore retaliated against him in other ways, including "leaking embarrassing information about him to the press" and "freezing him out of government decision-making."[7]
- **Second,** it does nothing to foreclose the possibility that Defendant Williams, who lacked formal decisionmaking power, used Defendant Lundy and Defendant Moore as dupes in a "in a deliberate scheme to trigger a discriminatory employment action," in which case they would all remain liable under a cat's-paw theory. *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 377 (6th Cir. 2017).

And Defendant Williams offers literally no evidence that would demonstrate that this was not the case. He has thus far refused to answer a single discovery demand, and he is unwilling to provide a sworn statement even to his own attorneys in support of their motion for summary judgment. As a result:

- He never denies receiving Mr. Williamson's repeated reports of misappropriations, and he never denies pressuring Mr. Williamson to lobby Commissioner Hung to support Defendant Moore's agenda.
- He never denies that he leaked embarrassing video of Mr. Williamson, never denies that he conspired to fabricate a pretext to terminate Mr. Williamson, and never denies that he participated in executing on plans to terminate Mr. Williamson.
- He never denies that he took those adverse actions because of Mr. Williamson's protected activity.

---

[6] Lundy Declaration, ¶ 11; Moore Declaration, ¶ 11.
[7] Complaint, ¶ 125.

As little as these Defendants have done to carry their burden, Defendant Cordes has done even less, failing to provide any evidence that would satisfy his initial burden. Mr. Williamson's claims against Defendant Cordes revolve around a separate set of facts—that Defendant Cordes warned Mr. Williamson to stop advocating for Republican candidates and locked him out of work when Mr. Williamson persisted[8]—and Defendant Cordes never denies that any of this is true. He admits that the adverse action occurred, agreeing that Mr. Williamson "was asked to leave a County facility," but he denies having any "detailed recollection" that would allow him to offer any evidence as to why he banned Mr. Williamson from the facility.[9] Like Defendant Williams, he never denies that Mr. Williamson engaged in protected speech, he never denies taking adverse action against Mr. Williamson, and he never denies a causal link between those two facts. Indeed, the strongest argument he can muster is that he "disputes" the allegations in the Complaint,[10] but factual disputes are grounds for denying summary judgment, not granting it.

Because they have failed to demonstrate the absence of a genuine dispute as to whether Mr. Williamson engaged in protected conduct, whether they took adverse actions against him, or whether those actions were motivated by the protected conduct, Defendants have failed to carry their initial burden under Rule 56, and they are therefore not entitled to summary judgment.

II. **Because Mr. Williamson has identified specific facts raising a genuine issue of material fact, Defendants are not entitled to summary judgment.**

Even if the Court were to treat their submission as adequate to carry their initial burden of proving the absence of a genuine issue of material fact, Defendants would still not be entitled to summary judgment, as Mr. Williamson's declaration presents "specific facts showing that there

---

[8] Complaint, ¶¶ 15–23
[9] Cordes Interrogatory #11.
[10] Mot. for Sumamry J., 14.

is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009). To make that showing, Mr. Williamson must present "evidence from which a reasonable fact finder could find in his favor" and "[s]uch evidence is required to be viewed in the light most favorable to the plaintiff. … Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).

Mr. Williamson's attached affidavit—together with the inferences that may be reasonably drawn in his favor—satisfies that burden with respect to all remaining claims and all remaining defendants.

> **A. The testimony from Mr. Williamson's declaration would allow a reasonable jury to find in his favor on all elements of Claim 1 for First Amendment retaliation and Claim 4 for interference with civil rights.**
>
> **1. Mr. Williamson has established the elements of First Amendment retaliation on a protected-speech theory.**

To make out a claim for First Amendment retaliation on a protected-speech theory, Mr. Williamson must show evidence: (1) that he engaged in a constitutionally protected activity; (2) that Defendants' adverse actions caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing that activity; and (3) that Defendants were motivated, at least in part, by his exercise of his constitutional rights." *Novak v. City of Parma*, 932 F.3d 421, 427 (6th Cir. 2019).

Here, there are sufficient grounds for a jury to find that Defendants retaliated against him for engaging in protected speech:

1. Mr. Williamson testified that he engaged in protected speech by advocating for his preferred candidates in the commissioners' race, by reporting misspending of 911 funds, and by refusing to lobby Commissioner Hung to support Defendant Moore and

    Defendant Williams's priorities.[11] Defendants have not presented any evidence disputing any of these allegations.

2. Mr. Williamson testified that he suffered adverse actions at Defendants' hands,[12] and Defendants have not disputed those allegations:
    a. Defendant Cordes admits that he "wanted Williamson removed from the County's 911 center," that he directed a subordinate "to have Williamson removed," and that he threatened to "call law enforcement if Williamson would not leave."[13]
    b. Defendants Lundy, Moore, and Williams admit that they terminated Mr. Williamson's employment.[14]

3. The available circumstantial evidence would permit a jury to find a causal link between Mr. Williamson's protected activity and the adverse actions:
    a. Defendant Cordes admits that he warned Mr. Williamson to "stay neutral,"[15] and Mr. Williamson's declaration shows that Defendant Cordes had him locked out of the 911 center almost immediately after he disregarded that instruction.[16] Further, Defendant Cordes doesn't even dispute this conclusion, saying instead that he can't quite remember why he interfered with Mr. Williamson's work.[17]
    b. Although Defendants Lundy and Moore have offered his relationship with Commissioner Hung as their basis for terminating his employment, Mr. Williamson's declaration would permit a jury to find that explanation pretextual, as it permits a finding that the relationship did not violate any actual policy,[18] that Defendants knew about the relationship for months before acting on it,[19] and that they took no disciplinary action against employees who were involved in similar relationships but had not engaged in the same kind of protected conduct.[20]

---

[11] Williamson Declaration, ¶¶ 5, 15, 18.
[12] Williamson Declaration, ¶ 21.
[13] Answer, ¶¶ 17 – 21.
[14] Answer, ¶¶ 105 – 110.
[15] Answer, ¶ 15.
[16] Williamson Declaration, ¶ 5.
[17] Cordes Interrogatory #11.
[18] Williamson Declaration, ¶ 17.
[19] Williamson Declaration, ¶ 13.
[20] Williamson Declaration, ¶ 14.

c. And because all the Defendants are sued in their official capacities as well as their personal capacities, the County's own liability remains at issue.[21] The County's liability in a Section 1983 action is of course limited, but it remains subject to liability on these facts because each Defendant is sufficiently high-ranking that their "edicts or acts may fairly be said to represent official policy." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978).

### 2. Mr. Williamson has established the elements of First Amendment retaliation on a political-affiliation theory.

"[T]he practice of patronage dismissals is unconstitutional under the First and Fourteenth Amendments." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "Unless the government can demonstrate an overriding interest of vital importance requiring that a person's private beliefs conform to those of the hiring authority, his beliefs cannot be the sole basis for depriving him of continued public employment." *Branti v. Finkel*, 445 U.S. 507, 515–16 (1980) (cleaned up).

Under *Hall v. Tollett*, 128 F.3d 418, 424 (6th Cir. 1997), Evaluating claims for or patronage or political-affiliation retaliation requires the Court to determine whether the position in question falls into any of four categories where patronage appointments may be permissible:

**Category One:** positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;

**Category Two:** positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;

**Category Three:** confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential

---

[21] *Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that Petty's suit is against Karnes in his *official* capacity, it is nothing more than a suit against Franklin County itself.").

employees who control the lines of communications to category one positions, category two positions, or confidential advisors; [and]

**Category Four:** positions that are a part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies."

Here, Defendants never suggest that Mr. Williamson fell into any of these categories, and they admit the facts showing that Mr. Williamson falls outside all four categories.[22]

Because the evidence—as laid out above—permits an inference that Mr. Williamson was terminated for failing to align with Defendants' political affiliations, Mr. Williamson's absence from any of the groups where patronage dismissals are permitted means he has presented sufficient evidence to survive summary-judgment on a political-affiliation theory.

### B. The testimony from Mr. Williamson's declaration would allow a reasonable jury to find in his favor on all elements of Claim 3 for whistleblower retaliation.

"In order to establish a violation of the Ohio whistleblower statute, a plaintiff must first make a prima facie case by showing that 1) he or she engaged in activity which would bring him or her under the protection of the statute, 2) was subject to an adverse employment action and 3) there was a causal link between the protected activity and the adverse employment action. … If a plaintiff is able to make out a prima facie case, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the action taken. Should the employer be able to state a non-retaliatory reason for the action taken, the burden then returns to the plaintiff to come forward with some evidence to show that the employer's stated reason was, in fact, pretext." *Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 271–72 (6th Cir. 2007).

---

[22] Answer, ¶¶ 66 – 69.

Here, Mr. Williamson's declaration establishes that he engaged in protected conduct, as he testifies that he repeatedly made written reports that 911 levy funds were being improperly diverted for other purposes, that he believed those diversions to be felonies, and that he believed those diversions threatened public health and safety.[23] The parties agree that he was subject to adverse employment action.[24] And although Defendants again invoke Mr. Williamson's relationship with Commissioner Hung as the basis for that termination, the evidence discussed above would permit a jury to conclude that their explanation is pretext and that Mr. Williamson's whistleblowing activity was the actual cause.

Because his declaration provides sufficient evidence from which a reasonable jury could find in his favor on all his claims, Mr. Williamson has carried his burden to survive summary judgment.

### III. Because the right to be free from termination in retaliation for protected speech is clearly established, Defendants are not entitled to qualified immunity.

"[T]here is no doubt that there is a clearly established constitutional right to speak, even as a government employee, on a matter of public concern regarding issues outside of one's day-to-day job responsibilities … And it is well settled in our circuit that retaliating against an employee for exercising this free speech right violates the Constitution." *Ashford v. Univ. of Michigan*, 89 F.4th 960, 975 (6th Cir. 2024) (collecting cases).

Likely because it has been clearly established for decades, Defendants elect not to dispute Mr. Williamson's right to be free from adverse employment actions based on his exercise of his right to free speech. Instead, they advance a particularly narrow alternative argument that they

---

[23] Williamson Declaration, ¶ 15.
[24] Answer, ¶¶ 105 – 107

are entitled to qualified immunity "because Williamson has no constitutional right to engage in an extramarital affair with Commissioner Hung."[25]

They may be right, but it is unclear how this argument has any bearing on the case at this stage. While Mr. Williamson's Equal Protection claim alleged that terminating him based on that relationship was unconstitutional, the only Section 1983 claim still remaining alleges instead that he was terminated based on his protected speech, a right that Defendants do not dispute was clearly established.

The only way that their argument becomes relevant, then, is if they Court accepts their tacit invitation to ignore its obligation to construe all the facts in Mr. Williamson's favor and instead accept their version of the facts, in which Defendants truly did terminate Mr. Williamson based solely on that relationship, and ignore the evidence showing that they knew about the relationship for months before acting on it and never acted on similar relationships.

Because Mr. Williamson's right to be free from retaliation is clearly established and because he is not invoking the only right that Defendants argue is not clearly established, the Court should reject their qualified-immunity defense.[26]

**IV.  Because Defendants have refused to produce the discovery Mr. Williamson needs to oppose it, the Court should deny or defer consideration of their motion for summary judgment.**

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or

---

[25] Mot. for Summary J., 9.

[26] Because that is the only argument Defendants are making in support of qualified immunity, that is the only argument the Court should consider. *DeCrane v. Eckart*, 12 F.4th 586, 600–01 (6th Cir. 2021) (where defendant advances only one argument for qualified immunity, the court should not consider other plausible theories).

deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56.

For instance, in *Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011), the plaintiff in a First Amendment–retaliation case sought to delay consideration of motions for summary judgment because the defendants had not responded to any of his discovery demands. The district court denied his motion and granted summary judgment, holding that the plaintiff had failed to sufficiently identify what discovery he needed or why. But the Sixth Circuit reversed, holding that denying the motion was an abuse of discretion because the disputed discovery demands were already in the record and had "obvious potential" to inform its decision on summary judgment.

Much the same is true here. Mr. Williamson has served discovery demands on Defendants, but all of them have more or less refused to provide any meaningful response to those demands, even those that they admit bear directly on the elements of the case. For instance:

- Where Mr. Williamson alleges that he and Tim Carrion were fired the same day for their participation in the same whistleblowing activity,[27] Defendants Moore and Lundy refuse to say why they fired Mr. Carrion, claiming that their reasoning is irrelevant.[28]

- Where they argue that they have the burden of proving that Mr. Williamson's romantic relationship with Commissioner Hung was "a legitimate, non-retaliatory reason" for terminating him,[29] Defendants Moore and Lundy refuse to identify, explain or even acknowledge the existence of any County policy governing such relationships.[30]

- Where they argue that Mr. Williamson bears the burden of proving that their reason for terminating him "was pretext,"[31] Defendants Moore and Lundy refuse to say

---

[27] Complaint, ¶ 91.
[28] Lundy Interrogatory #3, Moore Interrogatory #3.
[29] Mot. for Summary J., 6.
[30] Lundy Interrogatory #8, Moore Interrogatory #8.
[31] Mot. for Summary J., 6.

whether they are aware of similarly situated individuals involved in such relationships.[32]

- Where they argue that Mr. Williamson bears the burden of proving that their reasons for terminating him "were insufficient to motivate a discharge,"[33] Defendants Moore and Lundy they refuse to say whether they imposed any discipline on similarly situated employees.[34]

And those are just the deficiencies in the boilerplate objections that Defendants *have* provided. Defendants Lundy and Moore have meanwhile not produced any documents in response to Mr. Williamsons' requests for inspection in this action, and Defendant Williams has not responded to *any* discovery demands at all—refusing to say, for instance, whether he had long known about Mr. Williamson's relationship with Commissioner Hung[35] or whether he had communicated that information to Defendants Lundy and Moore long before they agreed to terminate him.[36]

Because Defendants have refused to permit Mr. Williamson access to the facts he needs to present a full opposition, the Court should deny or defer consideration of their motion for summary judgment.

## CONCLUSION

Defendants have failed to satisfy their initial burden of demonstrating the absence of a genuine issue of material fact. They have refused to provide Mr. Williamson with the materials he needs to properly oppose their motion. And Mr. Williamson has nonetheless come forward with evidentiary material establishing the viability of all his claims. The Court should therefore

---

[32] Lundy Interrogatory #7, Moore Interrogatory #7.
[33] Mot. for Summary J., 6.
[34] Lundy Interrogatory #9, Moore Interrogatory #9.
[35] Williams Interrogatory #6.
[36] Williams Interrogatory #7.

deny—or at least defer consideration of—Defendants' motion for summary judgment and permit the parties to move forward to a trial.

Respectfully submitted,

*/s/Brian D. Bardwell*
Speech Law LLC
Brian D. Bardwell (0098423)
4403 Saint Clair Ave.
Cleveland, OH 44103
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Plaintiff Harry Williamson*

### CERTIFICATE OF SERVICE

I certify that on July 15, 2024, this document was served on opposing counsel as provided by Civ. R. 5(B)(2)(f).

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
*Attorney for Plaintiff Harry Williamson*

---

[37] *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008).

deny—or at least defer consideration of—Defendants' motion for summary judgment and permit the parties to move forward to a trial.

Respectfully submitted,

*/s/Brian D. Bardwell*
Speech Law LLC
Brian D. Bardwell (0098423)
4403 Saint Clair Ave.
Cleveland, OH 44103
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Plaintiff Harry Williamson*

### CERTIFICATE OF SERVICE

I certify that on July 15, 2024, this document was served on opposing counsel as provided by Civ. R. 5(B)(2)(f).

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
*Attorney for Plaintiff Harry Williamson*

---

[37] *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008).