# Speech Law LLC

## OHIO'S FIRST AMENDMENT LAW FIRM

August 29, 2024

*Via e-mail to mdooley@dooleygembala.com*

Re:    *Williamson v. Lorain County, et al.*, No. 1:23-cv-01507 (N.D. Ohio)

Dear Mr. Dooley:

This letter is to follow up on your clients' failure to provide complete responses to Mr. Williamson's discovery demands. Given the overlap in the requests directed to each of your clients, many of their deficient responses can be treated together.

### Communications accounts[1]

These requests seek disclosure of "every phone number, e-mail address, and social media account [Defendants] have used since January 1, 2020." Your clients objected that the request is "not relevant to any party's claims or defenses."

These requests are designed to permit Mr. Williamson to confirm your clients as the source of electronic communications and to identify potential sources of additional relevant communications about the facts of the case. Because the requested means of communication are standard means of making such communications, we struggle to understand the basis of your relevance objection.

Defendant Cordes further objected that the request "is temporally overbroad." The request is not temporally overbroad, as it is limited to the years in which either the events described in the Complaint occurred and the years in which litigation has been pending.

Please ensure that your clients provide full responses to each of these requests within 7 days.

### The factual basis for employees' terminations[2]

These requests sought the factual basis for Mr. Williamson's termination and several other employees' terminations. Each of your clients objected that the phrase "employment" was vague and undefined, though they each correctly inferred that the request sought information about those individuals' employment with Lorain County.

Your clients further objected that with respect to Tim Carrion, and Alexis Swiniarski, and Matt Spears, this information is "is not relevant to any party's claims or defenses and not proportional to the needs of the case." This information is relevant. The Complaint alleges that Mr. Carrion was terminated with participating in the same whistleblowing activity as Mr. Williamson. If that allegation is true, the basis for Mr. Carrion's relationship is relevant because it makes it more

---

[1] Cordes Interrogatory #2 and Lundy Interrogatory #2.

[2] Cordes Interrogatory #3–6; Lundy Interrogatory [...]; [...] Interrogatory #2–5; Williams Interrogatory #2–5.

PLAINTIFF'S EXHIBIT 16

Brian D. Bardwell

216-912-2195    |    brian.bardwell@speech.law    |    www.speech.law

likely your clients are liable for whistleblower retaliation; if that allegation is false, the basis for Mr. Carrion's relationship is relevant because it makes it less likely your clients are liable for whistleblower retaliation.

Essentially the same is true with respect to Ms. Swiniarski and Mr. Spears. We believe that these employees were also fired in retaliation for engaging in activities protected under the First Amendment or whistleblower laws. If it is true that the County and its employees had a routine practice of purging employees for engaging in such conduct, that would make it more likely that they are liable for doing the same to Mr. Williamson; if that is false, it would make their liability less likely.

With respect to Mr. Williamson, Tim Carrion, and Alexis Swiniarski, Defendant Williams responds that "he did not have authority to and did not terminate" those employees, but this information is not responsive to the request. We are not asking Defendant Williams about the scope of his authority to terminate employees; we are asking about his knowledge of the factual basis for the termination, regardless of who carried it out.

Please ensure that your clients provide full responses to each of these requests within 7 days.

### Discovery of the Williamson–Hung relationship[3]

These requests ask when your clients "first learned that Mr. Williamson was involved in a romantic relationship with Commissioner Hung." Your clients objected that the requests seek "information protected by the attorney-client privilege and/or executive session confidentiality."

Our position is that neither doctrine protects these communications about Mr. Williamson's termination. If they covered discussions about Mr. Williamson's employment in the first place,[4] the County has waived those protections by invoking an advice-of-counsel defense in response to his complaint in state court, by consenting to the disclosure of the Ulmer & Berne memo regarding the termination in the state-court case, by attaching that memo to its motion for summary judgment, and by voluntarily providing details about the basis for the termination in response to discovery demands.

Please ensure that your clients provide full responses to each of these requests within 7 days.

### Williams conversations regarding the Williamson–Hung relationship[5]

This request asks Mr. Williams to identify "the date, participants, and contents of each communication" he had "about Mr. Williamson's relationship with Ms. Hung" before Mr. Williams was terminated.

Mr. Williams responded that he spoke with three people about the relationship, but he does not provide any further details about those communications. He also says hundreds of people

---

[3] Lundy Interrogatory #7; Moore Interrogatory #6.

[4] We do not concede that those discussions were privileged to begin with, as the attorney–client privilege does not protect communications relating to a plan to engage in illegal activities, such as violating an employee's civil rights.

[5] Williams Interrogatory #7.

approached him about the relationship, but that he "does not recall everyone's names or dates." We are therefore still waiting on dates and contents of his communications with the people he has identified, as well as the names, dates, and contents of the communications with other people, to the extent he does remember them.

Please ensure that your client provides a full response to this request within 7 days.

### Identification of similarly situated employees[6]

These requests seek the identification of other employees of your clients who may have been involved in sexual relationships with each other. Defendants Moore and Williams objected that this information "is not relevant to any party's claims or defenses."[7]

This information is relevant because these employees could serve as comparators for Mr. Williamson. If the County has many similarly situated employees but only took action against Mr. Williamson, that would make it more likely that their stated basis for his termination is a pretext; if the County consistently takes action against such employees, that would make it less likely that their stated basis for his termination is pretext.

Defendant Williams further objects that the request is overbroad because it covers periods when he was not employed by Lorain County. It is unclear why that should matter. If Mr. Williams learned of one similarly situated employee before he began working for the County, learned of another while he was working for the County, and then learned of a third after he was working for the County, we do not see why he should be permitted to conceal his knowledge of any of them.

Please ensure that your clients provide full responses to each of these requests within 7 days.

### County policies governing relationships between employees[8]

These requests ask for an explanation of "the County's policies governing employees involved in romantic or sexual relationships with each other." Defendants Lundy, Moore, and Williams object that this request is "overbroad and vague."

It is unclear why they believe this request is overbroad and vague. In attempt to clarify, though, we can specify that we are seeking the identification of specific policies (a) that would govern relationships such as Mr. Williamson's relationship with Commissioner Hung; and (b) were in place from January 1, 2020 through today.

Your clients further indicated that if any such policy exists, it would be found in the County's Employee Handbook. If you can produce a handbook containing that policy and identify it by Bates number, that would likely satisfy our request.

Please ensure that your clients provide full responses to each of these requests within 7 days.

---

[6] Cordes Interrogatory #8; Lundy Interrogatory #8; Moore Interrogatory #7; Williams Interrogatory #8.

[7] We note that Defendant Cordes and Defendant Lundy did not object and instead denied knowing of any such employees. We encourage him to reconsider whether his answer is fully truthful.

[8] Cordes Interrogatory #9; Lundy Interrogatory #9; Moore Interrogatory #8; Interrogatory #9.

### Identification of discipline resulting from violations of County policies[9]

These requests ask your clients to identify "every disciplinary or corrective action taken against an employee for violating those policies since January 1, 2017." Your clients objected that "those policies" is "vague and undefined." We are referring to policies governing employees involved in romantic or sexual relationships with each other.

Please ensure that your clients provide full responses to each of these requests within 7 days.

### Affirmation that your clients are not lying[10]

These requests ask your clients whether they are telling the truth in their discovery responses. Your clients object that it is "improper" to ask whether they are telling the truth. Defendant Cordes further objects that the truthfulness of his responses is "not relevant to any party's claims or defenses."

Because they do not elaborate, we do not understand the suggestion that it is improper to ask a party whether they are telling the truth. And of course, this information is relevant. If your clients are telling the truth about the basis for Mr. Williamson's termination, for instance, that would make it less likely that they are liable on any of his claims; if they are lying, that would make it more likely that they are liable.

Please ensure that your clients provide full responses to each of these requests within 7 days.

### Cordes Interrogatory #12

This request seeks the disclosure of your client's communications "regarding the use of County resources to equip LifeCare with communications equipment." Defendant Cordes objected that the request is "temporarily undefined." We assume that this is meant to be an objection that the request is temporally undefined. We are comfortable limiting the request to the period from January 1, 2015 forward.

He further objected that this information has "no bearing on any viable claims" and is "not relevant to any party's claims or defenses." This information is relevant because it can substantiate Mr. Williamson's allegations of whistleblower retaliation. If County officials secretly authorized the diversion of taxpayer funds to pay for LifeCare's expenses, for instance, that would make it more likely that Mr. Williamson would be terminated for discovering and reporting the situation; if no such diversion ever happened, that would make it less likely that the County would retaliate against him.

Please ensure that Mr. Cordes provides a full response to this request within 7 days.

### Moore Interrogatory #10

This request seeks the identification of LifeCare employees with whom Defendant Moore has "a personal or political relationship." Defendant Moore objects that the phrase "personal or political relationship" is vague or undefined.

---

[9] Cordes Interrogatory #10; Lundy Interrogatory #10; Moore Interrogatory #9; Interrogatory #10.

[10] Cordes Interrogatory #13; Lundy Interrogatory #11; Moore Interrogatory #13; Interrogatory #15.

We are unclear why this vague to you but can clarify that we are seeking information about people with whom he interacts outside of his capacity as a commissioner, including but not limited to LifeCare employees he interacts with because they are family members, romantic partners, friends, mentors, mentees, political allies, campaign donors, campaign volunteers, campaign staff, business partners, teachers, students, classmates, neighbors, doctors, therapists, caregivers, or members of the same social group.

Defendant Moore also objected that this information "is not relevant to any party's claims or defenses." This information is relevant to the Complaint's allegation that Defendant Moore's "friends" at LifeCare were the reason Mr. Williamson was ordered to disregard misappropriations of County funds. If that allegation is true, it makes it more likely that he was terminated for engaging in protected activity; if it is not, that makes it less likely.

Please ensure that your clients provide full responses to each of these requests within 7 days.

### Moore Interrogatory #11 and Williams Interrogatory #14

These requests seek the identification of people who have asked your clients "to support the MARCS proposal for new walkie-talkies." They objected that "'MARCS proposal for new walkie-talkies' is vague and undefined."

As I understand it, any vagueness on this question was resolved during our recent status conference, but again, we are referring to the Motorola Solutions proposal to upgrade the County's radio system that you have repeatedly discussed in your filings in *Cleveland Communications Inc. v. Lorain County Board of Commissioners*, No. 1:23-cv-1561 (N.D. Ohio).

Defendant Moore also objected that this information "is not relevant to any party's claims or defenses." This information is relevant to the Complaint's allegation that "Mr. Williamson's refusal to lobby Ms. Hung on the radio contract was the last straw for Defendant Williams." If Mr. Williams's supervisor had political patrons or others pushing him to approve that proposal, it makes it more likely that they would retaliate against Mr. Williamson for refusing to assist them; if no one cared about the proposal, that would make it less likely that they would retaliate.

Please ensure that your clients provide full responses to each of these requests within 7 days.

### Moore Interrogatory #12

This request seeks the identification of meetings in which Defendant Moore met with fellow commissioners "to discuss County business outside of a public meeting." Defendant Moore objects that this information "is not relevant to any party's claims or defenses."

This information is relevant because Mr. Williamson alleges that the commissioners were seeking to push through several agenda items on which they sought his support, and Mr. Williamson is entitled to know when they sought to conduct business on those matters outside the public record.

Please ensure that your clients provide full responses to each of these requests within 7 days.

### Williams Interrogatory #11

This request seeks the identification of the steps Defendant Williams "took to address Mr. Williamson's reports that County funds were being misspent." He objected that "'Mr. Williamson's reports' are vague as to subject and date." We can clarify that we are referring here to Mr. Williamson's communications to Mr. Williams or the Board of Commissioners about perceived misuses of 911 funds, at any time during his employment with the County.

Please ensure that your clients provide full responses to each of these requests within 7 days.

### Request for Inspection #2

These requests ask your clients to produce "records of all phone calls to or from any phone you regularly used from October 1, 2020 through August 31, 2021. Your clients objected that this information is not relevant.

This information is relevant because your clients' communications with other parties can corroborate various allegations in the Complaint that the Defendants were communicating with each other about their plans to engage in retaliatory actions against Mr. Williamson. For instance, if phone records show that there were no phone calls between Defendant Cordes and Ms. Lopez in the days or weeks before she ejected him from the 911 Center, that would make it less likely that our allegations of Defendant Cordes's involvement are true.

Please ensure that your clients provide full responses to these requests within 7 days.

### Requests for Inspection #3–6

These requests ask your clients to produce various communications related to Harry Williamson.

This information is relevant for a variety of reasons. For instance, communications about Mr. Williamson would demonstrate the extent to which he was engaged in protected activity. If Defendant Moore has text messages demonstrating that he knew about Mr. Williamson's relationship with Commissioner Hung before they were sworn into office, that would make it less likely that the termination was actually premised on that relationship. Likewise, communications about the allegations in the Complaint would enable us to demonstrate whether your clients have accepted those allegations or disputed them.

Please ensure that your clients provide full responses to these requests within 7 days.

### Requests for Inspection #7–8

These requests ask your clients to produce records of correspondence with Amanda Martinsek and William Edwards. Your clients objected that this information is not relevant.

This information is relevant because Ms. Martinsek and Mr. Edwards were aware of Mr. Williamson's relationship with Commissioner Hung and because they were involved in deciding whether and how to terminate Mr. Williamson and Mr. Carrion, and in coaching the County on how to communicate to the media about the terminations. If there are communications acknowledging the existence of that relationship well before the termination, for instance, that would make it more likely that the relationship was a pretext for unlawful retaliation.

Please ensure that your clients provide full responses to these requests within 7 days.

### Request for Inspection #9

These requests ask your clients to produce "all records of correspondence with William Novak. Your clients objected that this information is not relevant.

This information is relevant because Mr. Novak was pursuing claims that the County retaliated against Defendant Williams for blowing the whistle on Mr. Williamson's relationship with Commissioner Hung. Those communications would therefore allow us to see what position the County was taking with respect to that relationship as it litigated against Mr. Williams.

Please ensure that your clients provide full responses to these requests within 7 days.

### Requests for Inspection #10–14

These requests ask your clients to produce records related to a variety of projects the County was undertaking during Mr. Williamson's employment. Your clients objected that this information is not relevant.

This information is relevant because Mr. Williamson alleges that these are the projects that Mr. Williams was pressuring him to lobby Commissioner Hung to support. If there are records showing that Defendant Moore saw the Seven Districts plan as a top priority, for instance, that would make it more likely that he would retaliate against Mr. Williamson for refusing to support it. If there are records showing that Mr. Moore actually opposed it, that would make our allegations less likely to be true.

Please ensure that your clients provide full responses to these requests within 7 days.

### Requests for Inspection #15–17

These requests ask your clients to produce various records related to the decision to terminate Mr. Williamson and Mr. Carrion. Your clients objected that this information is not relevant.

This information is relevant because those terminations are the entire point of this case.

Please ensure that your clients provide full responses to these requests within 7 days.

### Requests for Inspection #18–33

These requests ask your clients to produce documentation reflecting their assets and liabilities. Your clients objected that this information is not relevant.

This information is relevant because "it is well-settled law that factors such as net worth are typically considered in assessing punitive damages."[11]

Please ensure that your clients provide full responses to these requests within 7 days.

---

[11] *In re Heparin Prod. Liab. Litig.*, 273 F.R.D. 399, 407 (N.D. Ohio 2011) (cleaned up).

### Requests for Inspection #34–43

These requests ask your clients to produce records supporting the various affirmative defenses they've raised. Your clients objected that this information is protected as attorney work product.

This information is not protected as attorney work product; a plaintiff's request for documents supporting a defense is no more invasive of counsel's mental impressions than a defendant's request—such as the one your clients submitted—for documents supporting a claim. Indeed, your clients are affirmatively required to identify these documents under Fed. R. Civ. P. 26(a)(1)(A)(ii), which requires the disclosure of "all documents, electronically stored information, and tangible things that the disclosing party … may use to support its claims or defenses."

Your clients then go on to purport to make a "good faith attempt to respond" by identifying "all documents previously produced by the County." As you may recall, the County has been emphasizing for some time the allegedly massive volume of records it has produced to date; pointing to that entire stack of records does virtually nothing to identify documents responsive to the request.

Please ensure that your clients provide full responses to these requests within 7 days.

### Other boilerplate objections

Throughout their discovery responses, your clients raise a variety of boilerplate objections—such as vagueness, overbreadth, burdensomeness, and proportionality—without any elaboration. We consider these objections ineffective. Rule 26 does not permit a party "to refuse discovery simply by making a boilerplate objection that the information requested is not proportional."[12] "Merely stating that a discovery request is vague or ambiguous, without specifically stating how it is so, is not a legitimate objection to discovery."[13] The same is true with objections about burdensomeness, as parties raising them "must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden."[14]

Please ensure that your clients provide full responses to these requests within 7 days.

Sincerely,

Brian D. Bardwell
Founder, Speech Law LLC

---

[12] *Stillwagon v. City of Delaware*, No. 2:14-CV-807, 2015 WL 13632426, at *2 (S.D. Ohio Dec. 11, 2015).

[13] *Old Reliable Wholesale, Inc. v. Cornell Corp.*, No. 5:06CV02389DDD, 2008 WL 2323777, at *1 (N.D. Ohio June 4, 2008).

[14] *In re Heparin Prod. Liab. Litig.*, 273 F.R.D. 399, 410 (N.D. Ohio 2011).