Brian Bardwell <brian.bardwell@speech.law>

---

## Lorain County/Williamson

**Stephen Bosak** <sbosak@dooleygembala.com>                                                                                                   Fri, Sep 13, 2024 at 12:24 AM
To: Brian Bardwell <brian.bardwell@speech.law>
Cc: Matthew Dooley <mdooley@dooleygembala.com>, Michael Briach <mbriach@dooleygembala.com>, Amy Joyce <ajoyce@dooleygembala.com>

Brian:

This email responds to your August 29th letter to Matt Dooley. In the future, please ensure that your correspondence goes to all counsel of record i[…]

Communications Accounts (Lundy Interrogatory No. 2 and Cordes Interrogatory No. 2)

You raise issue with the relevancy objections raised by Cordes and Lundy with respect to Interrogatory No. 2 with respect to their phone numbers and emails "since January 1, 2020." Williamson bears the burden of demonstrating that the requested discovery is relevant. *E.g.*, *Johnson v. Cleveland City Sch. Dist.*, 2008 WL 11506156, 2008 U.S. Dist. LEXIS 137835, at *2-3 (N.D. Ohio June 12, 2008) ("Once an objection is made to the relevance of the discovery sought, the burden shifts to the party seeking the information to demonstrate that the requests are relevant.") You vaguely claim that these requests "are designed to permit Mr. Williamson to confirm your clients as the source of electronic communications and to identify potential sources of additional relevant communications…" I struggle to understand what you mean by "confirm [Lundy and Cordes] as the source of electronic communications[.]" What "electronic communications" are you referring to? Given your stated rationale, Lundy and Cordes stand by their relevancy objections. Nonetheless, both Lundy and Cordes have already provided phone numbers and email addresses, so there is nothing deficient about their responses.

The factual basis for employees' terminations (Interrogatories No. 3-6)

Defendants have fully responded to your interrogatories seeking the reason for Mr. Williamson's termination. Your attempts to pry into the unrelated terminations of other employees is not relevant to this litigation. It is merely a fishing expedition. *Oates v. Target Corp.*, 2012 WL 4513723, 2012 U.S. Dist. LEXIS 142334, at *9 (E.D. Mich. Oct. 2, 2012) ("Discovery is not a license for a fishing expedition wherein the Plaintiff may attempt to uncover new claims. To the contrary, because Plaintiff's Amended Complaint is not facially plausible, the doors of discovery on this issue must remain locked.") Williamson's bald allegations that Mr. Carrion was involved in putting an end to purported misappropriations of 911 funds does not have a shred of evidence. Indeed, Williamson's meritless declaration—the only "evidence" he can muster in this case—fails to mention Mr. Carrion at all. (*See* Doc. 29-1). Similarly, Williamson's "whistleblower retaliation" claim is facially deficient because he never made such complaints in writing (*e.g.*, Doc. 32), so these interrogatories do not seek relevant information. The Defendants stand by their objections.

Discovery of the Williamson-Hung relationship (Lundy Interrogatory No. 7 and Moore Interrogatory No. 6)

Both Mr. Lundy and Mr. Moore submitted declarations identifying when Commissioner Hung disclosed her affair with Mr. Williamson. (Doc. 27-1; 27-2). This is consistent with the deposition testimony of both Hung and Lundy. Likewise, Williamson's and Hung's text messages confirm that the romantic relationship was kept secret, which explains why Williamson was so upset when the relationship was finally uncovered in July 2021. Williamson's discovery responses also confirm that he and Commissioner Hung kept their affair secret. (*See* Williamson's Resp. to Interrog. No. 14). No further response is necessary from Mr. Lundy and Mr. Moore.

Williams [sic] conversations regarding the Williamson-Hung relationship (Williams Interrogatory No. 7)

Williams fully responded to Interrogatory No. 7 to the best of his recollection. As he stated, he "[does] not recall if I spoke to any others or the specific dates." He cannot provide information that he does not have or recollect. Accordingly, no further response is necessary.

Identification of similarly situated employees (Interrogatory Nos. 7-8)

The Defendants stand by their objections that these interrogatories do not seek relevant information. Your letter fails to establish why those objections are unreasonable. Simply put, there are no "similarly situated" County employees to Mr. Williamson, which is why Williamson does not attempt to identify any. While Mr. Williamson's undisclosed extramarital affair with a sitting county commissioner was decidedly unique, his termination for such inappropriate conduct was not.

County policies governing relationships between employees (Interrogatories No. 8-9) and Identification of discipline resulting from violations of County policies (Interrogatories 9-10)

As your letter concedes, Defendants point to the County's Personnel Manual for relevant policies regarding sexual relationships amongst County employees. The County previously produced the applicable Personnel Manual and related policies. (LDS00001-000236). I trust this satisfies your request. If you have specific questions related to these policies, I'm available to discuss. However, I'll remind you that Williamson was an at-will employee. Nonetheless, the Board identified why it terminated his employment, including citation to specific policies. (*E.g.*, Doc. 27; 32).

Affirmations that your clients are not lying

Defendants stand by their objections that Williamson's attempted affirmation that responses "are the truth, the whole truth, and nothing but the truth" is not a valid interrogatory and requires no response. Defendants have fully complied with their obligations to answer truthfully, and no additional affirmation is necessary.

Cordes Interrogatory No. 12

Cordes rightfully objected on relevancy and vagueness grounds with respect to communications "regarding the use of County resources to equip LifeCare with communications equipment[.]" Mr. Cordes's employment with the County terminated in December 2020. Indeed, Hung campaigned on firing Cordes. Thus, Cordes was long gone before Williamson started with the County and has no relevant information related to Williamson's employment. Likewise, because Williamson has no viable whistleblower retaliation claim, your stated rationale for seeking these alleged communications is baseless. Cordes stands by his objections.

Moore Interrogatory No. 10

Similar to my comments above, it is Williamson's burden to identify what relevant information is sought by Interrogatory No. 10. Your vague accusation that "Defendant Moore's 'friends' at LifeCare were the reason Mr. Williamson was ordered to disregarding misappropriation of County funds" has no basis in fact, and Williamson doesn't have a shred of evidence to the contrary. Moreover, it is irrelevant to Williamson's claims because he never satisfied the threshold prerequisite to allege a whistleblower retaliation claim—i.e., a written report. Moore stands by his objections.

Moore Interrogatory No. 11 and Williams Interrogatory No. 14

These interrogatories remain patently vague and irrelevant to Williamson's claims. If "MARCS proposal for new walkie-talkies" refers to the Radio Network Request for Proposal issued by the County in May 2022, Motorola never provided a full proposal responsive to that RFP. More importantly, CCI was awarded the contract in November 2022—**more than a year after Williamson's termination**. Put another way, Williamson's baseless allegations that he was fired for not lobbying Commissioner Hung on a radio contract that had not even been proposed makes no sense.

Moore Interrogatory No. 12

Moore maintains his objections to Interrogatory No. 12. Your argument that Williamson "alleges that the commissioners were seeking to push through several agenda items" is as vague as it is irrelevant. This interrogatory is clearly intended to fish for new potential claims against Defendants or the County completely unrelated to Williamson's current claims. Moore stands by his objections.

Williams Interrogatory No. 11

Thank you for clarifying what Williamson meant by "Williamson's reports" in Interrog. No. 11. I'm checking with Mr. Williams to determine what, if any, information he has with respect to Williamson's allegations that he reported "perceived misuses of 911 funds" during his employment. We will supplement our discovery responses if it becomes necessary.

Request for Inspection No. 2

RFP No. 2 seeks phone records for **all** calls over an 11-month time period several years ago. This is patently overbroad, not relevant, and disproportionate to the needs of this case. Defendants stand by their objections.

Requests for Inspection No. 3-6

The County previously produced all available records related to Mr. Williamson. Williams also produced responsive documents in his possession. I'm not aware of additional responsive documents. If additional documents are identified, Defendants will supplement.

Requests for Inspection No. 7-8

Defendants stand by their objections that "all records of correspondence" with the County's attorney is patently overbroad and irrelevant. Further, such communications would be protected by the attorney-client privilege.

Request for Inspection No. 9

Williams would be the only Defendant that has any communications with Mr. Novak. However, those communications would be privileged. They would also be completely irrelevant. No additional response is required from Defendants.

Requests for Inspection No. 10-14

My understanding is that these RFIs seek information that was the subject of the County's supplemental document production in November 2022, so available documents were previously produced. More importantly, these RFIs seek documents that are not relevant to Williamson's claims, which is why Williamson makes no mention of these projects in his summary judgment briefing. You confirmed as much at the most recent status conference when you agreed with the Court that these projects were unrelated to Williamson's opposition to the pending dispositive motion. Likewise, and as highlighted above, the bidding for the radio contract happened almost a year after Williamson was fired and could not play a role in his termination. As such, no additional response is required from Defendants.

Requests for Inspection No. 15-17

For the reasons set forth above, Defendants maintain their objections that Mr. Carrion's termination is not relevant to any claims or defenses here. That's why Mr. Carrion is not mentioned in Williamson's declaration or featured in Williamson's summary judgment briefing. You provide no valid argument to the contrary. Nonetheless, the County produced records related to Mr. Carrion in its original and supplemental productions. Accordingly, Defendants maintain their objections and no additional response is necessary.

Requests for Inspection No. 18-33

Williamson fails to establish *any* valid claim here, let alone such egregious conduct from Defendants to warrant punitive damages. (*E.g.*, Doc. 27; 32). All possible financial information for each Defendant is patently overboard, unreasonable, and not relevant to Williamson's claims. Defendants stand by their objections.

Requests for Inspection No. 34-43

These RFIs request any documents that may be used to support Defendants' affirmative defenses. In response, Defendants identified documents previously produced by the County and those produced by Plaintiff. Thus, Defendants have fully responded and no supplement is necessary.

If outstanding issues remain, I'm happy to discuss further.

Thanks,

Stephen

Stephen M. Bosak | DGMP | 440.930.4001

CONFIDENTIALITY NOTICE: This message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. This email and attachments have been scanned for viruses and malware.