**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **HARRY WILLIAMSON,** | |
| Plaintiff, | CASE NO. 1:23-CV-01507 |
| vs. | |
| **LORAIN COUNTY, et al.,** | JUDGE JAMES S. GWIN |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO UNTIMELY HUNG
DECLARATION**

In accordance with the Court's September 12, 2024 Order, Defendants submit the following response to the untimely declaration of Michelle Hung (the "Hung Declaration") (Doc. 37-1). The Hung Declaration does not cure the material defects in Plaintiff's claims—namely, it does not create a genuine issue of material fact as to (a) the legitimate, nondiscriminatory reason for Plaintiff's termination, and (b) the lack of a detailed written report necessary to support an Ohio Whistleblower claim. (*See e.g.*, Doc. 27; 32). Equally important, the new allegations raised in the Hung Declaration directly contradict prior sworn testimony given by Commissioner Hung. The undisputed evidence establishes that the Board terminated Plaintiff's employment because of his undisclosed extramarital affair with Commissioner Hung. Considering these undisputed facts, Plaintiff's claims crumble. *See Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294-95 (6th Cir. 2012) (recognizing that, in First Amendment retaliation claims, the burden does not shift back to plaintiff and the employer is entitled to summary judgment if it

establishes "by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct.") (quotations omitted).

### A. The Hung Declaration does not provide any evidence of a detailed written report necessary to support an Ohio Whistleblower claim.

As set forth in Defendants' summary judgment briefing, Plaintiff's whistleblower claim fails unless he can show a detailed written report to substantiate his whistleblower activity. An employee must "strictly comply" with the statutory reporting requirements to obtain whistleblower protection. *E.g.*, *Lee v. Village of Cardington*, 142 Ohio St.3d 488, 490 (2014) (affirming summary judgment on Ohio whistleblower claim where employee failed to present evidence of a valid written report to his employer). This includes a specific and detailed report in writing:

> the employee must orally report the violation to his or her supervisor or other responsible officer and subsequently shall file with that supervisor or officer a *written report that provides sufficient detail to identify and describe the violation*. If the employer does not correct or make a good faith effort to correct the violation within 24 hours, the employee may then notify outside authorities.

*Id.* (internal quotes and citations omitted) (emphasis added). Plaintiff has yet to identify any written report of alleged misappropriations of County 911 funding. (*See* Doc. 32, Page ID# 545-46) (detailing Plaintiff's lack of evidence). The Hung Declaration does not remedy this fundamental failure.

Over two paragraphs, Hung vaguely alleges that the Board tasked Plaintiff with identifying any misspent or misallocated funds for the 911 Center. (Doc. 37-1, at ¶ 14). Hung claims that she "recall[s] seeing emails from Plaintiff to Williams regarding these efforts." (*Id.*). She also alleges that meetings took place related to the issue; however, Hung either did not attend the meetings or had no specific recollection of what transpired. (*Id.*). Finally, Hung recalls Plaintiff "repeatedly trying to communicate with Williams

information relating to misspent funds, including emails which [she] read and in conversations [she] overheard." (*Id.*, at ¶ 15). Importantly, Hung does not allege that Plaintiff prepared *any written report* of these alleged misappropriations—nor does she identify any of the "emails" she claims to have received or read.

Plaintiff spins a different tale entirely. Rather than being "tasked" with investigating misspending, he alleges that *he* discovered "multiple instances of misspending of funds from the County's 911 levy," and reported it to Williams and Commissioner Hung. (Williamson Decl., Doc. 29-1, at ¶ 15). Of course, Plaintiff offers no specifics to support his vague allegation of "misappropriations" despite claiming that its "massive scope…may have constituted felonies[.]" (*Id.*). There is also no documentary evidence to support Plaintiff's claims in either the thousands of emails produced by the County or the hundreds of pages of text messages between Plaintiff and Commissioner Hung or Plaintiff and Williams. (*See* Doc. 32). Such bald claims of "misspending," unsupported by any written report, are insufficient to establish Plaintiff's prima facie claim of whistleblower retaliation, and Defendants are entitled to summary judgment.

## B. Hung's declaration does not establish a genuine issue of material fact regarding Williamson's termination.

The Hung Declaration also alleges that she and Plaintiff "were open" about their extramarital affair in a meritless attempt to counter the clear non-discriminatory reason for Plaintiff's termination. (Doc. 37-1, at ¶ 11). To that end, Hung claims that she informed the County's incoming Human Resources Director and an outside attorney for the County of her ongoing affair with Plaintiff. (*Id.*, at ¶¶ 8; 10). As a threshold issue, Hung's alleged conversations with these individuals constitute inadmissible hearsay. These communications cannot be considered party admissions because these individuals are

neither parties to the action nor their agents. (*See* Doc. 36, at Page ID# 599-600) (detailing Plaintiff's failure to lay foundation for the party admission exception to hearsay).

Moreover, Hung's allegations stand in stark contrast to her previous sworn testimony that she did not "need to volunteer" information about her affair with Plaintiff to Commissioners Lundy and Moore. (*See* Hung Dep., Doc. 31-1, at Page ID# 540-41).[1] It remains *undisputed* that Hung did not disclose her affair to Commissioners Lundy and Moore, the ultimate decisionmakers in Plaintiff's termination, until just a few days before the Board terminated him. (*Id.*); (*see also* Moore and Lundy Decl., Docs. 27-1, 27-2). Indeed, Hung testified that she apologized to Commissioner Lundy for the "blind side that had occurred" when she finally disclosed her affair. (*See* Ex. A, Hung Dep., at pp. 76-77).

Hung's contemporaneous text messages with Plaintiff also severely undercut her claim now that their affair was open and obvious. In texts dated July 28, 2021, the same day as the meeting where Hung finally disclosed the affair to Commissioners Lundy and Moore, Hung tells Plaintiff that "[w]ell, they have proof [of] the personal relationship." (*See* Ex. B, at Williamson_001042). All reasonable evidence suggests that Hung is referring to her affair with Plaintiff as the "personal relationship" that the Board had just learned about. On the same night, Plaintiff texted Hung "what the f**k..." and "[a]re you f**king kidding me???", suggesting that he was not happy about the disclosure of their affair. (*Id.*).

Plaintiff redacted a significant number of his texts with Hung, which could further illuminate their contemporaneous communications related to their affair becoming

---

[1] Hung also denied disclosing the affair to Defendant Williams on two separate occasions. (*See* Exhibit A, additional excerpts from Hung Declaration, at pp. 45-48; 74).

public and test the veracity of their respective sworn statements on the issue.[2] (*Id.*, at Williamson_001069; 1135; 1149-1150; 1155-58). Nonetheless, the unredacted texts confirm that neither Hung nor Plaintiff viewed their affair as being open and obvious. In early August 2021, Plaintiff and Hung discussed Hung's "public admission" of the affair, which appears in Commissioners Moore and Lundy's joint statement on Plaintiff's firing. (*See*, Ex. B, at Williamson_001075-001078); (Doc. 32-1, Joint Statement). Plaintiff is dismayed that the affair has become public: "I DID READ IT. PUBLIC ADMISSION BY YOU. THEY WIN...MY JOB, MY CREDIBILITY AND NOW FAMILY." (*Id.*) Hung responds, "[y]ou don't think I'm blindsided? I didn't willingly make a public admission for christ sake." (*Id.*).[3] A couple days later, Hung texts Williamson that "I told NOBODY. U know what it is now." (Doc. 32-3, at Williamson_001135).

These texts demonstrate that Plaintiff was scrambling to save his job—even willing to throw another employee under the bus to do so. (Ex. B, at Williamson_001068-69) ("Just spoke to Tim [Carrion]. He suggested that you NOT let Matt know Tim's willing to resign to save me."); (*see also id.*, "Don't forget, remind them of the upcoming 911 levy that I'll help with..."). Conspicuously absent from Plaintiff's communications during that time period is any allegation that he believed that 911 funds were misappropriated or that he was fired because of it.

Simply put, Hung's declaration does nothing to contradict the undisputed evidence that the Board, through Commissioners Moore and Lundy, terminated Plaintiff's

---

[2] Defendants have repeatedly requested the unredacted versions of these texts from Plaintiff, but Plaintiff has refused to produce them. The parties continue to meet-and-confer on the issue; however, Defendants anticipate that a motion to compel may be necessary in the near future.

[3] Plaintiff included a threat that "tomorrow will be he[ll] for everyone involved that did this to us." (*Id.*, at Williamson_001078).

employment because of his undisclosed affair with Hung. Likewise, Hung's allegations that she felt political "pressure" from Commissioner Moore to support his initiatives does not implicate Plaintiff at all. (Doc. 37-1, at ¶¶ 16; 30). Hung's final vague claims that the Board "knew of other relationships that existed between County employees" is unsupported by any detailed information or evidence. (*Id.*, at ¶ 33). These bald allegations cannot sustain Plaintiff's meritless claims, and the Court should reject Hung's untimely declaration and grant summary judgment in Defendants' favor.

## CONCLUSION

For the reasons set forth above, and in Defendants' summary judgment briefing (Doc. 27; 32), Defendants respectfully request that the Court grant summary judgment in their favor on all remaining claims.

Respectfully submitted,

DOOLEY, GEMBALA, McLAUGHLIN
& PECORA CO., LPA

*/s/ Stephen M. Bosak*
Matthew A. Dooley (0081482)
Stephen M. Bosak (0092443)
Michael R. Briach (0097986)
5455 Detroit Road
Sheffield Village, Ohio 44054
Tel:    (440) 930-4001
Fax:    (440) 934-7208
Email: mdooley@dooleygembala.com
        sbosak@dooleygembala.com
        mbriach@dooleygembala.com
*Counsel for the remaining Defendants*