UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

_____

|  |  |  |
|---|---|---|
| HARRY WILLIAMSON, | : | CASE NO. 1:23-cv-01507 |
|  | : |  |
| Plaintiff, | : | ORDER |
|  | : | [Resolving Docs. 27, 31, 35] |
| v. | : |  |
|  | : |  |
| LORAIN COUNTY, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

_____

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Harry Williamson sues Defendants Lorain County, David Moore, Matt Lundy, Tom Williams, and James Cordes.  Williamson alleges various free speech and civil rights violations relating to his resignation from his position as a Lorain County contractor, and his subsequent firing as Lorain County 911 Director.[1]

On June 26, 2024, this Court granted Defendant Lorain County's motion to dismiss.[2] The Court dismissed Defendant Lorain County from the matter because it was not *sui juris*.[3] This also dismissed Williamson's state law claims for spoliation and destruction of public records, which were brought only against Lorain County.[4]  The Court also granted the individual Defendants' motion for judgment on the pleadings as to Plaintiff's § 1983 due process claim.[5]

---

[1] Doc. 1.
[2] Doc. 26, PageID #: 327.
[3] *Id.* at PageID #: 332.
[4] *Id.*
[5] *Id.* at PageID #: 333.

Case No. 1:23-cv-01507
GWIN, J.

Plaintiff Williamson has three surviving claims against the individual Defendants: First Amendment retaliation, under 42 U.S.C. § 1983; whistleblower retaliation, Ohio Rev. Code § 4113.52; and interference with civil rights under Ohio law.

The individual Defendants move for summary judgment on all three claims.[6]  Plaintiff Williamson opposes.[7]  In support of his opposition, Plaintiff submits his sworn declaration, and a sworn declaration from Lorain County Commissioner Michelle Hung.[8]  Defendants move to strike or oppose both declarations, claiming that they are inadmissible or otherwise contradict earlier deposition testimony.[9]

For the following reasons, the Court **GRANTS IN PART** Defendant's motions to strike portions of Plaintiff Williamson's declaration and Commissioner Hung's declaration.  The Court **GRANTS IN PART but DENIES IN PART** Defendants' motion for summary judgment.

## I.    DECLARATION MOTIONS

"Generally, a district court should dispose of motions that affect the record on summary judgment before ruling on the parties' summary judgment motions."[10]  So far, Plaintiff Williamson has submitted only his and Hung's declarations as evidence to establish genuine issues of material fact.[11]  Before reaching the substantive arguments raised in Defendants' motion for summary judgment, the Court addresses the arguments aimed at Plaintiff's submitted declaration.

---

[6] Doc. 27.

[7] Doc. 29.

[8] *See* Docs. 29-1; 37-1.

[9] Docs. 31; 41.

[10] *Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 667 (6th Cir. 2005).

[11] Plaintiff Williamson has filed two motions to compel discovery.  Docs. 28, 40.  The first was discussed at the July 18, 2024 status conference.  The second was filed well after the close of dispositive motion briefing.  *See* Doc. 17.  So, the Court addresses neither here.

Case No. 1:23-cv-01507
GWIN, J.

Federal Rule of Civil Procedure 56 provides that affidavits and declarations supporting or opposing summary judgment must be made on personal knowledge and set forth facts that would be admissible in evidence.[12]

To establish personal knowledge for the purposes of Rule 56, a declarant "may use their own testimony as evidence for having personal knowledge on a matter."[13] "Although personal knowledge may be inferred from the content of the statements, the burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."[14] Moreover, inferences, thoughts, and opinions must be based on first hand observations or personal experience, substantiated by specific facts.[15]

In order for a statement to be admissible and be considered at summary judgment, the statement must not contain hearsay.[16] Federal Rule of Evidence 801 defines hearsay as "a statement that (1) the declarant did not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[17]

A statement is non-hearsay if it is made by an opposing party and is offered against the opposing party.[18] In offering another party's statement as evidence, the offering party must show that the statement was (1) "made by the [opposing] party's agent or employee" or someone who the party authorized to speak on that subject; and (2) "on a matter within the

---

[12] Fed. R. Civ. P. 56(c)(2).
[13] Fed. R. Evid. 602.
[14] *Erwin v. Village of Morrow, Ohio*, No. 1:16-cv-1166, 2019 WL 1394921, at *2 (S.D. Ohio Apr. 4, 2019) (citing Fed. R. Civ. P. 56(c)(2) (2010 Advisory Committee Notes)).
[15] *Id.* (citing *Harrah's Entertainment, Inc. v. Ace Amer. Ins. Co.*, 100 F. App'x 387, 394 (6th Cir. 2004)).
[16] *Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012) ("[I]t is well established that a court may not consider hearsay when deciding a summary judgment motion.").
[17] Fed. R. Evid. 801(c).
[18] Fed. R. Evid. 801(d)(2).

- 3 -

Case No. 1:23-cv-01507
GWIN, J.

scope of that relationship and while it existed."[19]  The offered statement "must be considered but does not by itself establish the declarant's authority."[20]

Hearsay statements are inadmissible unless they fall within one of the hearsay rule exceptions.[21]  So, any non-excepted hearsay in Plaintiffs' proffered declarations' contents may not be considered at summary judgment.

Under Rule 56(c)(2), a party "may object to that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[22]  In considering a Rule 56(c)(2) motion, a court should "use a scalpel, not a butcher knife," and strike only those portions of the declaration that are inadmissible.[23]

## A.  Plaintiff Williamson's Affidavit

Defendants move to strike various portions of Plaintiff Williamson's declaration, which he submits as evidence in opposition to Defendants' motion for summary judgement.[24]  While motions to strike are inappropriate in this context, Rule 56(c)(2) does allow for pretrial objections, as discussed.  So, the Court construes Defendants' motion to strike as objections to the declaration's admissibility under Rule 56(c)(2).[25]

*Paragraph Five.*  The second and third sentences are disregarded as inadmissible double hearsay.  They are out-of-court statements offered for their truth: that Lopez said that Defendant Cordes had banned Williamson from the facility under threat of arrest.  Plaintiff does not establish that these sentences fall within any hearsay exception or that they are not

---

[19] *Id.*
[20] *Id.*
[21] Fed. R. Evid. 802, 803–804.
[22] Fed. R. Civ. P. 56(c)(2).
[23] *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio. 2007) (quoting *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315-16 (1st Cir. 2001)).
[24] Doc. 31, PageID #: 532.  Plaintiff Williamson opposed, Doc. 34, and Defendants replied, 36.
[25] *See Smith v. Interim HealthCare of Cincinnati, Inc.*, No. 1:10-cv-582, 2011 WL 6012971, at *4 (S.D. Ohio Dec. 2, 2011).

Case No. 1:23-cv-01507
GWIN, J.

hearsay. Plaintiff Williamson does not establish that Tracy Lopez was authorized by Defendant Cordes to speak on Cordes' behalf, so these sentences are not opposing party statements.

Nor does Williamson lay the foundation to show that Lopez made these statements while she was perceiving Cordes's statements, or immediately thereafter.[26] These sentences are not present-sense impressions excepted from the hearsay rule.

**Paragraph Six.** This paragraph is disregarded for the same reason as those in paragraph five: Williamson does not properly lay the foundation to show that Lopez or Williamson's CenturyLink boss were authorized to speak on behalf of Defendant Cordes. So, this sentence is hearsay, not opposing party statements.

**Paragraph Nine**. The second and third statements are disregarded as hearsay not falling within any exception. These statements are offered for their truth: that Hung told Williamson that the relationship was not illegal, because she had reported the relationship to Lorain County's Human Resources Director, Jen Sinatra.

Plaintiff Williamson does not establish that Commissioner Hung is an agent or employee of Defendants Lundy and Moore, or that she is otherwise authorized to speak on their behalf. For the Court to conclude otherwise requires speculation. First, Hung ostensibly cannot be an employee of her peer County Commissioners, Moore, and Lundy. Second, Williamson offers no support to show that Moore and Lundy authorized Hung or Sinatra to make a statement about the appropriateness of Hung's relationship with Plaintiff Williamson.

---

[26] *See United States v. Price*, 58 F. App'x 105, 106 (6th Cir. 2003) (citing Fed. R. Evid. 803(1)).

- 5 -

Case No. 1:23-cv-01507
GWIN, J.

*Paragraph Eleven*.   The second and third sentences are disregarded for lack of personal knowledge.  Although Williamson's declaration begins by saying that all statements are made with Williamson's personal knowledge, he must affirmatively lay the foundation showing his personal knowledge.[27]  Plaintiff Williamson does not establish how he came to know of the conversations between Commissioner Hung and the County's outside counsel.[28]

*Paragraph Twelve*.   The first sentence is disregarded for lack of personal knowledge, for the same reason as paragraph eleven's sentences.  That is, Plaintiff Williamson does not establish how he was present to hear the conversations between the County's outside counsel and Commissioner Hung.

*Paragraph Thirteen*.   This entire paragraph is disregarded as hearsay.  Plaintiff Williamson says that the first sentence is not hearsay, because it reflects his perception of and reaction to Defendant Williams's statements.   But Williamson's declaration that Defendant Williams "made [something] clear" is a characterization that attempts to disguise Williams's out-of-court statement as Williamson's own opinion.  So, the Court finds both statements to be hearsay.

Both sentences be non-hearsay opposing party statements, had Williams limited his statements to his own knowledge and viewpoint.  However, both sentences involve Williams speaking on behalf of Defendant Moore's knowledge and motives.  For those statements to be excepted from hearsay, they must be "offered against an opposing party" and "made by the [same] party."[29]  These sentences offer statements against both Williams and Moore, but are made by Williams only.  Plaintiff Williamson does not establish that Defendant Williams

---

[27] *See* Fed. R. Civ. P. 56(c)(2) (2010 Advisory Committee Notes)).
[28] *See Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 495–96 (6th Cir. 2002) (holding that plaintiff-affiant did not have personal knowledge of statements made to him by a third-party).
[29] Fed. R. Evid. 801(d)(2)(A).

Case No. 1:23-cv-01507
GWIN, J.

was authorized to speak on Defendant Moore's behalf.  So, this paragraph is disregarded as hearsay.

*Paragraph Fourteen*.  This entire paragraph is disregarded as hearsay and for lack of personal knowledge.  Williamson offers this paragraph for its truth: that the County was aware of other employees in relationships with fellow employees.  Counter to Williamson's argument, these are not statements made by an opposing party, as Hung is not a party to this suit..  Nor can a statement made by Hung, as Commissioner, be offered against the County (or Defendants Moore or Lundy) as the statement of an opposing party, because Hung, the County, Moore, and Lundy are all separate persons.  Finally, Hung cannot personally speak to the County's knowledge because she is only one of three Commissioners, and the declaration does not establish her capacity to speak on the County's behalf.

*Paragraph Sixteen*.  This entire paragraph is admissible as non-hearsay statements of an opposing party.  Williams is an opposing party who made these statements, and they are offered against him.

*Paragraph Eighteen*.  This entire paragraph is admissible as non-hearsay opposing party statements, excepting the phrase "and Defendant Moore's."  Without that phrase, the statement is one made by Williams, opposing party, solely offered against him.

## B. Commissioner Hung's Affidavit

On September 5, 2024, forty-five days after the close of dispositive motion briefing, Plaintiff Williamson filed a notice of supplemental evidence in opposition to the Defendants'

Case No. 1:23-cv-01507
GWIN, J.

motion for summary judgement.[30]  With this filing, Williamson offers a sworn declaration by

Lorain County Commissioner Michelle Hung.[31]

Defendants moved to strike Hung's declaration as untimely, prejudicial, and vague.[32]

The Court denied the motion, but granted Defendants leave to substantively address Hung's

declaration.[33]

Defendants responded.[34]  They argue in part that Hung's declaration contains hearsay

and that portions are inconsistent with her deposition testimony.[35]

"A directly contradictory affidavit should be stricken unless the party opposing

summary judgment provides a persuasive justification for the contraction."[36]  But if there is

no direct contradiction, "the district court should not strike or disregard that affidavit unless

the court determines that the affidavit constitutes an attempt to create a sham fact issue."[37]

The Sixth Circuit narrowly defines the term "direct contradiction."[38]  Statements are not

directly contradictory if they can be simultaneously true.[39]

The Court reviews Commissioner Hung's declaration to determine its consistency

with the portions of her deposition available to the Court, as well as Rule 59(c)(2)'s

requirements.

*Paragraph Ten.*  The second and third sentences are disregarded as hearsay not falling

within an exception.  The statements are made by a non-party—the County's employment

---

[30] Doc. 37.
[31] *See* Doc. 37-1.
[32] Doc. 38.
[33] Doc. 39, PageID #: 619.
[34] Doc. 41.
[35] *Id.* at PageID #: 785–86.
[36] *Aerel, S.R.L. v. PCC Airfoils, L.L.C.,* 448 F.3d 899, 908 (6th Cir. 2006).
[37] *Id.*
[38] *Briggs v. Potter,* 463 F.3d 507, 513 (6th Cir. 2006).
[39] *S.L. by & through K.L. v. Peirce Twp. Bd. of Trustees,* No. 1:07-CV-986, 2011 WL 13242965, at *4 (S.D. Ohio Mar. 14, 2011).

Case No. 1:23-cv-01507
GWIN, J.

counsel—offered to prove that outside counsel discussed Hung and Plaintiff's relationship, and deemed it non-problematic. The statement is an out of court statement offered to prove the truth of the statement.

*Paragraphs Eleven & Twelve.* Defendants argue that these paragraphs must be disregarded, because Hung's declaration that she and Williamson were "open' about their relationship, and that their relationship was "obvious to any reasonable and attentive person" contradicts her declarations where Hung asserts that she did not tell Defendants Moore and Lundy about her relationship with Williamson.[40]

However, these statements are not inherently contradictory. Merely because Hung and Williamson did not actively cover up their relationship does not mean that Moore and Lundy were attuned enough to take notice. Further, Williamson has not laid the proper foundation to support the inference that Hung's disclosure of their relationship to Human Resources Director Sinatra should be imputed to Defendants Moore and Lundy. Wisdom aside, it is conceivable that an employee would disclose a confidential personnel issue to human resources that she nevertheless would not disclose to her peers.

*Paragraph Thirteen.* The second sentence is disregarded as inadmissible hearsay. The second sentence is an out-of-court statement made by the County's outside counsel, not an opposing party. And it is offered for its truth, that of the outside counsel's personal relationships' nature.

*Paragraph Fourteen.* The first sentence fragment is disregarded for lack of personal knowledge. Plaintiff Williamson has not laid the proper foundation to support Hung's personal knowledge of the Lorain County Board of Commissioner's motives. Hung is only

---

[40] *See* Doc. 31-1, PageID #: 540–41.

Case No. 1:23-cv-01507
GWIN, J.

one of a three-person Board, and she has not established that she speaks beyond her own motives.

The last sentence is also not considered for lack of personal knowledge.  Hung states that she did not attend a meeting and does not otherwise describe how she learned of its attendees and purpose.  "Statements predicated upon undefined discussions with unnamed persons at unspecified times are simply too amorphous to satisfy Rule 56[]'s requirements, even when proffered in affidavit form by one who claims to have been a participant."[41]

*Paragraph Twenty-Six*.  The second and third sentences are not considered for lack of personal knowledge.  Hung does not lay the proper foundation to support how she knew of a phone call between two third-parties, Commissioner Lundy and the County's outside counsel, or of a follow-up email between the outside counsel and Defendant Williams.

*Paragraph Thirty*.  The second sentence is not considered for lack of personal knowledge.  Hung does not show how she would know Defendant Williams's and Moore's intentions around email use.

*Paragraph Thirty-One*.  The second sentence is not considered for lack of personal knowledge.  As discussed, Hung cannot testify as to what the Board knew, as she is only one member of the Board.

*Paragraph Thirty-Two*.  The first sentence is not considered for lack of personal knowledge.  Hung does not specify which members of the Board were aware of the relevant alleged facts, so the Court cannot determine if Hung has laid the proper foundation to support her statement about those members' knowledge.

---

[41] *Perez*, 247 F.3d at 316.  *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009) (noting that a court should strike portions of summary judgment affidavits that do not satisfy the requirements of Rule 56).

Case No. 1:23-cv-01507
GWIN, J.

*                    *                    *

Unless indicated above, the remainders of Plaintiff Williamson's and Commissioner Hung's declarations is considered in the Court's decision on Defendants' summary judgment motion.

Having determined which evidence is considered at summary judgment, the Court proceeds to the merits.

## II.    MOTION FOR SUMMARY JUDGMENT

### A. Background

Plaintiff Williamson brings this suit based around two separate incidents involving his work with Lorain County's 911 system.

First, Williamson claims that he was forced out of his position as a third-party contractor who worked on the Lorain County 911 system because he expressed support for Commissioner Hung.[42] As to this incident, the Lorain County defendants say that Williamson was barred from accessing the 911 system facility for earlier unauthorized access and further, that he chose to resign.[43]

Second, Williamson claims that Lorain County fired him from a 911 supervisor position because he raised questions and complaints about how Lorain County monies were being used.[44]  The Lorain County defendant officials respond that they fired Williamson because Williamson was engaged in an extramarital affair with one of the County Commissioner, a commissioner to whom he reported.[45]

---

[42] Doc. 29, PageID #: 481–82.
[43] Doc. 27, PageID #: 338.
[44] Doc. 29, PageID #: 483.
[45] Doc. 27, PageID #: 341.

Case No. 1:23-cv-01507
GWIN, J.

### 1. Factual Background

#### a. CenturyLink 911 Contractor

From 2017 through October 30, 2020, Williamson worked as a CenturyLink employee who worked on the Lorain County 911 system under a CenturyLink contract with Lorain County.[46]  During this time, Williamson also served as Lorain County AFL-CIO president.

As the AFL-CIO president, Williamson helped coordinate the organization's contact with political candidates, including those running for local office.[47]  In September 2020, Defendant Tom Williams—who would then go on to be hired as Lorain County Administrator—had introduced Plaintiff Williamson to Michelle Hung.[48]  The AFL-CIO, through Williamson, endorsed Republican Michelle Hung for the fall 2020 election for Lorain County Board of Commissioners.[49]  Hung ran as challenger to a then-incumbent Lorain County Commissioner.[50]

Williamson says that after he publicly endorsed Hung, Defendant Jim Cordes, who was then the County Administrator, called Williamson and told him to "stay neutral."[51] Williamson claims he did not do so and continued to advocate for Hung's candidacy.[52]

Shortly after Cordes' warning, Williamson says he went to the Lorain County's 911 Center to train a coworker.[53]  After Williamson arrived, Williamson says he was asked to leave the 911 Center by the then-911 Center Director, Tracy Lopez.[54]

---

[46] Doc. 29-1 at ¶3.
[47] *Id.*
[48] Doc. 37-1, ¶5.
[49] *Id.*, ¶3–4; Doc. 1, ¶14.
[50] Doc. 1, ¶14.
[51] *Id.*, ¶15; Doc. 29-1, ¶4.
[52] Doc. 29-1, ¶5.
[53] *Id.*
[54] Doc. 27-5, PageID #: 374.

Case No. 1:23-cv-01507
GWIN, J.

The parties dispute why Williamson was asked to leave the 911 Center. Williamson says he was functionally banned from entering the 911 Center and thus from performing his job due to his political endorsement of Hung.[55] Defendant Cordes says that Plaintiff Williamson was asked to leave the 911 Center for refusing to follow Lorain County employee directions and for unauthorized access to County property.[56]

Williamson did not return to the 911 Center.[57] Days later, on October 30, 2020, Williamson quit his CenturyLink job.[58]

### b. Lorain County 911 Director

Williamson says the Defendants retaliated against him in a subsequent Lorain County 911 system job.

After Williamson left his CenturyLink position, and during fall 2020, Plaintiff Williamson and Michelle Hung became romantically involved during Hung's campaign.[59] In November 2020, Hung and Defendant David Moore won their respective Lorain County Board of Commissioners elections.[60] They joined Defendant Matt Lundy on the three-person Commission. Williamson joined Hung and Moore's transition teams.[61]

In December 2020, Defendant Williams reached out to Plaintiff Williamson to offer Williamson the County 911 Center Director position.[62]

---

[55] Doc. 29, PageID #:482.
[56] Doc. 27-5, PageID #: 374.
[57] Doc. 29-1, ¶7.
[58] *Id.*
[59] *Id.*, ¶8.
[60] Doc. 1, ¶26; Doc. 37-1, ¶2–3.
[61] Doc. 1, ¶33.
[62] Doc. 37-1, ¶7; Doc. 29-1, ¶8.

Case No. 1:23-cv-01507
GWIN, J.

### i. Williamson and Hung's Relationship

Plaintiff Williamson says that various Lorain County individuals—including Human Resources, outside counsel, and Defendants Moore and Lundy—were aware of his and Hung's relationship well before his termination.  He says the Defendants used his Hung relationship as a pretextual justification to fire him.  The Defendants respond that they were not aware of Hung and Williamson's relationship until a July 28, 2021 Board of Commissioners executive session.

Prior to his hiring, Williamson says he privately expressed doubts to Hung about whether he could accept the 911 Center Director position and also continue his relationship with Hung.[63]  Hung says she spoke with Jen Sinatra, the incoming Lorain County Human Resources Director.[64]  Hung says she disclosed her and Williamson's relationship to Sinatra to confirm that the relationship did not create an ethical conflict with Williamson's 911 Center Director position.[65]

On January 4, 2021, the Lorain County Board of Commissioners voted to elect Hung as Board President and Moore as Vice President.[66]  The Board also hired Plaintiff Williamson as the Lorain County 911 Center Director (911 Director).  Hung and Defendant Moore voted in favor of hiring Williamson; Defendant Lundy voted against.[67]  As 911 Director, Williamson was an at-will employee.[68]

---

[63] Doc. 29-1, ¶9.
[64] Doc. 37-1, ¶8.
[65] *Id.*
[66] Doc. 29-1, ¶10.
[67] Doc. 27-2, ¶5.
[68] *Id.* at ¶6.

Case No. 1:23-cv-01507
GWIN, J.

That same day, the Board also voted to hire Defendant Williams as County Administrator.[69]  Defendant Moore and Defendant Williams had a prior friendship before their government service.[70]

The Board also voted to retain the firm Ulmer & Berne as labor and employment outside counsel.[71]

A week later, on January 11, 2021, Commissioner Hung says she spoke with an Ulmer & Berne attorney, Amanda Martinsek.[72]  Hung says she told Martinsek about her and Williamson's relationship and asked Martinsek for her legal opinion.[73]  Hung says she and Martinsek began a close friendship after this, and the two women would often discuss their romantic and personal affairs.[74]

The parties dispute whether Williamson and Hung thereafter conducted their relationship publicly.  Hung says that the couple were open about the relationship and did not take efforts to conceal it, attending various work functions together.[75]  Hung also says that there is a February 26, 2021, videorecording of her and Williamson kissing at a Lorain County building.[76]

Both Defendants Lundy and Moore deny knowledge of Plaintiff Williamson and Hung's relationship before a July 2021 Board of Commissioners executive session.[77]  And

---

[69] Doc. 37-1, ¶4.
[70] Id.
[71] Id. ¶9.
[72] Id., ¶10.
[73] Id.
[74] Doc. 29-1, ¶12; Doc. 37-1, ¶13.
[75] Doc. 37-1, ¶¶11–12.
[76] Id., ¶29.
[77] Doc 27-1, ¶8–9; Doc. 27-2, ¶8–9.

- 15 -

Case No. 1:23-cv-01507
GWIN, J.

Hung and Plaintiff Williamson's text messages after the July 2021 executive session indicate that they considered their relationship to be private, or not widely known.[78]

### ii.  Williamson's Protected Speech

Once established in the 911 Director role, Williamson says he began engaging in various forms of protected speech that Defendants Williams, Moore, and Lundy retaliated against by firing him.

Williamson says that during spring 2021, he learned of financial mismanagement of the Lorain County 911 levy monies.[79]  Williamson says that he repeatedly reported these problems to Defendant Williams and Commissioner Hung, both in person and via email.[80] Hung says that she saw emails between Williamson and Williams concerning the misspent funds, as well as scheduled meetings that occurred with Administrator Williams and Williamson in attendance.[81]

Plaintiff Williamson says that Defendant County Administrator Williams would reassure him that Williams would investigate the misspending, but then never follow up.[82] On one occasion, Williamson claims that Defendant Williams says he told Williamson not to worry about the misspending, because it would benefit Defendant Moore's friends.[83]

At the same time, Hung says that Defendant Williams began pressuring Commissioner Hung to approve Defendant Moore's Board preferences.[84]  In her declaration, Hung says that she told Williams her unwillingness to blindly approve policies simply because Defendant

---

[78] For example, on August 5, 2021, Hung said that she was "blindsided" by a public announcement from Defendants Lundy and Moore describing her relationship with Plaintiff Williamson, and that she "didn't willingly make a public admission" to that effect.  *See* Doc. 32-3, PageID #: 581.
[79] Doc. 29-1, ¶15; Doc. 37-1, ¶14.
[80] Doc. 29-1, ¶15.
[81] Doc. 37-1, ¶14–15.
[82] Doc. 29-1, ¶12.
[83] *Id.*, ¶16.
[84] Doc. 37-1, ¶16.

Case No. 1:23-cv-01507
GWIN, J.

Moore desired them.[85]  Hung claims this pressure continued, with Hung receiving pressure to change her position on a new radio network contract.[86]

By July 2021, Plaintiff William says Defendant Williams began pressuring Plaintiff Williamson to solicit Commissioner Hung's position on the new radio contract.[87] Williamson says he refused to do so, and says that Williams told him that he was in trouble.[88]

Plaintiff Williamson claims he had previously attempted to resign from his 911 Director position on June 24, 2021, but says Defendant Williams refused to accept his resignation.[89]  After Williamson says he refused to influence Hung on the radio contract, Williamson says Williams cut off contact with Williamson and began investigating Williamson's time sheets.[90]

### iii.    Williamson's Termination

Plaintiff Williamson says that as a result of his protected speech, Defendants Williams, Moore, and Lundy worked to fire him, and used his already-known relationship with Hung as pretext to terminate him.  Those Defendants disagree, and say that they responded to new information of Hung and Williamson's relationship by firing Williamson, as the covert relationship violated Lorain County employee policies.

On July 17, 2021, Commissioner Hung asked outside counsel Martinsek to attend the Board of Commissioner's upcoming executive session to discuss issues regarding Sinatra and Defendant Williams.[91]  Martinsek did so.

---

[85] *Id.*, ¶17.
[86] *Id.*, ¶18.
[87] Doc. 29-1, ¶18.
[88] *Id.*
[89] Doc. 37-1, ¶21.
[90] Doc. 29-1, ¶19.
[91] Doc. 37-1, ¶26.

Case No. 1:23-cv-01507
GWIN, J.

At the July 28, 2021 executive session, attended by Hung, Martinsek, Defendant Moore, and Defendant Lundy, Hung acknowledged that she and Plaintiff Williamson were romantically involved.[92]  Defendants Moore and Lundy say that this was the first time Hung had disclosed her Williamson relationship to them.[93]

On August 3, 2021, Lorain County's outside counsel, Ulmer & Berne, gave the Board a memorandum that evaluated the County's legal position regarding terminating Plaintiff Williamson.[94]  The memorandum discussed the Lorain County Board of Commissioners' Personnel Policy Manual, which states that "[a]ll employees are expected to maintain the highest possible ethical and moral standards . . . Conduct that interferes with normal business operations, brings discredit to the Office or County, is illegal, or is offensive to the public or fellow employees will not be tolerated."[95]  The Manual also prohibited activities that "undermine[] the integrity of Lorain County government."[96]  Counsel recommended that because Plaintiff Williamson's affair with Hung undermined the County's integrity, discredited the County, and did not maintain the highest possible ethical and moral standards, Williamson's termination was warranted.[97]

Defendants Commissioner Moore and Commissioner Lundy voted to fire Williamson; Commissioner Hung abstained from voting.[98]  The Lorain County Board of Commissioners fired Williamson from his position.[99]

---

[92] *Id.*, ¶27.
[93] Doc. 27-1, ¶9; Doc. 27-2, ¶9.
[94] *See* Doc. 27-2, PageID #: 360–61.
[95] *Id.* at 361.
[96] *Id.*
[97] *Id.*
[98] Doc. 27-1, ¶10.
[99] Doc. 29-1, ¶21.

- 18 -

Case No. 1:23-cv-01507
GWIN, J.

### 2. Procedural History

Plaintiff Williamson initially sued in the Lorain County Court of Common Pleas.[100] He dismissed those claims on February 10, 2023.

On August 3, 2023, Plaintiff Williamson brought this suit in federal court.  With his complaint, Williamson alleged 42 U.S.C. § 1983 First Amendment and equal protection violations against all Defendants; a whistleblower retaliation claim, *see* Ohio Rev. Code § 4113.52, against all Defendants; interference with his civil rights, *see* Ohio Rev. Code § 2921.45, against the individual Defendants; and spoilation and destruction of public records claims against Defendant Lorain County.[101]

On June 26, 2024, the Court granted Defendant Loran County's dismissal motion, which also dismissed the spoilation and destruction of public records claims.[102]  The Court also granted the individual Defendants' motion for judgment on the pleadings as to Williamson's § 1983 equal protection claim.[103]

Now, the individual Defendants move for summary judgment on Plaintiff Williamson's three remaining claims: First Amendment retaliation, *see* 42 U.S.C. § 1983; whistleblower retaliation, *see* Ohio Rev. Code § 4113.52; and interference with civil rights.[104]  Plaintiff Williamson opposed, and the individual Defendants replied.[105]  The Court

---

[100] *See Williamson v. Lorain County, et al.*, Case No. 22CV205156 (C.P. Lorain Jan. 28, 2022).
[101] Doc. 1.  On April 16, 2024, Plaintiff Williamson moved to amend his complaint.  Doc. 15.  At the April 17, 2024, case management conference, the Court granted Williamson's motion to amend and ordered any amended pleadings to be filed by April 24, 2024.  See Doc. 17.  Plaintiff Williamson did not file his first amended complaint until June 3, 2024.  The Court struck that first amended complaint as untimely filed.  *See* Doc. 25.
[102] Doc. 26, PageID #: 332.
[103] *Id.*, PageID #: 333.
[104] Doc. 27.
[105] *See* Docs. 29, 32.

Case No. 1:23-cv-01507
GWIN, J.

also considers Plaintiff Williamson's supplemental evidence and the Defendants' response

in kind.[106]

## B. Legal Standard

Rule 56 allows courts to grant summary judgment when "there is no genuine dispute

as to any material fact and the movant is entitled to judgement as a matter of law."[107]  There

is a genuine dispute as to a material fact when the "evidence is such that a reasonable jury

could return a verdict for the nonmoving party."[108]

Courts decide whether there is a genuine factual dispute by applying a burden-shifting

framework.  The moving party has the initial burden of production.[109]  When the nonmoving

party bears the ultimate burden of proof at trial, the moving party can meet its initial burden

by "pointing out . . . that there is an absence of evidence to support the nonmoving party's

case."[110]  The moving party "[need] not itself come forward with evidence affirmatively

negating the disputed" claims.[111]

After the moving party meets its initial burden to show that there is no genuine factual

dispute, it is up to the nonmoving party to rebut that showing.  To do so, "the nonmoving

party must go beyond the pleadings and . . . designate specific facts showing that there is a

genuine issue for trial."[112]  If the nonmoving party fails to show that there is a genuine trial

issue, the moving party wins summary judgment.

---

[106] Docs. 37, 41.
[107] Fed. R. Civ. P. 56(a).
[108] *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[109] *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004).
[110] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[111] *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (citing *Celotex*, 477 U.S. at 323).
[112] *Horton*, 369 F.3d at 909 (internal quotation marks omitted) (quoting *Celotex*, 477 U.S. at 324).

Case No. 1:23-cv-01507
GWIN, J.

When applying this burden-shifting approach, courts "draw[] all justifiable inferences in the light most favorable to the nonmoving party."[113]  Summary judgment may be granted "[i]f the evidence is merely colorable . . . or is not significantly probative."[114]

### C. 42 U.S.C. § 1983 First Amendment Retaliation

Plaintiff Williamson makes his only federal claim with his First Amendment retaliation claim under 42 U.S.C. § 1983.

To make a § 1983 claim, a plaintiff must (1) allege that a defendant acted under color of state law; and (2) that the defendant's conduct deprived the plaintiff of rights secured under federal law.[115]  The parties do not dispute whether the individual Defendants acted under color of state law, and so the Court assumes that Plaintiff Williamson satisfies this showing.[116]

So, the critical question is whether the individual Defendants deprived Williamson of his First Amendment rights in retaliation.

To make a prima facie case of First Amendment retaliation, Plaintiff Williamson must show that (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between one and two—that is, the adverse action was motivated at least in part by Williamson's protected conduct.[117]  The burden then shifts to the Defendants to show by a preponderance of the evidence that

---

[113] *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[114] *Anderson*, 477 U.S. 250–51.

[115] *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)).

[116] *See Wood v. 36th District Ct.*, No. 21-1313, 2022 WL 500654, at *3 (6th Cir. Feb. 18, 2022).

[117] *Ashford v. Univ. of Mich.*, 89 F.4th 960, 976 (6th Cir. 2024) (quoting *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012)).

- 21 -

Case No. 1:23-cv-01507
GWIN, J.

the adverse action would have occurred against Williamson even if he had not engaged in his constitutionally protected speech or conduct.[118]

"To satisfy the third prong of [a] First Amendment retaliation claim, [a] plaintiff[] must show that [his] termination[ was] motivated at least in part by the exercise of [his] free speech rights."[119]  "[T]he employee must point to specific, nonconclusory allegations reasonably liking [his] speech to employer discipline."[120]  "Thus, the terminated employee may not rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent."[121]  Instead, "[t]here must be a causal link between 'the speech in question [and] the defendant's decision to dismiss."[122]  The showing can be made "through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment action."[123]

Plaintiff Williamson brings his First Amendment claim under multiple theories for both his treatment as a CenturyLink 911 Center contractor and for his termination from the Lorain County 911 Director position.  Williamson says that in both positions, he suffered an adverse employment action for engaging in protected speech.

### 1.  CenturyLink 911 Contractor

The Court gives summary judgment in favor of Defendant Cordes on Plaintiff Williamson's First Amendment retaliation claim, because Williamson has not established

---

[118] *Id.*
[119] *Bryant v. Floyd County Fiscal Court*, 510 F. Supp. 3d 467, 475 (6th Cir. 2020) (quoting *Burgess v. Paducah Area Trans. Auth.*, 387 F. App'x 538, 545 (6th Cir. 2010)).
[120] *Id.* (quoting *Bailey v. Floy Cnty. Bd. of Educ.*, 106 F.3d 135, 144 (6th Cir. 1997)).
[121] *Id.* (quoting *Bailey*, 106 F.3d at 145).
[122] *Id.*
[123] *Id.* (quoting *Benison v. Ross*, 765 F.3 649, 661 (6th Cir. 2014)).

Case No. 1:23-cv-01507
GWIN, J.

that there is a genuine issue of material fact as to whether he was constructively discharged from his CenturyLink position.

Plaintiff Williamson says that he engaged in protected speech by advocating for political candidates and for being politically affiliated with Republicans while employed as a CenturyLink contractor working at the 911 Center facility.  He argues that there is a genuine issue of fact as to whether he suffered an adverse action by Defendant Cordes removing him from the 911 Center due to his protected speech.

"Support of a political candidate falls within the scope of the right of political association."[124]  And, "retaliation based on perceived political affiliation is actionable under the political affiliation retaliation doctrine."[125]  Williamson satisfies the first prong of the prima facie test for First Amendment retaliation.

Regarding the second prong, Williamson seems to argue that he suffered an adverse action by being constructively discharged when Defendant Cordes banned him from the 911 Center facility.  While Plaintiff Williamson does not explicitly call this incident a "constructive discharge," the Court infers that Williamson claims that he had no choice but to resign after his facility ban.

"To demonstrate a constructive discharge, [a p]laintiff must present evidence to show that (1) the employer [] deliberately created intolerable working conditions, as perceived by a reasonable person, and (2) the employer did so with the intention of forcing the employee to quit."[126]

---

[124] *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir. 2000).
[125] *Dye*, 702 F.3d at 300.
[126] *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir.2005).

Case No. 1:23-cv-01507
GWIN, J.

Alternatively, a plaintiff can also establish constructive discharge if he shows that he resigned when it was absolutely clear that their employer had decided to terminate them anyway.[127]

Plaintiff Williamson has not considered a genuine issue of whether he was constructively discharged, under either test.

At the time, Williamson's primary employment responsibility was managing the Lorain County 911 system.[128]  However, he worked as a CenturyLink employee and as a Lorain County contractor, not as a Lorain County employee.  CenturyLink did contract work for Lorain County, and Williamson has not shown that he worked directly for Lorain County. Williamson shows no evidence that CenturyLink intended to fire him.

A contractor's exclusion from a job site may support an inference of difficult working conditions.  However, courts only draw such inferences when there is other strong evidence of harsh treatment at the job site.[129]

Williamson does not show evidence that CenturyLink or Lorain County harshly treated him.  Cordes's warning for Williamson to "stay neutral," without more, does not carry with it the threat of termination.  This is especially so when considering that the then-911 Director told Williamson she would work with Williamson's CenturyLink supervisor and Defendant Cordes to regain his access.[130]

Williamson's admission that he resigned "days later" from the 911 Director telling him that she would work on his access issue suggests that employment at CenturyLink and

---

[127] *Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2008).
[128] Doc. 29-1, PageID #: 490.
[129] *See E.E.O.C. v. Skanska USA Bldg., Inc.*, 80 F. Supp. 3d 706, 775 (W.D. Tenn. 2015) (contractor employee's permanent removal from the site, after complaining of racial harassment, was adverse employment action under Title VII).
[130] Doc. 29-1, ¶6.

Case No. 1:23-cv-01507
GWIN, J.

working at the 911 Center remained possible.  And Williamson shows no evidence that CenturyLink did not have work at other locations that Williams could perform even if Lorain County work was difficult.

The Sixth Circuit has held that employees resigning from their jobs in apprehension that working conditions may deteriorate later are not constructively discharged.[131] Williamson has not met his burden to provide facts showing that any reasonable employee-contractor in his position would resign from CenturyLink.

Additionally, the Sixth Circuit has held that organizations that retain contractors retain discretion to control access to their job sites.[132]  Even drawing all reasonable inferences in Williamson's favor, he has not shown that Lorain County acted outside its sphere of discretion as a contracting organization in prohibiting him from his work site.  Further, Williamson has not shown that Lorain County had the power to terminate him from his CenturyLink position—his actual place of employment—or that CenturyLink made it clear that Williamson would be fired anyway, given his lack of access.  Williamson does not suggest that his CenturyLink position was contingent on his Lorain County 911 Center access.

Rather, evidence suggests that other reasons motivated Williamson's resignation other than some dampening of his free speech rights.  On October 30, 2020, the day Williamson retired from CenturyLink, he accepted congratulations from Defendant Williams for his

---

[131] See Johnson v. Rumsfeld, 238 F. App'x 105, 109 (6th Cir. 2007) (citing Agnew v. BASF Corp., 286 F.3d 307, 310 (6th Cir. 2002) (gathering cases from other circuits)).  See also Friedman v. McDonough, No. 1:23-cv-507, 2023 WL 6794367, at *4 (N.D. Ohio Oct. 13, 2023) (finding that plaintiff's choice to resign after employer notified him of proposed termination did not create not intolerable working condition).
[132] See Feathers v. Willamette Inds., Inc., F. App'x 561, 568 (6th Cir. 2006) (contracting organization was within its discretion under contract with contractor employer when it banned employee, so there was no intention of malice as a matter of law).

- 25 -

Case No. 1:23-cv-01507
GWIN, J.

"retirement."[133]   His acknowledgement of a voluntary retirement precludes a jury from finding that he was forced out.[134]

Because Williamson has not established a genuine issue of whether he was constructively discharged from his CenturyLink position, the Court **GRANTS** summary judgment in favor of Defendant Cordes on Plaintiff Williamson's First Amendment claims.

### 2.  Lorain County 911 Director

The Court now examines Plaintiff Williamson's First Amendment retaliation claim as it pertains to his termination from the Lorain County 911 Director position.

### a.  Protected Speech

Williamson says that he engaged in protected speech in his role as Lorain County 911 Director (1) by reporting financial malfeasance; and (2) by refusing to lobby Commissioner Hung on behalf of Defendant Moore and Defendant Williams.

Both grounds satisfy the showing required of the first prong for a prima facie First Amendment retaliation claim.

The First Amendment protects public employees from adverse employment actions, including retaliation, for their protected speech conduct.[135]  In order for a public employee's speech to be protected, the employee must show that he spoke as a citizen on a matter of public concern.[136]

---

[133] Doc. 32-2, PageID #: 570.  *See Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510 (6th Cir. 1991) (reasoning that plaintiff's decision to take early retirement was a personal choice, when there was no evidence plaintiff was forced or encouraged to take early retirement).

[134] *See Johnson v. AK Steel Corp.*, No. 1:07-cv-291, 2008 WL 2184230, at *11 (S.D. Ohio May 23, 2008) (reasoning that the plaintiff's admission that she could have remained employed with defendants but wanted a different job and so resigned based on personal preference meant that she was not constructively discharged).

[135] *Wood v. 36th District Ct.*, No. 21-1313, 2022 WL 500654, at *3 (6th Cir. Feb. 18, 2022) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)).

[136] *Id.* (citing *Garcetti*, 547 U.S. at 418).

Case No. 1:23-cv-01507
GWIN, J.

At this stage, a jury could reasonably find that Williamson's public fund misuse reporting is protected speech.  Misuse of public funds is a matter of the public's concern.[137]

There is a genuine issue of fact as to whether Williamson reported the misuse as a citizen or as a public employee.  Although Williamson says that he learned of the misspending "[i]n his work as director of the 911 center," he does not define the director role's ordinary duties, nor how reporting misspent funds falls within or falls outside of those duties.[138]  Under the standard at summary judgment, there is a permittable inference that investigating misspending is not under the ambit of a 911 agency director's day-to-day role.

For largely the same reasons, Williamson's refusal to lobby Hung is also protected speech.  Williamson says Williams asked him to lobby Hung likely because of his personal relationship with her as a private citizen, not because of his influence or duties as 911 Director.  The improper influence of an elected official's decision to spend public money likewise is a matter of public concern.[139]

### b.  Adverse Employment Action

Plaintiff Williamson's termination is an adverse employment action.[140]  Williamson has met the second prong of a prima facie case of First Amendment retaliation.

---

[137] "Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law," when "expos[ing] graft and corruption," and "when seeing that public funds are not purloined or wasted." *Chappel v. Montgomery Cnty. Fire Protection Dist. No. 1*, 131 F.3d 564, 576 (6th Cir. 1997) (quoting *Marohnic v. Walker*, 800 F.3d 613, 616 (6th Cir. 1986)).

[138] *Id.* (citing *Lane v. Franks*, 573 U.S. 228, 240 (2014) (noting that the key question in the citizen speech analysis is "whether the speech at issue is itself ordinarily within the scope of an employee's duties")).

[139] *See Chappel*, 131 F.3d at 576.

[140] *Sharqwai v. Kirby Co.*, 496 F. Supp. 3d 1093, 1111 (N.D. Ohio 2020) (citing *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012)).

- 27 -

Case No. 1:23-cv-01507
GWIN, J.

### c. Causal Connection

At the third stage, Plaintiff Williamson must "demonstrate that [his] speech at issue represented a substantial or motivating factor in" his termination.[141] To do so, Williamson "must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that [Williamson's termination] would not have occurred but for [his] engagement in protected activity."[142] The plaintiff must point to specific, nonconclusory allegations reasonably linking his speech to employer discipline.[143]

If Plaintiff Williamson demonstrates that his protected speech was a substantial or motivating factor in his termination, the burden shifts to the Defendants to show that "there were other reasons for [their] adverse action and that [they] would have taken the same action even if the employee had not spoken."[144]

### i. Defendant Williams

Plaintiff Williamson advances a cat's paw theory to link Defendant Williams to his termination.[145] Defendant Williams did not have formal decision-making authority over Williamson's job, or any hiring or firing decision authority. Williamson argues that County Administrator Williams, motivated by his animus against Williamson, influenced Defendant Moore to vote in favor of Williamson's termination.

Under the "cat's paw" theory of liability, "if a supervisor performs an act motivated by [retaliatory] animus that is *intended* by the supervisor to cause an adverse employment

---

[141] *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003).

[142] *See Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010).

[143] *Rodgers*, 344. F.3d at 602 (quotation omitted).

[144] *Boger v. Wanye Cnty.*, 950 F.2d 316, 322 (6th Cir. 1991).

[145] The cat's paw theory of liability has been tacitly adopted by the Sixth Circuit in the § 1983 context. *DeNoma v. Hamilton Cnty. Ct.*, 626 F. App'x 101, 106 (6th Cir. 2015) (applying cat's paw theory of liability to find genuine issues of material fact existed on § 1983 gender discrimination in violation of equal protection clause claim). *See also Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1327 (11th Cir. 2003) (noting in § 1983 retaliation action a "decision-maker may serve as the conduit of the subordinate's improper motive, for example, if he merely 'rubber-stamps the recommendation of a subordinate.").

Case No. 1:23-cv-01507
GWIN, J.

action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable."[146]  Consequently, where the plaintiff can demonstrate a "causal nexus" between the final decision-maker's employment decision and the subordinate's retaliatory animus, the subordinate may be deemed liable for the harm caused to the plaintiff.[147]

While a reasonable jury could find that the Commissioners fired Williamson because he was engaged in an extramarital affair with one of the Commissioners, a reasonable jury could alternatively find that Defendant Administrator Williams motivated the firing because Williamson would not adhere to Administrator Williams's lobbying requests and would not refrain from whistleblowing.  A jury could find that Defendant Williams so disagreed with Plaintiff Williamson's speaking up about fund misspending and his refusal to bow to pressure to Williams's demands, he sought Williamson's ouster from his position.

Plaintiff says that as early as March 2021, Defendant Administrator Williams sought Williamson's help to influence Commissioner Hung's vote on a variety of Board issues, often concerning various County contracts that would benefit Defendant Moore.  According to Williamson, in July 2021, Williams tried to use Plaintiff Williamson to influence Hung's vote on a radio contract.  Williamson says that when Williamson refused to do so, Williams told him that "his ass was in trouble."  Also according to Williamson, Defendant County Administrator Williams then cut off direct contract from Williamson and began investigating Williamson's timesheets for mistakes.  A week later, Williams was terminated.

---

[146] *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (emphasis original).
[147] *See Bose v. Bea*, 947 F.3d 983, 990–91 (6th Cir. 2020) (quoting *Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 427 (6th Cir. 2014) ("[u]nder a cat's paw theory, the decisionmaker need not have notice of the subordinate's discriminatory purpose.  The cat's paw theory, rather, imputes knowledge and discriminatory intent—the cat's paw is the 'unwitting tool' of those with a retaliatory motive.")). .

Case No. 1:23-cv-01507
GWIN, J.

"Temporal proximity alone can, in certain circumstances, suffice to show a causal connection in a retaliation case."[148]  The short time between Williamson's claimed refusal to move on the radio contract and his termination, coupled with his claimed consistent, undesired warnings about misspent funds that Williamson wished to ignore, to Defendant Moore's benefit, gives sufficient evidence of Williamson's retaliatory aim.

The evidence also plausibly supports that Defendant Williams is a close associate of Defendant Moore's, who often acted to further Moore's interests.  A reasonable jury could find that when Williams learned that Williamson would not succumb to pressure in order to benefit Moore, Williams sought Moore's vote to terminate Williamson.

There is also a genuine issue of fact as to whether Moore would have fired Williamson regardless of Administrator Williams's animus towards Williamson.  Defendant Williams says that the revelation of Williamson's and Hung's affair caused Defendant Moore to vote to terminate Williamson.  Defendant Moore says that he only learned about the affair at the July 28, 2021, Board executive session and acted on outside counsel's advice when terminating Williamson.

But, County Commissioner Hung says that she and Williamson conducted their extra-marital affair openly, "in such a way that [their] involvement would have been obvious to those who observed us together, including Moore and Williams."[149]  Hung also suggests that there exists video evidence of their relationship from February 2021.  This raises an issue of fact as to whether Defendant Commissioner Moore would have fired Williamson for his affair with an indirect supervisor, regardless of Defendant Williams's influence.  A jury could find

---

[148] *Dye,* 702 F.3d at 294.
[149] Doc. 37-1, ¶28.

Case No. 1:23-cv-01507
GWIN, J.

that Moore earlier knew of the affair and took no action against Williamson.  The jury should decide whether Plaintiff Williamson would have been fired, regardless of his protected speech.

The issue of causation typically presents a "factual issue to be resolved by a jury."[150] That is the case here.  So, the Court **DENIES** Defendant William's motion for summary judgment on Plaintiff Williamson's First Amendment retaliation claim.

### ii.  Defendant Moore

Plaintiff Williamson does not show admissible evidence that Defendant Commissioner Moore was either involved with Administrator Williams's efforts to use Williamson to lobby Hung, or was aware of Williamson's claimed statements about Lorain County expenditures..

Plaintiff Williamson's and Commissioner Hung's declarations support an inference that Williams pressured Williamson to lobby Hung's vote on certain Board contracts that might benefit Moore.  But Williamson offers no evidence that Commissioner Moore knew of this effort or participated in the effort.  Some evidence supports an inference that Defendant Administrator Williams worked to further Defendant Moore's agenda regarding Lorain County Board of Commissioners financial business.  But no evidence shows that that Moore knew, directed, or participated in Williams's efforts.

There is also no evidence that Moore "rubber stamped" a suggestion by Williams to fire Williamson, that Williams and Moore communicated about the vote to terminate Williams, or that Williams and Moore communicated about Williams at all.  Without more,

---

[150] *Maben v. Thelen*, 887 F.3d 252, at 267 (6th Cir. 2018) (quotation omitted).

Case No. 1:23-cv-01507
GWIN, J.

Williamson cannot create a genuine issue of fact that Moore's vote to terminate him was cast in retaliation.

The Court **GRANTS** Defendant Moore's motion for summary judgment on Williamson's First Amendment retaliation claim.

### iii.  Defendant Lundy

So too for Defendant Commissioner Lundy.  The evidence in the record is insufficient to show a causal connection between Plaintiff Williamson's protected speech and Defendant Commissioner Lundy's vote to terminate Williamson.

Neither Williamson's nor Hung's declarations support inferences that Lundy was aware of Williamson's protected speech efforts, let alone that he took issue with the speech. Neither says that Lundy was aware of Williamson's reports of the misspent funds. Williamson says that he reported the misspending to Defendant Administrator Williams and Commissioner Hung.[151]  While there may have been follow-up meetings, Hung does not say that Lundy attended them.

Nor do the declarations show evidence that Lundy was aware of Williams's pressuring Williamson and Hung to do Williams's bidding.  Hung says she was pressured by Defendants Moore, Williams, "then Assistant Prosecutor Dan Petticord and from certain officials in North Ridgeville" to change her position on a County system.[152]  Notably, Defendant Commissioner Lundy is not included in this list.  Rather, Plaintiff Williamson's and Commissioner Hung's declarations give the impression that any bad blood between Hung, Williamson, and Williams developed entirely separately from Defendant Lundy.

---

[151] Doc. 29-1, ¶16.
[152] Doc. 37-1, ¶19.

- 32 -

Case No. 1:23-cv-01507
GWIN, J.

From the evidence in the record, a reasonable juror could not find that Defendant Lundy voted to terminate Plaintiff Williamson due to his protected speech. The Court **GRANTS** summary judgment to Defendant Lundy on Williamson's First Amendment retaliation claim.

### 3. Qualified Immunity

The individual Defendants argue that they are entitled to qualified immunity on Plaintiff Williamson's First Amendment retaliation claim.[153]

To determine whether an official is entitled to qualified immunity, courts look at "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated; and (2) whether that right was clearly established at the time of the violation."[154] "A right is clearly established when its contours are sufficiently clear that a reasonable official would understand that his conduct violates that right."[155]

As discussed, considering the evidence in the light most favorable to Williamson, Williamson has shown he has a First Amendment right to express his political opinion, report on public fund misuse, and express his political affiliation. There is a genuine issue of material fact as to whether Defendant County Administrator Williams deprived Williamson of his constitutional right to protected speech, but not whether Defendants Moore, Lundy, and Cordes did so. So, Defendants Moore, Lundy, and Cordes would be entitled to qualified immunity even if sufficient evidence had allowed the claims against them to go forward.

---

[153] Doc. 27, PageID #: 345.
[154] *Ashford*, 89 F.4th at 970 (quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 606–07 (6th Cir. 2011)).
[155] *Nailon v. Univ. of Cincinnati*, 715 F. App'x 509, 515 (6th Cir. 2017).

Case No. 1:23-cv-01507
GWIN, J.

### D. Interference with Civil Rights

The individual Defendants argue that they are entitled to summary judgment on Plaintiff Williamson's claim of civil liability for criminal interference with civil rights under Ohio Rev. Code § 2307.60 and § 2921.45, because Plaintiff Williamson has not created a genuine issue of material fact that that the Defendants knowingly violated his rights.

Under Ohio law, a person injured by a criminal act may recover for such injuries in a civil action.[156]  And a public servant, acting under color of their office, employment, or authority, is guilty under Ohio Rev. Code § 2921.45 for knowingly depriving any person of a constitutional or statutory right.[157]

As discussed above, the Court finds that Plaintiff Williamson has shown sufficient evidence to raise a jury issue of a knowing constitutional violation by Defendant Williams. Defendant Williams is not entitled to summary judgment on this claim, while Defendants Cordes, Moore and Lundy are.[158]

### E. Ohio R.C. § 4113.52, Whistleblower Retaliation

Plaintiff Williamson argues that he has proffered evidence from which a reasonable jury could find that he was retaliated against for whistleblowing activity relating to the misspent funds, in violation of Ohio law.[159]  He points to his and Commissioner Hung's declaration as evidence that he filed written reports required for liability under Ohio's whistleblower protection statute.  The Defendants disagree, arguing that at summary

---

[156] Ohio Rev. Code § 2307.60.
[157] Ohio Rev. Code § 2921.45.
[158] The Ohio Supreme Court has held that Ohio's right to free speech is no broader than the United States Constitution, and that First Amendment is a proper basis for interpreting Ohio's free speech clause. *Eastwood Mall v. Slanco*, 626 N.E.2d 59, 61 (Ohio 1994).
[159] Doc. 29, PageID #: 484.

Case No. 1:23-cv-01507
GWIN, J.

judgment, Plaintiff Williamson cannot meet his prima facie burden to establish an issue of fact as to the required written reports' existence, via solely from declarations.[160]

To establish a prima facie case under Ohio's whistleblower protection statute, Ohio Rev. Code § 4113.52, a plaintiff must show: (1) that he engaged in activity protected by the statute; (2) he was subject to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action.[161] If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action.[162] If the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was pretextual.[163]

"[I]n order for an employee to be afforded protection as a 'whistleblower,' such employee must strictly comply with the dictates of [Ohio Rev. Code] § 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute."[164]

Ohio's whistleblower protection statute requires that the employee "orally shall notify the person's supervisor or other responsible officer of the person's employer of that violation and subsequently shall file with that supervisor or officer a *written report* that provides sufficient detail to identify and describe the violation."[165]

Plaintiff Williamson has not shown evidence of any written report submitted to any Defendant. Williamson says that he "repeatedly reported [the misspent funds] . . . both orally and in writing" to Defendant Williams. Commissioner Hung also says that she "recall[s]

---

[160] Doc. 27, PageID #: 342.

[161] *Herrington v. DaimlerChrysler Corp.*, 262 F. Supp. 2d 861, 865 (N.D. Ohio 2003), aff'd, 125 F. App'x 23 (citations omitted).

[162] *Id.*

[163] *Id.*

[164] *Contreras v. Ferro Corp.*, 652 N.E.2d 940, 944 (Ohio 1995).

[165] Ohio Rev. Code. § 4113.52(A)(1)(a) (emphasis added).

Case No. 1:23-cv-01507
GWIN, J.

seeing emails from Williamson to Williams" and attended meetings concerning the misspent funds.  Williamson says that these declarations satisfy his burden to survive summary judgment.

However, "self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment."[166]  Williamson bears the burden of production to rebut the Defendants' showing that no written reports exist.  Williamson has had discovery from the Defendants in their Lorain County Common Pleas case since 2022.  Discovery has been ongoing in this matter since last summer.  Yet, he provides no documentary evidence that he sent written reports or text messages, or that he attended meetings regarding his misspent funds complaints.  Nor does he show evidence that any Defendant received written reports on claims of misspent funds.  So, his Ohio whistleblower protection fails.

Even if Williamson had shown documentary evidence of written reports, there is no individual liability under Ohio's whistleblower statute.[167]  The remaining Defendants, all of whom are individuals, cannot be held liable for this claim.

The Court **GRANTS** summary judgment in favor of Defendants Cordes, Moore, Williams, and Lundy as to Plaintiff Williamson's Ohio whistleblower protection claim.

## III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** summary judgment to Defendants Cordes, Moore, and Lundy on all remaining claims.  The Court **GRANTS** summary judgment to Defendant Williams on Plaintiff's Ohio whistleblower protection claim.  The Court

---

[166] *Telecom Holdings II, LLC v. Grove City, Ohio*, 403 F. Supp. 3d 643, 649 (S.D. Ohio 2019).
[167] *See McKay v. Safe Auto Ins. Grp.*, No. 2:20-cv-1584, 2021 WL 46019, at *6–7 (S.D. Ohio Feb. 8, 2021) (citing *Keehan v. Korenowski*, 2018-Ohio-7050, 95 N.E.3d 781, 786 (Ohio Ct. App. 2017); *Armstrong v. Trans-Service Logs., Inc.*, 2005-Ohio-2723, 2005 WL 1301681, at *1 (Ohio Ct. App. May 27, 2005)).

- 36 -

Case No. 1:23-cv-01507
GWIN, J.

**DENIES** summary judgment to Defendant Williams on Plaintiff's First Amendment retaliation

§ 1983 claim and the Ohio law claim for interference with civil rights.

   IT IS SO ORDERED.


Dated: September 27, 2024       *s/  James S. Gwin*
                  JAMES S. GWIN
                  UNITED STATES DISTRICT JUDGE