IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **HARRY WILLIAMSON**<br>　　　　　　*Plaintiff,*<br>v.<br>**LORAIN COUNTY**, *et al.*<br>　　　　　　*Defendants.* | Case No.: 1:23-cv-01507-JG<br><br>Judge James S. Gwin<br><br>Magistrate Judge Jennifer Dowdell Armstrong |
| **ORDER** ||

　　　　The Court finds that Plaintiff Harry Williamson has repeatedly sought to obtain discovery from Defendant Tom Williams for more than five months, but that Defendant Williams has failed to cooperate in those efforts. The Court therefore finds that Mr. Williamson has satisfied his obligation to in good faith confer or attempt to confer with the person or party failing to make discovery in an effort to obtain it without court action.

　　　　The Court finds that Defendant Williams was properly served with requests for inspection but failed to timely fulfill, object to, or otherwise respond to those requests. Defendant is therefore ordered to make a full production of all records responsive to those requests within 14 days. The Court likewise finds that Defendant Williams was properly served with interrogatories but failed to timely answer, object to, or otherwise respond to those requests.

　　　　The Court further finds that Defendant's failure to fulfill his discovery obligations has prejudiced Mr. Williamson by withholding necessary evidence, by limiting his ability to oppose Defendants' motion for summary judgment, and by needlessly increasing the time and expense associated with this litigation.

The Court therefore sanctions Defendant Williams under Civ.R. 37(d)(1)(A) for failing to timely and properly respond to interrogatories and requests for inspection. As a sanction, the Court directs that the facts at issue in Mr. Williamson's requests for inspection and interrogatories shall be taken as established for purposes of this action as Mr. Williamson claims.

Specifically, the Court orders the following facts established for purposes of this action:

1. Defendant Williams approached Mr. Williamson shortly after the 2020 election to offer him a job as director of Lorain County's 911 Center.

2. Around that time, Defendant Williams learned through the county's human-resources director and its outside employment counsel that Mr. Williamson was in a romantic relationship with Michelle Hung, who had just been elected Lorain County Commissioner.

3. Defendant Williams first became aware of Mr. Williamson's romantic relationship with Commissioner Hung no later than February 2021.

4. While he was serving as 911 director, Mr. Williamson identified numerous instances of financial mismanagement, including:

    a. The misappropriation of property tax revenue earmarked for 911 services to instead benefit Life Care, a private, for-profit ambulance service.

    b. The misappropriation of property tax revenue earmarked for 911 services to instead fund the Department of Job & Family Services.

    c. The misappropriation of property tax revenue earmarked for 911 services to instead pay the Emergency Management Agency's water bill.

    d. The misappropriation of property tax revenue earmarked for 911 services to fund other County expenses unrelated to 911 services.

    e. The failure to require reimbursements from local police departments who offloaded their emergency-dispatch responsibilities onto the 911 center.

    f. Monthly payments for Carlisle Township and Lorain for services they were not using.

    g. Monthly payments to Verizon for cell phones that no longer seemed to exist.

    h. Monthly payments to another communications company to service modems that no one was using.

      i.      The failure to collect more than $1 million in cost-sharing payments local governments had agreed to make in exchange for an upgrade to the County's 911 system.

5. Mr. Williamson brought these issues to Defendant Williams's attention, but Defendant Williams refused to resolve them:

    a. Defendant Williams promised to "look into" the issues at Life Care but then told Mr. Williamson to ignore them because Commissioner David Moore "has friends over there."

    b. Defendant Williams never addressed the diversion of 911 funds to Job & Family Services, so Mr. Williamson and JFS Director Tim Carrion resolved the issue themselves.

    c. Defendant Williams never demanded that Lorain or North Ridgeville reimburse the County for the dispatchers it had hired to cover the shifts when they failed to schedule anyone.

    d. Defendant Williams never demanded that local governments make the cost-sharing payments they had agreed to.

6. Defendant Williams sought to exploit Mr. Williamson's relationship with Commissioner Hung by pressuring Commissioner Hung to change her position when she was at odds with Commissioner Moore on various issues.

7. Mr. Williamson was not a political appointee and resisted efforts to enlist him in lobbying Commissioner Hung.

8. Defendant Williams nonetheless sought Mr. Williamson's assistance changing Commissioner Hung's vote on multiple issues, including:

    a. "Seven Districts," a plan to entrench Republican control of the County by replacing its board of three, at-large commissioners with a slate of seven commissioners elected to represent specific portions of the county.

    b. Restructuring the Lorain County Veterans' Committee to retaliate against its new Democratic executive director.

    c. Building a new convention center at Midway Mall

    d. Selecting a new vendor for walkie-talkies for police and firefighters.

9. Because Mr. Williamson refused to lobby Commissioner Hung on the walkie-talkie issue, Defendant Williams stopped communicating with him and began plotting with Commissioner Moore and the county's employment counsel to fire him.

10. Defendant Williams, Commissioner Moore, and the county's employment counsel worked together to fabricate a justification for terminating Mr. Williamson's contract without exposing themselves to legal liability and eventually settled on his relationship with Commissioner Hung.

11. That relationship was a pretext:

    a. Lorain County does not have any policy forbidding employees from engaging in romantic or sexual relationships with each other.

    b. The vague and standardless policy that the County cited as justification for terminating Mr. Williamson calls for progressive discipline rather than termination.

    c. Lorain County routinely permits similarly situated employees—including Defendant Williams—to pursue romantic relationships with each other without subjecting them to investigation, discipline, or termination.

    d. Although the County's employment counsel advised the County in August 2021 that it was safe to terminate Mr. Williamson because of the "recent disclosure" of his relationship with Commissioner Hung, employment counsel had actually known about the relationship since 2020.

    e. Defendant Williams, Commissioner Matt Lundy, and Commissioner Moore had likewise all known about the relationship for months but did not believe any corrective action was necessary.

12. The County's outside employment counsel had had extensive communications with Commissioner Hung about her relationship with Mr. Williamson. Recognizing that those communications could be used as evidence of pretext, she directed Commissioner Hung to delete all the text messages they had exchanged over the previous year.

13. Acting on Defendant Williams's advice, Commissioners Lundy and Moore terminated Mr. Williamson—as well as JFS Director Tim Carrion, who had assisted him in cleaning up the 911 misappropriations—on August 3, 2021.

14. The County did not publicly disclose any basis for terminating Mr. Williamson, permitting him to preserve some amount of privacy regarding his personal relationships.

15. But Defendant Williams wanted to twist the knife. He had for months been holding onto surveillance footage of Mr. Williamson and Commissioner Hung sharing a brief kiss, so he leaked it to the media to ensure that Mr. Williamson was publicly humiliated.

The Court finds that Defendant's failure to timely serve respond to discovery was not substantially justified and that no other circumstances make an award of expenses unjust. The Court therefore orders Defendant and his counsel to pay Mr. Williamson's reasonable expenses, including attorney's fees, caused by that failure. The Court orders Mr. Williamson to submit an accounting of those expenses within 30 days.

_____

Judge James S. Gwin