**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **HARRY WILLIAMSON,** | |
| Plaintiff, | CASE NO. 1:23-CV-01507 |
| vs. | |
| **LORAIN COUNTY, et al.,** | JUDGE DAVID A. RUIZ |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
SUPPLEMENTAL MOTION TO COMPEL (Doc. 40)**

On September 27, 2024, the Court issued an order resolving Defendants' pending motion for summary judgment. (*See* Doc. 42). After the Court's decision, only one Defendant (Tom Williams) and two claims (First Amendment retaliation and interference with civil rights under Ohio law) remain. Accordingly, Plaintiff's motion to compel against former Defendants David Moore, Matt Lundy, and James Cordes is moot. Aside from being moot, Plaintiff's motion does not articulate an actionable deficiency in Defendant Williams's discovery responses and his motion to compel should be denied.

**RELEVANT BACKGROUND**

As the Court knows, this dispute originated in state court before Plaintiff's voluntarily dismissal in February 2023. *See Harry Williamson v. Lorain County, et al.,* Case No. 22CV205156 (Lorain County Common Pleas) (the "Lorain County Case"). Prior to Plaintiff's dismissal, the parties exchanged significant discovery. In August 2022, the Lorain County Board of Commissioners produced more than 36,000 pages of document production in response to nearly identical discovery responses to those propounded in

this case. (*See* Doc. 30-1). The County supplemented its responses in November with additional potentially responsive documents. (*See* Doc. 30-2). Individual Defendants Moore, Lundy, Cordes, and Williams also responded to discovery. (Doc. 30-1) However, the crux of potentially relevant documents arose from their respective employment with the County and therefore resided with the County.

Because of this extensive discovery history between the parties, Defendants did not seek court intervention when Plaintiff did not timely respond to discovery. Defendants served discovery on Plaintiff on April 22, 2024, but Plaintiff did not respond until June 28, 2024—one business day before Defendants Lundy, Moore, and Cordes answered Plaintiff's interrogatories. (*See* Doc. 21-3; Doc. 27-3). Plaintiff's responses were substantively duplicative of his prior responses in the state court case.

At the status conference held on July 18, 2024, the Court and the parties discussed Plaintiff's motion to compel. Importantly, Plaintiff's counsel did not dispute that the purported outstanding discovery was not related to the then-pending motion for summary judgment. The Court's ruling on summary judgment has significantly narrowed the issues and claims for trial. (*See* Doc. 42). Because the claims against Cordes, Moore, and Lundy were dismissed, any discovery sought from them is moot. Mr. Williams, the sole remaining defendant, has responded to Plaintiff's discovery requests. He has not been employed by the County for more than three years and does not have any additional responsive documents.

## **LAW AND ARGUMENT**

### **I.  Williamson's motion to compel lacks a proper Rule 37 certification.**

Under Local Rule 37.1, no party shall raise discovery disputes with the Court unless the party has "certified to the Court the making of, sincere, good faith efforts to resolve

such disputes." L.R. 37.1(a)(1). Likewise, any motion to compel discovery requires that the "motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). A motion to compel that lacks such a certification should be denied. *See Bell v. Target Corp.*, No. 3:07-cv-00011, 2008 U.S. Dist. LEXIS 140392, at *2 (N.D. Ohio Dec. 22, 2008) ("Since Plaintiff failed to provide the requisite certification [under Fed. R. Civ. P. 37(a)(1)], this motion must be denied."). Neither Williamson's motion to compel nor his supplement include the requisite certification, and it should be dismissed on those grounds.

## II. Plaintiff's motion to compel related to Moore, Lundy, and Cordes is moot.

On September 27, 2024, the Court granted summary judgment in favor of Moore, Lundy, and Cordes on all remaining claims. As such, the motions to compel responses from them are moot because there are no pending claims against them. *See Booth v. Flint Police Officers Ass'n*, 2022 WL 2046515, 2022 U.S. App. LEXIS 15687, at *24-25 (6th Cir. June 7, 2022) (affirming district court's denial of plaintiffs' pending motion to compel after summary judgment granted in favor of defendants); *see also Malone v. Shelby Cnty.*, 2021 WL 7540285, 2021 U.S. App. LEXIS 36622, at *10 (6th Cir. Dec. 10, 2021) (affirming district court's denial of moot to compel as moot after summary judgment ruling); *and Powell v. Medical Dep't Cuyahoga Cnty. Corr. Ctr.*, 2018 WL 3752232, 2018 U.S. LEXIS 133547, at *4 (N.D. Ohio Aug. 8, 2018) (Gwin, J.) (granting summary judgment and denying motion to compel as moot).

### III.   Plaintiff fails to explain how Mr. Williams's discovery responses are deficient and how the alleged deficiencies are relevant to the remaining claims.

The discovery process is not an invitation for a plaintiff to go fishing for claims. *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citations omitted). Despite tens of thousands of documents from the County and hundreds of his own text messages and other documents, Plaintiff has no evidence to support his conspiratorial claims. Now, he blames *Defendants* for not finding alleged evidence for him with nothing more than a hunch that it should exist. However, "a party may not move to compel discovery on the basis of a mere suspicion that the producing party has additional information that it failed to disclose." *Howard v. Onion*, 2023 WL 4706760, 2023 U.S. Dist. LEXIS 127381, at *5 (N.D. Ohio July 24, 2023) (quoting *Conley v. United States*, 2011 U.S. Dist. LEXIS 128684, 2011 WL 5326133, at *2 (S.D. Ohio Nov. 4, 2011)).

Likewise, Plaintiff bears the burden of demonstrating that the requested discovery is relevant. *Barnes v. Midland Credit Mgmt.*, 2020 U.S. Dist. LEXIS 215644, at *7 (N.D. Ohio Nov. 17, 2020); *see also O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015). Plaintiff offers little to establish the relevancy of the additional discovery he now seeks. This is particularly true with respect to Moore, Lundy, and Cordes considering that Plaintiff no longer has viable claims against them. Remaining Defendant Williams will address each of Plaintiff's claims below.

### A.   Cordes/Lundy Interrog. No. 2

As a threshold issue, Cordes and Lundy are no longer in the case, and Plaintiff's discovery requests to them are moot. Moreover, both former defendants responded and identified relevant phone numbers and email addresses.

### B.   Lundy/Moore/Williams Interrog. Nos. 2-6

4

These interrogatories sought the basis for the termination of various County employees, including Plaintiff. (Doc. 40, at PageID# 626-27). The requests as to Mr. Lundy and Mr. Moore are moot. With respect to Mr. Williams, he responded and lodged proper objections. (*See id.*). As Mr. Williams stated, he did not have authority to and did not terminate Mr. Williamson, so he does not have personal knowledge of the basis for his termination outside of what has been publicly reported by Mr. Moore and Mr. Lundy. Moreover, the basis for Mr. Williamson's termination is well known. (*See* Doc. 27-1 and 27-2) (Moore and Lundy declarations). Accordingly, Mr. Williams's interrogatory response is not deficient.

The same is true with respect to Tim Carrion, Alexis Swiniarski, and Matt Spears. Although Plaintiff baldly claims that these individuals were terminated for "whistleblowing activity," he has never proffered any evidence to support these claims. The only evidence proffered to date is the declarations of Plaintiff and Hung, and neither of those declarations mentions Mr. Carrion, Ms. Swiniarski, or Mr. Spears. (*See* Doc. 29-1 and Doc. 37-1). Plaintiff's whistleblower claim has also been dismissed in its entirety, which further proves these individuals have no relevance to the remaining claims. That is likely why Plaintiff's counsel made no effort to explain the relevancy of these individuals in response to Defendants' counsel's request that he do so. (*See* Doc. 40-17).

### C. Williams Interrogatory No. 7

Interrogatory No. 7 asks Williams to identify individuals whom he communicated with regarding Plaintiff's affair with Ms. Hung. (Doc. 40, at Page ID# 628). Williams fully responded and identified the individuals who he recalls speaking to. (*Id.*). Having fully responded, Plaintiff's motion to compel with respect to Interrogatory No. 7 should be denied. *See Martin v. Posey*, 2017 WL 412876, 2017 U.S. Dist. LEXIS 13214, at *17 (S.D.

Ohio Jan. 31, 2017) (noting that an interrogatory response indicating a lack of recollection does not render it incomplete and denying a motion to compel on those grounds).

   **D.** Moore Interrog. No. 7/Williams Interrog. No. 8

   These interrogatories sought "every employee you know, believe, or suspect to have been involved in a sexual or romantic relationship with another County employee at any time since January 1, 2017." (Doc. 40, at Page ID# 629). Both Moore and Williams rightfully asserted relevancy objections. (*Id.*). Subject to these objections, Williams identified Mr. Williamson and thereby provided a response. No further response is necessary from Mr. Williams.

   **E.** Cordes/Lundy/Moore Interrogatory Nos. 8-9

   These interrogatories seek "the *County's* policies governing employees involved in romantic or sexual relationships[.]" As to Cordes, Lundy, and Moore, these interrogatories are moot. Nonetheless, defendants identified the source of the County's policies—i.e., the County's Employee Handbook. Plaintiff has been in possession of that Handbook since 2022 (and earlier because he received a copy as part of his employment). The Handbook was the County's first document produced and bates-labeled "LDS000001-236". Plaintiff's attempt to compel a different response is meritless.

   **F.** Lundy/Moore Interrog. No. 9-10

   These interrogatories vaguely refer to "those policies" dating to January 1, 2017. Plaintiff refused to identify what policies the interrogatories refer to. When Defendants' counsel sought additional clarification, Plaintiff did not respond. (*See* Doc. 40-17) ("The County previously produced the applicable Personnel Manual and related policies. (LDS000001-000236). I trust this satisfies your request. If you have specific questions related to these policies, I'm available to discuss.") Regardless, Plaintiff's discovery

responses to Lundy and Moore are mooted by the Court's grant of summary judgment in their favor.

**G.** Cordes/Lundy/Moore Interrog. No. 13 and 15

Plaintiff's Interrogatory No. 13 requests that the parties "[a]ffirm that all of your responses to the requests for production and requests for admission in this matter are the truth, the whole truth, and nothing but the truth." (Doc. 40, at Page ID# 631). Each of the defendants properly objected to this invalid interrogatory that does not request any valid information under Fed. R. Civ. P. 26(b). *See* Fed. R. Civ. P. 33(a)(2). Indeed, the interrogatory does not request any information at all, and Mr. Williams's response is not deficient because he objected on those grounds.

**H.** Cordes Interrog. No. 12

The claims against Cordes have been dismissed, so this interrogatory is moot. Likewise, the only relevancy identified by Plaintiff related to his whistleblower claim, which is also dismissed and moot.

**I.** Moore Interrogatory No. 10

For the same reason, this interrogatory is moot. Plaintiff has no valid claims against Mr. Moore, and his whistleblower claim was dismissed in its entirety.

**J.** Moore Interrog. No. 11/Williams Interrog. No. 14

This interrogatory asks Moore and Williams to identify "every person who asked you to support the MARCS proposal for new walkie-talkies." (Doc. 40, at Page ID#632). There was no such thing as a "MARCS proposal for new walkie-talkies" during Williamson's employment with the County, so defendants rightfully objected on vagueness and relevancy grounds. (*Id.*) Plaintiff clarified that he was referring to the *Motorola Solutions'* proposal to upgrade the County's radio system. (*Id.*, at Page ID#

633). Plaintiff's clarification confirms that the interrogatory is not relevant to Williamson's claims. The radio system bidding did not begin until ***August 2022***, one year after the termination of Plaintiff and Mr. Williams. (*See* Exhibit A, August 3, 2022 Board of Commissioners' Agenda) (Item #21 advertising Request for Proposals for the procurement of P25 Phase 2 radio communications system). After the bidding process, the County awarded the "radio contract" in late December 2022, more than 16 months after Plaintiff's and Williams's termination. Importantly, Motorola Solutions never submitted a full bid to the radio RFP and the contract was ultimately awarded to Cleveland Communications, Inc. (*See* Doc. 40-17, explaining bidding process).

Mr. Williams could not retaliate based on Plaintiff's refusal to lobby on a radio contract that did not go out to bid until a year after both Mr. Williams and Plaintiff left county employment. Williams properly objected on relevancy grounds as it relates to the radio contract awarded to Cleveland Communications, Inc. in December 2022. Perhaps Plaintiff is recalling a different "radio contract," or perhaps he is simply mistaken. Either way, Plaintiff cannot credibly claim that the Motorola Solutions' proposal motivated his alleged retaliatory animus, and any interrogatory related to that radio contract is not relevant to any party's claims or defenses.

**K.** Moore Interrog. No. 12

This asks Moore to identify every occasion he "discuss[ed] County business outside of a public meeting[.]" (Doc. 40, at Page ID# 633). This is a blatant fishing expedition hoping to manufacture an Ohio sunshine law violation. *See Oates v. Target Corp.*, 2012 WL 4513723, 2012 U.S. Dist. LEXIS 142334, at *9 (E.D. Mich. Oct. 2, 2012) ("Discovery is not a license for a fishing expedition wherein the Plaintiff may attempt to uncover new claims.") Regardless, this request is moot because Plaintiff has no valid claims against

8

Moore.

**L.** Williams Interrog. No. 11

This interrogatory requests that Williams "identify all steps you took to address Mr. Williamson's reports that County funds were being misspent." (Doc. 40, at Page ID# 634). Williams objected because "reports that County funds were being misspent" is overly vague—particularly given Plaintiff's inability to identify specific allegations of "misspending" or any written reports related to it. Plaintiff responded that he is referring to "perceived misuses of 911 funds, at any time during his employment with the County." (Doc. 40-16, Page ID# 777). Williams stated that he would supplement if necessary, but it has not been necessary. (Doc. 40-17). Likewise, the Court's summary judgment decision rendered this interrogatory moot. Plaintiff's alleged complaints about "misspending" of "911 funds" formed the basis of his whistleblower retaliation claim, which the Court dismissed. (Doc. 42).

**M.** Request for "Inspection" No. 2

This RFP seeks "all phone calls to or from any phone you regularly used from October 1, 2020 through Aug. 31, 2021." (Doc. 40, Page ID# 634). The requests as to Defendants Cordes, Lundy, and Moore are moot. With respect to Williams, he responded that he does not have phone records from four years ago. (*Id.*). Likewise, he would not have any records related to his county-issued phone from the relevant time frame. Williams has fully responded that he does not have responsive records.

**N.** Request for Inspection No. 10-14

These RFPs seek records related to (a) alleged restricting of the Lorain County Veterans' Committee, (b) the proposed "Seven Districts plan", (c) the plan to build a convention center at or near Midway Mall, and (d) records related to the bidding process

for new emergency-management communication devices. (*Id.*, at Page ID# 635-37). These requests seek County records, and the County is no longer a party to this action. (Doc. 26) (granting the County's motion to dismiss). Likewise, Cordes, Lundy, and Moore are no longer part of the litigation, and the discovery requests to them are moot.

As to Mr. Williams, he raised proper relevancy objections that Plaintiff has never rebutted. Indeed, Plaintiff never mentions any of these alleged projects in his summary judgment briefing as a source of Williams's alleged retaliation. Plaintiff's counsel confirmed as much at the July 18th status conference when he agreed with the Court that these records were not relevant to the pending motion for summary judgment. Moreover, he has not been employed by the County since August of 2021 and does not have access to any County records that could possibly be responsive to these requests. He cannot be compelled to produce documents he does not have.[1]

**O.** Requests for Inspection #15-16

These RFPs seek records related to the terminations of Plaintiff and Mr. Carrion. Again, the requests as to Cordes, Lundy, and Moore are moot.[2] Mr. Williams fully responded to these requests and confirmed that he has no responsive documents. (Doc. 40, Page ID# 638). No additional response is necessary.

**P.** Requests for Inspection # 18-33

These RFPs seek a myriad of personal financial information from each individual defendant. (*Id.*, at Page ID# 639-640). Plaintiff claims that this information is needed for

---

[1] Williams does note that the County previously produced records related to these issues in the state court case as part of its supplemental production in November 2022, so Plaintiff is in possession of documents responsive to these requests.

[2] Nonetheless, as noted in Moore's discovery response, he has "no additional responsive documents other than those that have already been produced" by the County. Thus, the Plaintiff is in possession of all relevant documents.

assessing punitive damages. (*Id.*). Plaintiff puts the cart before the horse. He has not established a shred of evidence that would support a claim for punitive damages. Moreover, Ohio law requires that the trial must be bifurcated with respect to punitive damages. *See* R.C. 2315.21.

Granting Plaintiff free reign to pilfer through Mr. Williams's personal finances based on his dubious claim for punitive damages would greatly prejudice Mr. Williams and require unnecessary discovery if Plaintiff fails in the first (non-punitive) phase of trial. On these grounds, Mr. Williams objected that his personal finances were not relevant to Plaintiff's claims. That remains true, and Plaintiff's motion to compel these documents should be denied.

**Q.** Requests for Inspection #34-43

These RFPs seek "all documents supporting" various affirmative defenses raised in the litigation. (Doc. 40, at Page ID# 640-45). Several of these defenses have been mooted by the Court's decisions dismissing the claims against Lorain County, Cordes, Lundy, and Moore. With respect to Mr. Williams, he responded by identifying the realm of documents that may support the affirmative defenses, including the County's prior production and Plaintiff's production. (*Id.*). Mr. Williams does not have any additional documents other than what has already been produced.

**IV.  Mr. Williams is not in possession of documents related to any privileged communications between the County and its legal counsel related to Mr. Williamson.**

Finally, Plaintiff seeks waiver of the executive and attorney-client privileges raised by the County and Moore and Lundy related to Plaintiff's termination. (*Id.*, at Page ID# 647-58). As a threshold issue, neither Moore nor Lundy have the ability to waive the attorney-client privilege with respect to the County's communications with its attorneys.

*See Ross v. City of Memphis*, 423 F.3d 596, 602-603 (6th Cir. 2005) (recognizing that governmental entities hold attorney-client privilege and finding that a municipal official's assertion of the advice of counsel defense did not require the governmental entity to waive its privilege). If Plaintiff seeks the *County's* privileged communications with its outside legal counsel regarding his termination, that subpoena must be directed at the County itself. Plaintiff has not done that. Likewise, because Moore and Lundy are no longer parties to the action, these requests are moot.

Likewise, Mr. Moore's and Mr. Lundy's declaration testimony regarding their decision to vote in favor of terminating Mr. Williams cannot constitute any waiver beyond the substance of the memorandum, which has been produced. At most, it is a "partial waiver" that is confined to the memorandum. *See Jones v. Ill. Centr. R.R. Co.*, 617 F.3d 843, 855-56 (6th Cir. 2010) (recognizing the doctrine of partial waiver, which "permits a client who has disclosed a portion of privileged communication to continue asserting the privilege as to the remaining portions of the same communications.") Under the partial waiver doctrine, "the privilege is waived only as to those communications actually disclosed, unless a partial waiver would be unfair to the party's adversary." *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1426 n. 13 (3d Cir. 1991).

As the Sixth Circuit recognizes, "[a] broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileged are designed to promote." *Id.* (internal quotations omitted); *see also Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) ("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.") There is no general waiver here because the privilege belongs to the County—not individual public

officials. If Plaintiff seeks to impede upon that privilege, he must make that claim against the County. He cannot do so via discovery requests to former individual Defendants in this action.

Similarly, with respect to Mr. Williams, he does not hold the County's attorney-client privilege and cannot waive it. Given that his employment with the County ended over three years ago, he would not have documents related to the County's communications with its attorneys. Moreover, Mr. Williams was not present during the executive sessions discussing Mr. Williamson's termination. Mr. Williams has properly responded to any outstanding discovery related to Mr. Williamson's termination, and the motion to compel against him must be rejected.

<u>**CONCLUSION**</u>

Based on the foregoing, and those set forth in Defendants' initial opposition, the Court should deny Plaintiff's motion to compel. Plaintiff fails to meet his burden to demonstrate that any alleged outstanding discovery is relevant to the remaining claims, and Mr. Williams has fully responded to all relevant discovery requests and produced responsive documents. Likewise, all discovery related to Cordes, Lundy, and Moore is now moot.

Respectfully submitted,

DOOLEY, GEMBALA, McLAUGHLIN & PECORA CO., LPA

*/s/ Stephen M. Bosak*
Matthew A. Dooley (0081482)
Stephen M. Bosak (0092443)
Michael R. Briach (0097986)
5455 Detroit Road
Sheffield Village, Ohio 44054
Tel:    (440) 930-4001
Fax:    (440) 934-7208

13

Email: mdooley@dooleygembala.com
sbosak@dooleygembala.com
mbriach@dooleygembala.com
*Counsel for the Defendants*