IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **HARRY WILLIAMSON**<br>    *Plaintiff,*<br>v.<br>**LORAIN COUNTY**, et al.<br>    *Defendants.* | Case No.: 1:23-cv-01507-JG<br><br>Judge David A. Ruiz<br><br>Magistrate Judge Jennifer Dowdell Armstrong |
| **REPLY IN SUPPORT OF PLAINTIFF HARRY WILLIAMSON'S MOTION TO COMPEL** ||

Plaintiff Harry Williamson respectfully submits this reply in support of his motion to compel and supplemental motion to compel Defendants to respond to his discovery demands.

## LAW & ARGUMENT

**I.    Mr. Williamson's motions satisfy Fed. R. Civ. P. 37 and Local Rule 37.1.**

Defendants claim that Mr. Williamson's motions lack the certifications of his good-faith efforts to resolve the discovery disputes without court intervention. They are mistaken, as both Mr. Williamson's motion (ECF #28) and supplemental motion (ECF #40) include the same language making those certifications: "Under Rule 11, he certifies that through counsel, he in good faith attempted to confer with opposing counsel in an effort to obtain discovery without court action, as detailed below." Moreover, the motion spends two pages documenting those efforts, which likewise cover nearly four pages in the supplemental motion. Mr. Williamson has therefore satisfied his obligation to certify his good-faith attempt to confer with opposing counsel in an effort to obtain discovery without court action.

II. **Because Defendants did not respond to discovery within 30 days, they have waived their objections.**

As laid out in Mr. Williamson's supplemental motion, a party has 30 days to respond to discovery demands under Rule 33 and 34. "As a general rule, failure to object to discovery requests within the thirty days provided by Rules 33 and 34 constitutes a waiver of any objection." *Biondi v. Jaguar Land Rover N. Am., LLC*, No. 1:23-CV-297, 2023 WL 5822415, at *2 (N.D. Ohio Aug. 21, 2023).

Defendants do not dispute that this is the rule, nor do they argue that the rule should not apply to them. They have therefore waived their objections—whether on the grounds of relevance, proportionality, or anything else—and the Court should therefore order them to provide full responses to all the discovery requested.

III. **Because Mr. Williamson's requests were properly framed and sought relevant information, the Court should compel Defendants to fully respond.**

A. **Williams Interrogatories #2–5**

These requests sought the factual basis for the termination of Mr. Williamson and three other former Lorain County employees: Tim Carrion, Alexis Swiniarski, and Matt Spears. As laid out in Mr. Williamson's motion, these pieces of information are relevant because they are part of a pattern of First Amendment retaliation by Mr. Moore and his co-conspirators.

In opposing the motion to compel, defense counsel attempt to testify for Mr. Williams, arguing that he fully answered when he said "he does not have personal knowledge of the basis for [Mr. Williamson's] termination."[1] But that is both a misrepresentation of their client's answer and a *non sequitur*. Defendant Williams said he did not have the authority to terminate Mr. Williamson, but he never denied having personal knowledge of the basis for it. And even if he

---

[1] ECF #44, 5.

doesn't have any "personal knowledge" of the basis for the termination, Mr. Williamson is nonetheless entitled to whatever second- or third-hand information he has so that Mr. Willamson can follow up on it.

Defendant Williams offered the same types of responses with respect to the other three employees, as well. He justifies his evasions by repeating his argument that he should not be compelled to produce any evidence because Mr. Williamson "has never proffered any evidence to support these claims." He misunderstands the nature of discovery, which is the process by which Mr. Williamson is meant to obtain that evidence; it is only natural that Mr. Williamson has less evidence than he would prefer when Defendant Williams refuses to testify about the facts of the case.

    B.    **Williams Interrogatory #7**

*Identify every person with whom you communicated about Mr. Williamson's relationship with Ms. Hung before your termination, including the date, participants, and contents of each communication.*
**Answer: To the best of his recollection, Williams spoke with Assistant Prosecutor Dan Petticord, Commissioner Lundy, and Commissioner Moore. When Mr. Williamson and Ms. Hung's relationship reached the newspaper, Williams had hundreds of people approach him. Williams does not recall everyone's names or dates.**

Defendant Williams says that he has fully responded, but he has not provided dates of any of the requested conversations, the content of any of the conversations, or the identities of any of the other people with whom he has had conversations.

    C.    **Williams Interrogatory #9**

*Explain the County's policies governing employees involved in romantic or sexual relationships with each other.*
**Answer: Williams objects to this interrogatory on grounds that it is overbroad and vague. Subject to this objection and in a good faith attempt to respond, Williams states that any such policy, if any, would be set forth in the County's Employee Handbook.**

As laid out in discussions with opposing counsel, and again in the motions to compel, Mr. Williamson is asking for an explanation of the relevant policies, but he is willing to settle for the identification of a specific policy so that he may read it and understand it himself. Defendants refuse to provide either piece of information and merely repeat that the County has an employee handbook. But the closest that handbook comes to addressing romantic or sexual relationships is its sexual-harassment policy, which governs "unwanted" sexual flirtations, advances, contact, etc., allegations that have never arisen in this litigation.[2]

If that is the policy Mr. Williams intends to rely on at trial, Mr. Williamson is entitled to know that, and the Court should compel him to say so. If Mr. Williams intends to rely on some other policy, Mr. Williamson is entitled to know that, as well.

### D. Williams Interrogatory #10

*Identify every disciplinary or corrective action taken against an employee for violating those policies since January 1, 2017.*
**Answer: Williams objects to this interrogatory as "those policies" is vague and undefined, and overbroad as Williams was not employed by the County from January 1, 2017 to January 4, 2021, and has not been employed by the County since August 18, 2021. Williams is unable to respond without additional clarification.**

In his opposition brief, Defendant Williams does not dispute that he is obligated to fully answer this interrogatory.

### E. Williams Interrogatory #15

*Affirm that all your responses to requests for production and requests for admission in this matter are the truth, the whole truth, and nothing but the truth.*
**Answer: This is not a proper interrogatory and requires no response.**

---

[2] ECF #45-1, LDS000181.

Defendant Williams opposes being compelled to answer this interrogatory because the truth or falsity of his factual assertions in discovery is not "valid information." What constitutes "valid" information is not clear, as Defendants do not elaborate on this argument.

Nor do they offer any cases in support of it.

Or statutes.

Or rules.

In short, Defendants have simply made this argument up. Unsurprisingly, it is incorrect. Defense counsel has made various assertions on Defendants' behalf in response to discovery, such as the denial that Defendant Williams is in possession of relevant records (Request for Inspection #1–2, 15); that he "did not have authority to terminate Mr. Williamson and did not make the decision to do so" (Request for Inspection #15).

It seems indisputable that in a deposition, Mr. Williamson could demand testimony, on the record and under oath, whether the factual assertions in his discovery responses (or any other relevant document) were true or false. Defendant Williams does not—and cannot—explain why he is not required to provide the same information in response to an interrogatory. In either case, Rule 26 makes clear that the "scope of discovery" is identical: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." If the question is valid in a deposition, it is valid in an interrogatory.

Why, then, should the Court force a party to undertake the far more time-consuming and expensive route to information under Rule 30 that should be available with an interrogatory under Rule 33? It should not, as the Rules of Civil Procedure must be "construed, administered,

and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

  F.  **Williams Interrogatory #11**

*Identify all steps you took to address Mr. Williamson's reports that County funds were being misspent.*
**Answer: Williams objects to this interrogatory as "Mr. Williamson's reports" are vague as to subject and date. Williams cannot respond without further clarification.**

Defendants now argue that this interrogatory is moot because the Court has dismissed a whistleblower-retaliation claim. But this information is equally relevant to the First Amendment retaliation claim: If Mr. Williams did not want the misspending addressed, that makes it more likely that he would retaliate against a person who spoke out against it. Defendant Williams also suggests that he has fully responded because it has not been necessary to "supplement" his answer, but he hasn't answered at all. If what he means to say is that he took no actions to address Mr. Williamson's reports that County funds were being misspent, he should say so; if he did take action, he should say so.

  G.  **Request for Inspection #2**

*Produce records of all phone calls to or from any phone you regularly used from October 1, 2020 through August 31, 2021.*
**Answer: This Request is overly broad, unduly burdensome, and irrelevant to the claims and defenses in this case. Subject to these objections, the requested records are not in Mr. Williams's possession.**

Mr. Williams no longer maintains that this request is overly broad, unduly burdensome, or irrelevant. He only denies having these records in his possession. But these records are available to anyone with a cellular telephone, as Mr. Williams does. The fact that they are not in his "possession," but rather the phone company's, is irrelevant, as records for his account remain within his "possession, custody, or control" within the meaning of Rule 34. *See*, *e.g.*, *Measured Wealth Priv. Client Grp., LLC v. Foster*, No. 20-CV-80148, 2021 WL 8894481, at *1 (S.D. Fla.

Jan. 5, 2021) ("The phone records at issue are within Defendant's control because she has the legal right to obtain the documents on demand [from] her wireless carrier.").

And it should be clear that Mr. Williams would not have destroyed those records or allowed his provider to purge them, as Mr. Williamson first requested them in the state-court litigation, putting him on notice that they were relevant to this action more than two years ago.[3] The only way Mr. Williams could not be required to produce them, then, is if he has actually destroyed them, in which case he is subject to sanctions under Rule 37.

H.  **Requests for Inspection #10–14**

These requests sought records related to various projects being undertaken by the Lorain County Board of Commissioners. Defendant Williams no longer argues that these requests are overly broad or unduly burdensome. He merely argues that Mr. Williamson "has never rebutted" his relevancy objection.

That is objectively false, as Mr. Williamson explained the relevance of these documents in his August 29 letter to opposing counsel,[4] as well as in his supplemental motion to compel, where he explained, for instance, that these are the projects that Defendant Williams was pressuring him to discuss with Commissioner Hung, and that if any of these priorities were a particular priority, "that would make it more likely that he would retaliate against Mr. Williamson for refusing to support it."[5]

Defendant Williams glosses over those facts and instead offers an argument that these records can't be relevant because Plaintiff's counsel agreed "that these records were not relevant to the pending motion for summary judgment." This assertion is (1) not supported by the record;

---

[3] ECF #45-2, Request for Inspection #2.
[4] ECF #40-16, 7.
[5] ECF #40, 17.

because (2) it is false. In any event, it is irrelevant, as Mr. Williamson is entitled to discovery on facts relevant to his claims so that he may use them at trial, even if Defendant Williams's motion for summary judgment did not address those facts.

### I. Requests for Inspection #18–33

These requests sought information related to Mr. Williams's financial situation for purposes of assessing the appropriate measure of punitive damages. Defendant Williams argues that there is no reason to think about punitive damages because Mr. Williamson "has not established a shred of evidence that would support a claim for punitive damages." Again, this argument is not supported by the record, because it is false. If Mr. Williamson had no evidence supporting his claims, he would not have survived summary judgment. Instead, the Court's order on that motion dedicated four pages to the facts demonstrating that "sufficient evidence" supports Mr. Williamson's claims against Defendant Williams.[6]

Defendant Williams also cites Ohio Rev. Code § 2315.21 as grounds for refusing to participate in discovery on punitive damages, arguing that "Ohio law requires that the trial must be bifurcated with respect to punitive damages." True enough, but irrelevant to the question at hand, for three reasons:

1. The statute does not require bifurcation of discovery; it only requires courts to bifurcate an "initial stage of the trial" (focusing only on liability and compensatory damages) from "the second stage of the trial" (evaluating punitive and exemplary damages).

2. Even if it did, Mr. Williamson has already survived the portion of discovery dedicated to liability by surviving summary judgment, making him eligible to take discovery on damages.

---

[6] ECF #42, 28–31

3. Most importantly, federal courts hearing federal claims are not bound by Ohio's procedural rules. *Advance Wire Forming, Inc. v. Stein*, No. 1:18CV723, 2022 WL 4465680, at *2 (N.D. Ohio Sept. 21, 2022) (collecting cases).

J. **Requests for Inspection #34–43**

These requests sought information related to the various affirmative defenses Mr. Williams has asserted. Defendant Williams argues that he has satisfied these demands because he identified a "realm of documents that *may* support the affirmative defenses."[7] But Rule 34 does not permit a party to respond to a request for documents relevant to very specific topic by gesturing vaguely in the direction of a 40,000-page document dump; instead, it requires the responding party to "produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Defendant Williams has done neither.

IV. **Because Defendant Williams was sued in both his individual and official capacities, the Lorain County Board of Commissioners is likewise required to respond to discovery with information in its possession, custody or control.**

A. **Because the course of proceedings makes clear that Defendant Williams was sued not only in his official capacity, but his personal capacity, as well, both he and the Board of Commissioners are effectively parties to the case.**

"Absent a specification of capacity, it is presumed that a state official is sued in his official capacity." *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002). But if the "course of proceedings" indicates that a plaintiff is also seeking to hold an official individually liable, the case should proceed against him in an individual capacity, as well. *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001).

For instance, in *Moore v. Harriman*, the plaintiff in an excessive-force case filed an excessive-force complaint against five police officers but did not specify whether he was suing

---

[7] ECF #44, 11 (emphasis added).

them in their official or individual capacities. The district court dismissed the claims against the officers in their individual capacities, holding that the complaint failed to give them adequate notice of their potential liability. But the Sixth Circuit reversed, holding that the course of proceedings adequately put the officers on notice of the nature of the claims against them, noting that the complaint "lists only the officers' names, not their official titles" in its caption, that it discussed how the officers acted for "themselves" and behaved with "malice," and that it sought punitive damages: "Taken as a whole, the complaint likely provided sufficient notice to the officers that they were being sued as individuals."

All the same is true here:

- Mr. Williamson's complaint does not specify that his claims were against Mr. Williams in his official capacity only.
- The caption identifies Defendant Williams by name.
- The caption does not identify Defendant Williams by title.
- The complaint explicitly alleges that the underlying constitutional violation flowed from Defendant Williams's agreement with his co-conspirators to avoid "exposing *themselves* to legal liability."[8]
- The complaint explicitly alleges that Defendant Williams acted with malice.[9]
- The complaint explicitly seeks punitive damages.[10]

Mr. Williamson's claims are therefore individual capacity claims *in addition to* the official-capacity claims that are the "presumed" default in a Section 1983 claim. And "[s]ince official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," *Monell v. Dep't of Soc. Servs. of City of New York*, 436

---

[8] ECF #1, ¶ 92 (emphasis added).
[9] ECF #1, ¶ 121.
[10] ECF #1, p. 22.

U.S. 658, 691 (1978), both Mr. Williams and the entity on whose behalf he retaliated against Mr. Williamson—the Lorain County Board of Commissioners—remain parties to the case.

### B. Because the Board of Commissioners is a party to the case, it must respond to discovery.

Because "[a] lawsuit against an officer in his or her official capacity is another way of suing the public entity represented by that official," the duty to respond to discovery demands directed at the individual is not limited to the individual himself. "[A]ny non-privileged, relevant information within the control of the related public entity is also discoverable against that official." *Tyler v. Suffolk Cnty.*, 256 F.R.D. 34, 37 (D. Mass. 2009).

For instance, in *Green v. Fulton*, 157 F.R.D. 136, 142 (D. Me. 1994), , the plaintiff in an excessive-force case sued a police chief and two patrolmen under Section 1983, and then served discovery demands seeking personnel files and internal-affairs reports. The Defendants objected on the grounds that the requested documents were "all official records within the care, custody and control of the Town of Windham, a non-party, and not any of the defendants." But the district court granted a motion to compel, holding that because the plaintiff had brought both official– and individual-capacity claims, the plaintiff was entitled to information and records available not only to the officers themselves, but also the information and records available to the governmental entities behind the official-capacity claims.

The same rule should apply to Defendant Williams here. Although it is his name on the complaint, the claims against him for actions taken in his official capacity are claims against the Lorain County Board of Commissioners, which must provide full disclosure of any information or records responsive to Mr. Williamson's interrogatories or requests for inspection.

The County therefore may not continue to withhold information within its possession, custody, or control merely because Defendant Williams is currently the only named defendant.

So on the requests where Williams himself denies having responsive information or records, such as Interrogatories 8 and 14, or Requests for Inspection 15–16, the Board of Commissioners is nonetheless required to provide full responses as well.

### C. Because they waived privilege for communications about Mr. Williamson's termination, the Court should compel Defendants to fully respond.

The Board of Commissioners is likewise required to disclose its privileged communications with respect to matters that are subject to Mr. Williamson's discovery demands.

Defendants concede that the voluntary disclosure of their communications with employment counsel regarding Mr. Williamson's termination effect at least a "partial waiver" of their privilege; the only question, then, is how much of the privilege has been waived. Relying on *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1426 n. 13 (3d Cir. 1991), they concede that the waiver extends beyond the communications actually disclosed whenever "a partial waiver would be unfair to the party's adversary."[11] Under *Westinghouse*, partial disclosures are unfair if they permit the disclosing party "to present a one-sided story to the court"; in such cases, "the privilege will be waived as to all communications on the same subject."

That is just what has happened here. Defendants waived the privilege to present a one-sided story of Mr. Williamson's termination to the Court, arguing in their motion for summary judgment that the disclosed communication proves that they terminated Mr. Williamson on the advice of counsel for a "legitimate, non-discriminatory reason."[12] They then go a step further, saying that the Board terminated Mr. Williamson after considering that memo's conclusion that

---

[11] ECF #44, 12.
[12] ECF #27, 7.

"termination is warranted."[13] But as the Court already acknowledged, there is evidence showing that that reason was pretext, and Mr. Williamson is therefore entitled to know whether counsel's advice was based on complete and accurate information from Defendant Williams, as well as whether those communications substantiate the allegation that counsel actively participated in cooking up a pretext.

## CONCLUSION

Mr. Williamson's discovery demands are tightly targeted requests at relevant facts going to the heart of his remaining claims against Defendant Williams and the Board of Commissioners. Because Defendants have waived privilege and all their other objections, the Court should order them to fully reply to Mr. Williamson's discovery demands.

Respectfully submitted,

/s/Brian D. Bardwell
Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Plaintiff Harry Williamson*

## CERTIFICATE OF SERVICE

I certify that on October 11, 2024, this document was served on opposing counsel as provided by Fed. R. Civ. P. 5(b)(1).

/s/Brian D. Bardwell
Brian D. Bardwell (0098423)
*Attorney for Plaintiff Harry Williamson*

---

[13] ECF #27, 7–8.