# PERSONNEL POLICY MANUAL FOR THE LORAIN COUNTY BOARD OF COMMISSIONERS



**MICHELLE HUNG, PRESIDENT**
**DAVID J. MOORE, VICE PRESIDENT**
**MATT LUNDY, MEMBER**

**COUNTY ADMINISTRATOR- TOM WILLIAMS**
**Res#18-789 – 12/12/18**
**EFFECTIVE 1/1/2019**

LDS000001

# PERSONNEL POLICY MANUAL

## FOR THE

## LORAIN COUNTY
## BOARD OF COMMISSIONERS

## REVISED DECEMBER 2018

**Prepared By:**

**Clemans, Nelson & Associates, Inc.**
**2351 South Arlington Road**
**Suite A**
**Akron, Ohio  44319**
**330-785-7700**
**www.clemansnelson.com**

LDS000002

## ACKNOWLEDGMENT OF
## PERSONNEL POLICY MANUAL

Please sign below and present this acknowledgment slip to your supervisor for inclusion in your personnel file.

I hereby acknowledge that I have been notified of the existence of the Lorain County Board of Commissioners' revised 2018 Personnel Policy Manual. I understand that this manual outlines my privileges and obligations as an employee of the County and it is my responsibility to familiarize myself with the information contained in this manual. I also understand that my department head will have a copy of the manual that I will be able to review.

Further, I understand that I will be notified of any applicable changes in this manual, and that such notification may be in oral or written form.

_____          _____
Signature of Employee                                                      Date

**ACKNOWLEDGMENT OF EMPLOYER=S**
**INFORMATION REGARDING THE**
**DRUG FREE WORKPLACE ACT POLICY**

Please sign below and present this acknowledgment slip to your supervisor for inclusion in your personnel file.

I hereby acknowledge that I have received and read a copy of the Lorain County policy and procedures on a Drug Free Workplace, which establishes my obligations as an employee of the County.  By my signature below, I hereby acknowledge that I understand this policy, and agree to support and comply with its terms and conditions.  I further understand that if I breach this policy or acknowledgment, I could be subject to criminal prosecution and/or discipline including termination of my employment.

_____       _____
Signature of Employee                              Date

## ACKNOWLEDGMENT OF RECEIPT
## OF OHIO ETHICS LAWS AND RELATED STATUTES

Please sign below and present this acknowledgment slip to your supervisor for inclusion in your personnel file.

By my signature below, I hereby acknowledge that I have received a copy of the Ohio Ethics Laws and Related Statutes.

_____          _____

Signature of Employee                                      Date

LDS000005

# TABLE OF CONTENTS

**SECTION 1**          **INTRODUCTION**

1.1          Policies
1.2          Definition of Terms
1.3          Objectives
1.4          Management Rights
1.5          Availability of Reference
1.6          Administration of the Personnel System
1.7          Americans with Disabilities Act


**SECTION 2**          **METHOD OF FILLING VACANCIES**

2.1          Equal Employment Opportunity
2.2          Evaluation of Applicants
2.3          Disqualification
2.4          Promotion
2.5          Transfers
2.6          Selection Process and Recordkeeping
2.7          Immigration Reform and Control Act


**SECTION 3**          **APPOINTMENT**

3.1          Classified and Unclassified Employment
3.2          Employment Status
3.3          Seniority
3.4          Medical Examination
3.5          Personnel Files


**SECTION 4**          **EMPLOYEE PERFORMANCE**

4.1          Probationary Period
4.2          Performance Evaluation
4.3          Training
4.4          Ethics
4.5          Nepotism

LDS000006

# TABLE OF CONTENTS (Continued)

**SECTION 5**      **CLASSIFICATION AND COMPENSATION**

5.1        Classification Plan
5.2        Compensation Plan
5.3        Pay Period
5.4        Compensatory Time
5.5        Payroll Deductions
5.6        Retirement Plan and Deferred Compensation
5.7        Workers= Compensation
                    Employee Incident/Accident Report
                    Back Injury Report
                    Supervisor's Investigation Report
                    Statement of Witness to Accident
5.8        Expense Reimbursement
5.9        Health Care Coverage
5.10      Tuition Reimbursement


**SECTION 6**      **ABSENCES**

6.1        Holidays
6.2        Vacations
                    Request to Carry Over Vacation
                    Request to Convert Vacation to Pay
6.3        Sick Leave
                    Employee Request for Leave
6.4        Sick Leave Conversion
                    Sick Leave Conversion Form
6.5        Bereavement Leave
6.6        Court Leave
6.7        Military Leave
6.8        Leave of Absence Without Pay
6.9        Disability Leave and Separation
6.10      Calamity Days
6.11      Family and Medical Leave
                    Family and Medical Leave Notice
6.12      Precinct Election Official Leave

LDS000007

**TABLE OF CONTENTS (Continued)**

**SECTION 7**     **CONDUCT**

7.1      Attendance
7.2      Tardiness and Lateness
7.3      Bulletin Boards
7.4      Health & Safety
7.5      Workplace Violence
7.6      Concealed Weapons
7.7      Tools, Supplies, Equipment, and Telephones
7.8      Driver/Vehicle Risk Reduction Program
7.8.1      CDL Driver Notification/Disqualification Policy
7.9      Drug Free Work Place Policy
         Drug Free Work Place Policy Employer Statement
         Drug Free Work Place Policy Acknowledgment of Receipt
         Drug Free Work Place Notice to Employees
7.10.1      Drug and Alcohol Use for Non-CDL Employees
         Test Referral Form
         Reasonable Cause Form
         Return to Duty Agreement
7.10.2      CDL Alcohol and Drug Testing Policy
         Certificate of Receipt for CDL Alcohol and Drug Testing Policy
7.11      Gambling
7.12      Outside Employment or Activities
7.13      Dress and Work Area
7.14      Solicitation and Distribution
7.15      Political Activity
7.16      Discriminatory Harassment
         Discriminatory Harassment Complaint Form
7.17      Garnishments
7.18      Employee Felony Conviction in Court of Law
7.19      Employee Misdemeanor Conviction in Court of Law
7.20      Arrest of an Employee
7.21      Employee/Employer Responsibility for Reporting Violations of Law
7.22      Public Records
7.23      Computer/Internet/Electronic Mail Policy
7.24      Personal Information Policy
7.25      Fraud Reporting/Whistleblower Protection
         Fraud Reporting Acknowledgement Form

## TABLE OF CONTENTS (Continued)

**SECTION 8**     **DISCIPLINE, APPEALS, AND GRIEVANCES**

8.1     Discipline
8.2     Grounds for Disciplinary Action and Penalties
                Record of Instruction and Cautioning
                Record of Written Reprimand
                Record of Suspension of 24 Hours or Less
8.3     Predisciplinary Conference
                Notice of Predisciplinary Conference
8.4     Appeals
8.5     Complaint Procedure
                Complaint Form


**SECTION 9**     **NON-DISCIPLINARY SEPARATION**

9.1     Resignation
9.2     Exit Interview
                Exit Interview Form
9.3     Layoff and Recall

# SECTION 1

# INTRODUCTION

LDS000010

| POLICIES | SECTION 1.1 |
|----------|-------------|
|          | Page 1 of 2 |

A.    Policies are defined as the basic rules which guide administrative action for accomplishing an organization's objectives.  Comprehensive and clearly defined policies, consistently and fairly administered, are essential to the success of any organization.

B.    This manual contains policies set forth by the Employer that are applicable to all employees unless otherwise noted.  However, this manual is not to be construed as an employment contract.  Any provision of a collective bargaining agreement in conflict with any policy herein shall supercede said policy in its application to bargaining unit employees.

C.    All personnel charged with the responsibility of administering policy must be thoroughly knowledgeable of the contents of this manual.  It is important these policies be administered in a systematic, fair, and impartial manner.  Undoubtedly, there will be situations which will require administrative interpretation of the policies set forth in this manual.  Every effort must be made to ensure that such decisions are made objectively, with the general intent of the policy in mind.

D.    The Employer reserves the right to develop new policies, revise or augment existing policies, delete existing policies, or make any other modification deemed appropriate. The Employer will normally try to give employees advance notification before a policy is revised, implemented, deleted, etc.  However, the Employer reserves the right to make such changes without advanced notification if such is deemed appropriate.

E.    It is important that all manuals be kept up to date.  All such changes (additions, deletions, revisions, etc.) must be dated, issued to all manual holders, and communicated to all affected employees.

| POLICIES | SECTION 1.1 |
|----------|-------------|
| **(Continued)** | **Page 2 of 2** |

F.   This policy manual is a guide to be utilized by management to ensure uniformity and non-discriminatory application of the conditions of employment.  In the event there is a conflict between the matters expressed in this manual and any other applicable laws or documents, the applicable law or full text of the written document will prevail.

G.   If any article or section of this manual or any amendments thereto shall be held invalid by operation of law or by a tribunal of competent jurisdiction, or compliance with or enforcement of any articles or sections of this manual shall be restrained by such tribunal, the remainder of this manual and any amendments thereto shall not be affected and shall remain in full force and effect.

| **Original Adoption Date** | **Revision Date** |
|----------------------------|-------------------|
| 3/92 | 3/2006 |

| DEFINITION OF TERMS | SECTION 1.2 |
|---|---|
| | Page 1 of 5 |

Unless otherwise indicated in these policies, the following definitions apply:

A.    **Absenteeism** - The practice of an employee failing to report for work for a period of one (1) or more days, or failure to report within the prescribed time when he or she has been scheduled for work.  Misuse or abuse of sick leave regulations shall also be considered absenteeism.

B.    **Absent Without Leave** – An absence from work without proper authorization from the Appointing Authority or designee to be absent from work.

C.    **Appointing Authority** –All elected County officials, officers, boards, or commissions and such designees of elected County officials, officers, boards, or commissions as may be authorized by law to make appointments to positions.

D.    **Classified Employee** - A County employee who serves in a position which has not been designated as being in the unclassified service by virtue of Ohio Revised Code Section 124.11 or other relevant sections of the Ohio Revised Code.

E.    **Classification** - A group of positions sufficiently similar in respect to duties, responsibilities, authority, and qualifications so that the same descriptive title may be used for each.  A classification may include only one (1) position in certain instances.

F.    **Collective Bargaining Agreement** – The labor agreement, if any, between the Appointing Authority and the Union chosen to represent the employees of a defined bargaining unit.

G.    **County** - The County of Lorain, State of Ohio.

**DEFINITION OF TERMS**                              **SECTION 1.2**
**(Continued)**                                       **Page 2 of 5**

H.      **Department** – A distinct unit of an Appointing Authority's office.

I.      **Dishonesty** - Disposition to lie, cheat or defraud; untrustworthiness; lack of integrity.

J.      **Employee** - Any person holding a County position subject to appointment, removal, promotion, or reduction by an Appointing Authority.

K.      **Employer** - The Appointing Authority.

L.      **Excused Absence** - Being absent from work with the approval of the Appointing Authority or designee (e.g., vacation, holiday, compensatory time, unpaid leave of absence).

M.      **Incompetency** - Lack of ability, legal qualification, or fitness to perform tasks required of an employee.

N.      **Inefficiency** - Quality of being incapable or indisposed to perform tasks required of an employee.

O.      **Instruction and Cautioning** - The discussion a supervisor holds with an employee in which the supervisor disciplines the employee for his or her conduct and impresses upon him or her the need for improvement.  This method of discipline can eliminate misunderstandings immediately and set and maintain desired standards of conduct and performance.  A notation of the date, time, and reason for instruction and cautioning should be kept in the employee's personnel file by the Appointing Authority in the event the conduct of the employee does not improve and subsequent disciplinary action is required.

| DEFINITION OF TERMS | SECTION 1.2 |
|---|---|
| (Continued) | Page 3 of 5 |

P.    **Insubordination** - State of being unwilling to perform tasks required of an employee; refusal to obey an order issued by the employee's administrative superior (supervisor).

Q.    **Malfeasance** - The commission of some act which is positively unlawful; the doing of an act which is wholly wrongful and unlawful.

R.    **Misfeasance** - The improper performance of some act which a person may lawfully do.

S.    **Nonfeasance** - Non-performance of some act which ought to be performed, omission to perform a required duty at all, or total neglect of duty.  "Nonfeasance" means the total omission of an act which a person ought to do.

T.    **Position** - Any specific employment, or job calling for the performance of certain duties, and for the exercise of certain responsibilities by an individual employee.  All of the slots in the organizational chart constitute the positions within the department.  The arrangement of these positions under different supervisors, sections, or crews, constitute job assignments.  Positions can be rearranged or reassigned, but the employee's classification remains the same unless reclassified.

U.    **Promotion** – The act of placing an individual in a vacant position that carries a higher pay range or rate of pay than that previously held.

V.    **Sick Leave Abuse** – Includes, but is not limited to, the following:  The use of sick leave for any purpose other than as provided by applicable law.  Calling in sick when the employee is able to work.  Reporting illness in the employee's immediate family when such illness does not exist.  Reporting off sick to participate in some other activity or take

care of personal business.  Setting a pattern of reporting off sick on certain days of the week or following regular days off, over an extended period of time.  Failure to follow the rules and regulations regarding use of sick leave and reporting procedures.

W.     **Supervisor** - An individual who has been authorized by the Appointing Authority or designee to oversee and direct the work of lower level employees on a daily basis.

X.     **Suspension** - Normally this involves relieving an employee from duty without pay as a disciplinary measure aimed at improving the employee's conduct.  A suspension is usually issued after instruction and cautioning and written warnings have failed to improve the employee's conduct or in the instance of a Group II violation.  In certain instances, suspensions may be worked with pay (suspension of record) without impacting the effect of the suspension for purposes of recording disciplinary actions.

Y.     **Temporary Employee** - An unclassified full or part-time employee who works in a position which is of a non-permanent nature, which position has a specified duration of time, not to exceed one hundred twenty (120) days. However, a temporary appointment in excess of one hundred twenty (120) days may be made due to sickness, disability, or other approved leave of absence of a regular employee.  In such case, the temporary appointment may continue during the period of sickness, disability, or other approved leave of absence.

Z.     **Transfer** - The movement of an employee from one position to another where there is no change in level of responsibility, classification, or salary.

AA.    **Unclassified Employee** - A County employee who serves in a position which has been correctly designated as being in the unclassified service by virtue of ORC Section 124.11,

| DEFINITION OF TERMS | SECTION 1.2 |
|---|---|
| (Continued) | Page 5 of 5 |

or other applicable section of the Revised Code. Such employees serve at the pleasure of the Employer.

BB. **Work Unit -** A unit of an Appointing Authority's office, usually directed by a supervisor and charged with a specific work function, which contributes to the accomplishment of the office's public service function, e.g., civil, criminal, records, etc.

CC. **Written Reprimand -** This is the written record of disciplinary action, usually issued after instruction and cautioning has failed to improve an employee's conduct.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | 6/2009 |

| OBJECTIVES | SECTION 1.3 |
|---|---|
| | Page 1 of 1 |

A.  The Employer recognizes that a personnel system which recruits and retains competent, dependable County personnel is indispensable to effective County government.

B.  The policies and procedures contained in this manual are designed to:

   1.  Promote high morale among County employees by fostering good working relationships and by providing uniform personnel policies, opportunities for advancement, and consideration of employee needs and desires;

   2.  Maintain recruitment and promotion practices which will enhance the attractiveness of a County career and encourage each employee to give his or her best effort to the County and the public;

   3.  Provide courteous and dependable service to the public;

   4.  Provide fair and equal opportunity for qualified persons to enter and progress through County service, in a manner based on merit and fitness as determined through fair and practical personnel management methods;

   5.  Conduct all operations in an ethical and legal manner so as to bring into being a reputation as an efficient, progressive body in the community and state.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

| MANAGEMENT RIGHTS | SECTION 1.4 |
| --- | --- |
| | Page 1 of 2 |

A.   The Employer maintains the right and the authority to administer the business, to promulgate rules and regulations, and to exercise the prerogatives of management, including but not limited to the following:

1.   To manage and direct County employees, including the right to select, hire, promote, transfer, assign, evaluate, layoff, recall, reprimand, suspend, discharge, or discipline for cause, and to maintain discipline among employees;

2.   To manage and determine the location, type and number of physical facilities, equipment, programs and the work to be performed;

3.   To determine each department's goals, objectives, programs, and services, and to utilize personnel in a manner designed to effectively and efficiently meet these purposes;

4.   To determine the size and composition of the work force and each department's organizational structure, including the right to layoff employees from duty due to lack of work or lack of funds;

5.   To determine the hours of work and work schedules, and to establish the necessary work rules for all employees;

6.   To determine when a job vacancy exists, the duties to be included in all job classifications, and the standards of quality and performance to be maintained;

7.   To determine the necessity to schedule overtime and the amount required thereof;


| MANAGEMENT RIGHTS | SECTION 1.4 |
|---|---|
| (Continued) | Page 2 of 2 |

8.      To determine each department's budget and uses thereof;

9.      To maintain the security of records and other pertinent information.

| **Original Adoption Date** | **Revision Date** |
|---|---|
| _____3/92_____ | _____ |

| AVAILABILITY OF REFERENCE | SECTION 1.5 |
|---|---|
| | Page 1 of 1 |

A.   All employees shall be provided with a copy of these policies.  However, employees are not permitted to use work hours to review these policies, unless so authorized by the immediate supervisor.

B.   All supervisory personnel responsible for administering policy are to become familiar with this manual.  Supervisory personnel shall administer all policies and procedures contained herein and ensure that subordinate personnel comply with these policies and procedures.  Employees are encouraged to ask their supervisor questions regarding any issue that may be unclear.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

| ADMINISTRATION OF THE PERSONNEL SYSTEM | SECTION 1.6 |
|---|---|
| | Page 1 of 1 |

A.   The Employer, through the appointed management staff, shall be responsible for ensuring adherence to the established policies and procedures.

B.   The Employer shall designate various management and supervisory personnel to administer the personnel system and to implement policies and procedures.

**Original Adoption Date**

3/92

**Revision Date**

LDS000022

| AMERICANS WITH DISABILITIES ACT (ADA) | SECTION 1.7 |
|---|---|
| | Page 1 of 1 |

The Employer supports the intent and purposes of the Americans with Disability Act (ADA) and will not discriminate against qualified individuals with disabilities because of the disability of such individual in regard to job application procedures, hiring, advancement, discharge, compensation, job training, and other terms and conditions and privileges of employment.

| Original Adoption Date | Revision Date |
|---|---|
| _____ | _____ |



# SECTION 2

# METHOD OF FILLING VACANCIES

LDS000024

| EQUAL EMPLOYMENT OPPORTUNITY | SECTION 2.1<br>Page 1 of 1 |
|---|---|

A.     All employees and/or applicants for employment will be hired, promoted, transferred, demoted, laid off, terminated, suspended, or evaluated in a fair and equitable manner based solely upon merit, fitness, and such bonafide occupational qualifications as may be required for a particular position.  No personnel decision shall be based upon race, color, religion, sex, national origin, age, disability, or any other class protected by state or federal law.

B.     It is the intention of the Employer not to discriminate against any citizen or person intending to become a citizen insofar as that person has completed a legal declaration stating that he/she intends to declare U.S. citizenship within six (6) months following initial eligibility for naturalization.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

| EVALUATION OF APPLICANTS | SECTION 2.2 |
|---|---|
| | Page 1 of 2 |

A.     The Employer or designee shall evaluate all applicants for employment.  Applicants must submit to various job-related screening procedures as deemed appropriate by the Employer such as reference checks, interviews, background checks, performance tests, etc.   Applicants may be required to sign appropriate release of information forms authorizing the Employer to obtain otherwise confidential information.

B.     The Employer may require a selected applicant to pass an appropriate examination as a condition of employment to determine whether the applicant can physically and/or mentally perform the essential functions of the job, with reasonable accommodation where necessary.   Incumbents of specified positions may be legally required to pass a medical examination or be inoculated during employment (see Section 3.4).

C.     If the Employer requires a physical or mental examination of applicants for hire or promotion, it will only require the physical or mental examination after selecting the preferred applicant for appointment.  When the Employer sends a selected applicant for such an examination, it will send information describing the essential functions of the job to the licensed, qualified practitioner conducting the examination, and request that the practitioner indicate in writing whether the  applicant can perform the essential functions of the job as identified; and if not, what accommodation, if any, the applicant would require in order to do the job (see Section 3.4).

D.     Incumbents of specified positions may be legally required to submit to a regularly scheduled medical examination during employment to ensure continued ability to perform the essential functions of the incumbent's position.  Examinations during

**EVALUATION OF APPLICANTS**                              SECTION 2.2
**(Continued)**                                            **Page 2 of 2**

employment shall be conducted by a licensed medical practitioner selected by the Employer.  The Employer will pay for such medical examinations.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

| DISQUALIFICATION | SECTION 2.3 |
|---|---|
| | Page 1 of 1 |

A.  An applicant shall be eliminated from consideration if he or she:

    1.  does not possess the knowledge, skills, and abilities necessary to effectively perform the essential functions of the vacant position either with or without reasonable accommodation;

    2.  has made a false statement of material fact on the application form or supplements thereto;

    3.  has committed or attempted to commit a fraudulent act at any stage of the selection process; or

    4.  is an alien not legally permitted to work.[1]

B.  An applicant may also be eliminated from consideration upon other reasonable and legal grounds relating to job requirements.

C.  If an applicant is hired and it is subsequently discovered that any disqualifying criteria apply, the employee will be terminated.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

---

[1]  This is not intended to be an exhaustive list of reasons.  It simply reflects some of the most common reasons an applicant is eliminated from consideration.

LDS000028

| PROMOTION | SECTION 2.4 |
|-----------|-------------|
|           | Page 1 of 1 |

A.    Promotional opportunities shall be offered to qualified employees whenever possible. The promotion process may be limited to qualified employees, or may allow such employees preference in application and/or consideration, to the extent such is permitted by state laws.

B.    Factors to consider for promotion include, but are not limited to, previous related experience, required training courses, annual performance evaluation ratings, records of disciplinary action, licenses and/or certifications required for the position, and any other job-related criteria.

C.    In order to be eligible for a promotion, an employee must have successfully completed his probationary period in his current position.

D.    Nothing herein shall be construed as a guarantee that an employee has an inherent right to a position due exclusively to the fact that he is currently employed by the Employer.

E.    Promotions within the bargaining unit shall be made in accordance with the terms of the collective bargaining agreement.

| Original Adoption Date | Revision Date |
|------------------------|---------------|
| 3/92                   |               |

**TRANSFERS**                                              **SECTION 2.5**
                                                           **Page 1 of 1**

A.     A transfer is defined as the movement of an employee from one position to another where there is no change in classification or salary.

B.     A transfer shall be made if it is in the best interest of the Employer.  Requests for transfer may be submitted by an employee or the Employer may designate certain employees for transfer.

C.     A request by an employee to be transferred will be granted at the discretion of the Employer.  In all cases, the needs of the Employer (personnel requirements, availability of work, skill requirements, etc.) will determine if such a request is granted.  The needs of the Employer in all instances shall take priority over the wishes of the employee in such matters.

**Original Adoption Date**                          **Revision Date**

_____3/92_____                    _____

| SELECTION PROCESS AND | SECTION 2.6 |
|---|---|
| RECORDKEEPING | Page 1 of 1 |

A.    Each appointing authority is, of course, ultimately responsible for the hiring of new employees for their office.  The County Commissioners' Personnel Office shall be available, however, to assist County appointing authorities with the selection of qualified personnel.  The role of the Personnel Office may include, but not necessarily be limited to, maintaining applicant files, referring qualified applicants to appointing authorities, conducting reference checks on applicants, and recommending applicants for hiring purposes to appointing authorities.  The Personnel Office shall also be available to assist appointing authorities through the promotional process in order to help ensure that appointing authorities adhere to all promotional policies and, if applicable, all relevant articles and sections of any labor agreement.

B.    Each appointing authority is also responsible for maintaining records to reflect the disposition of all job applicants.  Such records shall be kept on file for at least a two (2) year time period, except documents verifying the applicant's identity and employment eligibility, which shall be kept on file in accordance with the provisions outlined in Section 2.8.  Documents which must be included (as applicable) are a completed job application form, reference check records, medical examination data, performance test scores and/or other job-related screening information.

| Original Adoption Date | Revision Date |
|---|---|
| _____ | _____ |

| IMMIGRATION REFORM AND CONTROL ACT | SECTION 2.7 |
|---|---|
| | Page 1 of 3 |

A.    <u>In General</u>:  In accordance with the provisions of the Immigration Reform and Control Act of 1986, as amended by the Immigration Act of 1990, the Employer has adopted the policy set forth below.

    1.    The Employer shall not knowingly hire or recruit or continue employment of any alien hired after November 6, 1986, without substantiating and documenting that alien's eligibility in accordance with provisions established by this policy.

    2.    The Employer has established an employment verification system and shall retain appropriate records establishing that each employee hired after November 6, 1986, is lawfully authorized to work in the United States as either a U.S. citizen or as a properly "documented alien."

    3.    As a condition of continued employment, the Employer shall verify both the identity and the employment eligibility of all applicants considered for employment by ensuring the proper completion of Form I-9.

B.    <u>Pre-employment Requirement</u>

    1.    All applicants to be hired, as a condition of employment, shall be required to complete the biographical information requested by Form I-9 (Refer to Form I-9). The applicant shall attest that he/she is eligible for employment and has presented authentic, original documentation of identity and employment eligibility by placing an X in the appropriate box in Part 1 of the form.  The applicant shall sign the signature space of Part 1 of the form and shall submit the form to the Employer for review and verification.

| IMMIGRATION REFORM AND CONTROL ACT | SECTION 2.7 |
|---|---|
| (Continued) | Page 2 of 3 |

2.     The Employer shall require the applicant to furnish original copies of sufficient documents listed on the I-9 Form to establish both Identity and Employment Authorization.

C.    <u>Post-Hiring Requirements</u>

1.     Within three (3) business days after the appointment of the applicant, the Employer shall physically examine the documentation presented by the new employee, ensure that the documents presented appear to be genuine and relate to the individual, and then complete the remaining portions of Form I-9.

2.     The Employer shall retain Form I-9 and photocopies of the supporting documentation for three (3) years after the effective date of hire or for one (1) year from the date of the employee's separation from service, whichever is later. All I-9 forms shall be maintained in a file separate from the employee's personnel file.

3.     Form I-9 and copies of supporting documentation shall not be used for any purpose or provided to any agency or person other than for the purpose of complying with the requirements of the Act.

4.     Should an employee be rehired or reinstated by the Employer within one (1) year of the date of separation, the Employer may use the original I-9 form and supporting documentation for the purpose of complying with the Act.

5.     If an employee's authorization to work expires, the Employer must immediately re-verify that the employee is still authorized to work, based on the employee's documentation of continuing eligibility or new authority to work.  The Employer

LDS000033

**IMMIGRATION REFORM AND CONTROL ACT**      **SECTION 2.7**
**(Continued)**      **Page 3 of 3**

must review the document and verify on the I-9 Form, noting the document's ID number and expiration date.

D.     <u>Anti-Discrimination Policy.</u>

It is the intention of the Employer not to discriminate in hiring on the basis of national origin and citizenship status except as otherwise provided by law. The Employer will not unlawfully discriminate against any citizen or national of the United States or against any alien authorized to work in the job at issue.

| **Original Adoption Date** | **Revision Date** |
|---|---|
| 3/92 | 12/2018 |

LDS000034



# SECTION 3

# APPOINTMENT

LDS000035

| CLASSIFIED AND UNCLASSIFIED | SECTION 3.1 |
|---|---|
| **EMPLOYMENT** | **Page 1 of 1** |

A.    All employees of the Employer are presumed to be classified civil servants unless the position an employee occupies has been exempted from the classified service by a lawful request of the Employer, or by operation of law.  Most classified employees may only be disciplined for cause and by following the procedures set forth in Chapter 124 of the Ohio Revised Code.  Exceptions include probationary employees, who may be removed or reduced during the probationary period without a showing of cause (see Section 4.1, Probationary Period).  Classified status severely restricts an employee's ability to participate in partisan politics (see Section 7.15, Political Activity).

B.    Some employees of the Employer serve in the unclassified civil service, or occupy positions which have been exempted from the classified service.  Such employees serve at the pleasure of the Employer.  Unclassified employees are not prohibited by law from engaging in partisan political activity on their own time and away from areas in public buildings where official business is transacted or conducted (see Section 7.15, Political Activity).

| **Original Adoption Date** | **Revision Date** |
|---|---|
| 3/92 | |

| EMPLOYMENT STATUS | SECTION 3.2 |
|---|---|
| | Page 1 of 2 |

All employees shall be categorized as full-time, part-time, temporary, seasonal, or intermittent.

1. **Full-time employee** - An employee who works forty (40) hours per work week on a regularly scheduled basis, or works any other standard work week designated by the appointing authority.  Such standard work week shall not consist of less than thirty-five (35) hours.

2. **Part-time employee** - An employee who works less than forty (40) hours per work week or less than full-time as designated by the appointing authority, but on a regularly scheduled basis.

3. **Temporary employee** - An unclassified employee hired for a limited period of time, not to exceed one hundred twenty (120) days.  However, a temporary appointment in excess of one hundred twenty (120) days may be made due to sickness, disability, or other approved leave of absence of a regular employee.  In such case, the temporary appointment may continue during the period of sickness, disability, or other approved leave of absence.

4. **Seasonal employee** – An employee who works a certain regular season or period of the year performing some work or activity limited to that season or period of the year.

5. **Intermittent employee** - An unclassified employee who works on an irregular schedule which is determined by the fluctuating demands of the work, is not predictable, and generally requires less than 1,000 hours per year.

**EMPLOYMENT STATUS**                                         **SECTION 3.2**
**(Continued)**                                                    **Page 2 of 2**

B.    These categories apply for civil service purposes such as order of retention in the event of layoff for full-time, part-time, and seasonal employees.  However, these categories may not apply to certain benefit programs such as eligibility for health care coverage, especially where eligibility and categories of employee status are established by those benefit programs.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | 6/2009 |

| SENIORITY | SECTION 3.3 |
|-----------|-------------|
|           | Page 1 of 1 |

A.    Seniority applies to bargaining unit members only.  There is no definition of seniority in the Ohio Revised Code or the Ohio Administrative Code.  However, the Ohio Revised Code and the Ohio Administrative Code refer to "continuous service," which means the uninterrupted service of an employee with the County where no break in service occurs.

B.    A "break in service" takes place when an employee has had a separation from service of thirty-one (31) days or more.  An authorized leave of absence or any separation from service which carries with it the right of reinstatement, or reemployment as a result of layoff, shall not constitute a break in service, provided the employee is reinstated or reemployed within the allowable time.

However, the time the employee was separated shall not be counted towards the calculation of retention points for continuous service.

C.    Seniority rights for bargaining unit members are governed by the appropriate collective bargaining agreement.

| Original Adoption Date | Revision Date |
|------------------------|---------------|
| 3/92                   | 6/2009        |

| MEDICAL EXAMINATION | SECTION 3.4 |
| --- | --- |
| | Page 1 of 1 |

A.   To make certain that job applicants are physically able to perform the essential functions of the job, a physical or psychological examination by a licensed practitioner may be required.  Examinations for positions requiring strenuous work, especially heavy lifting, may include a lower back x-ray or other examination related to the essential functions of the position.  The Employer will only require a physical or psychological examination of an applicant for employment following the conditional selection of the preferred applicant for appointment (see Section 2.2).

B.   The Employer will select the licensed practitioner to administer the examination.  The cost of any such examinations will be paid by the County.

C.   Incumbents of specified positions may be legally required to submit to a regularly scheduled medical exam during the period of employment with the Employer.  Such an examination is intended to ensure that the incumbent continues to be physically and psychologically able to perform the essential functions of his position.

| Original Adoption Date | Revision Date |
| --- | --- |
| 3/92 | 6/2009 |

| PERSONNEL FILES | SECTION 3.5 |
|---|---|
| | Page 1 of 1 |

A.   The Employer shall maintain official personnel files of all employees.  Such files shall include, but are not limited to:  application for employment; resume; job description and classification; employment status; payroll data; attendance records, including vacation and sick leave; performance evaluations; other individual employment data pertaining to hiring, promotion, demotion, transfer, layoff and termination.

B.   Employees shall have the right of reasonable inspection of their official personnel file. Such inspection shall occur during non-work time and the employee must provide at least one (1) day advance written request to his or her department head.

C.   Employees must notify their immediate supervisor of any change in:  name, address, marital status, telephone number, citizenship, selective service classification, or association with any government military service organization.  Such notification shall be provided within seven (7) days of the change.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

# SECTION 4

# EMPLOYEE PERFORMANCE

LDS000042

**PROBATIONARY PERIOD**                                   SECTION 4.1
                                                          Page 1 of 2

A.     Each employee newly hired or promoted into a classified position shall serve a probationary period.  Probationary periods shall be set at one hundred eighty (180) days, unless extended by authorization of the Director of the Ohio Department of Administrative Services, but in no case shall such period exceed one (1) year.

B.     Probationary periods for bargaining unit employees are governed by the collective bargaining agreement.

C.     Supervisors shall use the probationary period to closely observe and evaluate the employee=s performance and aptitude for the job.  Likewise, the employee is encouraged to bring problems to the supervisor to enhance his or her performance.  Supervisors have a responsibility to only recommend retention of those employees who meet acceptable work standards during the probationary period.

D.     An employee may be separated at any time during the probationary period for unsatisfactory service.  An employee who is removed during the probationary period does not have the right to appeal to the State Personnel Board of Review.

E.     Employees serving promotional probationary periods may be reduced to the classification and salary held prior to the promotion upon failure of the promotional probationary period.  The action of reduction for failure to complete a promotional probationary period shall not be considered a disciplinary action, and shall not serve to eliminate the employee for consideration for advancement to other positions.

F.     The probationary period for full-time employees and part-time employees who work a portion of each normal working day shall be based on calendar days from the date of

LDS000043

**PROBATIONARY PERIOD**                                    SECTION 4.1
**(Continued)**                                               Page 2 of 2

original appointment.  Time on leave of absence or other non-paid leaves shall not be counted toward the completion of the probationary periods.

G.      Classified employees who work an irregular schedule or who work less than the normal number of working days per week shall have their probationary period determined on the basis of time actually worked as described in the table below prepared by the Ohio Department of Administrative Services:

(1)      1,000 hours are equivalent to a 180 day probationary period.

(2)      1,400 hours are equivalent to a 252 day probationary period.

(3)      1,500 hours are equivalent to a 270 day probationary period.

(4)      1,700 hours are equivalent to a 300 day probationary period.

(5)      2,000 hours are equivalent to a 365 day probationary period.

**Original Adoption Date**                           **Revision Date**
_____3/92_____                                       _____1/2009_____

| PERFORMANCE EVALUATION | SECTION 4.2<br>Page 1 of 1 |
|---|---|

Performance evaluation is designed to assist the supervisor and the employee in measuring how well the employee is performing his/her job, and to provide a tool for management decisions regarding training, assignment, promotion, and retention of employees.

The work performance of each permanent employee shall be evaluated in accordance with established procedures.  All employees shall be evaluated at least annually.  Special evaluations may be made if authorized by the Employer or designee.  Probationary employees shall be evaluated at the mid-point of their probationary periods, and again immediately prior to the completion of probation.

Standard written evaluation forms shall be utilized for all employees.  When completed and reviewed by the appointing authority or designee, the evaluation will be reviewed with the employee.

Each employee shall be provided a copy of his or her performance evaluation.  The supervisor shall discuss the report with the employee and shall counsel the employee regarding his or her career and any improvement in performance which appears desirable or necessary.

Employees dissatisfied with their performance evaluations may seek reconsideration through use of the complaint procedure specified elsewhere in this manual.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

LDS000045

| TRAINING | SECTION 4.3 |
|---|---|
| | Page 1 of 1 |

The Employer shall periodically examine current and proposed training programs to ensure their relevance to both the present and projected staffing needs, and the identified training needs of the employee. When training needs are perceived necessary, the Employer shall consider employee achievement, motivation and career goals, as they relate to the goals of management, before making recommendations or decisions.

On-the-Job Training (OJT). On-the-job training prepares an employee for performance of tasks for which he or she is accountable. The purpose of on-the-job training is to show the employee the duties to be performed, the current procedures for accomplishing those duties and the level of achievement expected. Conducting such training is the responsibility of supervisors and administrators, and should not be delegated.

Needs Inventory. Managers and supervisors shall maintain an inventory of the current skills and abilities of employees in order to identify persons to be trained.

Training for Advancement. Supervisors shall counsel lower level employees in planning career development toward promotion. Specific training programs, prerequisite to certain promotions, may be prescribed and monitored by the supervisor with the approval of the Employer.

Training Expenses. When the budget allows, the County may pay for expenses of employees attending job-related training courses and shall encourage such attendance.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

| ETHICS | SECTION 4.4 |
|--------|-------------|
|        | Page 1 of 2 |

All employees are expected to maintain the highest possible ethical and moral standards and to perform within the laws of the State of Ohio and other rules and regulations as may be set forth by the Employer.  Conduct that interferes with normal office operations, brings discredit to the Office or County, is illegal, or is offensive to the public or fellow employees will not be tolerated.  Such conduct shall include, but shall not be limited to:

A.    Engagement in any transaction, business, or any other interest which is in conflict with the proper discharge of official County duties;

B.    Disclosure of confidential information, without proper authorization, regarding the property, government, or affairs of the appointing authority's office;

C.    Use of confidential information or influence of official County position to advance personal, financial, or other private interests;

D.    Acceptance of any gift, in the form of service, loan, item, or promise from any person, firm, or organization which maintains an interest in any business dealings with the County;

E.    Acceptance of any gift in the form of service, loan, item or promise from any person, firm, or organization that may tend to influence a County employee in the proper discharge of official County duties; and

F.    Engaging in any matter which represents a conflict of interest with the County, or undermines the integrity of Lorain County government.

| ETHICS | SECTION 4.4 |
|---|---|
| (Continued) | Page 2 of 2 |

It is important to remember that the compensation of all County employees is paid through taxes. Therefore, each County employee assumes responsibility to serve the public in an honest, effective, and cheerful manner.

Additionally, each newly hired public official or employee shall, within fifteen (15) days of commencing employment, be provided a copy of Chapter 102 and Section 2921.42 of the Ohio Revised Code by the applicable Employer (copy contained herein).  Each employee shall be requested to sign an acknowledgment form indicating that these documents have been presented by the Employer.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

| NEPOTISM | SECTION 4.5 |
|---|---|
| | Page 1 of 1 |

Employees shall abide by all nepotism laws as contained in the Ohio Revised Code, including those contained in this section.  The prohibitions pertaining to "family" shall be as contained in Section 102.01(D) of the Revised Code and as further explained in Ohio Ethics Advisory Opinion No. 2010-03 dated May 25, 2010.

| Original Adoption Date | Revision Date |
|---|---|
| _____ | _____ |

LDS000049

# SECTION 5

# CLASSIFICATION AND
# COMPENSATION

LDS000050

| CLASSIFICATION PLAN | SECTION 5.1<br>Page 1 of 1 |
|---|---|

A.     The Employer shall administer a classification plan based on analysis of the duties and responsibilities of positions. Classification specifications shall include a classification title, a job responsibility statement, a qualifications statement, examples of duties performed by the classification, necessary knowledge, skills, and abilities, and approximate percentages of time devoted to specified duties.

B.     The County Administrator should be provided with a copy of the classification plan and any amendments thereto. Proper classification titles should be used in all personnel and payroll matters.

C.     The Employer shall periodically review the duties and responsibilities of positions and make necessary adjustments or revisions to the classification plan.

D.     Employees who feel their position is improperly classified may request a job audit through the Employer. The Commissioners' Personnel Office will be available to provide assistance to appointing authorities in conducting job audits.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

| COMPENSATION PLAN | SECTION 5.2 |
|---|---|
| | Page 1 of 1 |

It is the responsibility of each appointing authority to establish and administer a compensation system for their non-bargaining unit employees.  However, when requested, the Commissioners' Personnel Office will provide assistance on plan implementation and administration to each appointing authority.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

| PAY PERIOD | SECTION 5.3 |
|---|---|
| | **Page 1 of 1** |

A.    There are normally twenty-six (26) pay periods per year.  All employees are paid every other Friday for the pay period ending two (2) weeks prior to payday.  The County Auditor will annually issue a calendar which identifies the beginning and ending dates of all pay periods as well as the pay dates that correspond to each period.

B.    If a holiday should occur on a payday, paychecks will be issued on the preceding Thursday, except under extenuating circumstances, in which case paychecks will be issued on the Monday following the holiday.

C.    Supervisors are to receive any questions regarding an employee's pay and are responsible for providing the necessary explanations and making the necessary inquiries to resolve pay related matters.

D.    Pay advances of any kind are not permitted.

| **Original Adoption Date** | **Revision Date** |
|---|---|
| 3/92 | |

LDS000053

| COMPENSATORY TIME | SECTION 5.4 |
|---|---|
| | Page 1 of 2 |

A.   Those employees who are considered non-exempt under the Fair Labor Standards Act (FLSA) shall, as a condition of employment, earn compensatory time at the one and one-half (1 1/2) rate for all time spent in active pay status in excess of forty (40) hours per week.  By "active pay" status, the Employer means all time actually worked as well as all time the employee did not work but still received pay such as a holiday, vacation day, sick day, etc.

B.   Sub-section A above may, at the discretion of the Appointing Authority, apply to those employees who are considered exempt from the minimum wage and overtime provisions of the FLSA.

C.   Two hundred and forty (240) hours is the maximum amount of compensatory time that can be accrued by a non-exempt employee.  Upon separation from employment (voluntary or involuntary), such employee will receive cash payment for all accrued but unused compensatory time.

D.   There is no maximum amount of compensatory time that may be accrued by an exempt employee, providing the Appointing Authority permits the accrual of compensatory time by such employee.  However, upon separation from employment (voluntary or involuntary), such employee will receive cash payment for no more than two hundred forty (240) hours of accrued compensatory time.  In order to receive any compensatory time payment, the exempt employee who plans to voluntarily separate from employment must notify the Appointing Authority of his intention to voluntarily resign at least fourteen (14) days prior to the effective date of such resignation.

LDS000054

| COMPENSATORY TIME | SECTION 5.4 |
|---|---|
| **(Continued)** | **Page 2 of 2** |

E.  Compensatory time shall normally be used at a time that is agreeable to both the employee and the Employer.  However, the Employer reserves the right to schedule an employee to take some or all of his accrued compensatory time.

F.  In order to avoid having an employee work overtime, and thus accrue additional compensatory time, the Employer may flex the employee's schedule in a manner consistent with the FLSA.  Exempt employees will be required to flex their schedules during the pay period prior to utilizing any paid leave.

G.  For the purpose of this policy, the standard work week will commence at 12:01 a.m. on Sunday of each calendar week and end seven (7) days later at 12:00 a.m. (midnight).

H.  Overtime compensation and/or compensatory time for bargaining unit employees shall be paid or used pursuant to the collective bargaining agreement.

**Original Adoption Date**                                         **Revision Date**

_____                                 _____

| PAYROLL DEDUCTIONS | SECTION 5.5 |
|---|---|
| | Page 1 of 2 |

A.  Certain deductions are made from employee's paychecks as required by law, in accordance with employee benefit plans, or as requested by employees.  These deductions are itemized on the employee's pay statement which accompanies his or her bi-weekly check.  Deductions may include, but not necessarily be limited to, the following:

  1.  <u>Ohio Public Employees Retirement System (OPERS)</u>:  The County is required to deduct a percentage of each employee's gross earnings for the Ohio Public Employees Retirement System.  Membership in the system is compulsory upon becoming employed, except those employees specifically exempted from membership in accordance with the Ohio Revised Code and OPERS Regulations.

  2.  <u>Income Taxes</u>:  The federal, state, and municipal governments require that taxes be withheld from each salary payment.  The amount of tax to be withheld for the federal and state governments is determined from tables furnished by the Treasury Department and Ohio Department of Taxation, and varies according to the amount of salary and number of dependency exemptions.  Employees are required to complete withholding tax certificates upon initial employment and to inform the County Payroll Officer of any dependency change.

  3.  <u>Medicare</u>:  Newly hired employees are subject to a 1.45% withholding required by the federal government for Medicare.

  4.  <u>Miscellaneous</u>:  Those requested by the employee in writing or mandated by a court of legal jurisdiction.  Examples include garnishments, deferred compensation, savings bonds, child support payments, union dues, employees' share of health care contributions, supplemental health care benefits, etc.

LDS000056

| PAYROLL DEDUCTIONS | SECTION 5.5 |
|---|---|
| (Continued) | Page 2 of 2 |

B.    The County may refuse to make deductions not required by law, which are below certain prescribed minimum amounts, which are at irregular intervals, or for other cause which is not in the best interest of the County.  The County Auditor's Office as administrator of the County Payroll System has the authority to approve payroll deductions.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

| RETIREMENT PLAN AND | SECTION 5.6 |
|---|---|
| DEFERRED COMPENSATION | Page 1 of 1 |

A.    Any "public employee," as defined in Section 145.01 of the Ohio Revised Code, must participate in the Ohio Public Employees Retirement System (OPERS).  This retirement system is entirely independent of the Federal Social Security System, and retirement is in accordance with the rules and regulations of the OPERS.

B.    Any employee who is interested in obtaining information regarding retirement options is urged to contact OPERS directly at:

      277 East Town Street

      Columbus, Ohio  43215

      1-800-222-7377

      The web site is www.opers.org.

C.    The Employer may make available to employees one or more deferred compensation plans.  The decision to offer such a plan or plans is at the discretion of the Employer and such availability may be ended if the Employer deems such to be appropriate.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

LDS000058

| **WORKERS' COMPENSATION** | **SECTION 5.7**<br>**Page 1 of 2** |
|---|---|

A.   Ohio state law provides that every employee of the County may be eligible for coverage under the Workers' Compensation System for an injury arising out of or in the course of his or her employment.

B.   To provide effective administration of this function, the following is required:

1.   <u>Injury Report</u>:  Whenever an employee is injured during the course of his employment with the County, he must complete an Injury Report Form (see attachment).  This should be done whether or not medical attention is required.  The Injury Report must be forwarded to the Safety/Risk Manager's Office by the end of the employee's or supervisor's shift.  If the employee is unable to complete the Injury Report, it must be completed by his supervisor.

2.   <u>Time Lost Due to Injury</u>:  The Safety and Risk Management Office must be advised if the employee continues to be off work due to injury, an estimated return to work date, if known, and the date returned to work, when it occurs.  If it is necessary for an employee who is injured while on duty to be off for a period of time, he/she may have the option of: (1) utilizing any existing sick leave, vacation, personal, or compensatory time he may be credited with; (2) applying for an unpaid leave of absence.

3.   <u>All Workers' Compensation Documents must be Forwarded to the Safety and Risk Management Office</u>.  Any documents received from the employee, his doctor, hospital, or the state concerning Workers' Compensation Claims must be immediately forwarded to the Safety and Risk Management Office.

LDS000059

**WORKERS' COMPENSATION**　　　　　　　　　**SECTION 5.7**
**(Continued)**　　　　　　　　　　　　　　　**Page 2 of 2**

C.　　Employees who are injured in the line of duty and must leave work before completing their work period shall be paid for the balance of time in the work day.

**Original Adoption Date**　　　　　　　　**Revision Date**

　　3/92

**EMPLOYEE INCIDENT/ACCIDENT REPORT**
*\* To Be Completed by Injured Employee \**

Name: _____  Social Sec. No._____
Home Address: _____  Date of Birth: _____  Sex: □ Male
□ Female
City/State/Zip: _____  Telephone: (    ) _____
Title/Position: _____  Department: _____

Accident Location:

Date of Injury or onset of symptoms: _____  Time: _____  □ am  □ pm
Described what caused the injury/symptoms, what you were doing just before the incident, and what you did after the incident (if you need more space, write on the back of this form).  **Be specific-name any objects or substances involved:**
_____
_____
_____

Were you performing regular duties at the time of accident?  □ Yes      □ No
Did anyone see you get hurt?      □ Yes     □ No     If yes, who?
_____
Did you report this incident to anyone?     □ Yes     □ No     If no, why not?
_____
If yes, to whom did you report it?:_____ Title/Position:_____ When:
_____

**What part(s) of your body was/were affected?  (BE SPECIFIC:** for example, right elbow, left knee, right index finger**):**
_____

What type of injury did you experience?  (BE SPECIFIC: for example, bruise, scrape, laceration, pull): _____
_____

Was any first aid provided at the scene? □ Yes  □ No   If yes, describe: _____
                                                    Provided by: _____
_____

Did you seek other medical treatment? □ Yes □ No   If yes, when?: _____
Where?: _____ If treatment was not sought immediately, explain why?: _____
_____

Did injury result in Employee fatality?      □ Yes      □ No

Is this an aggravation of a previous injury/symptom?   □ Yes  □ No     If yes, when were you last treated for the previous injury?: _____     By whom or
where?:_____
Have you ever had a similar injury? □ Yes   □ No      If yes, describe other injury: _____
_____

*Medical Release* - **Under current Workers' Compensation Law, the employer is entitled to a signed medical release.**  I hereby authorize any person or persons who have in the past or will in the future medically attend, treat or examine me, or any person who may have information of any kind which may be used to reach a decision in any claim for injury or disease arising from the injury/illness described above, to **disclose such information** to my employer, my employer's managed care organization, or to my employer's designated representative.  A copy of this form will serve as the original.
**Employee Name (print):** _____

**Employee Signature:** _____     **Date (required):** _____

LDS000061

**EMPLOYEE INCIDENT / ACCIDENT REPORT**
**BACK INJURY REPORT**
**\* To Be Completed When a Back Injury is Reported by the Injured Employee\***

Name: _____  Social Sec. No. _____
Home Address: _____  Date of Birth: _____  Sex: □ Male  □ Female
City/State/Zip: _____  Telephone: (    ) _____
Title/Position: _____  Department: _____

What part of your back hurts now?
_____
When did you first notice this back pain?  Date: _____  Time: _____  □ am  □ pm

What were you doing at that time (explain in detail)? _____
_____
_____

If you were lifting an object, what was it and how heavy? _____
_____
_____

What did you feel? _____

What was the length of time between the injury and your disability, if any?  _____

Did anyone see you get hurt?        □ Yes      □ No  If yes, who? _____
Did you report or mention this injury to anyone? □ Yes □  No    If yes, who? _____  When? _____

Did you ever have a back injury before?     □ Yes   □ No   If yes, when? _____
What part of your back? _____
Were you ever treated by a doctor? □ Yes       □ No     If so, when?_____
Has it given you further trouble since then?  _____

Have you ever received or filed for compensation because of a back injury?     □ Yes        □ No
Any other injury?     □ Yes   □ No   If yes, list Bureau of Workers' Compensation claim number(s): _____
_____

*Medical Release* - **Under current Workers' Compensation Law, the employer is entitled to a signed medical release.**  I hereby authorize any person or persons who have in the past or will in the future medically attend, treat or examine me, or any person who may have information of any kind which may be used to reach a decision in any claim for injury or disease arising from the injury/illness described above, to **disclose such information** to my employer, my employer's managed care organization, or to my employer's designated representative.  A copy of this form will serve as the original.

Employee Name (print): _____

Employee Signature: _____  Date (required): _____

## SUPERVISOR'S INVESTIGATION REPORT

**Employee Name:** _____  **Date of Injury:** _____

| | | |
|---|---|---|
| Was an investigation completed concerning the circumstances of this injury? | □ **Yes** | □ **No** |
| Were there any witnesses to this injury? | □ **Yes** | □ **No** |
| If yes, witness statements should be attached. | | |
| Was the injury a result of horseplay, under the influence of drugs, or purposely self-inflicted? □ **Yes** | | □ **No** |
| If yes, please specify: | | |

_____
_____

Has there been any recent disciplinary action taken against this employee?  □ **Yes**    □ **No**
    If so, please describe:

_____
_____

Has the employee missed any work previously due to similar industrial or non-industrial conditions? □ **Yes**    □ **No**
    If so, when?

_____

Has the employee submitted medical documentation for the injury? If so, please attach.    □ **Yes**    □ **No**

If known, please provide us with the name, address and telephone number of the attending physician:

        _____
        _____
        _____

Has the employee returned to work?        □ **Yes**        □ **No**
    Last Day worked _____        Returned to work _____

If not, what is the current estimated date of return? _____

With the information you have, would you recommend the claim be accepted?    □ **Yes**    □ **No**
    If no, why? _____

_____        _____
        Supervisor Signature                            Date

_____        _____
   Workers' Compensation Coordinator Signature                   Date

**Please attach completed incident reports, witness statements and any accumulated medical bills and information.
Additional comments may be noted on the reverse side.

LDS000063

**STATEMENT OF WITNESS TO ACCIDENT**

## I. INCIDENT IDENTIFICATION INFORMATION

Name of employee alleging incident: _____  Shift: _____

Title/Position: _____  Department: _____

## II. WITNESS STATEMENT

Your name has been given as a witness to an incident alleged by the above individual.  Through your cooperation, information can be obtained to complete the investigation of this incident.  Therefore, it will be appreciated if you will answer each of the following questions and promptly return your completed statement.

Your Name: _____  Your Title/Position:_____

Your Address: _____  Your Phone Number: (    ) _____

_____

Did you see an accident involving the above employee:     ☐ Yes     ☐ No

    If not, how did you learn about the accident? _____
_____

    If you did see an accident occur?:   Date of accident: _____

                               Time of accident: _____   ☐ am  ☐ pm

    Describe what you saw: _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____        _____        _____
      **Your Signature**              **Please Print Your Name**              **Date**

| EXPENSE REIMBURSEMENT | SECTION 5.8 |
|---|---|
| | Page 1 of 2 |

County employees are to receive reimbursement for allowable expenses incurred while traveling out of County of official County business.  Employees are eligible for expense reimbursement only when the Employer has previously authorized travel in writing and with appropriate receipts documenting claimed expenses.  Overnight travel requires prior approval by the Employer and the Board of Commissioners, as do meetings, conferences, and conventions within the County that require reimbursement for expenses.

The following items are eligible for reimbursement, subject to the regulations contained herein and compliance with the procedures:

1.    <u>Commercial air flights</u>.  Reimbursement is available for air flight expenses only when the cost of reimbursement for automobile mileage is greater, or where travel time is of significance.

2.    <u>Bus, limousine, or taxi</u>.  Employees are to use the most economical means available when traveling on County business.

3.    <u>Automobile</u>.  Whenever possible, the Employer will assign a County vehicle for travel to and from meetings, conferences, and conventions.  If no County vehicle is available and an employee is required to use his/her privately-owned vehicle, he/she shall be reimbursed at the mileage rate set by the Board of County Commissioners.  Such payment is considered to be total reimbursement for all vehicle-related expenses (e.g., gas, oil, depreciation, etc.).  Mileage reimbursement is payable to only one of two or more employees traveling on the same trip, in the same vehicle.  Rental of a vehicle is not reimbursable without prior approval of the Employer.

LDS000065

**EXPENSE REIMBURSEMENT**           **SECTION 5.8**
**(Continued)**           **Page 2 of 2**

4. <u>Registration fees</u>.  Registration fees will, whenever possible, be paid in advance by the Employer upon presentation of an invoice, notice, or registration form.

5. <u>Meals</u>.  If meal expenses are included in registration fees, duplicate meals will not be reimbursed.  When travel is out of the County, meals will be reimbursed up to the per person per day amounts set by the Board of County Commissioners.

6. <u>Lodging</u>.  Employees will be reimbursed for reasonable and necessary lodging expenses at the single occupancy rate.  Lodging expenses will only be reimbursed for prior approved travel that is MORE THAN FIFTY (50) MILES from the Employer's place of business and for which an overnight stay is necessary.

**Original Adoption Date**           **Revision Date**

    3/92

**HEALTH CARE COVERAGE**
<div align="right">

**SECTION 5.9**
**Page 1 of 2**
</div>

A.   Lorain County provides basic health care coverage on a single or family basis for full-time employees of the County.   The cost of such coverage is shared between the Employer and the employee.  The monthly contributions from employees are established by the Board of County Commissioners for non-bargaining unit employees.

B.   To be eligible for coverage under the health care plan, employees must be eligible in accordance with law, and/or the County Plan as applicable, and be subject to the initial waiting period prescribed by the plan.

C.   Part-time employees hired after January 28, 1992, shall not be entitled to Employer-paid health care coverage.  Part-time employees hired prior to January 28, 1992, shall remain eligible for Employer-paid health care coverage, provided that the employee was covered by the plan on January 28, 1992.

D.   The Employer may provide and employees may purchase supplemental coverage such as dental, optical, prescription drugs, Section 125 cafeteria plan benefits, etc.   The availability of such supplemental benefits shall be at the discretion of the Employer, who reserves the right to add, modify, or cancel such benefits whenever deemed appropriate.

E.   Employees who terminate their employment with the County may be eligible for continuation coverage as required by federal law and as outlined in the Health Care Plan Booklet.

LDS000067

**HEALTH CARE COVERAGE**                              SECTION 5.9
**(Continued)**                                        **Page 2 of 2**

F.      Full-time employees must remain in an active pay status in order to continue to be
        eligible for Employer-paid health care coverage except as provided for in the Federal
        Family and Medical Leave Act (FMLA) and the Employer's FMLA policy.

G.      Health care benefits for bargaining unit employees are governed by the terms of the
        applicable collective bargaining agreement.

**Original Adoption Date**                             **Revision Date**

            3/92                                              12/2018

| TUITION REIMBURSEMENT | SECTION 5.10 |
|---|---|
| | Page 1 of 1 |

A.   The Lorain County Board of Commissioners recognizes the importance of higher education in public service.  With that in mind, the Board has adopted this tuition reimbursement policy.

B.   Tuition reimbursement will be available to permanent full-time employees after one (1) full year of service with the Employer.  The approval of tuition reimbursement requests will be at the discretion of the Employer, and will be based, in part, on availability of funds.  Tuition reimbursement must be approved in advance for job-related courses offered at accredited colleges or universities.

C.   An employee will be reimbursed for fifty percent (50%) of the tuition cost for each approved course in which he receives a "C" grade; sixty percent (60%) in which he receives a "B" grade; and seventy percent (70%) in which he receives an "A" grade. Books and all other costs are not subject to reimbursement.

D.   Any employee who took and successfully completed an approved course or courses shall be required to submit his final course grade(s) and a copy of the tuition invoice before he will receive any reimbursement.

E.   Any employee whose request for tuition reimbursement is approved must agree, in writing, to remain in the County's employment for at least twelve (12) months after receipt of such reimbursement.  Failure to honor this agreement will require the employee to repay to the County one hundred percent (100%) of any tuition reimbursement that he received during the previous twelve (12) month period.

| Original Adoption Date | Revision Date |
|---|---|
| _____ | _____ |

# SECTION 6

# ABSENCES

LDS000070

| **HOLIDAYS** | **SECTION 6.1** |
|---|---|
| | **Page 1 of 2** |

A.  All full-time employees (in active pay status the entire regularly scheduled work day immediately proceeding and subsequent to the holiday) are entitled to the following holidays:

| | |
|---|---|
| New Year's Day | First day of January |
| Martin Luther King Day | Third Monday of January |
| Presidents' Day | Third Monday of February |
| Memorial Day | Last Monday in May |
| Independence Day | Fourth day of July |
| Labor Day | First Monday in September |
| Columbus Day | Second Monday in October |
| Veterans' Day | Eleventh day of November |
| Thanksgiving Day | Fourth Thursday in November |
| Day after Thanksgiving | Day after Thanksgiving |
| Christmas Eve | Twenty-fourth day of December |
| Christmas Day | Twenty-fifth day of December |
| New Year's Eve | Thirty-first day of December |

B.  If the holiday falls on Sunday, it will be observed on the following Monday; if it falls on a Saturday, it will be observed on the preceding Friday.  However, if an employee's work schedule is other than Monday through Friday, the employee is entitled to holiday pay for the day on which the holiday falls, regardless of the day of the week on which it is observed.

C.  In observance of each authorized holiday, full-time employees will normally be granted the day off from work, with straight time pay, provided they are not employed in one of the twenty-four (24) hour, seven (7) day per week facilities.

D.  Part-time employees are entitled to the same holidays identified in this section as full-time employees.  In observance of each authorized holiday, part-time employees will normally be granted the day off from work if normally scheduled to work on that

particular day, provided that they are not employed in one of the twenty-four (24) hour, seven (7) day per week facilities.  Part-time employees are entitled to straight time hours for the specific number of hours they would have worked on that particular date.  If a part-time employee is not scheduled to work on an authorized holiday, he is not entitled to any additional compensation.

E.    If a holiday occurs while an employee is on vacation or sick leave, such vacation or sick leave day will not be charged against his or her vacation or sick leave balance.  Such vacation day may be taken at a later date in accordance with the policy on vacation usage.

F.    If a full-time non-exempt employee is required to work on one of the above holidays, he or she shall be paid at the rate of one and one-half (1 1/2) times his or her regular hourly earnings.  This premium pay for working the holiday will be in addition to the employee's straight time holiday pay.

G.    In addition to the holidays specified in this policy, the Employer may recognize any day appointed and recommended by the President of the United States or the Governor of the State of Ohio, or any day created through legislation.  The decision to recognize these additional holidays lies solely with the Employer.

H.    Holidays and holiday pay for bargaining unit employees are governed by the terms of the applicable collective bargaining agreement.

**Original Adoption Date**

**Revision Date**

3/92

{12/7/2018 PLLORBC 00222388.DOCX }

LDS000072

| VACATIONS | SECTION 6.2 |
|-----------|-------------|
|           | **Page 1 of 3** |

A.  Full-time County employees who normally work forty (40) hours per week are eligible for paid vacation leave according to the following eligibility guidelines.

    After 1 year service ....................................... 80 hours vacation (3.1 hours per pay period)

    After 8 years service ................................... 120 hours vacation (4.6 hours per pay period)

    After 15 years service ................................. 160 hours vacation (6.2 hours per pay period)

    After 25 years service ................................. 200 hours vacation (7.7 hours per pay period)

Vacation leave shall only be accumulated while an employee is in active pay status. Full-time employees who are in active pay status for less than their number of regularly scheduled hours in any pay period will have their vacation accrual prorated for the pay period.

B.  No employee will be entitled to vacation leave under any circumstances until he or she has completed one (1) year of employment with the County, the state, or a political subdivision of the state.

C.  Vacations are scheduled in accordance with work load requirements of the Employer. For this reason, it is important that vacation requests be made as far in advance as possible. The Employer reserves the right to approve or deny vacation requests.

D.  Vacation leave is earned while on paid leave, but additional vacation leave is not accrued through the working of overtime.

E.  The Employer may authorize vacation carry over from year to year; however, vacation leave shall not be carried over for more than three (3) years. An employee is entitled to

LDS000073

compensation, at his or her current rate of pay, for the prorated portion of any earned but unused vacation leave for the current year to his or her credit, at the time of separation, transfer to another appointing authority, or retirement, and in addition, shall be compensated for any unused vacation leave accrued to his or her credit, with the permission of the Employer for up to three (3) years (if permitted to be carried over by the appointing authority – R.C. 325.189(c)) immediately preceding the last anniversary date of employment.  This means the maximum vacation accrual that an employee may have is the amount earned in the current year (maximum period of three hundred sixty-four [364] days), plus three (3) years worth of accrual carried over with the approval of the Employer.

F.   Any employee who, as of the date of the adoption of this policy, has a vacation leave balance in excess of that permitted in "E" above will have the additional hours placed in a separate non-FLSA compensatory time bank.  Any time remaining in the bank at the time of the employee's retirement or other separation from service will be forfeited.

G.   On and after October 25, 1995, employees will receive credit for prior service with the state or any political subdivision of the state for the purpose of vacation accumulation, per ORC 9.44.  Notwithstanding the above, if any person removed for conviction of a felony within the meaning of RC 124.34 is subsequently re-employed by the County, such person is only qualified to accrue vacation as if he or she were a new employee receiving no prior service credit.

H.   <u>Vacation Leave Conversion</u>.  This paragraph shall apply only to employees of the Board of Commissioners.  County Appointing Authorities may, at their discretion and in accordance with Section 325.19 (C) of the Revised Code, adopt policies applying this paragraph to their employees.  Conversion payment under this paragraph, unless

| VACATIONS | SECTION 6.2 |
|---|---|
| (Continued) | Page 3 of 3 |

otherwise approved by the Board of Commissioners, shall be paid from the budget of the respective appointing authorities.

Prior to December 15 of each calendar year, any employee eligible to take two (2) or more weeks of vacation may notify the Employer in writing that he wishes to convert vacation time for the current year into paid time. A written request must be completed by the employee to do so and submitted to the Employer no later then December 15 of the year of the actual conversion. The rate of conversion will be one (1) day of pay at the employee's regular hourly rate for each two (2) days of vacation converted. The conversion will result in the employee having his vacation leave account reduced by the number of vacation hours converted. Any eligible employee must maintain at least one (1) week (i.e., forty [40] hours) of vacation per calendar year that may not be converted to paid time. Converted hours will not count as "hours worked" in the week paid out for the purpose of calculating overtime, and the leave converted under this program is done on a last in, first out basis.

The employee will receive the payout no later than January 31 of the following year.

I.    Vacation rights for bargaining unit employees are governed by the terms of the applicable collective bargaining agreement.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | 12/2018 |

## LORAIN COUNTY
## REQUEST TO CARRY OVER VACATION

Name _____

        Last                              First                   MI

        Date of Hire _____ Date of Request _____

As of my next anniversary date of hire, I will have more than the maximum allowable accumulated vacation time for one (1) service year.  I therefore request permission to carry over accumulated vacation to the next service year.

_____

Signature of Employee

## ADMINISTRATIVE ACTION

_____       Number of Vacation Hours Accumulated

_____       Approved

_____       Disapproved

_____

Signature of Appointing Authority

LDS000076

## LORAIN COUNTY
## REQUEST TO CONVERT VACATION TO PAY

Name

_____
Last                                                First                              MI

Date of Hire _____        Date of Request _____

I hereby request to convert_____ vacation leave hours to cash pursuant to Section 6.2 (H) of the Lorain County Board of Commissioners Personnel Policy Manual.  I acknowledge that my vacation leave bank will be reduced accordingly.

_____
Signature of Employee

**ADMINISTRATIVE ACTION**

_____        Number of Vacation Hours Converted

_____        Number of Hours to Pay Employee under Conversion

_____        Approved

_____        Disapproved

_____
Signature of Appointing Authority

| SICK LEAVE | SECTION 6.3 |
|---|---|
| | **Page 1 of 4** |

A.   Sick leave is a benefit and the usage of sick leave is not an entitlement.  Sick leave may be requested for the following reasons:

1.   Illness or injury of the employee or a member of his or her immediate family, where the employee's presence is reasonably necessary for the health and welfare of the employee or affected family member, (in case of a member of the immediate family not living in the same household, the appointing authority may credit sick leave when it is justified, and such cases may be investigated).

2.   Medical, psychological, dental, or optical examinations or treatment of the employee or a member of his or her immediate family, where the employee's presence is reasonably necessary.

3.   If a member of the immediate family is afflicted with a contagious disease or requires the care and attendance of the employee, or when, through exposure to a contagious disease, the presence of the employee at his job would jeopardize the health of others.

4.   Pregnancy and/or childbirth, and other conditions related thereto, including leave where the employee's presence is reasonably necessary for the health and welfare of the employee or affected immediate family member.

For purposes of this policy, the "immediate family" is defined as only:  spouse, parents, children, grandparents, siblings, grandchildren, brother-in-law, sister-in-law, daughter-in-law, son-in-law, mother-in-law, father-in-law, step-parents, step-children, step-siblings, legal guardian or other person who stands in the place of a parent.

B.   An employee requesting sick leave shall inform his or her immediate supervisor or other designated person of the fact and the reason within one-half (1/2) hour after his or her scheduled starting time.  Employees who work in a twenty-four (24) hour per day, seven (7) day per week program (e.g., 9-1-1) must provide a one (1) hour prior to his or her scheduled starting time notification.  Failure to properly notify the designated person on the first day of illness may result in denial of sick leave for the period of absence.

Subsequent notification beyond the first day of absence will be governed by the nature of the circumstances and the requirements established by the employee's appointing authority.  Failure to do so may result in denial of sick leave for the period of absence.  In the case of a condition exceeding seven (7) consecutive calendar days, a physician's statement specifying the employee's inability to report to work and the probable date of recovery will be required.  The employee will submit to such medical examination, nursing visit, or other inquiry which the Employer deems necessary.

C.      For each completed eighty (80) hours (including overtime) compensated, an employee earns 4.6 hours of sick leave.  Active pay status is defined as hours during which an employee is eligible to receive pay, such as hours worked, hours on vacation, hours on holiday leave, hours on compensatory time, and hours of paid sick leave.  Other than full-time employees will be credited with sick leave on a basis proportionate to the hours paid each pay period.

D.      Sick leave shall be charged in minimum amounts of fifteen (15) minutes.  Employees absent on sick leave shall be paid at the same basic hourly, daily, or biweekly rate as when they are working.  The amount of sick leave time any one (1) employee may accrue is unlimited.

E.      When an employee returns to work following an absence, such employee must first report to his or her supervisor or other designated person.  Each employee returning to work must complete a Request for Leave Form to explain the reason for his or her absence.  Any additional written documents which substantiate the employee's reason for absence should also be submitted at this time.  This information will be reviewed by the Employer or his or her designee to determine if the absence will be approved.

F.   <u>Physician Statement</u>.  If medical attention is required, the employee will be required to furnish a statement from a licensed practitioner notifying the Employer that the employee was unable to perform his/her duties.  Where sick leave is requested to care for a member of the immediate family, the Employer may require a licensed practitioner's certificate to the effect that the presence of the employee is necessary to care for the ill person, or in the case of childbirth and other conditions relating thereto, during the postnatal period.

G.   <u>Physician Examination</u>.  Should conditions warrant it, the Employer may require an employee to take an examination, conducted by a licensed practitioner, to determine the employee's physical and/or mental capability to perform the duties of the employee's position.  If found not qualified, the employee may be placed, by the Employer, on an involuntary disability separation.  The cost of such examination will be paid by the Employer.

H.   <u>Expiration of Sick Leave</u>.  If illness or disability continues beyond the time covered by accumulated sick leave, the employee may utilize any accrued but unused vacation leave he or she has to their credit.  An employee who has exhausted all sick leave and vacation leave credits may, if appropriate, request Family and Medical Leave, or a disability leave of absence without pay for a period not to exceed six (6) months, or a voluntary disability separation if the illness or disability is expected to exceed six (6) months.

I.   <u>Abuse of Sick Leave</u>.  Employees intentionally failing to comply with sick leave rules and regulations shall not be paid.  Employees who demonstrate a pattern of sick leave abuse may be disciplined.  Application for sick leave with intent to defraud will result in discipline up to and possibly including termination, and will also require a refund of salary or wage paid.  Altering a physician's certificate or falsification of a written, signed statement shall be grounds for discharge.

| SICK LEAVE | SECTION 6.3 |
|---|---|
| (Continued) | Page 4 of 4 |

J.   Employees who transfer between County departments or agencies, or from another public agency, or who are reappointed or reinstated, will be credited with the unused balance of their accumulated sick leave credit, provided the time between separation, reappointment or transfer does not exceed ten (10) years and provided the employee has not cashed in any portion of that balance under ORC 124.39.  The words "public agency" as used above means those entities required to provide sick leave under ORC 124.38 and 124.382, including the state, counties, municipalities, boards of education, civil service townships, etc., within the state.  Villages, private industry councils, libraries organized as non-profit corporations, and other entities not required to provide sick leave under ORC 124.38 or 124.382 are not "public agencies."  Notwithstanding the above, or Section 6.4 - Sick Leave Conversion, if any "person removed for conviction of a felony" within the meaning of R.C. 124.34 is "subsequently re-employed" by the County, such person is only qualified to accrue sick leave as if he or she were a new employee receiving no credit for prior service.

K.   Sick leave for bargaining unit employees is governed by the terms of the applicable collective bargaining agreement.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | 12/2018 |

{12/7/2018 PLLORBC 00222388.DOCX }

LDS000081

**LORAIN COUNTY**
**EMPLOYEE REQUEST FOR LEAVE**

Last Name _____ First Name _____ MI _____ Date _____

Employing Unit _____

I request leave beginning _____ ❑a.m. ❑ p.m. _____, 20_____
and ending _____ ❑a.m. ❑ p.m. _____, 20_____
For the following reason (check one):
**Paid Sick Time**
❑        Personal illness or injury
❑        Serious illness or injury in immediate family
❑        Death of _____ on_____
            Name                 Relationship             Date
❑        Other
**Paid Vacation, Compensatory, and Personal Time**
❑        Vacation
❑        Compensatory
❑        Incentive
**Other Paid Time**
❑        Court:          ❑ Court Duty          ❑ Jury Duty
❑        Subpoena issued by  _____ Court on _____, 20_____
❑        Military
**Leave Without Pay**
❑        Personal
❑        Military Leave
❑        Other (explain) _____

_____          _____
Signature of Employee                                      Signature of Appointing Authority

Note:  Attach all supporting documentation (e.g., Physician's Certification, Funeral Director's Certificate, Military Orders, Court Subpoena, etc.).

*The employee is responsible to ensure that he has appropriate time to cover the request and if not to contact the administrator (as it would need prior approval or be subject to disciplinary action)*

| SICK LEAVE CONVERSION | SECTION 6.4 |
|---|---|
| | Page 1 of 5 |

As outlined below, eligible employees may exercise the following sick leave conversion options.

For purposes of this section:

> An employee does not include an elected official.

> Hired prior to November 15, 2005, means a person whose current tenure of employment with the County appointing authority commenced on or after November 16, 2005. A person employed by a County appointing prior to November 16, 2005, who separated from County employment and did not return until November 16, 2005, or thereafter, is considered hired after November 15, 2005.

**Option 1-A (Employees Hired Prior to November 15, 2005):**

A.  An employee upon separation (voluntary or involuntary) from the County or retirement with five (5) years or more of public service under PERS with the current employer shall receive cash payments of sick leave not to exceed one thousand (1,000) hours. However, in order to receive such payment, the employee who plans to voluntarily separate from employment must notify the Appointing Authority of his intention to voluntarily resign at least fourteen (14) days prior to the effective date of such resignation.

B.  Said employee shall retain any remaining leave balance for credit upon reemployment in public service.

C.  Any employee who has been re-employed by the County and who has already been paid the maximum one thousand (1,000) hours shall not receive any subsequent sick leave conversion payment.

D.  Any employee who has received a sick leave conversion payment less than the maximum one thousand (1,000) hours can receive a subsequent sick leave conversion payment, but in no event can an employee receive an aggregate sick leave conversion payment in excess of one thousand (1,000) hours.

LDS000083

**SICK LEAVE CONVERSION**            **SECTION 6.4**
**(Continued)**            **Page 2 of 5**

E.      This sick leave conversion payment shall be based on the employee's rate of pay at the time of separation or retirement. Eligible retiring employees shall complete and submit a "Sick Leave Conversion Form."

F.      The estate of the deceased employee shall be eligible for such sick leave payment as of the date of their death, providing they are otherwise qualified to receive such benefit. Such payment shall be made in accordance with 2113.04 of the Ohio Revised Code, or shall be paid to the employee's estate. Any such payment shall be paid at the employee's rate of pay at retirement, death, or permanent disability.

G.      Sick leave conversion for bargaining unit employees shall be paid pursuant to the collective bargaining agreement.

H.      Said employee shall retain any remaining leave balance for credit upon reemployment in public service.

I.      Paragraph applies to any employee who received sick leave conversion payment upon separation or retirement from County, pursuant to paragraphs (A) - (I) of this section. Any employee returns to employment with County within thirty (30) days of separation or retirement from the County, must repay any sick leave conversion payment received which exceeds the payment for unused sick leave provided pursuant to Ohio Revised Code Section 124.39(B).

**Option 1-B (Employees Hired After November 15, 2005):**

A.      An employee hired after November 15, 2005, and upon separation (voluntary or involuntary) from the County or retirement with five (5) years or more of public service under PERS with the current employer shall receive cash payments of sick leave not to

LDS000084

**SICK LEAVE CONVERSION**                                    SECTION 6.4
(Continued)                                                  Page 3 of 5

exceed two hundred fifty (250) hours.  However, in order to receive such payment, the employee who plans to voluntarily separate from employment must notify the Appointing Authority of his intention to voluntarily resign at least fourteen (14) days prior to the effective date of such resignation.

B.  Said employee shall retain any remaining leave balance for credit upon reemployment in public service.

C.  Any employee who has been reemployed by the County and who has already been paid the maximum two hundred fifty (250) hours shall not receive any subsequent sick leave conversion payment.

D.  Any employee who has received the sick leave conversion payment less than the maximum two hundred fifty (250) hours can receive a subsequent sick leave conversion payment, but in no event can an employee receive an aggregate sick leave conversion payment in excess of two hundred fifty (250) hours.

E.  This sick leave conversion payment shall be based on the employee's rate of pay at the time of separation or retirement.  Eligible retiring employees shall complete a "Sick Leave Conversion Form."

F.  The estate of the deceased employee shall be eligible for such sick leave payment as of the date of their death, providing they are otherwise qualified to receive such benefit.

Such payment shall be made in accordance with 2113.04 of the Ohio Revised Code, or shall be paid to the employee's estate.  Any such payment shall be paid at the employee's rate of pay at retirement, death, or permanent disability.

**SICK LEAVE CONVERSION**
(Continued)

**SECTION 6.4**
Page 4 of 5

G.    Sick leave conversion for bargaining unit employees shall be paid pursuant to the collective bargaining agreement.

H.    Said employee shall retain any remaining leave balance for credit upon reemployment in public service.

I.    Paragraph applies to any employee who received sick leave conversion payment upon separation or retirement from County, pursuant to paragraphs (A) - (I) of this section. Any employee returns to employment with County within thirty (30) days of separation or retirement from the County, must repay any sick leave conversion payment received which exceeds the payment for unused sick leave provided pursuant to Ohio Revised Code Section 124.39(B).

**Option 2 (Annual Conversion Election):**

**This provision shall apply only to employees of the Board of Commissioners.  County Appointing Authorities may, at their discretion and in accordance with Section 124.39 of the Revised Code, adopt policies applying this paragraph to their employees.  Conversion payment under this paragraph, unless otherwise approved by the Board of Commissioners, shall be paid from the budget of the respective appointing authorities.**

A.    An employee may elect each year to have the Employer buy back a maximum of one hundred twenty (120) hours of sick leave for the current year, provided the employee maintains a balance of three hundred eighty (380) hours of sick leave after the conversion.

B.    A written request must be completed by the employee to do so and submitted to the Employer no later then December 15 of the year of the actual conversion.  The employee shall specify in writing the number of sick leave days to be converted.

**SICK LEAVE CONVERSION**
**(Continued)**

**SECTION 6.4**
**Page 5 of 5**

C.   The rate of conversion will be one (1) day of pay at the employee's regular hourly rate for each two (2) days of sick leave converted.  The conversion will result in the employee having his sick leave account reduced by the number of sick leave days converted.  The Employer will judge the employee's eligibility on December 15 regardless of the date of the request.

D.   Converted hours will not count as "hours worked" in the week paid out for the purpose of calculating overtime, and the leave converted under this program is done on a last in, first out basis.

E.   The employee will receive the payout no later than January 31 of the year.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | 12/2018 |

# LORAIN COUNTY
# SICK LEAVE CONVERSION FORM

Name _____ Classification _____

Department _____

I elect to be paid for sick leave pursuant to the Employer's Sick Leave Conversion Policy as follows:

_____ Number of hours to be converted

_____ Option 1-A          _____ Option 1-B          _____ Option 2

I realize that this payment will be based on my current rate of pay.

_____                    _____

Signature of Employee                                Date

_____                    _____

Signature of Appointing Authority                    Date

*Individuals requesting sick leave conversion Option 1(A), 1(B) or Option 2 must be retiring under the Ohio Public Employees' Retirement System (PERS) or separating from service with the County.*

**Option 1-A: (Employees Hired Prior to November 15, 2005)**
An employee upon separation (*voluntary or involuntary*) from the County or retirement with five (5) years of service or more of public service under PERS with the current employer shall receive cash payments of sick leave not to exceed one thousand (1,000) hours. However, in order to receive such payment, the employee who plans to voluntarily separate from employment must notify the Appointing Authority of his intention to voluntarily resign at least fourteen (14) days prior to the effective date of such resignation.

**Option 1-B: (Employees Hired After November 15, 2005)**
An employee hired after November 15, 2015, and upon separation (*voluntary or involuntary*) from the County or retirement with five (5) years or more of public service under PERS with the current employer shall receive cash payments of sick leave not to exceed two hundred fifty (250) hours. However, in order to receive such payment, the employee who plans to voluntarily separate from employment must notify the Appointing Authority of his intention to voluntarily resign at least fourteen (14) days prior to the effective date of such resignation.

**Option 2: (Annual Conversion Election)**
**Sick Leave Conversion is discretionary, based upon each appointing authority.**
An employee may elect each year to have the Employer buy back a maximum of one hundred twenty (120) hours of sick leave for the current year, provided the employee maintains a balance of three hundred eighty (380) hours of sick leave after the conversion. A written request must be completed by the employee to do so and submitted to the Employer no later than December 15 of the year of the actual conversion. The employee shall specify in writing the number of sick leave hours to be converted. The rate of conversion will be one (1) day of pay at the employee's regular rate for each two (2) days of sick leave converted.

| BEREAVEMENT LEAVE | SECTION 6.5 |
|---|---|
| | Page 1 of 2 |

A.    In the event of the death of a member of an employee's immediate family, the employee shall be granted up to three (3) consecutive work days of paid leave to attend the funeral, make funeral arrangements, and carry out other responsibilities related to the funeral. Such leave shall not be deducted from the employee's sick leave balance.

B.    For the purpose of bereavement leave, the following will be considered members of the employee's immediate family:  child, step-child, parent, step-parent, spouse, brother, sister, mother-in-law, father-in-law, grandchild, step-grandchild, and grandparents.

C.    An employee may be granted, with the permission of the Employer, an additional two (2) days off for bereavement purposes.  Such additional time will be deducted from the employee's sick leave balance.

D.    In the event of the death of other immediate family members not listed in "B" above, the employee may be granted a reasonable amount of time, not to exceed five (5) consecutive work days, to attend the funeral, make funeral arrangements, and carry out other responsibilities related to the funeral.  Such leave shall be deducted from the employee's sick leave balance.

E.    For the purpose of "D" above, the following will be considered members of the employee's immediate family:  brother-in-law, sister-in-law, daughter-in-law, son- in-law, step-brother, step-sister, legal guardian or other person who stands in the place of a parent.

LDS000089

**BEREAVEMENT LEAVE**                               SECTION 6.5
**(Continued)**                                         Page 2 of 2

F.     Bereavement leave for bargaining unit employees is governed by the terms of the
       applicable collective bargaining agreement.

| **Original Adoption Date** | **Revision Date** |
|---|---|
| 3/92 | |

LDS000090

| COURT LEAVE | SECTION 6.6<br>Page 1 of 1 |
|---|---|

A.  The Employer shall compensate employees for regularly scheduled working hours on any day an employee is subpoenaed for court or jury duty by a federal, state, or any municipal court.  All compensation received for court or jury duty is to be remitted by the employee to the Employer for deposit with the County Treasurer, unless the court or jury duty is performed totally outside normal working hours.  Employees released from court or jury duty prior to the end of their scheduled work day shall report to work for the remaining hours of their shift.

B.  Employees shall not be entitled to paid court leave when appearing in court for criminal or civil cases being heard in connection with the employee's own personal matters. These absences shall be considered leave without pay or vacation, as scheduled in advance with the Employer.

C.  Court leave for bargaining unit employees is governed by the terms of the applicable collective bargaining agreement.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

**MILITARY LEAVE**　　　　　　　　　　　　　　　　　　**SECTION 6.7**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Page 1 of 5**

A.　　Any permanent public employee who is a member of the Ohio organized militia, or a member of other reserve components of the Armed Forces of the United States including the Ohio National Guard is entitled to a military leave of absence from his respective duties without loss of pay for such time as he is performing service in the uniformed services for periods not to exceed one (1) month (meaning twenty-two [22] working days, or one hundred seventy-six [176] hours for a forty [40] hour per week employee) for each federal fiscal year (October 1 to September 30) in which the employee performs service in the uniformed services.  For the purposes of this policy, "permanent public employee" means an employee who holds a position with the County that requires him to work a regular schedule of twenty-six (26) consecutive bi-weekly pay periods, and such is not limited to a specific season or duration.  This definition does not include student help; intermittent, seasonal, temporary employees, or individuals covered by personal services contracts.  Other provisions for military leave shall be controlled by state and federal laws.

B.　　Any permanent public employee called to military duty for a period in excess of the twenty-two (22) working days because of an executive order issued by the President of the United States or because of an act of Congress or because of an order to perform duty issued by Governor pursuant to RC Section 5919.29, may receive, during this period, the lesser of the following:

1.  The difference between the employee's gross monthly wage or salary from the County and his gross uniformed service pay and allowances received in a particular month; or

2.  Five hundred dollars ($500.00).

C.  An employee requesting such leave will be required to submit the necessary documentation and/or complete the necessary leave papers.

D.  <u>Active Duty Military Leave</u>

1.  A permanent public employee is entitled, upon giving notice to the Appointing Authority, to a leave of absence to serve in the uniformed service.  Such leave is without pay and is considered as a leave of absence from service with reinstatement rights.  No leave, or combination of uniformed service leaves of absence, may exceed five (5) years or a single, longer period required to complete an initial period of obligated service.

2.  An employee returning from uniformed service leave without pay must apply for reinstatement.  The application must be made to the Appointing Authority within the period set forth below.

  a.  Leave of less than thirty (30) days:  immediately upon release from uniformed service, but Appointing Authority must allow for travel time and eight (8) hours of rest;

  b.  Leave of thirty-one (31) to one hundred and eighty (180) days:  within fourteen (14) days of completing uniformed service requirement; or

  c.  Leave of more than one hundred eighty (180) days:  within ninety (90) days of completing uniformed service requirement.

3.  If the leave of absence is for more than ninety (90) days, the Appointing Authority may require, with the application, evidence showing that the application is timely, the duration of all such leaves of absence does not exceed five (5) years, or the time to complete the initial period of obligated service, and the employee's entitlement to re-employment has not terminated pursuant to the Federal Uniformed Services Employment and Re-employment Rights Act.

4.  Upon return from a period of duty in the uniformed service lasting ninety (90) calendar days or less, the employee is to be returned to the same or similar position within his former classification.  If the period of duty lasts more than ninety (90) days, the employee may be placed in any position of equivalent status, seniority, and pay.  Regardless of the duration of duty, if the Appointing Authority demonstrates to the Director of the Ohio Department of Administrative

Services that reinstatement is impossible or would impose undue hardship, the employee may be assigned to another position with like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances of the case.

5.    If the employee is unable to perform the duties of his former position due to a permanent injury or illness incurred or aggravated during uniformed service, the Appointing Authority will make reasonable efforts to accommodate the employee's disability.

6.    If an employee who is entitled to reinstatement is unable to report for or perform the duties of his position at the date of his application for reinstatement because of a temporary injury or illness incurred or aggravated during uniformed service, he shall have up to two (2) years to recover from such illness or injury before being required to report or reapply.

7.    A reinstated employee is entitled to receive all rights and benefits generally available to employees in a comparable leave of absence without pay, including the following:

a.    All sick leave and vacation leave which had been accumulated at the time of entering service;

LDS000095

**MILITARY LEAVE**
**(Continued)**

**SECTION 6.7**
**Page 5 of 5**

    b.      All seniority that would have accrued had the employee been on the job;

    c.      Automatic salary adjustments associated with the position and due the employee had the employee been on the job;

    d.      Any change in classification or pay range which would be due the employee had the employee been on the job;

    e.      Reinstated health insurance and related insurance benefits with no waiting periods or pre-existing condition exclusions, other than waiting periods or exclusions that would have applied even if there had been no absence for uniformed service. (Please note that this rule does not apply to the coverage of any illness or injury determined by the Secretary of Veterans' Affairs to have been incurred in, or aggravated during, performance of service in the uniformed service.)

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | 6/2009 |

| LEAVE OF ABSENCE WITHOUT PAY | SECTION 6.8 |
|---|---|
| | Page 1 of 2 |

A.    Upon the advanced written request of a permanent employee, the Employer may grant the employee a leave of absence without pay.  The maximum duration of a leave of absence without pay for personal reasons of the employee shall not exceed six (6) months.  The maximum duration of a leave of absence without pay for purposes of education, training, or specialized experience which would benefit County service, or for other related reasons shall not exceed two (2) years.  The authorization of a leave of absence without pay is solely a matter of administrative discretion, and each request will be decided by the Employer based upon its own merits.  Whenever possible, any request for a leave of absence without pay must be made at least sixty (60) days prior to the commencement of the desired leave.

B.    Upon returning from a leave of absence, the employee is to be placed in his/her original position, or another position at a similar level of responsibility should the original position be abolished.  When an employee fails to return to work upon the expiration of an authorized leave of absence without pay, that employee may be removed for neglect of duty.

C.    Because they are not in an active pay status, employees who are granted an authorized leave of absence without pay do not earn sick or vacation leave credit.  Additionally, they do not qualify for other benefits such as paid holidays, paid health care coverage, etc.  Time spent on the approved leaves of absences is to be counted when determining length of service for purposes where tenure is a factor provided the employee follows all procedures.

D.    An employee who has received an authorized leave of absence without pay may be eligible for continuation coverage as required by federal law and as outlined in the Health Care Plan Booklet.  Such continued coverage would be totally at the employee's expense

LDS000097

**LEAVE OF ABSENCE WITHOUT PAY**                                    SECTION 6.8
                                                                   Page 2 of 2

and payment would be submitted to the County in accordance with the information the employee would receive on his COBRA rights.

E.    If it is determined that an employee is abusing the leave of absence and not actually using the leave for the purpose specified, the Employer may cancel the leave and provide the employee with a written notice directing the employee to report for work.

F.    All leaves shall be for a continuous period of time (e.g., weeks, months).  No leave shall be granted for an intermittent period in order for an employee to remain on payroll for the purpose of the continuation of health care or other benefits provided to employees in an active pay status.

G.    Leave of absence without pay for bargaining unit employees is governed by the applicable collective bargaining agreement.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

**DISABILITY LEAVE AND SEPARATION**
SECTION 6.9
Page 1 of 4

This section outlines the conditions under which disability leave and separation without pay may be granted, and procedures for administering its use.

A.    <u>Voluntary Reduction</u>

When an employee becomes physically unable to perform the essential functions of his/her position, but is still able to perform the essential functions of a vacant, lower level position, he/she may voluntarily request reduction to the lower level position.    An employee shall submit a request in writing to the Employer, stating the reason for the request.    Such request must also be accompanied by a physician's statement.    The approval of such requests shall be left entirely to the discretion of the Employer and shall be based upon operational needs and requirements.

B.    A physically incapacitated employee, who has exhausted his/her accumulated sick leave and for whom voluntary reduction is not practicable, may request up to six (6) months of disability leave <u>only</u> if he/she can present evidence as to the <u>probable date</u> on which the employee will be able to return to the same or similar position within the requested disability leave period.    Such request should be in writing, with a supporting physician's certificate attached.

C.    <u>Voluntary Disability Separation</u>

1.    An employee who is unable to perform the essential job duties of his or her position due to a disabling illness, injury, or condition, may request a voluntary disability separation.    A voluntary disability separation occurs when the employee does not dispute his or her inability to perform the essential job duties of his or her position due to such disabling illness, injury, or condition.

LDS000099

2.    The appointing authority may grant the employee's request for voluntary disability separation or may require the employee to submit to a medical or psychological examination conducted by one or more licensed practitioners selected by the appointing authority.  If the examination supports the employee's request, the appointing authority will grant the employee's request for a voluntary disability separation.  If the medical examination does not support the employee's request, the appointing authority will not approve the employee's request for voluntary disability separation.

3.    An employee who is granted a voluntary disability separation will retain the right to be reinstated to his or her position for two (2) years from the date that the employee is no longer in active work status due to a disabling illness, injury, or condition.  An employee may submit a written request for reinstatement from a voluntary disability separation in accordance with the rules of the Director of the Ohio Department of Administrative Services.

4.    The appointing authority should send a written reminder to the employee at least two (2) weeks prior to the expiration of his or her disability separation.  Any employee who fails to apply for reinstatement, formally resign, or take disability retirement, shall be separated from service at the end of the two (2) year period.

D.    <u>Involuntary Disability Separation</u>

1.    When an appointing authority has reason to believe that an employee is incapable of performing the essential functions of the employee's position due to disabling illness, injury, or condition, the appointing authority may require the employee to submit to a medical or psychological examination conducted by one or more licensed practitioners selected by the appointing authority.  It is not, however,

**DISABILITY LEAVE AND SEPARATION**　　　　　　　　**SECTION 6.9**
**(Continued)**　　　　　　　　　　　　　　　　　　**Page 3 of 4**

necessary for the appointing authority to require the employee to submit to such examination prior to involuntary disability separation if:  (1) the employee is hospitalized at the time such action is to be taken, and (2) the employee has exhausted any leave to which he is entitled under the FMLA.

2.　　　When the appointing authority has received the results of a medical or psychological examination and initially determines that the employee is incapable of performing the essential functions of the employee's position due to a disabling illness, injury, or condition, the appointing authority will institute pre-separation proceedings.  Under the proceedings, a hearing will be scheduled and advance written notice of at least seventy-two (72) hours will be provided to the employee. At the hearing, the employee will have a right to examine the appointing authority's evidence of disability, to rebut the evidence, and to present testimony and evidence on the employee's own behalf.  The employee should also be permitted to waive his right to a hearing.

3.　　　If the appointing authority determines, after weighing the testimony presented and the evidence admitted at the pre-separation hearing, that the employee is unable to perform the essential functions of his position, the appointing authority will issue an involuntary disability separation order.

4.　　　The effective date of separation, for the purpose of reinstatement, will be based on the date the employee was no longer in active work status due to the disabling illness, injury, or condition.  The total continuous time of absence due to the disabling illness, injury, or condition will not exceed two (2) years for purposes of reinstatement rights.

**DISABILITY LEAVE AND SEPARATION**
**(Continued)**

**SECTION 6.9**
**Page 4 of 4**

5.   An employee who is involuntarily disability separated will have the right to appeal in writing to the State Personnel Board of Review within ten (10) days following the date the order is served on the employee.

6.   The appointing authority will also notify the employee, at the time the involuntary disability separation order is provided to the employee, of the required procedures to apply for reinstatement.

E.   Any appointment made to a position vacated by disability leave or separation will be on am interim basis, and such employee must be made fully aware of his or her status. Should the employee returning from disability leave or separation be reinstated to another position, the interim appointment may be made permanent.

F.   Disability leaves and separation for bargaining unit employees are governed by the applicable collective bargaining agreement.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | 6/2009 |

| CALAMITY DAYS | SECTION 6.10 |
|---|---|
| | Page 1 of 1 |

A.    Whenever the Employer's Office is officially closed due to weather or other emergency conditions, employees will be paid for those hours they were scheduled to work.

B.    Employees who are tardy, leave work early, or fail to report for work on days when the Employer's Office is not officially closed due to weather or other emergency conditions will not receive compensation for the duration of the unexcused absence.  At the request of the employee and upon approval by the Employer, such absences may be charged to the employee's available vacation or compensatory time.  Inclement weather is not, however, a valid reason for the use of sick leave.

C.    Employees not scheduled to work, i.e., employees on sick leave, a scheduled vacation, or leave of absence, are not entitled to pay (as identified in Paragraph A) for the hours the Employer's Office is closed due to weather or other emergency conditions.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

**FAMILY AND MEDICAL LEAVE**                    SECTION 6.11
                                                    Page 1 of 5

A.    An employee who has been employed by the County for at least twelve (12) months and who has completed at least one thousand two hundred and fifty (1,250) hours worked during the twelve (12) month period immediately preceding the commencement of the leave shall be eligible for Family and Medical Leave as provided in this policy.  Any prior service with the County will count towards the twelve (12) month requirements, unless the employee had separated from service for a period of more than seven (7) years.

B.    An eligible employee may be permitted a total of twelve (12) work weeks of <u>unpaid leave</u> during the twelve (12) month period measured forward from the first date the employee uses Family and Medical Leave.  Family and Medical Leave may be used for the following reasons:

    1.    To care for the employee's child after the birth of the child;

    2.    Placement proceedings and to care for a child after the child is placed with the employee for adoption or foster care;

    3.    To care for the employee's spouse, child, or parent who has a serious health condition; or

    4.    Because of a serious health condition that makes the employee unable to perform the functions of the employee's position, including a workers' compensation qualifying injury; or

    5.    Because of any qualifying exigency arising out of the fact that the employee's spouse, son, daughter, or parent is a covered military member on active duty (or has been notified of an impending call or order to active duty) in support of a

contingency operation.  Qualifying exigencies are one or more of the following: short-notice deployment, military events and related activities, child care and school activities, financial and legal arrangements, counseling, rest and recuperation and post-deployment activities.

C.      An eligible employee may be permitted a total of twenty-six (26) work weeks of <u>unpaid</u> leave during the twelve (12) month period measured forward from the first date the employee uses Family and Medical Leave in order to care for a covered service member with a serious injury or illness if the employee is the spouse, son, daughter, parent or next of kin of the service member.  However, when Family and Medical Leave is used for this reason and one or more of the reasons listed in "B" above, the eligible employee will be entitled to a maximum combined total of twenty-six (26) work weeks of leave.

D.      An eligible employee will be required to provide the Employer with thirty (30) days advance notice of the employee's intention to take Family and Medical Leave.  The only exception will be when unforeseen circumstances prevent the employee from providing the required notice.

E.      The Employer will require the employee to provide medical certification from the employee's health care provider or the family member's health care provider in order to support a leave request to care for a spouse, child, or parent who has a serious health condition; or for leave due to a serious health condition that makes the employee unable to perform the essential functions of the employee's position.

The Employer, at the Employer's expense, may require a second opinion on the validity of the certification.  Should a conflict arise between the opinions of the two (2) health care providers, a third opinion will be sought.  The third opinion will be provided by a health care provider mutually agreeable to the employee and the Employer.  The expense

of a third opinion will be paid by the Employer.  U.S. Department of Labor Forms WH-380 shall be utilized by health care providers in supporting the leave request.

F.   An eligible employee will be required to use paid accrued vacation, sick leave (if appropriate), bonus time, and personal leave prior to being granted unpaid Family and Medical Leave.  (The paid time will run concurrent with the Family and Medical Leave.) The combined period of leave, including vacation, sick leave, personal leave, and unpaid Family and Medical Leave, shall not exceed the total of twelve (12) work weeks during the twelve (12) month period defined in paragraphs "B" and "C" of this policy.

G.   In the event of the continuation, reoccurrence, or onset of a serious health condition of the employee, after such employee has exhausted the twelve (12) work weeks of leave as provided in this policy, the employee may request an unpaid disability leave of absence or a voluntary disability separation in accordance with the Employer's policy.

H.   The Employer will also require the employee to provide appropriate certification in order to support a leave request because of the qualifying exigency or to care for a covered service member with a serious injury or illness.

I.   In any case in which a husband and wife, both employed by the County, request leave due to the birth or placement with the employees of a child, the total number of work weeks of Family and Medical Leave to which both employees are entitled will be limited to twelve (12) work weeks during the twelve (12) month period.

J   An eligible employee who is the spouse, son, daughter, parent or next of kin of a covered service member (including covered veterans) shall be entitled to a total of twenty-six (26) weeks of leave during a twelve (12) month period to care for a service member who is

receiving medical treatment, recuperation, or therapy, or is in outpatient status, or is on the temporary disability retired list for a serious injury or illness.

A serious injury or illness is one that is incurred by a service member in the line of duty on active duty that may cause the service member to be medically unfit to perform the duties of his or her office, grade, rank, or rating.  A serious injury or illness also includes injuries or illnesses that existed before the service member's active duty and that were aggravated by service in the line of duty on active duty.

The leave shall only be available during a single twelve (12) month period.  The aggregate total of workweeks of leave to which both a husband and wife working for the county may be limited to is twenty-six (26) workweeks during the single twelve (12) month period when the leave is service member leave or a combination of service member leave and other qualifying FML leave.  When leave is taken to care for a covered service member with a serious injury or illness, the Employer may require an employee to obtain a certification completed by an authorized healthcare provider of the covered service member.

K.      Leave due to the serious health condition of the employee or the employee's spouse, child, or parent or to care for a covered service member with a serious illness or injury may be taken intermittently or on a reduced leave schedule when medically necessary. The Employer may require an employee who takes leave in this manner for planned medical treatments to transfer temporarily to an alternative position which has equivalent pay and benefits and better accommodates the recurring periods of leave.  Leave due to a qualifying exigency may also be taken on an intermittent or reduced leave schedule basis.

The taking of leave intermittently or on a reduced leave schedule will not result in a reduction in the total amount of leave to which the employee is entitled in accordance

**FAMILY AND MEDICAL LEAVE**

SECTION 6.11
Page 5 of 5

with this policy.  Leave due to the birth or placement of a child may not be taken on an intermittent or reduced leave schedule.

L.    It will not be considered a break in service when an employee takes leave in accordance with this policy, provided the employee returns to work at the expiration of the leave period.  During any uncompensated portion of a leave period, employees shall not accumulate sick, vacation, bonus or any other accrued leave.

M.    An eligible employee who takes leave in accordance with this policy shall, upon return from such leave, be restored to the position held by the employee when the leave commenced, or a similar position of equivalent pay and benefits.  The Employer will require the employee's physician to certify that the employee is able to resume work as a condition of return to employment.

N.    During any period that an eligible employee takes leave in accordance with this policy, the Employer shall maintain the employee's group health care coverage under the conditions coverage would have been provided if the employee had continued in employment for the duration of the leave.  The employee will be responsible for paying the employee's share of the health insurance costs during the leave.  If the employee does not return from the leave, the Employer may recover the premiums it paid for maintaining the health care coverage during the period of unpaid Family/Medical Leave.

O.    Upon requesting Family and Medical Leave, an eligible employee will receive a written notice, from the Employer, outlining the employee's rights and obligations.

| Original Adoption Date | Revision Date |
|---|---|
| _____ | 4/2018 |

## LORAIN COUNTY
## FAMILY AND MEDICAL LEAVE NOTICE

This notice is provided to you in response to your request for Family and Medical Leave and is intended to describe your rights and obligations.

1.  Any leave that you use will be deducted from the twelve (12) work weeks of leave to which you are entitled during a twelve (12) month period in accordance with the Employer's Family and Medical Leave policy.

2.  You are required to provide the Employer with a properly completed Certification of Physician or Practitioner Form (U.S. Department of Labor, Form WH-380) if you intend to use leave to care for your spouse, child, or parent who has a serious health condition, or because of your own serious health condition that prevents you from performing the functions of your position.  Failure to provide the requested certification in a timely manner will result in denial of the leave until the certification is provided.

3.  Before being permitted to take unpaid Family and Medical Leave; you must exhaust all earned but unused vacation leave, sick leave (if appropriate), and personal leave.  (The paid time will run concurrent with the Family and Medical Leave.)

4.  For the duration of your leave your current group health insurance coverage will be maintained as long as you pay your portion of the premium.  $_____ is due at the Lorain County Commissioners' Benefits Office, 226 Middle Avenue, Elyria, Ohio 44035 in accordance with the following schedule:_____.  Failure to pay your portion of the monthly premium within thirty (30) days of the due date will result in termination of the Employer's obligation to pay its share of the premium for your coverage.

5.  If your leave is due to a serious health condition which has rendered you unable to perform the essential functions of your position. you will be required to present a certification from your physician stating you are fit to return to duty before you will be permitted to resume work.

6.  Upon return to work, you will be restored to your original position or a position with equivalent pay, benefits. and other terms and conditions of employment.

7.  If you fail to return to work, the Employer may recover the premiums it paid for maintaining your health care coverage during any period of unpaid Family and Medical Leave.

_____
Appointing Authority or Designee/Date

| PRECINCT ELECTION OFFICIAL LEAVE | SECTION 6.12<br>Page 1 of 1 |
|---|---|

A.   Any employee who has been appointed to serve as a precinct election official pursuant to Section 3501.22 of the Ohio Revised Code may use accrued paid leave time, excluding sick leave, or may take unpaid leave to serve as a judge of elections on the day of an election.

B.   In order to ensure that the employee is able to take accrued paid leave time, the employee shall notify the appointing authority in writing at least two (2) weeks in advance of the fact that he will be serving as a judge of elections on the day of an election.  At this time he should also notify the appointing authority of his decision to take the day off as a paid or unpaid leave day.  If the employee chooses to take the day as a paid leave day, he must inform the appointing authority of the type of paid leave he wishes to use to cover the absence.

C.   Failure by the employee to provide at least two (2) weeks advance notice, as referenced above, may result in ineligibility to take paid leave time to cover the absence.

| Original Adoption Date | Revision Date |
|---|---|
| _____ | _____ |



# SECTION 7

# CONDUCT

LDS000111

A.    Regular and predictable attendance by all employees is an essential component of the employment relationship.  Therefore, this policy is established in order to communicate the priority the Employer places on regular and predictable attendance on the part of all employees.  Attendance under this policy not only includes regular appearance at work, but means honoring all regulations pertaining to breaks, lunch periods, meetings, etc.

B.    The normal work week for most full-time employees is computed on the basis of forty (40) hours, composed of five (5), eight (8) hour days.

C.    In order to maintain complete and accurate records of all time worked, employees are required to complete a Bi-Weekly Attendance Form, or if available, punch in and out on a time clock.  Each employee will be responsible for making certain that they have properly recorded their daily arrival and departure times, as well as the time departed and returned from the lunch period.  Any employee not properly adhering to this procedure may be subject to discipline.  Under no circumstances will any employee punch or otherwise record another employee's time card or report.

D.    Supervisory and management staff are charged with the responsibility of ensuring that employees have accurately recorded arrivals and departures.  Additionally, supervisors are responsible for submitting a bi-weekly payroll summary by noon on the Monday following the end of the payroll period.  This summary should accurately reflect the number of hours actually worked, or taken in paid or unpaid leave during that period. The information on the payroll summary should be obtained by reviewing the Bi-Weekly Attendance Record or the time card which each employee is required to complete and submit to his supervisor.

Because several of the County's operations are operated on a twenty-four (24) hour per day basis, it is understood that these Bi-Weekly Attendance Records may not be immediately available due to days off or other reasons. Employees shall in every instance be required to submit the attendance card and any request for leave (paid or unpaid) as soon as possible, and without fail prior to receiving a paycheck for the pay period. The original copies of these records, along with the Bi-Weekly Payroll Summary, will be maintained by the Employer in order to be available for auditing purposes. Each work unit should retain copies of these documents in order to answer inquiries and provide information.

E.   When authorized by their immediate supervisors, employees may take not more than two (2) fifteen (15) minute rest periods each full work day. Rest periods shall be considered a privilege and not a right and shall never interfere with the proper performance of the work responsibilities of the department. Rest periods shall not abut the beginning of or the end of a shift, a lunch period, or another rest period.

F.   The Employer has no provision for make-up time. Whenever an employee is absent from work through no fault of the Employer, he/she will not be permitted to work overtime solely for the purpose of "restoring" the lost time.

G.   Employees are prohibited from engaging in work prior to or after established shift starting/quitting times without specific authorization from their supervisor. Further, lunch and break periods are to be taken in the prescribed areas and not in the employee=s work location.

H.   If an employee, of his/her own accord, does not take his/her lunch break during the prescribed time allotted for such lunch break, it is not permissible for the employee to

take the unused lunch break solely for the purposes of leaving work early and/or arriving at work late to avoid using any accumulated time such as vacation and/or sick leave.

I.  Absenteeism shall not be tolerated.  Employees are expected to regularly and consistently report for work as scheduled.  Employer approval of leaves as contained herein shall not render an employee immune from investigation.

J.  Employees will be disciplined for unauthorized leaves of absence.  If an employee is unable to report to work as scheduled, he or she must follow the proper procedure for reporting off.

K.  The Employer recognizes the fact that emergency situations can arise that can cause an employee to be late or unable to report to work, e.g., car accidents, fire, etc., but these situations are the exception.  In the case of an emergency, the employee should notify the supervisor as soon as possible and explain the nature of the emergency.  Requests for emergency leave (authorization after the fact) will be considered based on the merits of the request.

L.  <u>Excused Absence</u>:  An employee's absence will be excused only when it has been approved in advance, or it is approved after the fact once the Employer has determined it is a proper use of available leave.  Any other absence will be considered an unexcused absence (unauthorized leave of absence) and will be disciplined accordingly.

M.  <u>Patterned Abuse</u> will not be tolerated and will result in appropriate discipline.  Examples of patterned abuse are as follows:

    1.  absence on the day immediately prior to or immediately following the employee's scheduled holiday, vacation day, pay day, etc.;

LDS000114

**ATTENDANCE**
(Continued)

**SECTION 7.1**
Page 4 of 4

     2.     absence which recurs with regularity (e.g., every other Wednesday, every Monday, third Thursday of the month, etc.);

     3.     absence when the employee is scheduled for special duty, including but not limited to overtime or temporary increases in work load.

N.     An employee who fails to report to work without any notification for three (3) or more consecutive scheduled work days shall be terminated, unless the employee can demonstrate, to the Employer's satisfaction, that there was sufficient justification for such no call/no show.

O.     <u>Supervisory Responsibilities</u>.  Each supervisor should exemplify good attendance.  It is the supervisor's responsibility to investigate abuse and bring it to the attention of the appointing authority or appropriate designee.

**Original Adoption Date**

     3/92

**Revision Date**

**TARDINESS and LATENESS**                                    **SECTION 7.2**
                                                              **Page 1 of 2**

A.    Tardiness or lateness on a regular basis is inexcusable and shall not be tolerated.  Tardiness is defined as any situation where an employee reports to work fifteen (15) or more minutes after his or her scheduled starting time.  Lateness is defined as any situation where an employee reports to work one (1) or more minutes after his or her scheduled starting time.  For the purpose of the foregoing disciplinary policy on tardiness, three (3) incidents of lateness shall equal one (1) incident of tardiness.  Whenever an employee is late or tardy, that employee shall be subject to a corresponding reduction in pay for each tenth of an hour, or portion thereof, for which the employee is late or tardy, unless the employee offers to the supervisor a written reason for being late or tardy deemed acceptable by the supervisor.

B.    An employee who is tardy, or for whom the incidents of lateness equal tardiness, may be subject to appropriate disciplinary action as follows, unless he or she offers to the supervisor a written reason for being tardy deemed acceptable by the supervisor:

      2 times tardy - instruction and cautioning

      3 times tardy - written reprimand

      4 times tardy - 3 days or less suspension, or fine*

      5 times tardy - 15 days or less suspension, or fine*

      6 times tardy - termination from service

*     This may be a working suspension of record or a non-working suspension without pay.

C.    Each tardiness disciplinary action shall have force and effect for a period of eighteen (18) months after its issuance.  (Whenever possible, the employee shall be required to call his supervisor to provide notification regarding an anticipated incident of tardiness and/or lateness.)

| TARDINESS and LATENESS | SECTION 7.2 |
|---|---|
| (Continued) | Page 2 of 2 |

D.     Instruction and Cautioning will be issued by the supervisor and a Record of Instruction and Cautioning will be given to the employee with a copy placed in the employee's personnel file.   Written reprimands will be issued by the employee's supervisor and a Record of Written Reprimand will be given to the employee with a copy placed in the employee's personnel file.

E.     Suspensions, fines, and terminations related to tardiness and/or lateness will be recommended by the responsible management or supervisory authority, and will require official action of the Employer.

| Original Adoption Date | Revision Date |
|---|---|
| _____3/92_____ | _____ |

**BULLETIN BOARDS**

A.    All materials appearing on the Employer's bulletin boards will be posted by the Employer or designated representative.  All County notices, state or federal required notices, and required legal notices shall be posted on the bulletin board.  Information of a general interest to employees may be posted by the Employer or designated representative(s), provided the material to be posted does not contain:

    1.    personal attacks upon any employee or public official;

    2.    scandalous or derogatory attacks upon any employee, public official, or governmental unit/agency;

    3.    attacks on and/or unfavorable comments regarding a candidate for public office.

B.    Employees wishing to have materials posted on the bulletin board shall submit a written request to the Employer or designated representatives for approval.  The request shall include: name(s) of person(s) or group(s) making the request, a copy of the material to be posted, and the period of time the material is to be posted.

C.    Information posted on an Employer bulletin board shall be removed after the approved posting period.  Materials posted without prior approval will be removed from the bulletin boards.

D.    Any employee found to be in violation of this policy shall be subject to disciplinary action.

LDS000118

E.      Postings on designated Union bulletin boards shall be governed by the terms of the applicable collective bargaining agreement.

| **Original Adoption Date** | **Revision Date** |
|---|---|
| 3/92 | |

**HEALTH AND SAFETY**
**SECTION 7.4**
**Page 1 of 1**

A.   Safety is the responsibility of both supervisory and non-supervisory employees.  It is the responsibility of each to make certain that all safety equipment is being used and all safety procedures and practices are observed.  Any employee found to be negligent in equipment operation, resulting either in damage to the equipment or an accident, shall be disciplined in accordance with the County's progressive discipline policy.  The safe and efficient completion of work assignments, without injury, is the County's primary concern.  Only through the determined elimination of the causes can we reduce the frequency of accidents.

B.   All employees, particularly supervisors, have the responsibility of reporting the existence of any hazardous conditions or practices.  Supervisors found to be negligent in requiring the use of prescribed safety equipment will be subject to disciplinary action.

C.   Any accident occurring during normal working hours shall be reported, in writing, to the immediate supervisor at once.  The supervisor shall in turn notify the Employer or designee.

D.   Upon notification of an accident, the supervisor and employee shall complete an accident form which must be forwarded to the Safety/Risk Manager no later than the end of the shift in which the accident occurred in order to ensure that the employee may be covered under Workers' Compensation insurance.

**Original Adoption Date**
**Revision Date**

3/92

A.    The safety and security of employees, clients, and the general public are of vital importance to the Employer.  Therefore, threats, threatening behavior, or acts of violence made by an employee or anyone else against another person's life, health, well-being, family, or property will not be tolerated.  Employees found guilty of violence will be subject to disciplinary action up to and including termination of employment.

B.    The Employer prohibits the following:

1.    any act or threat of violence by an employee against another person's life, health, well-being, or property;

2.    any act or threat of violence which could result in damage to County equipment or property;

3.    any act or threat of violence, including, but not limited to, intimidation, harassment, or coercion;

4.    any act or threat of violence which endangers the safety of employees, clients, residents, or the general public;

5.    any act or threat of violence made directly or indirectly by words, gestures, or symbols; or

6.    use or possession of a weapon on County premises or on a County controlled site, or an area that is associated with County employment except as required in the line of duty (i.e., law enforcement).  A weapon is defined as a loaded or unloaded

firearm or a device, electronic stun device, chemical substance, or other material that could be used, ordinarily would be used, or is intended to be used to cause serious bodily injury.

C.   Any person who makes substantial threats, exhibits threatening behavior, or engages in violent acts on County property shall be removed from the premises as quickly as safety permits and shall remain off the premises pending the outcome of an investigation.  The Employer will initiate an appropriate response.  This response may include, but is not limited to, suspension, and/or termination of any business relationship, reassignment of job duties, suspension, or termination of employment, and/or criminal prosecution of the person(s) involved.

D.   Employees shall immediately report to their supervisor any behavior that compromises the Employer's ability to maintain a safe work environment.  All reports will be investigated immediately and kept confidential, except where there is a legitimate need to know.  Even without an actual threat, personnel should also report any behavior they have witnessed which they regard as threatening or violent, when that behavior is job-related or might be carried out on a County-controlled site, or is connected with employment by the Employer.

E.   If situations arise where immediate assistance from the Sheriff's Office is required, the Sheriff's radio room (Extension 3709) may be called.

F.   All employees who apply for, obtain, or are the subject of a restraining order which lists County locations as being protected areas, must provide to the County a copy of the

petition and declarations used to seek the order, a copy of any temporary protective or restraining order which is granted, and a copy of any protective or restraining order which is made permanent.

**Original Adoption Date**                                    **Revision Date**

_____                          _____

**CONCEALED WEAPONS**

**SECTION 7.6**
**Page 1 of 1**

The Employer, through the promulgation of this policy, hereby notifies its employees that carrying a concealed weapon is not part of any employee's job responsibility and that such activity does not arise "in the scope of employment."  Any employee who carries, uses, brandishes, or displays a firearm while on duty will not be defended or indemnified.

Accordingly, the Employer specifically prohibits the following activities:

1.      carrying a weapon or firearm while on duty, whether or not licensed to do so;

2.      possessing a weapon or firearm in any parking area owned, leased, or controlled by the County, whether or not contained in the vehicle;

3.      displaying a weapon or firearm while on duty;

4.      carrying or displaying a weapon or firearm, on or off-duty, while on strike or picketing;

5.      displaying an empty handgun holster while on duty.

Any violation of this policy shall be considered a Group III offense and may result in discipline, up to and including the employee's termination of employment.  Should an employee display a weapon or firearm, whether in a facility or in a parking lot, such action will be considered a threat and prosecuted to the fullest extent of the law.

**Original Adoption Date**

**Revision Date**

_____

_____

| TOOLS, SUPPLIES, EQUIPMENT, | SECTION 7.7 |
|---|---|
| AND TELEPHONES | Page 1 of 1 |

A.　　All tools, supplies and equipment needed to perform job duties are provided by the Employer.  It is the responsibility of supervisors to see that they are properly used and maintained.

B.　　Misuse, neglect, theft, and abuse of tools, supplies, equipment, personal computers, or telephones is prohibited.  Accidents involving misuse of tools or equipment may be cause for disciplinary action (see Safety).  Loss of tools on more than one occasion may require payment by the employee for those tools lost.  Telephones are to be used for County business only.  Coin-operated telephones within or outside the work area are available for employees to make personal phone calls during break or meal periods. Employees are required to limit incoming personal calls to emergency calls only.  Use of telephones for other than business purposes may require payment and result in disciplinary action.

C.　　Use of motor vehicles or equipment will be strictly controlled.  Motor vehicles and equipment may only be used for business purposes, with advance authorization from the employee's immediate supervisor.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

| DRIVER/VEHICLE RISK REDUCTION PROGRAM | SECTION 7.8 |
|---|---|
| | Page 1 of 1 |

A.   The Lorain County Board of Commissioners has adopted a Driver/Vehicle Risk Reduction Program.  This program is a separate stand alone document that applies to County employees who operate a County vehicle or operate their own vehicle on behalf of the County.  It does not apply to CDL operators who must adhere to all policies, regulations, and laws governing the operation of a commercial motor vehicle.

B.   It is the responsibility of the County employees who operate a County vehicle or their own vehicle on behalf of the County to ensure they are familiar with this program. Questions regarding the program should be directed to the County's Safety and Risk Manager (440-329-5227).

| Original Adoption Date | Revision Date |
|---|---|
| _____ | _____ |

**CDL DRIVER NOTIFICATION/**
**DISQUALIFICATION POLICY**

**SECTION 7.8.1**
**Page 1 of 5**

A.      Any questions regarding this policy should be directed to the County Administrator or the Safety and Risk Manager.

B.      In accordance with federal regulations (49 CFR 383.37), the County is prohibited from knowingly allowing, requiring, permitting, or authorizing a driver to operate a Commercial Motor Vehicle (CMV):

    1.      During any period in which the driver has a CMV driver's license suspended, revoked, or canceled by a state, has lost the right to operate a CMV in a state, or has been disqualified from operating a CMV.

    2.      During any period in which the driver has more than one CMV driver's license.

    3.      During any period in which the driver is subject to an out-of-service order.

    4.      In violation of a federal, state, or local law or regulation pertaining to railroad highway grade crossings.

In order to comply with these standards, the Board has promulgated the following policy concerning all CDL holders employed by the County.

C.      All employees who operate a CMV are subject to this policy.  This includes but is not limited to:

    1.      Full-time regularly employed drivers; casual, intermittent, or occasional drivers.

    2.      For the purposes of pre-employment notification only, the term "driver" includes a person applying to the County to drive a CMV.

3.    Employees promoted or transferred into a position requiring the operation of a CMV are treated as new hires for the purposes of this policy and pre-employment notification requirements.

D.    <u>Pre-Employment Notification</u>

The County is obligated to request information concerning an applicant's previous work history for the purpose of performing a pre-employment background investigation (49 C.F.R. 383.35).  Any driver applying for employment as an operator of a CMV shall provide at the time of application for employment the following information:

1.    An employment history for the ten (10) years preceding the date the application is submitted.  Such history shall include:

    a.    A list of names and addresses of the applicant's previous employers for which the applicant was the operator of a CMV.

    b.    The dates the applicant was employed by those employers.

    c.    The reason for leaving such employment.

2.    A certification that all of the information furnished pursuant to "1" above is accurate and complete.

The County, at its sole discretion, may require an applicant to provide additional information.

**CDL DRIVER NOTIFICATION/**                              SECTION 7.8.1
**DISQUALIFICATION POLICY (CONTINUED)**                    Page 3 of 5

E.     Multiple Driver's Licenses

     1.     No employee of the County who operates a CMV shall at any time have more than one driver's license (49 C.F.R. 383.21).

F.     Notification of Convictions for Driver Violations

     1.     Each employee of the County who operates a CMV and who is convicted of violating, in any type of motor vehicle, a state or local law relating to motor vehicle traffic control, must notify the County of such conviction.  Violations covered under this subsection do not include parking infractions.

     2.     Reporting Violations

          Notification of violations required under this section shall be made, in writing, to the Safety and Risk Manager and the applicable department head.

     3.     Time Limits

          Notification of a violation under this subsection must be made within thirty (30) days after the date the employee has been convicted.

     4.     Information Required in the Notification

          The notification submitted by the employee in accordance with this subsection shall contain the following information:

          a.     Driver's full name.

**CDL DRIVER NOTIFICATION/**                                     SECTION 7.8.1
**DISQUALIFICATION POLICY (CONTINUED)**                          Page 4 of 5

    b.    Driver's license number.

    c.    Date of conviction.

    d.    The specific criminal or other offense(s), serious traffic violation(s), and other violation(s) of state or local laws relating to motor vehicle traffic control, for which the person was convicted and any suspension, revocation, or cancellation of certain driving privileges which resulted from such conviction(s).

    e.    Indication of whether or not the violation was in a CMV.

    f.    Location of the offense.

    g.    Driver's signature.

G.    <u>Notification of Driver's License Suspensions</u>

    1.    Any employee who has a driver's license suspended, revoked, canceled, or loses the right to operate a CMV for any period, shall notify the County of such suspension, revocation, cancellation, lost privilege, or disqualification.

    2.    <u>Reporting</u>

    Notification under this section shall be made, in writing, to the Safety and Risk Manager and the applicable department head.

| CDL DRIVER NOTIFICATION/ | SECTION 7.8.1 |
|---|---|
| DISQUALIFICATION POLICY (CONTINUED) | Page 5 of 5 |

3.   Time Limits

Notification under this section shall be made before the end of the next business day following the day the employee received notice of the suspension, revocation, cancellation, lost privileges, or disqualification.

H.   If a driver/employee violates any of the notification provisions or prohibitions set forth in sections D, E, F, and G of this policy, the following consequences will result:

1.   The driver shall be immediately removed from operating a CMV pending the results of an investigation into the alleged violation.  Such removal is designed to give the County time to assess what effect, if any, the violation has on the driver's eligibility to operate a CMV, and therefore is not subject to any complaint or grievance procedure.

2.   The driver may be disciplined, up to and including dismissal.

| Original Adoption Date | Revision Date |
|---|---|
| _____ | _____ |

| DRUG FREE WORK PLACE POLICY | SECTION 7.9 |
|---|---|
| | Page 1 of 7 |

A.    Notice Upon Hiring

    1.    As a condition precedent to hiring, all prospective employees must present themselves drug free.

    2.    As a condition precedent to hiring, all prospective employees will receive a copy of the Employer's statement and policy, and will be required to sign a receipt, which will become a permanent part of the employee's personnel file.

    3.    In addition, all prospective employees will be required to acknowledge that compliance with the Employer's Drug Free Workplace policies is a condition of employment.

B.    Distribution of Drug Free Workplace Policy

All current employees will receive a copy of the Employer's Drug Free Workplace statement and policy; and will be required to sign a receipt for it, which will become a permanent part of the employees' personnel file.

C.    The Drug Free Workplace Policy

    1.    Definitions:  For purposes of this policy:

        a.    Employee – defined as any person (i.e., management, supervisory or non-supervisory) who is paid in whole or in part by the Employer.

b.   <u>Controlled Substance</u> – defined as any controlled substance contained in Schedules I through V of Section 202 of the Controlled Substance Act (21 USC 812; or as defined in 3719.01 O.R.C.).

c.   <u>Conviction</u> – defined as any finding of guilt, including a plea of nolo contendere (no contest) or the imposition of a sentence, or both, by any judicial body charged with the responsibility to determine violations of the federal or state criminal drug statutes.

d.   <u>Criminal Drug Statute</u> – defined as a criminal statute involving manufacture, distribution, dispensation, use or possession of any controlled substance.

e.   <u>Drug</u> – defined as any substance capable of altering an individual's coordination, mood, perception of time, space or distance, pain level, or judgment.

f.   <u>Prescription Drug</u> – defined as any substance prescribed by a licensed medical practitioner for individual consumption.  Such drugs will be used only in the manner, combination, and quantity prescribed.

g.   <u>Illegal Drug</u> – defined as any substance that the possession of or consumption of is considered illegal.

h.   <u>Alcohol</u> – defined as any beverage that may be legally sold and consumed that has an alcoholic content.

i.    <u>Drug Test/Screen</u> – defined as urine analysis, blood/hair sampling, and/or breath alcohol testing performed by a non-Employer organization certified to perform such tests.

For purposes of this policy all definitions will be consistent with Ohio Revised Code Section 3719.01, et seq O.R.C.

2.    <u>Distribution</u>

Each employee will receive annually from their respective department head an information package containing:

a.    Information concerning the dangers of drug abuse in the workplace.

b.    A current copy of the Employer's posted/published statement.

c.    A current copy of the Acknowledgment of Receipt for signature.

d.    A current copy of the Employer's Drug Free Workplace policy.

e.    Information concerning any available drug counseling, rehabilitation and employee assistance programs.

f.    Information concerning the penalties that will be imposed for the breach of the Employer's Drug Free Workplace policy.

g.     Notice to the employee that any work-related conviction of any federal or state criminal drug statute must be reported in writing to the Employer within five (5) calendar days after such conviction.

3.     <u>Supervisor Training</u>

a.     Two (2) hour annual employee education/awareness training.

(1)     written policy will be distributed and everyone will be expected to sign that he/she received a copy;

(2)     a qualified professional will offer at least one (1) session designed to make employees aware of substance use as a problem;

(3)     the effects it can have on the individual and the family;

(4)     signs and symptoms of use;

(5)     effects of commonly used drugs in the workplace;

(6)     the assessment of the degree of the substance use problem and/or treatment will also be covered;

(7)     new employees will learn about this program during orientation and they will receive substance education as soon as possible thereafter.

**DRUG FREE WORK PLACE POLICY**
**(Continued)**

SECTION 7.9
Page 5 of 7

b.    Four (4) hour initial training from a qualified professional the first year. Two (2) hour refresher thereafter.  This training will be designed to:

  (1)    help supervisors recognize behaviors that demonstrate an alcohol or drug problem;

  (2)    how to document these behaviors and confront an employee about the problem;

  (3)    how to initiate reasonable cause testing;

  (4)    how to make appropriate referrals of an employee for an assessment of the problem or other assistance;

  (5)    how to follow up with employees who returns to work after a positive test;

  (6)    how to operate consistently with collective bargaining agreements.

4.    <u>Employee Training</u>

a.    Two (2) hour annual employee education/awareness training with an opportunity to ask questions.

  (1)    written policy will be distributed and everyone will be expected to sign that he/she received a copy;

**DRUG FREE WORK PLACE POLICY**
**(Continued)**

(2)  a qualified professional will offer at least one (1) session designed to make employees aware of substance use as a problem;

(3)  the effects it can have on the individual and the family;

(4)  signs and symptoms of use;

(5)  effects of commonly used drugs in the workplace;

(6)  assessment of the degree of the substance use problem and/or treatment will also be covered;

(7)  new employees will learn about this program during orientation and they will receive substance education as soon as possible thereafter.

5.  <u>Regulations</u>

The unlawful manufacture, distribution, dispensation, possession, or consumption/use of a controlled substance by any employee which takes place in whole or in part in the Employer's workplace is strictly prohibited and will result in criminal prosecution and discipline of the employee, which may include termination from employment.

**DRUG FREE WORK PLACE POLICY**                    SECTION 7.9
**(Continued)**                                    Page 7 of 7

6.    Notification of Conviction

Any employee convicted of any federal or state criminal drug statute for a workplace-related drug offense must notify the Employer of that fact within five (5) calendar days of the conviction.

Any employee convicted of a workplace-related drug offense, who fails to report the conviction as required, will be:

a.    terminated from employment;

b.    barred from future employment;

c.    held civilly liable for any loss of federal funds resulting from the failure to report the conviction.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

# LORAIN COUNTY
## DRUG FREE WORKPLACE POLICY

### **Employer Statement**

### Purpose

It is the intent of the Lorain County Board of Commissioners to provide a zero tolerance Drug-Free Workplace Policy to protect the health and safety of all employees; to insure reasonable protection and quality of service to the people of Lorain County, as well as responsible use of county equipment; to insure the reputation of the Employer and its employees within the community; to reduce absenteeism and tardiness and improve job performance and job safety; to understand that illegal drug and alcohol dependency is a disease; to provide referral to rehabilitation assistance for any employee who seeks such help; not to infringe upon personal rights of any employee except as those rights are balanced against the rights of other employees, the rights of the residents of Lorain County, and the rights of the Employer.

### Reference
Federal Drug Free Workplace Act

Ohio Bureau of Workers' Compensation Drug Free Workplace Program

### Scope
This zero tolerance Drug Free Workplace Policy (policy) applies to all employees that are covered by one of the Board of Commissioners' (Employer's) Ohio Bureau of Workers' Compensation insurance policies.

### Responsibilities
The Employer looks to all its employees to support this zero tolerance controlled substance and alcohol policy to better the overall safety, health, productivity and welfare of employees. Employees are asked to discourage fellow employees from violating this policy.  Employees are expected to cooperate in the Employer's efforts to enforce this policy.

LDS000139

## LORAIN COUNTY
## DRUG FREE WORKPLACE POLICY
(Continued)

The Employer states that each employee has a personal responsibility to abide by reasonable regulations governing behavior and performance on County property.  Without detracting from the existing rights and obligations of the parties recognized in other provisions of this policy, the Employer agrees to cooperate to encourage employees affected by alcoholism or drug abuse to undergo a coordinated program directed to their rehabilitation.

Goals

This concern, while not directed at the social and private lives of the employees, is directed at the abuse of alcohol or controlled substances that affect the safety of that employee on the job, the safety of his or her co- workers, and/or interferes with job performance.   The following conditions are established:

1.      All employees are prohibited from being under the influence of alcohol, drugs, or controlled substances at anytime during working hours.

2.      The sale, possession, transfer, or purchase of illegal drugs on County property or while performing official duties is strictly prohibited.  Such action will be reported to the appropriate law enforcement officials.

3.      The use, sale, or possession of any illegal drug or controlled substance while on duty is cause for termination.

4.      No alcoholic beverage will be brought to or consumed on Employer property.

5.      Any person other than the one for whom it is prescribed will use no prescription drug on Employer property.  Such drugs will be used only in the manner, combination, and quantity prescribed.  Should the prescribed medicine have the potential side effect of impacting on the employee's performance (e.g., drowsiness), the employee shall notify the immediate supervisor that they are utilizing the prescribed substance.

## LORAIN COUNTY DRUG FREE WORKPLACE POLICY
## ACKNOWLEDGEMENT OF RECEIPT

Signing this form acknowledges that the employee has received a copy of the Lorain County Drug Free Workplace Policy, has had the opportunity to discuss the policy and have questions answered, and understands all of the provisions in the policy.

Although it reflects the County's current policy regarding substance use, it may be necessary to make changes from time to time to best serve the needs of our organization.  However, any changes deemed necessary will be made in writing, and the modified policy will be shared with every employee.

I understand that if my performance indicates reasonable cause that I will submit to substance abuse screening.  I also understand that failure to comply with a request or a positive result may lead to termination of employment.

By my signature below, I acknowledge that I have received a copy of the Drug Free Workplace Policy of Lorain County.  I understand that it is my obligation to read, understand, and comply with the procedures and provisions contained within this policy.  I also understand that this signed certificate will become part of my personnel file and therefore subject to the Ohio Public Records Laws.


_____        _____

Date Signed                                                        Employee's Signature


_____        _____

Witness Signature                                                Printed Name of Employee

## LORAIN COUNTY DRUG-FREE WORKPLACE POLICY
### NOTICE TO EMPLOYEES

The Lorain County Appointing Authorities support the Drug Free Workplace Act of 1988 (PL-100-690).  Consequently, any unlawful manufacture, distribution, dispensation, possession, or use of controlled substances on these premises by employees is strictly prohibited and violators will be subject to discipline and criminal prosecution.

This policy is to be regarded as a condition of employment and any employee convicted of a work-related drug offense must notify their Employer no later than five (5) calendar days after conviction.

_____

Appointing Authority

**DRUG AND ALCOHOL USE FOR**
**NON-CDL EMPLOYEES**

**SECTION 7.10.1**
**Page 1 of 12**

A.    The Lorain County Board of Commissioners (Employer) recognizes the following responsibilities:

    1.    To protect the health and safety of all employees;

    2.    To ensure reasonable protection and quality of service to the people of Lorain County, as well as responsible use of County equipment;

    3.    To understand that illegal drug and alcohol dependency is a disease;

    4.    To not infringe upon personal rights of any employee except as those rights are balanced against the rights of other employees, the rights of the residents of Lorain County, and the rights of the Employer.

B.    This zero tolerance Drug Free Workplace Policy (Policy) applies to all employees that are covered by one of the Board of Commissioners' (Employer) Ohio Bureau of Workers' Compensation insurance policies.

C.    The Employer looks to all its employees to support this zero tolerance controlled substance and alcohol policy to better the overall safety, health, productivity, and welfare of employees. Employees are asked to discourage fellow employees from violating this policy. Employees are expected to cooperate in the Employer=s efforts to enforce this policy.

D.    The Employer states that each employee has a personal responsibility to abide by reasonable regulations governing behavior and performance on County property.

LDS000143

Without detracting from the existing rights and obligations of the parties recognized in other provisions of this policy, the Employer agrees to cooperate to encourage employees affected by alcoholism or drug abuse to undergo a coordinated program directed to their rehabilitation.

E.  This concern, while not directed at the social and private lives of the employees, is directed at the abuse of alcohol or drugs that affect the safety of that employee on the job, the safety of his or her co-workers, and/or interferes with job performance.  The following conditions are established:

1.  All employees are prohibited from using alcohol, illegal drugs, or controlled substances during working hours.  This does not include the proper use of prescription medication (see #6 below).

2.  The use, sale, possession, transfer, or purchase of illegal drugs on County property or while performing official duties is strictly prohibited.  Such action will be reported to the appropriate law enforcement officials.

3.  The use, sale, or possession of any illegal drug or controlled substance while on duty is cause for termination.  This does not include the proper use of prescription medication (see #6 below).

4.  No alcoholic beverage will be brought or consumed on County property.

5.  For the purpose of this rule, an alcoholic beverage is any beverage that may be legally sold and consumed and has an alcoholic content.

6.      No prescription drug will be used on County property by any person other than the one for whom it is prescribed. Such drugs will be used only in the manner, combination, and quantity prescribed. Should the prescribed medicine have the potential side effect of impacting on the employee=s performance (e.g., drowsiness), the employee shall notify the immediate supervisor that he is utilizing the prescribed substance.

7.      Drug means any substance capable of altering an individual=s mood, perception, pain level, or judgment. A prescribed drug is any substance prescribed by a licensed medical practitioner for individual consumption. An illegal drug is any drug or controlled substance the sale or consumption of which is illegal.

F.      The purposes of the policies as set forth above are:

1.      to establish and maintain a safe and healthy working environment for all employees;

2.      to ensure the reputation of the Employer and its employees within the community;

3.      to provide the best possible assistance to those Lorain County residents in need of our services;

4.      to reduce absenteeism and tardiness and improve job performance;

5.      to provide referral to rehabilitation assistance for any employee who seeks such help.

G.      The provisions of this policy will be implemented as follows:

1.    <u>Pre-Employment Testing</u>

    a.    All job applicant finalists will undergo testing for the presence of controlled substances and illegal drugs as a condition of employment.

    b.    Job applicant finalists will be required to report for such testing at a facility chosen by the Employer within three (3) hours of notification to test.  This will be the only opportunity for the applicant to test.  There will not be any rescheduling or make-up appointments.

    c.    Any applicant that refuses to test will be denied employment.  Any applicant with a confirmed positive test result will be denied employment. Results are subject to the Ohio Public Records Laws.

    d.    Any applicant whose test through specific gravity, temperature, or other lab procedures result in a suspected tamper, substitute, adulterated specimen will be denied employment.

    e.    The Employer will not discriminate against applicants for employment because of a past history of drug abuse.  Therefore, individuals who have failed a pre-employment test may initiate another inquiry with the Employer after a period of no less than twelve (12) months, but must present themselves drug free at that time.

2.    <u>Reasonable Cause Testing</u>

    a.    The Employer will not require an employee to submit to a test for drug or alcohol abuse in the absence of objective facts that establish reasonable

cause that the employee is intoxicated or impaired when reporting to or while on the job. There shall be no random or blanket testing unless otherwise required or permitted by law.

b.    Where an employee=s behavior suggests possible influence of drugs (including controlled substances), or alcohol, a supervisory/management representative will observe the suspected employee. If observation confirms a potential problem of being under the influence of drugs or alcohol, the employee will be required to stop work and will be escorted by a supervisor to a testing facility to be tested for potential drugs or alcohol in the body. Refusal to be tested may result in charges of insubordination, a Group 3 Offense, which may result in termination. Observation and consent forms, where applicable, shall be signed and dated.

c.    Any employee believed to be in an impaired condition shall not leave County property unless transportation is provided by someone other than the employee.

d.    Any employee who reports for work in an impaired condition from the use of a controlled substance or alcohol is subject to a five (5) day suspension for the first offense, and is subject to termination for the second offense.

e.    Upon receipt of a confirmed positive drug screen test, conducted in accordance with the procedure herein, an employee will be subject to discipline up to and including discharge. However, for the first violation, a lesser penalty may be imposed if the employee agrees to participate in and successfully completes a prescribed rehabilitation program.

f.      The Employer shall have the right to terminate the employee for failure to secure appropriate treatment thereby endangering himself, other employees, and the citizens of Lorain County, and disregarding his obligation to the Employer.

g.      Any employee who voluntarily identifies himself to the Employer as having a drug and/or alcohol problem shall not be subject to discipline for volunteering that fact.  Rather, the Employer will work with that employee through a rehabilitative source in an effort to assist the employee in ridding himself of dependence on drugs and/or alcohol and assist in rehabilitative efforts (see "H" below).

H.      <u>Employee Assistance Program</u>

The Employer will not pay for an employee to attend a rehabilitation program. Nevertheless, the Employer is supportive of employees taking action on their own behalf to address a drug, alcohol use/abuse problem.  The employee will agree to and follow the outlined program of a certified facility and certified professional.

1.      Voluntary Self Identification

2.      Rehabilitation Program supervised by a certified professional and facility in substance use/abuse.

a.      Professional evaluation results, recommendations by a certified professional forwarded to this Program Administrator.

b.      Weekly progress updates to the Program Administrator.

     c.     Official release by certified professional to return to duty.

     d.     Return to Duty Agreement (Last Chance Agreement).

3.     Follow-up tests within a two (2) year period of returning to duty will be but not limited to four (4) random tests.

     a.     Any refusal by the employee to undergo such drug and/or alcohol testing shall result in the immediate termination of the employee.

I.     <u>Testing Procedures for Drug Screens</u>

1.     The Employee/Applicant (E/A) shall report at the appropriate time when notified by the authorized employees of the Human Resources Department of the Lorain County Board of Commissioners.  The E/A shall have signed Consent Referral Form and appropriate photo identification with himself/herself.  If identification is not available, a designated representative from the Employer MUST accompany the E/A to the testing facility.

2.     Appointments for pre-employment testing will be within three (3) hours of notification to test.  This will be the only opportunity for the applicant to test.  No make-up or rescheduling for testing will be permitted.  The names and dosages of all medications (prescribed or over the counter) being taken by the E/A shall be provided by the E/A to the test facility at the time of testing.  The omissions of any medications that result in a positive test result and the consequences thereof are strictly the responsibility of the E/A.

3.  The following procedures for drug screens are described below.  However, in the event any test facility chosen by the Employer may have their own procedures that may differ slightly from those described below, E/A's are provided this information as a guide only to the process of drug screening.

    a.  The E/ A shall be escorted to the bathroom by a technician.

    b.  E/ A will be asked to place all items in his pockets in a safe location and store them outside the testing bathroom.  All other personal belongings (i.e., coats, hats, wallets, combs, money, purses, etc.) must also be left outside the testing area.

    c.  Prior to providing the sample, the E/A will be instructed to wash his/her hands with the soap provided to ensure no foreign substances are present.

    d.  The appropriate technician shall provide the E/A with a disposable plastic cup with temperature strip attached and will wait outside the testing area bathroom.  Once the testing has begun, no water may be run in the testing area and the toilet must not be flushed.  Toilets are supplied with a bluing agent.

    e.  The technician providing the E/A with the specimen cup will instruct him to fill it with at least a 30 - 60 ml of sample (1/4 - 1/2 full and over the temperature tape).  The E/A will enter the testing area and provide his sample.  He will place the specimen cup on the counter provided in the testing area.  If at any time there is reason to suspect that the sample may have been switched or tampered with, the technician shall request another sample from the E/ A.  Also, if the technician feels the sample given to

him is not valid, he will request a new sample. The technician will check for a possible tampered specimen according to volume, color, odor, temperature and specific gravity in accordance with the testing facilities procedures.

f.  The technician shall insure that the specimen bottle is labeled in the presence of the E/A with the security strip. The technician shall insure that the correct label is wrapped around the specimen bottle and the E/A is satisfied that the specimen, as labeled, is his. The E/A will sign the CHAIN OF CUSTODY form provided by the testing facility and the technician will verify this signature and the receipt of the sample with his signature. The technician must NOT lose sight of the specimen bottle from the time he receives it from the E/A to its placement in a secure place in the laboratory.

g.  If the E/ A is unable to provide a urine sample, the urine cup will be taken from the E/A. The E/ A will be required to wait in a designated area until a specimen is provided, but not to exceed three (3) hours. The client must remain in the designated area and drink fluids (e.g., 8 ounces of fluid every 30 minutes up to a maximum of 24 ounces).

h.  In cases where an E/A refuses or is unable to provide a urine sample within the three (3) hour limit (absent of certified medical explanation), or is found to have tampered with the specimen, it will be considered a violation of the pre-employment drug screening policy and employment will be denied. The test facility representative will inform the Human Resources Representative, County Administrator, or President of the Board of Commissioners.

4. <u>Hours for Pre-Employment Drug Testing</u>

The hours for collection of test samples for the purpose of screening are available on a twenty-four (24) hour basis at the testing facility designated by the Board of Commissioners.  However, testing will normally be accomplished during regular business hours Monday through Friday, 8:00 a.m. – 4:30 p.m.

5. <u>Results of Drug Tests</u>

a. Results shall be made available within twenty-four (24) to forty-eight (48) hours of receipt of specimens except in the case of weekends and holidays. Results will be given only to the Human Resources Representative, the County Administrator, or the President of the Board of Commissioners.

b. As the Employer is a public entity, all policies, procedures, documents, etc., are subject to the Ohio Public Records Laws.

c. Any employees tested under this policy have the right to review and/or receive a copy of their respective test results.  An employee may request from the Human Resources Representative, County Administrator, or President of the Board of Commissioners, in writing, a duly notarized request for a copy of the test results provided.  The Employer will use its best efforts to comply with this request in a timely manner and will issue to the employee a copy of the results by U.S. Certified Mail, Return Receipt Requested.

6.    Cost for Drug Tests

The cost for all drug and/or alcohol tests shall be borne by the Employer.

J.    Scientific and Technical Requirements

1.    Laboratory Analysis Procedures

The initial test shall use an immunoassay.  (A negative initial screening test is considered a negative test.)  The following initial cutoff levels shall be used when screening specimens to determine whether they are negative for these drugs or classes of drugs:

| Drug Class | Screening Test Level | Confirmation Test Level | Confirmation Test Level |
|---|---|---|---|
| Amphetamines | 1,000 ng/ml | 500 ng/ml | GC/MS |
| Cocaine | 300 ng/ml | 150 ng/ml | GC/MS |
| THC (Marijuana) | 50 ng/ml | 10 ng/ml | GC/MS |
| Opiates | 300 ng/ml | 200 ng/ml | GC/MS |
| Phencyclidine(PCP) | 25 ng/ml | 20 ng/ml | GC/MS |
| Opiates | 2,000 ng/ml | 2,000 ng/ml | GC/MS |
| Oyxcodone (oxycotin) | 100 ng/ml | 100 ng/ml | GC/MS |
| Propoxyphene (e.g. davon/darvocet) | 300 ng/ml | 300 ng/ml | GC/MS |
| Benzodiazepines (e.g. xanax/vicoden) | 300 ng/ml | 300 ng/ml | GC/MS |
| Barbiturates (CNS depressants) | 200 ng/ml | 200 ng/ml | GC/MS |
| Methylenedioxmethyl amphetamine (Ecstasy) | 500 ng/ml | 500 ng/ml | GC/MS |

*25 Ng/ml if immunoassay specific for free morphine

**NOTE:  The above commonly listed drug names are in no way to be considered a limitation on the testing process and are for illustrative and informative purposes only.  The fact that a specific medication or drug is not listed beside the drug category does not mean that an employee is excused from the consequences of testing above the prescribed category levels.

LDS000154

**DRUG AND ALCOHOL USE FOR**  
**NON-CDL EMPLOYEES (Continued)**

**SECTION 7.10.1**  
**Page 13 of 12**

2.    In order to determine if a sample has been tampered with, diluted or adulterated in any way, the test provider will also test for color, odor, temperature, volume limits at the collection site, and specific gravity at the laboratory.

K.    All Job Posting/Advertisements shall include the following information: Lorain County is an Equal Opportunity/Affirmative Action Employer and will make reasonable accommodation to qualified applicants with disabilities. All qualified applicants as a condition of employment and in compliance with the zero tolerance Lorain County Drug Free Workplace Program must present themselves drug-free and submit to drug screening.

L.    Drug and alcohol use/testing of bargaining unit employees is governed by the terms of the applicable collective bargaining agreement.

| **Original Adoption Date** | **Revision Date** |
|---|---|
| 3/92 | 12/2018 |

## LORAIN COUNTY DRUG-FREE WORKPLACE POLICY
## TEST REFERRAL FORM

Employee/Candidate_____Department_____
Contact_____Phone_____
Social Security #_____ Date of Birth_____

Candidate ID Verified By     [ ] Photo ID or [ ] Employer Representative
                ID# _____

REASON FOR TEST:

[ ] Pre-Employment            [ ] Reasonable Cause
[ ] Follow-Up Assessment/Treatment
*****************************************************************
### SERVICES REQUESTED


## SUBSTANCES TO BE TESTED FOR:

| Drug Class | Screening Test Level | Confirmation Test Level | Confirmation Test Level |
|---|---|---|---|
| Amphetamines | 1,000 ng/ml | 500 ng/ml | GC/MS |
| Cocaine | 300 ng/ml | 150 ng/ml | GC/MS |
| THC (Marijuana) | 50 ng/ml | 10 ng/ml | GC/MS |
| Opiates | 300 ng/ml | 200 ng/ml | GC/MS |
| Phencyclidine(PCP) | 25 ng/ml | 20 ng/ml | GC/MS |
| Opiates | 2,000 ng/ml | 2,000 ng/ml | GC/MS |
| Oyxcodone (oxycotin) | 100 ng/ml | 100 ng/ml | GC/MS |
| Propoxyphene (e.g. davon/darvocet) | 300 ng/ml | 300 ng/ml | GC/MS |
| Benzodiazepines (e.g. xanax/vicoden) | 300 ng/ml | 300 ng/ml | GC/MS |
| Barbiturates (CNS depressants) | 200 ng/ml | 200 ng/ml | GC/MS |
| Methylenedioxmethyl amphetamine (Ecstasy) | 500 ng/ml | 500 ng/ml | GC/MS |

All new employees are required to complete a Drugs-of-Abuse Urine Test as a condition of employment.  PROVISIONS:  Failure to provide a sample during the designated appointment shall be considered an unsuccessful test and reason to deny employment.  No retesting.  Any applicant that refuses to test will be denied employment.  Any applicant within a minimum detectable level (zero tolerance) of controlled substance(s) shall be denied employment.  Any pre-employment applicant whose test for specific gravity, temperature, creatinine or other sample

**LORAIN COUNTY DRUG-FREE WORKPLACE POLICY**
**TEST REFERRAL FORM**
**(Continued)**

validity test procedures result in suspected tamper, substitute/dilute, or adulterated specimen shall be denied employment.

The Lorain County Board of Commissioners selected the test provider in compliance with Ohio Bureau of Worker's Compensation Drug-Free Workplace Program.

Facility _____

Address _____

Hours_____ Date_____

LDS000157

**LORAIN COUNTY DRUG-FREE WORKPLACE POLICY**
**REASONABLE CAUSE**
**DOCUMENTATION OF VIOLATION**

The individual identified below is suspected of failing to comply with the Lorain County Drug Free Workplace Policy.

Employee Name_____ Location_____

List below all of the behaviors observed by the supervisor that created a concern that the employee named above might be in violation of the Employer's Drug Free Workplace Policy. ___
_____
_____
_____

If there were observable changes in the employee's job performance, list these behaviors below.
_____
_____

List below any physical signs or symptoms of possible substance use that the employee exhibited.
Eyes_____
Coordination _____
Speech_____
Other_____
Other Pertinent Observations_____
_____

Supervisor Reporting_____
Title of Supervisor _____
Name of Concurring Supervisor/Managerial Witness_____
Position _____
Date_____        Time_____        Shift_____
Testing Ordered:
_____ Yes     Employee Consent     _____/Yes     Date Tested_____     ___Alcohol
_____ No      Consent Obtained     _____/No      _____     ___Drugs
MRO Findings_____
_____
Follow-up Actions Taken_____

*****************************************************************

County Official's Signature_____ Date _____

## LORAIN COUNTY DRUG-FREE WORKPLACE POLICY
## RETURN TO DUTY AGREEMENT

EMPLOYEE_____ DEPARTMENT_____

Effective_____, by agreement of all the parties, the termination of the aforementioned employee will be reduced to a final suspension, providing all conditions of the Return to Duty Agreement are completed on a timely basis.  The purpose of the Agreement is to prevent any misunderstanding as to its terms, conditions, and time specified.  This Agreement is specifically and individually designed to meet the needs of the employee named above and shall not be precedent setting.

I, _____, have read, understood, and agree to all of the terms of this Agreement, and fully understand that failure to comply with its terms may result in disciplinary action, up to and including termination of my employment.

I agree that:

1.    I will abstain from the use of alcohol, and all psychotropic drugs (any substance or drug having a special affinity for or effect on the psyche or mind) not prescribed by my primary care physician and approved by the designated substance abuse professional.  I will notify my Employer and Union of such prescriptions.  I understand that abuse of such prescriptions will be a violation of the Agreement.

2.    I will enter rehabilitation treatment at _____.      I consent to the issuance of progress reports to the Lorain County Board of Commissioners Human Resources Representative, the County Administrator, or the President of the Board of Commissioners.

3.    I will complete the intensive phase of treatment with approval of the substance abuse professional.

4.    I will attend the continuing care program at _____ for no less than one year.

5.    I will attend AA/NA meetings and support group weekly for one (1) year as recommended by the substance abuse professional.

6.    I will have the AA/NA group secretary or support group facilitator attest to my attendance on a record card.  Further, I will submit that record card to the designated employer representative on a weekly basis as stated in statement #2.

**LORAIN COUNTY DRUG-FREE WORKPLACE POLICY**
**RETURN TO DUTY AGREEMENT**
**(Continued)**

7.      I will submit to testing for drugs and alcohol prior to my return to work.  My Employer may require that I submit myself to a minimum of six (6) follow-up drug tests within the twenty-four (24) month period immediately following my return to duty and may request additional tests for up to sixty (60) months as recommended by the substance abuse professional.

The application of this Agreement shall be subject to the grievance and arbitration procedures set forth in the collective bargaining agreement.

By their signatures, the Employer and Union acknowledge that the aforementioned employee has had the terms of this Agreement explained to him/her, that he/she has willingly agreed to them, and that they have witnessed his/her signature on this Agreement.


_____       _____
Employee                                                Date


_____       _____
Employer                                                Date


_____       _____
Union Representative                              Date

**CDL ALCOHOL AND DRUG TESTING POLICY**

**SECTION 7.10.2**
**Page 1 of 11**

A.   Any questions regarding this policy should be directed to the County Administrator or the Safety and Risk Manager.

B.   All employees who operate a commercial motor vehicle (CMV) are subject to this policy. This includes but is not limited to:

  1.   Full-time regularly employed drivers; casual, intermittent, or occasional drivers.

  2.   For the purposes of pre-employment/pre-duty testing only, the term "driver" includes a person applying to the County to drive a CMV.

  3.   Employees promoted or transferred into a position requiring the operation of a CMV are treated as new hires for the purposes of this policy and pre-employment testing requirements.

C.   For purposes of this policy, safety-sensitive functions include:

  1.   All time on public property or any other property waiting to be dispatched, unless the driver has been relieved from duty by the Employer;

  2.   All time inspecting equipment as required or inspecting, servicing, or conditioning any CMV at any time;

  3.   All time spent at the driving controls of a CMV in operation;

  4.   All time, other than driving time, in or upon any CMV;

  5.   All time loading or unloading a vehicle, supervising or assisting in the loading or

unloading, attending a vehicle being loaded or unloaded, remaining in readiness to operate the vehicle, or in giving or receiving receipts for shipments loaded or unloaded;

6.    All time spent by the driver performing functions relating to accidents;

7.    All time repairing, obtaining assistance, or remaining in attendance upon a disabled vehicle.

D.    Drivers covered by this policy are prohibited from engaging in the following:

1.    Reporting to duty, remaining on duty, or performing a safety-sensitive function while having an alcohol concentration of 0.04 or greater;

2.    Reporting to duty, remaining on duty, or performing a safety-sensitive function while using a controlled substance (including prescription drugs, unless the physician has advised the driver that the substance does not adversely affect the driver's ability to operate a CMV), or if the driver tests positive for controlled substances;

3.    Possessing alcohol while on duty or operating a CMV;

4.    Using alcohol or controlled substances while on duty;

5.    Performing safety-sensitive functions within four (4) hours after using alcohol;

6.    Using alcohol for eight (8) hours following an accident in which the driver is required to take a post-accident alcohol test or until the driver undergoes a post-

accident alcohol test, whichever occurs first;

7.      Refusing to submit to a post-accident, random, reasonable suspicion or follow-up alcohol or controlled substance test.

E.      If a driver/employee violates any of the prohibitions listed in Section D of this policy, the following consequences will result:

1.      The driver may be disciplined up to and including dismissal.  However, any discipline may, at the discretion of the Employer, be mitigated by the willingness of the employee to complete a recommended rehabilitation program.  An employee shall be permitted only one (1) chance at rehabilitation.

2.      The driver shall be immediately removed (taken out of service) from the safety-sensitive position.  Such removal is in accordance with federal regulations, and therefore not subject to any complaint or grievance procedure.

         If the driver is not terminated, he may request the use of accumulated leave to cover any period of absence in accordance with "E – 4" below.  If the driver does not have sufficient paid leave to cover the period of absence, he must request unpaid leave in accordance with the Board's policy or the terms of any applicable labor agreement.

3.      The driver shall be provided with information regarding the services available for alcohol and substance abuse.

4.      The driver shall be evaluated by a substance abuse professional, and may not return to duty until all recommended counseling and treatment are completed.

These actions are in accordance with federal regulations, and therefore not subject to any complaint or grievance procedure.

Failure to complete or participate in a prescribed counseling or rehabilitation program shall result in the employee's termination.  Any costs associated with the prescribed counseling or rehabilitation program are the responsibility of the employee, unless otherwise covered by the Employer-sponsored medical benefit plan to which the employee belongs.

5.  The driver will be subject to re-evaluation by the substance abuse professional, return-to-duty testing, and unannounced follow-up testing.  These actions are in accordance with federal regulations, and therefore not subject to any complaint or grievance procedure.  Any costs associated with these tests shall be the responsibility of the employee.

F.  A driver is required to report the use of any prescription or non-prescription medicines containing alcohol or controlled substances to his/her supervisor.  At the time medication is prescribed, the driver shall inquire as to whether the medication will impair the driver's ability to perform safety-sensitive functions.  The driver shall be required to produce a signed statement from the treating physician that such medication does not impair the driver's ability to perform safety-sensitive functions and/or does not interfere with the safe performance of the driver's job.

If the treating physician determines that the medication will impair the driver's ability to perform safety-sensitive functions, the employee will be permitted to use accumulated leave to cover the period of absence.  If the driver does not have sufficient leave to cover the period of absence, he or she must request unpaid leave in accordance with the Board's policy or the terms of any applicable labor agreement.

G.    A driver will be required to submit to testing for alcohol and/or controlled substances under the following circumstances:

1.    Pre-employment testing:  Prior to the first time a driver performs a safety-sensitive function, the driver will be tested for controlled substances.  The driver will not be permitted to perform safety-sensitive functions unless the controlled substance test results are negative.

The Employer shall arrange the time and location for the pre-employment test. The applicant is responsible for reporting to the collection site for the test and for any costs associated with the test.  These same requirements shall apply when an existing employee moves from a non-driver to a driver position.

2.    Post-accident testing:  As soon as practicable following (a) an accident in which a fatality occurs, (b) an accident in which an injury is treated away from the scene and the driver/employee receives a citation for a moving violation arising from the accident, or (c) an accident in which a vehicle is required to be towed from the scene and the driver/employee receives a citation for a moving violation arising from the accident, the driver shall be tested for alcohol and controlled substances. The Employer shall cease attempts to administer the test eight (8) hours following the accident for alcohol and after thirty-two (32) hours for controlled substances.

The driver shall be transported to the collection site by a representative of the County.  The employee shall not be permitted to perform safety-sensitive functions until a negative controlled substance test result is reported.

Following an alcohol test which shows no detectable amount of alcohol, the driver will, at the discretion of the Employer, either be placed on administrative

leave with pay or assigned to perform non-safety-sensitive functions until the controlled substance test results are available.  If the controlled substance test results are negative, and no other work rule violations have occurred, the employee shall be returned to his or her driver position.

Following an alcohol test result which shows a detectable level of alcohol of 0.02, but less than 0.04, the driver will, at the discretion of the Employer, either be placed on administrative leave with pay or assigned to perform non-safety-sensitive functions for twenty-four (24) hours or until the controlled substance test results are available, whichever is greater.  An employee with an alcohol test result of less than 0.04 shall also be subject to appropriate disciplinary measures.

Following an alcohol test result which shows a concentration of 0.04 or greater, or following a positive controlled substance test result, if the driver's employment is not terminated, he or she may request the use of accumulated leave, or unpaid leave in accordance with the Board's policy or the terms of any applicable labor agreement.

3.  <u>Random testing</u>:  A minimum number of drivers (currently ten percent [10%] for alcohol and fifty percent [50%] for controlled substances) annually will be randomly selected using a scientifically valid method in which each driver will have an equal chance of being tested each time selections are made.  The dates for testing shall be unannounced and spread throughout the calendar year.  When a driver is selected for testing, he or she shall cease doing the safety-sensitive function and proceed to the test site immediately.

Following a random alcohol test result which shows a detectable level of alcohol of 0.02, but less than 0.04, the driver will, at the discretion of the Employer, either

LDS000166

be placed on administrative leave with pay or assigned to perform non-safety-sensitive functions for a minimum of twenty-four (24) hours.  An employee with a random alcohol test result of less than 0.04 shall also be subject to appropriate disciplinary measures.

Following a random alcohol test result which shows a concentration of 0.04 or greater, or following a positive random controlled substance test result, if the driver's employment is not terminated, he or she may request the use of accumulated leave, or unpaid leave in accordance with the Board's policy or the terms of any applicable labor agreement.

4.    <u>Reasonable suspicion testing</u>:  A trained supervisor or official may require a driver to undergo testing for alcohol or controlled substances based upon specific, contemporaneous, articulable observations concerning the appearance, behavior, speech, or body odors of the driver.  If a driver is required to undergo testing under this section, the driver must immediately cease to perform the safety-sensitive function and he or she shall be transported to the collection site by a representative of the County.  If a driver is required to undergo reasonable suspicion controlled substance testing, such employee shall not be permitted to perform safety-sensitive functions until a negative controlled substance test result is reported.  Following a reasonable suspicion controlled substance test, the driver will, at the discretion of the Employer, either be placed on administrative leave with pay or assigned to perform non-safety-sensitive functions until the test results are available.  If the controlled substance test results are negative, and no other work rule violations have occurred, the employee shall be returned to his or her driver position.

Following a reasonable suspicion alcohol test result which shows a detectable level of alcohol of 0.02, but less than 0.04, the driver will, at the discretion of the Employer, either be placed on administrative leave with pay or assigned to perform non-safety-sensitive functions for a minimum of twenty-four (24) hours. An employee with a reasonable suspicion alcohol test result of less than 0.04 shall also be subject to appropriate disciplinary measures.

Following a reasonable suspicion alcohol test result which shows a concentration of 0.04 or greater, or following a positive reasonable suspicion controlled substance test result, if the driver's employment is not terminated, he or she may request the use of accumulated leave or unpaid leave in accordance with the Board's policy or the terms of any applicable labor agreement.

The Employer will cease any attempt to administer a reasonable suspicion alcohol test eight (8) hours after the observation of reasonable suspicion was made.

5.   Return-to-duty testing:  Before a driver who has been found to be in violation of the prohibitions section of this policy, set out in Section D, may return to duty in a position requiring the performance of safety-sensitive functions, the driver must undergo testing for alcohol and/or controlled substances.  The results of the alcohol test must show less than 0.02 concentration if the offense involved alcohol, and the controlled substance test must be negative if the offense involved controlled substances.

6.   Follow-up testing:  When a driver has been found to be in violation of the prohibitions section of this policy, set out in Section D, and the substance abuse professional has determined that the driver needs assistance in resolving alcohol or substance abuse problems, the driver will, in accordance with federal

regulations, be subject to a minimum of six (6) unannounced follow-up tests within the first twelve (12) months following the driver's return to duty as directed by the substance abuse professional.

H.   All drug screening and confirmation tests shall be conducted by a laboratory certified by DHHS under the National Laboratory Certification Program.  The Employer and the laboratory shall have a clear and well-documented procedure for collection, shipment, and accessing of urine specimens.  The procedures utilized by the Employer and the laboratory shall include an evidentiary chain of custody and control and split sample collection and testing.  The collection site person is responsible for maintaining the integrity of the specimen collection and transfer process.  All procedures shall be outlined in writing and provided to Employer representatives and donors.

I.   All alcohol tests shall be administered by a certified breath alcohol technician (BAT) or a certified screening test technician (STT).  Only evidential breath testing (EBT) devices and alcohol screening devices (ASD) shall be used.

J.   Refusal to submit to any of the alcohol or controlled substance tests required by this policy will result in the driver's immediate removal from the safety-sensitive functions and may result in disciplinary action.  Refusal will be treated as a positive test, and the driver will either be terminated or referred to a counseling program and subject to return-to-duty and follow-up testing.  Actions constituting a refusal to submit to a test include but are not limited to the following:

1.   Failing to provide adequate breath for alcohol testing;

2.   Failing to provide adequate urine for controlled substance testing;

3.      Engaging in conduct that clearly obstructs the testing procedure;

4.      Failing to remain readily available for a post-accident test.

K.      Drivers who have been tested for alcohol with the results showing a concentration of 0.02 but less than 0.04 will not be permitted to perform any safety-sensitive functions for twenty-four (24) hours following administration of the test.

L.      Information regarding the effects of alcohol and controlled substance use on an individual's health, work, and personal life, and information about drug and alcohol counseling, rehabilitation, and employee assistance programs is available through the Human Resources Department, and will be periodically provided to employees.

The Employer encourages employees to voluntarily admit problems with alcohol and/or controlled substances prior to violating this or other policies.  An employee who voluntarily enters into counseling or rehabilitation may request the use of accumulated leave, or unpaid leave in accordance with the Board's policy or the terms of any applicable labor agreement.  Any costs associated with a voluntary counseling or rehabilitation program are the responsibility of the employee, unless otherwise covered by the Employer-sponsored medical benefit plan to which the employee belongs.

M.      Upon written request from the driver, the Employer will promptly provide copies of any records pertaining to the driver's use of alcohol or controlled substances, including the results of any tests.  The Employer may charge a reasonable fee for such copies.

N.      All employees subject to this policy remain subject to all other policies, procedures, rules and regulations established by the Board of Commissioners under the Board's independent authority, and which are not inconsistent with the requirements herein.  All

| CDL ALCOHOL AND DRUG TESTING POLICY (Continued) | SECTION 7.10.2 Page 11 of 11 |
|---|---|

employees also remain subject to all other relevant federal, state, and local laws and regulations.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

**LORAIN COUNTY**
**CERTIFICATE OF RECEIPT FOR CDL**
**ALCOHOL AND DRUG TESTING POLICY**

My signature on this document certifies that I have received a copy of the Lorain County Board of Commissioners CDL Alcohol and Drug Testing Policy.  I further agree to familiarize myself with the contents of the policy and adhere to all of its terms and conditions.

_____                    _____

Employee Name                                                          Date

| GAMBLING | SECTION 7.11 |
| --- | --- |
| | Page 1 of 1 |

A.    The Employer does not permit illegal gambling in any form by County employees during working hours.  For the purpose of this section, working hours shall include time actively engaged in work, lunch periods, clean-up time and any other break period.  Violation of this policy will be cause for disciplinary action as prescribed herein.

| Original Adoption Date | Revision Date |
| --- | --- |
| _____3/92_____ | _____ |

| OUTSIDE EMPLOYMENT OR ACTIVITIES | SECTION 7.12 |
| --- | --- |
| | Page 1 of 1 |

A.    Under no circumstances shall an employee engage in other employment or activities which conflict with the objectives, interests, or operations of the County.

Two common conflicts which may arise are:

1.    <u>Time Conflict</u> - defined as when the hours required for outside employment or activities directly conflict with the scheduled working hours of an employee's job with the County, or when the demands of outside employment or activities prohibit adequate rest, thereby adversely affecting the quality of the employee's job performance with the Employer.

2.    <u>Interest Conflict</u> - defined as when an employee engages in outside employment or activities which tend to compromise his or her judgment, actions and/or job performance with the Employer.

C.    Should the Employer feel that an employee's outside employment or activities are adversely affecting the employee's job performance with the County, the Employer may recommend--but may not demand--that the employee resign from the other employment or refrain from such activity. However, any conflict, policy infraction, or other specific offense which is a direct or indirect result of an employee's participation in outside employment or activities shall be disciplined in such a manner that is consistent with the Employer's progressive discipline policy.

| Original Adoption Date | Revision Date |
| --- | --- |
| 3/92 | |

| DRESS AND WORK AREA | SECTION 7.13 |
|---|---|
| | Page 1 of 1 |

The Employer reserves the right to prescribe appropriate dress and grooming and to set standards that are in the best interests of the County service. The Employer's policy is to require that clothing and overall appearance be appropriate for the work situation and be in good taste. Employees who work around machinery and equipment should also observe sound safety regulations, including the use of appropriate articles of clothing (shoes, goggles, hard-hats, and so forth).

All employees are expected to maintain a clean and neat work area. The condition of work areas and equipment affect the public's impression of both County government and County employees. County offices and work areas should always give a business-like impression. Anything detracting from a business atmosphere will not be tolerated. This extra care will also apply to uniforms, clothing, equipment, and break areas.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

LDS000175

**SOLICITATION AND DISTRIBUTION**                                    **SECTION 7.14**
                                                                      **Page 1 of 3**

A.    In order to provide specific rules and regulations for employees and outside organizations for buildings and other facilities and/or equipment under the control of the Lorain County Board of Commissioners, the following rules shall apply:

1.    <u>Employee No-Solicitation Rule</u> - Any solicitation by an employee of another employee on the premises of the Employer, while either employee is on his/her working time, is prohibited.  "Working time" means all the time when an employee's duties require that he/she be engaged in such work tasks.  However, such solicitation is permitted during non-work time in work areas and during non-working time in non-working areas.

2.    <u>Employee No-Distribution Rule</u> - Distribution of any type of literature, brochures, goods, etc., during working or non-working time in work is prohibited. Employees will not be permitted to sell crafts, items for schools, clubs and organizations during working or non-working time in working areas.  However, employees may distribute goods and written materials, sell small crafts and other items for schools, clubs and organizations during non-working time in non-working areas, e.g., lounge/lunchroom, restrooms.

3.    <u>Employee No-Access Rule</u> - Employees are not permitted access to the facilities under the control of the Lorain County Commissioners or to outside work areas during off-duty hours without the written approval of the Lorain County Board of Commissioners or their designee(s).

4.    <u>Non-Employee Solicitation and Distribution</u> - Non-employees are not permitted access to the facilities under the control of the Lorain County Commissioners including the interior of the facilities and other outside working areas, for the

purpose of solicitation and/or distribution.  This section does not apply to vendors as defined in the Definition Section of this policy.

B.    Definitions

Distribution - means an act of distributing goods, materials and/or written materials.

Employee - means any person in the employ of the Employer in any status.

Employer - means the Lorain County Board of Commissioners.

Non-Work Area - means any area on or off an Employer's premises not designated as a work area.

Non-Work Time - means any time during an employee's work day where the employee is totally relieved of work duties, such as break time and lunch time.  Whether an employee is in paid or unpaid status during these times is immaterial to the designation of non-work time.

Off-Duty Hours - means any time before or after a work shift.

Solicitation - means an act of requesting an individual to purchase goods, materials, or services, or a plea for financial contribution.

Vendor - means any individual or group engaged in or desiring to engage in the supply of goods, materials, or services to the County and its employers, which goods, materials, or services are utilized in the conduct of public business.

**SOLICITATION AND DISTRIBUTION**
**(Continued)**

**SECTION 7.14**
**Page 3 of 3**

<u>Work Area</u> - means any office, building, or physical location where official business is transacted and/or operations are being conducted.  This includes any public or private area where employees are engaged in work activities.

<u>Work Time</u> - means all the time when an employee's duties require that he or she be engaged in work tasks, but does not include an employee's own time, such as meal periods, scheduled breaks, and time before or after a work shift.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

LDS000178

| POLITICAL ACTIVITY | SECTION 7.15 |
|---|---|
| | Page 1 of 2 |

A.    This policy lists political activities legally permitted and legally prohibited to classified County employees, including classified employees on authorized leave of absence from their positions.

    1.    <u>Activities Permitted To Classified Employees</u>

        a.    Registration and voting.

        b.    Expressing opinions, either orally or in writing.

        c.    Voluntary financial contributions to political candidates or organizations.

        d.    Circulating non-partisan petitions or petitions stating views on legislation.

        e.    Attendance at political rallies.

        f.    Signing nominating petitions in support of individuals.

        g.    Display of political materials in the employee's home or on the employee's property.

        h.    Wearing of political badges or buttons, or the display of political stickers on their private automobiles.

        i.    Serving as a precinct election official in accordance with Section 3501.22 of the Revised Code.

        j.    Activities otherwise permitted by law.

    2.    <u>Activities Prohibited To Classified Employees</u>

        a.    Participating in a partisan election as a candidate for office.

LDS000179

| POLITICAL ACTIVITY | SECTION 7.15 |
|---|---|
| (Continued) | Page 2 of 2 |

b.    Candidacy for public office in a non-partisan general election if the nomination to candidacy was obtained in a partisan primary or through the circulation of nominating petitions identified with a political party.

c.    Filing of petitions meeting statutory requirements for partisan candidacy to elective office.

d.    Circulating official nominating petitions for any candidate participating in a partisan election.

e.    Holding an elected or appointed office in any partisan political organization.

f.    Accepting a party-sponsored appointment to any office normally filled by partisan election.

g.    Campaigning by writing for publications, by distributing political material or by making speeches on behalf of a candidate for partisan elective office.

h.    Soliciting, either directly or indirectly, any assessment, contribution, or subscription for any political party or political candidate.

i.    Soliciting the sale of or selling political party tickets.

j.    Engaging in partisan activities at the election polls, such as soliciting votes for other than non-partisan candidates and non-partisan issues.

k.    Serving as a witness or challenger for any party or partisan committee.

l.    Engaging in political caucuses of partisan nature.

m.    Participation in a political action committee that supports partisan activity.

n.    Activities otherwise prohibited by law.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

**DISCRIMINATORY HARASSMENT**                              **SECTION 7.16**
                                                           **Page 1 of 5**

A.    <u>Statement of Policy</u>:  It is the policy of the Employer to maintain an environment free
      from all forms of discrimination, including gender-based discrimination due to sexual
      harassment.  In order to maintain this environment, discriminatory harassment, whether
      committed by supervisors, co-workers, or members of the public, is strictly prohibited.

B.    <u>Definition</u>:  Discriminatory harassment is any type of harassing conduct that is based
      upon an employee's race, color, sex, national origin, age, religion, or disability.  Sexual
      harassment, which is a form of sex discrimination, includes, but is not limited to the
      following:

      1.    repeated unwanted and/or offensive sexual flirtations, advances, or propositions;

      2.    repeated verbal abuse of a sexual nature;

      3.    graphic or degrading verbal or written comments about an individual, the
            individual's appearance, or the individual's sexual orientation;

      4.    the display of sexually suggestive objects, pictures, or the display of same through
            other media;

      5.    the implication or threat that an employee's or applicant's employment,
            assignment, compensation, advancement, career development, or other condition
            of employment will depend on the employee or applicant's submission to sexual
            harassment in any form; and

      6.    any offensive, abusive, or unwanted physical contact.

C.    <u>Responsibility</u>

     1.      It is the responsibility of all employees to aid the Employer in maintaining a work environment free from discrimination, including sexual harassment. Therefore, it is the responsibility of each employee, including supervision and management, to immediately report any instances of discriminatory harassment to the proper authority (see reporting procedure below). Any employee who observes any conduct that may constitute discriminatory harassment of a co-worker, but fails to report same, may be subject to disciplinary action. Moreover, any employee who receives a complaint alleging conduct which may constitute discriminatory harassment of any County employee, but fails to report same, may be subject to disciplinary action.

     2.      It is further the responsibility of each supervisor to ensure that all employees who report to the supervisor are aware of the policy against discriminatory harassment, that they are aware of the complaint and reporting procedures, and that they are aware of the consequences of engaging in discriminatory harassment.

     3.      It is the responsibility of management to maintain an environment free from discriminatory harassment. Management shall ensure that its supervisors are sufficiently trained in recognizing discriminatory harassment, the complaint and reporting procedures, the proper methods of investigating complaints of discriminatory harassment, and the disciplinary procedure regarding discriminatory harassment.

     4.      Management shall also ensure that all employees are aware of this policy and will ensure that all employees receive sufficient training to maintain an environment

       

free from discriminatory harassment.  Additionally, each newly hired employee will receive training in this policy as a part of their employee orientation.

D.    Procedure

    1.    Once a complaint of discriminatory harassment has been received, or an instance of discriminatory harassment has been reported, the complaint shall be immediately forwarded to the proper member of management for investigation (see reporting procedure below).  The proper member of management shall then immediately investigate the matter in accordance with the investigation procedure.  The complaining employee and/or the reporting employee will be informed of the results of the investigation.

    2.    If, after a thorough and prompt investigation, it is determined that discriminatory harassment has occurred, the employee who has been found to have committed discriminatory harassment will immediately be disciplined in accordance with the disciplinary procedure for discriminatory harassment.  The complaining and/or reporting employee(s) will be informed of the results of the disciplinary procedure.

    3.    If, after the investigation, it is determined that no discriminatory harassment occurred, or that there is insufficient evidence to determine whether or not discriminatory harassment has occurred, the complaining employee and/or reporting employee will be informed of same.

E.    Complaint Procedure:  Any employee who believes that he/she has been the subject of discriminatory harassment, and/or any employee who has witnessed an incident, or incidents, of discriminatory harassment, should report the matter to the proper authority

immediately.

F.    <u>Reporting Procedure</u>

1.    Any employee who believes that he/she has been the subject of or witness to discriminatory harassment should immediately report the alleged act(s) to the next level of supervision not involved.

    If there is no one to which the employee can report the alleged act(s), the employee should report to the County Prosecutor.

2.    The employee alleging discriminatory harassment shall be asked to complete a written complaint form provided for that purpose (see the following Discriminatory Harassment Complaint Form). The employee should provide:

    a.    the employee's name;
    b.    the name of the subject of the complaint;
    c.    the act(s) complained of;
    d.    the date(s) of the act(s);
    e.    any witnesses to the alleged acts; and
    f.    the remedy the employee is seeking.

3.    If the employee alleging discriminatory harassment is unwilling to complete a written complaint form, the matter should be addressed under the "duty to report" section and the form shall be completed by the person to whom the verbal complaint was made.

4.    After the complaint form has been completed, the complaint will promptly be

**DISCRIMINATORY HARASSMENT**            **SECTION 7.16**
**(Continued)**                                           **Page 5 of 5**

investigated by the proper member of management or designee.  This form should be completed by the Employer representative as soon as possible after the date the alleged harassment occurred.  A copy of this form should be forwarded to the County Administrator.  If it is alleged that the County Administrator is the subject of the complaint, then a copy of this form should be sent to the County Prosecutor.

5.      If the investigation reveals that the complaint is valid, prompt action will be taken to end the harassment immediately.

6.      Any employee who is found, after appropriate investigation, to have engaged in discriminatory harassment of another employee or a member of the public shall be subject to disciplinary action, up to and including termination.

7.      Any member of the general public (non-employees) found to have committed discriminatory harassment against an employee should be dealt with appropriately as allowed by law.

| **Original Adoption Date** | **Revision Date** |
|---|---|
| 3/92 | |

## DISCRIMINATORY HARASSMENT COMPLAINT FORM

If claiming discriminatory harassment, please provide the following information:

A.     The name of the subject of the complaint:_____

B.     Is the above-named person a County employee?_____

C.     Describe the acts complained of *(use reverse side or attach additional pages, if necessary)*_____
_____
_____
_____
_____
_____
_____

D.     List the date(s) of the alleged act(s):_____
_____

E.     List any known or suspected witnesses to the alleged act(s):  _____
_____
_____
_____
_____

F.     What remedy or resolution do you request?_____
_____
_____
_____
_____
_____
_____
_____

## DISCRIMINATORY HARASSMENT COMPLAINT FORM
## (CONTINUED)

### Submission of Complaint Form

Any employee who believes that he or she has been the subject of or witness to discrimination, including sexual harassment, should immediately submit this report to his or her immediate supervisor, department head, or Appointing Authority.

If there is no one in the office or department to which the employee can report the alleged act(s) (for example, the Appointing Authority is the subject of the complaint), the employee should submit his report to the County Prosecutor.  If the County Prosecutor is the subject of the complaint, the employee should submit this report to the Board of County Commissioners.

_____          _____
Signature of Complainant                                            Date

### Administrative Use Only

_____          _____
Signature of Complainant                                            Date

**GARNISHMENTS**                                           **SECTION 7.17**
                                                           **Page 1 of 1**

A.   The Employer accepts garnishment against its employees with appropriate court proceedings.  However, the Employer does encourage employees to act as quickly as possible to relieve the County of this administrative burden.

B.   Whenever the Employer determines that this may be a habitual problem with any individual employee, the employee will be referred to an appropriate consumer credit counseling organization for assistance in resolving financial difficulties.  Failure to undergo consumer credit counseling may be grounds for disciplinary action.

| **Original Adoption Date** | **Revision Date** |
|---|---|
| 3/92 | |

| EMPLOYEE FELONY CONVICTION | SECTION 7.18 |
| IN COURT OF LAW | Page 1 of 1 |

A.     The felony conviction of any employee for breaking a federal, state, or local law whether outside of work or during the course of employment with the Employer shall be grounds for dismissal.

B.     In accordance with Ohio Revised Code 124.34, employees who are convicted of a felony immediately forfeit status as a classified employee.

| **Original Adoption Date** | **Revision Date** |
| 3/92 | |

| EMPLOYEE MISDEMEANOR CONVICTION | SECTION 7.19 |
|---|---|
| IN COURT OF LAW | Page 1 of 1 |

A.     The conviction of any employee for a misdemeanor by a federal, state or local court may be grounds for disciplinary action. If the conviction is relative to the individual's employment with the Employer, the discipline may result in the employee's dismissal.

B.     Convictions for misdemeanor offenses not related directly to the individual's employment with the Employer may result in discipline being imposed. The Employer shall consider the following in determining the severity of the discipline: (1) the severity of the infraction; and (2) the overall status of employee performance and post conduct on the job.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | |

**ARREST OF AN EMPLOYEE**　　　　　　　　　　　　**SECTION 7.20**
　　　　　　　　　　　　　　　　　　　　　　　　　**Page 1 of 1**

A.　　An employee who is arrested and charged with the commission of a crime that is related or unrelated to the individual's employment with the Employer may be relieved of duty with pay until an investigation of the incident(s) which brought about the arrest can be conducted by the Employer.

B.　　Upon the completion of the investigation, one of the following courses of action shall be followed:

　　1.　　The employee shall continue in a paid non-duty status, or;

　　2.　　The employee shall be issued a notification of pre-disciplinary conference, or;

　　3.　　The employee shall be returned to active duty status.

**Original Adoption Date**　　　　　　　　　　**Revision Date**
　　3/92

**EMPLOYEE/EMPLOYER RESPONSIBILITY**          **SECTION 7.21**
**FOR REPORTING VIOLATIONS OF LAW**          **Page 2 of 1**

A.     This policy is established to protect employees against retaliation by the Employer for reporting violations of federal or state rules or regulations. It is intended to identify the procedures to be followed whenever an employee becomes aware of a violation the Employer has the ability to correct.

     1.     Whenever an employee becomes aware of a violation of federal or state law, rules or regulations, or the misuse of public resources that the Employer has the authority to correct, the employee may file a written report identifying the violation or misuse with his supervisor or the appointing authority.

     2.     If the employee reasonably believes that a violation or misuse of public resources is a criminal offense, he may, in addition to or instead of filing a written report with his supervisor or the appointing authority, report the matter to the County Prosecutor, a peace officer, or other appropriate public official. If the employee reasonability believes the violation or misuse is a violation of Chapter 102 of the Revised Code (Public Officers – Ethics), R.C. Section 2921.42 (Having an unlawful interest in a public contract) or R.C. Section 2921.43 (Soliciting or accepting improper compensation), the employee may report the matter to the Ohio Ethics Commission.

     3.     An employee must make a reasonable effort to determine the accuracy of any information he reports, in accordance with 1 and 2 above. Any employee who purposely, knowingly, or recklessly reports false information shall be subject to disciplinary action.

**Original Adoption Date**                  **Revision Date**

     3/92                            6/2009

| PUBLIC RECORDS | SECTION 7.22 |
|---|---|
| | Page 1 of 2 |

A.    Confidentiality, Generally

Each employee of Lorain County shall treat all documents, publications, written, and spoken communications of the County as "confidential," even if regarded under R.C. 149.43 as "public records."

B.    Self-Help to Public Records Prohibited

No employee may copy or remove any record or writing, even those regarded as "public" under R.C. 149.43, without first having received advanced written permission from the Employer.

C.    Use of County Records in Personal Actions Prohibited

1.    No employee may copy or use any County writing, document, or record in any grievance, administrative appeal, or legal action without having first obtained the written permission of the Employer.  This particular policy does not apply to matters obtained through formal "discovery" under the Rules of Civil Procedure or the rules of the State Personnel Board of Review.

2.    Except for official departmental business, no employee may have any County writing or document in his/her possession, unless obtained through this policy.

D.    Tape Recording Prohibited

No employee may tape record any meeting, conversation, or telephone call unless he/she has received advanced written permission from the Employer.

| PUBLIC RECORDS | SECTION 7.22 |
|---|---|
| (Continued) | Page 2 of 2 |

E.    <u>Penalty For Breach of This Policy</u>

Any employee who is discovered to have violated any of the above enumerated policies will be disciplined up to and possibly including termination.  Any former employee who is discovered to have violated this policy by producing unauthorized documents or tape recordings at any grievance, administrative appeal, or civil action against the Employer, will be barred from seeking a remedy of reinstatement and may be subject to civil or criminal penalties.

| Original Adoption Date | Revision Date |
|---|---|
| _____ | _____ 1/2009 |

| COMPUTER/INTERNET/ELECTRONIC | SECTION 7.23 |
|---|---|
| MAIL POLICY | Page 1 of 5 |

The use of computer technology and assignment of an e-mail/Internet account through a Lorain County appointing authority's office is a benefit to the employee and should be treated as such. The following constitute proper use of these privileges. **Computer, Internet, and electronic mail usage may be monitored by system or other personnel at any time. The use of any electronic technology resources of Lorain County implies acceptance of all current operational policies.**

A.      <u>General Standards of Conduct for Internet Use</u>:

    1.      Any use of County computers or on-line computer services to facilitate illegal activity is prohibited.

    2.      Use of the County=s electronic services to access obscene or pornographic materials is prohibited.

    3.      Due to the fact the County encourages its employees to become familiar with new technology, the personal use of the Internet is permitted during non-work time. However, the employee's personal use of the Internet must follow these general standards for Internet use and may not result in any additional costs to the County.

    4.      Disruption of electronic services, supporting equipment, or information available on it is prohibited, including, but not limited to, tampering with hardware or software, vandalizing or destroying data, introducing or using computer viruses, attempting to gain access to restricted information or networks, violating copyright laws, or installing non-County-owned software of any kind.

LDS000195

5.      The use of electronic services to harass other users or to transmit materials likely to be offensive or objectionable is prohibited.

6.      Users of electronic services are to protect themselves and others by not issuing or releasing confidential information, addresses, passwords, or telephone numbers, remembering that on-line computer services are not private.

7.      Employees shall not use a code or password, access a file, or retrieve any stored information unless authorized to do so.  Employees should not attempt to gain access to another employee=s messages without the latter=s permission.  All computer pass codes or passwords used on the County=s equipment must be provided to supervisors.  No pass code or password may be used that is unknown to the appointing authority.

8.      Any employee who violates this policy or uses electronic services for improper purposes shall be subject to discipline, up to and including discharge.

B.      E-mail

1.      Any message sent or received via a Lorain County e-mail system may be monitored by the appointing authority at any time, with or without prior notification.  If an appointing authority discovers any misconduct or criminal activity, the information contained in such e-mail messages may be used to document such conduct and may be revealed to the appropriate authorities.  All e-mail usage shall comply with the appointing authority=s policy and all state and federal laws including those barring discrimination because of age, race, sex, religion, disability, etc.

2.      E-mail relevant to the course of business in the appointing authority's office should be printed and filed in the same manner as written correspondence.

3.      E-mail relevant to a specific case should be printed and filed, if appropriate.

4.      E-mail accounts are to be used only by the authorized owner of the account or another person with the owner=s specific authorization.

5.      Subscriptions to unrelated services or news groups is not allowed as they create unnecessary traffic on the e-mail system.

6.      It is permissible to transmit documents via e-mail as attachments. However, transmitting copyrighted material including software, research data, and manuscripts without the consent of the copyright holder is strictly prohibited.

7.      Caution should be exercised before opening any attachment to any incoming e-mail. If the e-mail is of unknown origin, or is not business-related, the attachment should not be opened.

8.      The use of personal e-mail is not forbidden, but should be used with common sense and restraint as is the telephone for personal business.

9.      The downloading of files/programs for personal use from the Internet without advance permission is prohibited. Permission is obtained from the department head, appointing authority, or designee.

| COMPUTER/INTERNET/ELECTRONIC | SECTION 7.23 |
|---|---|
| MAIL POLICY (Continued) | Page 4 of 5 |

C.     Standards of Conduct for E-mail on a Lorain County Electronic System:

1.     Do not overuse e-mail by sending courtesy copies of messages to people who do not need them.  Similarly, it is not generally necessary to reply to an e-mail just to inform the sender that you have received it.

2.     Be careful when forwarding e-mail messages.  Use common sense:  if you would not forward a copy of a paper memo with the same information, do not forward the e-mail.

3.     Global transmission of e-mail is prohibited without the advance written permission of the appointing authority.

4.     Be careful what you write.  E-mail is not the same as conversation.  It is a written record, can be duplicated at will, and may constitute a "public record."

5.     Use normal capitalization and punctuation.  Typing a message in all caps is bad "netiquette."

6.     When replying to e-mail, it is often useful to include a portion of the original senders message to put your reply into context.  It is appropriate to delete unimportant portions of the original message in order to prevent the message from getting too long.

7.     If a user discovers defamatory, disparaging, or otherwise damaging statements about the County on the Internet, the user should inform the appropriate department head to follow-up on that discovery.

| COMPUTER/INTERNET/ELECTRONIC | SECTION 7.23 |
|---|---|
| MAIL POLICY (Continued) | Page 5 of 5 |

D.  <u>Use of the World Wide Web</u>:  The Internet is a powerful and useful tool for research and other functions.  Employees are encouraged to develop computer and Internet skills to improve their job knowledge and to promote the interests of the appointing authority's office.  Employees should treat the Internet as a formal communications tool similar to the telephone, radio, video, and written communications.  All employees are responsible for their actions and communications using computers and the Internet.

| Original Adoption Date | Revision Date |
|---|---|
| _____ | _____ |

**PERSONAL INFORMATION POLICY**

**SECTION 7.24**
**Page 1 of 4**

A.  This policy is adopted pursuant to Section 1347.05(B) of the Ohio Revised Code and is intended to establish rules and procedures for use and maintenance of personal information.  This policy shall be considered amended and updated whenever R.C. 1347.05 is amended, modified, or updated.

B.  <u>Definitions</u>

    1.  "Personal information" means any information that describes anything about a person, or that indicates actions done by or to a person, or that indicates that a person possesses certain personal characteristics, and that contains and can be retrieved from a system by a name, identifying number, symbol, or other identifier assigned to a person.

    2.  "System" means any collection or group of related records that are kept in an organized manner and that are maintained by a state or local agency, and from which personal information is retrieved by the name of the person or by some identifying number, symbol, or other identifier assigned to the person.  "System" includes both records that are manually stored and records that are stored using electronic data processing equipment.  "System" does not include collected archival records in the custody of or administered under the authority of the Ohio historical society, published directories, reference materials or newsletters, or routine information that is maintained for the purpose of internal office administration, the use of which would not adversely affect a person.

    3.  "Local agency" means any municipal corporation, school district, special purpose district, or township of the state or any elected officer or board, bureau, commission, department, division, institution, or instrumentality of a county.

LDS000200

C. Exemptions from Chapter 1347 regulations regarding personal information systems are: any agency that performs as its principal function any activity relating to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals; criminal courts; prosecutors; any agency that is a correction, probation, pardon or parole authority; or system comprised of investigatory material compiled for law enforcement purposes.

D. Operating Procedures

1. The Lorain County Board of Commissioners, annually, shall designate a personal information designee ("P.I.D") to be responsible for maintaining any personal information system kept by the Lorain County Board of Commissioners, its employees, departments or agencies. Normally this person will be the same person designated to respond to public records' requests pursuant to Section 149.43 of the Revised Code. In the event that different persons perform these functions, the public records custodian will consult with the P.I.D. under this policy before releasing personal information.

2. The P.I.D. shall be responsible for compliance with the duties of Lorain County Board of Commissioners as set forth hereafter in Section 1347.05 of the Revised Code.

3. This policy will be kept with the public records policy required by Section 149.43 of the Revised Code and be made readily available to members of the public and employees. This policy will be posted with the public records policy.

**PERSONAL INFORMATION POLICY**
**(Continued)**

4.   No employee shall release or distribute personal information without consultation with the P.I.D.  Any questions regarding the propriety of release of information should be directed to the office of the Prosecuting Attorney of Lorain County.

5.   The P.I.D. shall, on an annual basis, review and update information contained in a personal information system and eliminate any information no longer necessary or relevant in accordance with the Lorain County Board of Commissioner retention policy.

6.   Upon request and proper identification, the P.I.D. shall inform any person or authorized representative of the existence of personal information concerning that person and allow inspection of such personal information in accordance with Section 1347.08(A) of the Revised Code.

7.   Any disputes regarding personal information coming within the purview of Section 1347.09 of the Revised Code shall be referred to the Lorain County Board of Commissioners which shall investigate the matter as set forth in Section 1347.09.

8.   The P.I.D. shall notify Lorain County Board of Commissioners of any breach of security in the computerized storage of personal information as defined in Section 1347.12 of the Revised Code and the Lorain County Board of Commissioner shall promptly provide notification as provided in Divisions (B) and (C) of this section.

| PERSONAL INFORMATION POLICY | SECTION 7.24 |
|---|---|
| (Continued) | Page 4 of 4 |

9.    Violation of this policy shall be deemed as grounds for disciplinary action pursuant to Lorain County Board of Commissioners policy, or under any other provisions of law providing for the discipline and removal of personnel.

| Original Adoption Date | Revision Date |
|---|---|
| 2/2011 | |

| FRAUD REPORTING/WHISTLEBLOWER PROTECTION | SECTION 7.25 |
|---|---|
| | Page 1 of 4 |

A.    <u>Fraud Reporting</u>.   The Ohio Auditor of State's office maintains a system for the reporting of fraud, including misuse of public money by any official or office.  The system allows all Ohio citizens, including public employees, the opportunity to make anonymous complaints through a toll free number, the auditor of state's website, or through the United States mail.

> Auditor of State's fraud contact information:
>
> Telephone:    1-866-FRAUD OH (1-866-372-8364)
>
> US Mail:    Ohio Auditor of State's Office
> Special Investigations Unit
> 88 East Broad Street
> P.O. Box 1140
> Columbus, OH 43215
>
> **Web:**    **www.ohioauditor.gov**

Each new employee shall sign an acknowledgement confirming receipt of this policy within thirty (30) days after beginning employment.

B.    <u>Whistleblower Protection.</u> The purpose of this policy is to comply with O.R.C. 124.341.

    1.    <u>Reporting Violation of Law</u>. If an employee in the classified or unclassified civil service becomes aware in the course of employment of a violation of state or federal statutes, rules, or regulations or the misuse of public resources, and the employee's supervisor or appointing authority has authority to correct the violation or misuse, the employee may file a written report identifying the violation or misuse with the supervisor or appointing authority. In addition to or instead of filing a written report with the supervisor or appointing authority, the employee may file a written report with the office of internal auditing created

under section 126.45 of the Revised Code or file a complaint with the auditor of state's fraud-reporting system under section 117.103 of the Revised Code.

2.    <u>Reporting Criminal Violation</u>.    If the employee reasonably believes that a violation or misuse of public resources is a criminal offense, the employee, in addition to or instead of filing a written report or complaint with the supervisor, appointing authority, the office of internal auditing, or the auditor of state's fraud-reporting system, may report it to a prosecuting attorney, director of law, village solicitor, or similar chief legal officer of a municipal corporation, to a peace officer, as defined in section 2935.01 of the Revised Code, or, if the violation or misuse of public resources is within the jurisdiction of the inspector general, to the inspector general in accordance with section 121.46 of the Revised Code.  In addition to that report, if the employee reasonably believes the violation or misuse is also a violation of Chapter 102., Section 2921.42, or Section 2921.43 of the Revised Code, the employee may report it to the appropriate ethics commission.

3.    <u>Protection against Discipline/Retaliation</u>.    Except as otherwise provided in Section (B)(4) of this policy, no officer or employee in the classified or unclassified civil service shall take any disciplinary action against an employee in the classified or unclassified civil service for making any report or filing a complaint as authorized by Sections (B)(1) or (B)(2) of this policy (see O.R.C. 124.341), including, without limitation, doing any of the following:

a.    Removing or suspending the employee from employment;

b.    Withholding from the employee salary increases or employee benefits to which the employee is otherwise entitled;

c.    Transferring or reassigning the employee;

d.      Denying the employee promotion that otherwise would have been received.

e.      Reducing the employee in pay or position.

4.      <u>Employee Responsibility</u>. An employee in the classified or unclassified civil service shall make a reasonable effort to determine the accuracy of any information reported under Sections (B)(1) and (B)(2).  The employee is subject to disciplinary action, including suspension or removal, as determined by the employee's appointing authority, for purposely, knowingly, or recklessly reporting false information under division Section (B)(1) and (B)(2) of this policy.

5.      <u>Complaint Procedure</u>.  If an appointing authority takes any disciplinary or retaliatory action against a classified or unclassified employee as a result of the employee's having filed a report or complaint under this policy, the employee's sole and exclusive remedy, notwithstanding any other provision of law, is to file an appeal with the state personnel board of review within thirty (30) days after receiving actual notice of the appointing authority's action.  If the employee files such an appeal, the board shall immediately notify the employee's appointing authority and shall hear the appeal.  The board may affirm or disaffirm the action of the appointing authority or may issue any other order as is appropriate.  The order of the board is appealable in accordance with Chapter 119 of the Revised Code.

6.      <u>Definitions.</u> As used in this section:

a.      "Purposely," "knowingly," and "recklessly" have the same meanings as in section 2901.22 of the Revised Code.

| FRAUD REPORTING/WHISTLEBLOWER PROTECTION | SECTION 7.25 |
|---|---|
| | Page 4 of 4 |

    b.    "Appropriate ethics commission" has the same meaning as in section 102.01 of the Revised Code.

    c.    "Inspector general" means the inspector general appointed under section 121.48 of the Revised Code.

| **Original Adoption Date** | **Revision Date** |
|---|---|
| _____5/2012_____ | _____ |

## FRAUD REPORTING ACKNOWLEDGEMENT FORM

ACKNOWLEDGEMENT OF RECEIPT OF AUDITOR OF STATE
FRAUD REPORTING-SYSTEM INFORMATION

Pursuant to Ohio Revised Code 117.103(B)(1), a public office shall provide information about the Ohio fraud-reporting system and the means of reporting fraud to each new employee upon employment with the public office.

Each new employee has thirty days after beginning employment to confirm receipt of this information.

By signing below you are acknowledging that the Lorain County Board of Commissioners provided you information about the fraud-reporting system as described by Section 117.103(A) of the Revised Code, and that you read and understand the information provided.  You are also acknowledging you have received and read the information regarding section 124.341 of the Revised Code and the protections you are provided as a classified or unclassified employee if you use the before-mentioned fraud reporting system.

I, _____, have read the information provided by my employer regarding the fraud-reporting system operated by the Ohio Auditor of State's office.  I further state that the undersigned signature acknowledges receipt of this information.


_____     _____     _____
Print Name                  Title                Department


_____     _____
Signature                   Date

# SECTION 8

# DISCIPLINE, APPEALS,
# AND GRIEVANCES

LDS000209

| **DISCIPLINE** | **SECTION 8.1** |
| :--- | ---: |
| | **Page 1 of 2** |

A.  The Employer, administrative, and supervisory personnel generally follow a system of progressive discipline when correcting job behavior.  Typical disciplinary action may include reprimands, suspensions, demotions (reductions), fines, and removals.  Working suspensions have the same effect as suspensions from work without pay for purposes of recording disciplinary actions and demonstrating progressive discipline.

B.  The Employer has adopted this discipline policy as a guideline for the administration of discipline.  It is not, however, to be construed as a delegation of, or a limitation upon, the Employer's right to impose a different level of discipline, when circumstances warrant.

C.  This discipline policy provides standard penalties for specific offenses; however, the examples of specific offenses given in any grouping are not all inclusive, and, as noted, merely serve as a guideline.

D.  The purpose of disciplinary action is to encourage corrected performance or behavior, except where the employee is removed.  To that end, an employee may request, and the Employer may agree, to remove disciplinary action from an employee's general personnel file after two (2) years, where the employee shows marked improvement.  The record of discipline will be kept in a separate "dead" file for at least seven (7) years.  The Employer is required to maintain such records by the Ohio Civil Rights Commission.

E.  The Employer may place an employee on administrative leave with pay, but only in circumstances where the health or safety of an employee or of any person or property entrusted to the employee=s care could be adversely affected.  The length of the leave shall not exceed the length of the situation for which the leave is guaranteed, for example,

LDS000210

| DISCIPLINE | SECTION 8.1 |
|---|---|
| (Continued) | Page 2 of 2 |

in a disciplinary situation such leave might extend until the Employer completes the predisciplinary process and takes action or decides not to do so.  Compensation for administrative leave shall be equal to the employee=s base rate of pay.

F.     The Employer may, in its discretion, place an employee on administration leave <u>without pay</u> for a period not to exceed two (2) months, if the employee has been charged with a violation of a law that is punishable as a felony.  If the employee subsequently does not plead guilty to or is not found guilty of a felony, the Employer will pay the employee at the Employer's base rate of pay, plus interest, for the period the employee was on the unpaid administrative leave

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | 6/2009 |

This policy is applicable to all classified employees, including those who are exempt from the minimum wage and overtime provisions of the Fair Labor Standards Act (FLSA).   Under the FLSA an employer may dock an exempt employee's salary in increments of one (1) or more full days as part of a disciplinary suspension for violating safety rules of major significance or for violation of workplace conduct rules.   Due to the sensitive nature of unclassified positions, it shall be the responsibility of each appointing authority to determine the extent this policy will be applied to unclassified employees and whether progressive discipline will be considered when disciplining such employees.

The examples of Group I, II, and II Offenses, set forth below, are characteristic of those offenses which the State Personnel Board of Review has historically judged to be of such a nature as to warrant those penalties established for the group. As noted in Section 8.1 above, the Group I, II and III offenses are not exhaustive lists, and other similar conduct may be cause for discipline.

In general, Group I Offenses may be defined as those infractions which are of a relatively minor nature and which cause only a minimal disruption to the organization in terms of a slight yet significant decrease in organization productivity, efficiency, and/or morale.  Group I Offenses, if left undisciplined by proper authority, will usually cause only a temporary minor adverse impact against the organization unless such acts are compounded over time.

Group II Offenses may be defined as those infractions which are of a more serious nature than Group I Offenses and which, in turn, cause a more serious and longer lasting disruption to the organization in terms of decreased organizational productivity, efficiency, and/or morale.  Group II Offenses, if left undisciplined by proper authority, can cause a serious and longer lasting adverse impact against the organization than the Group I Offenses.

LDS000212

Group III Offenses may be defined as those infractions which are of a very serious or possibly a criminal nature, and which cause a critical disruption to the organization in terms of decreased productivity, efficiency, and/or morale.  Group III Offenses, if left undisciplined by proper authority, may cause long-lasting and critically serious adverse impact against the organization.

<u>GROUP I OFFENSES</u>

First Offense                          Instruction and Cautioning

Second Offense                     Written Reprimand

Third Offense                         Up to three (3) day suspension or fine*

Fourth Offense                       Up to fifteen (15) day suspension or fine*

Fifth Offense                          Up to termination

\*        This may be a working suspension of record or a non-working suspension without pay.

Examples of Group I Offenses:

1.        failure to "report off" work for any absence;

2.        failure to commence duties at the beginning of the work period, or leaving work prior to the end of the work period;

3.        leaving the job or work area during the regular working hours without authorization;

4.        making preparations to leave work without specific prior authorization before the lunch period, or for any official break time, or before the specified quitting time;

214 of 236. PageID #: 1110

5.  leaving post of continuous operations position prior to being relieved by employee of incoming shift;

6.  neglect or carelessness in signing in or out;

7.  unauthorized absence from work (except job abandonment, which is a constructive resignation and/or grounds for removal);

8.  creating or contributing to less than serious unsanitary or unsafe conditions or poor housekeeping. More serious violations carry more severe penalties;

9.  distracting the attention of others, unnecessary shouting demonstration, or otherwise causing disruption on the job;

10. malicious mischief, horseplay, wrestling, or other undesirable conduct, including use of profane or abusive language;

11. use of abusive language toward other employees;

12. failure to cooperate with other employees as required by job duties;

13. failure to use reasonable care of County property or equipment;

14. use or possession of another employee's working equipment without authorization;

15. neglect or carelessness in observance of official safety rules, or disregard of common safety practices. Wanton or willful neglect carries more severe penalties. See Group III;

**GROUNDS FOR DISCIPLINARY ACTION AND PENALTIES (Continued)**

16.     failure to observe department rules;

17.     obligating the County for any expense, service, or performance without authorization;

18.     failure to report minor accidents, injury, or equipment damage;

19.     disregarding job duties by neglect of work or reading for pleasure during working hours;

20.     unsatisfactory work or failure to maintain required standard of performance;

21.     unauthorized use of telephone or personal computer for other than County business purposes;

22.     excessive garnishments.

<u>GROUP II OFFENSES</u>

First Offense                          Up to three (3) day suspension or fine*

Second Offense                     Up to fifteen (15) day suspension or fine*

Third Offense                        Up to termination

\*      This may be a working suspension of record or a non-working suspension without pay.

Examples of Group II Offenses:

1.      sleeping during working hours;

2.      reporting for work or working while unfit for duty (may be a Group III Offense for CDL holders);

3.      conduct violating morality or common decency;

4.      unauthorized use of County property or equipment;

5.      willful failure to sign in or out when required;

6.      willful failure to make required reports;

7.      failure to report for overtime work without good reason after being scheduled to work according to overtime policy;

8.      solicitation on County premises without authorization;

9.      the making or publishing of false, vicious, or malicious statements concerning employees, supervisors, the County, or its operations;

10.     refusing to give testimony when accidents are being investigated;

11.     giving false testimony during a complaint or grievance investigation or hearing;

12.     unauthorized posting or removal of notices or signs from official bulletin boards;

13.     distributing or posting written or printed matter of any description on County premises unless authorized;

14.     unauthorized presence on County property;

**GROUNDS FOR DISCIPLINARY ACTION AND PENALTIES (Continued)**

15.  willful disregard of department rules;

16.  use of abusive language toward supervisors;

17.  discourteous treatment of the public;

18.  misuse of two-way radio or related equipment, abusive language over the airways, or interference with business-related transmission.

## GROUP III OFFENSES

First Offense                          Up to and including termination

Examples of Group III Offenses:

1.  wanton or willful neglect in the performance of assigned duties or in the care, use, or custody of any County property or equipment;

2.  abuse, or deliberate destruction in any manner, of County property, tools, or equipment, or the property of employees, in any manner;

3.  signing or altering other employees' time cards, tampering with other employees' time cards, or unauthorized altering of own time card;

4.  falsifying testimony when accidents are being investigated, falsifying or assisting in falsifying or destroying any County records including work performance reports, or giving false information or withholding pertinent information called for in making application for employment;

{12/7/2018 PLLORBC 00222399.DOCX }

LDS000217

5.      making false claims or <u>misrepresentation</u> in an attempt to obtain any County benefit;

6.      performing private work on County time or using County property or equipment for private gain;

7.      gambling during working hours;

8.      stealing or similar misconduct, including destroying, damaging, or concealing of any property of the County or of other employees;

9.      the manufacturing, distributing, possessing, or using alcohol or controlled substances (without a properly reported prescription) in the workplace;

10.      fighting or attempting to injure other employee, supervisors, or persons;

11.      carrying or possession of firearms, explosives, or weapons on County property at any time without prior authorization;

12.      knowingly concealing a communicable disease such as TB which may endanger other employees;

13.      misusing or removing County records of information without prior authorization;

14.      instigating, leading, or participating in any walkout, strike, sit-down, stand-in, refusal to return to work at the scheduled time for the scheduled shift, or other concerted curtailment, restriction, or interference with work in or about the County's work stations;

LDS000218

**GROUNDS FOR DISCIPLINARY**         **SECTION 8.2**
**ACTION AND PENALTIES (Continued)**        **Page 8 of 8**

15.     dishonesty or any dishonest action.  Some examples of what is meant by "dishonesty" or "dishonest action: are: theft, pilfering, opening desks assigned to other employees without authorization, making false statements to secure an excused absence or to justify an absence or tardiness; making or causing to be made inaccurate or false reports concerning any absence from work.  The foregoing are examples only and do not limit the terms "dishonesty" or "dishonest action";

16.     insubordination, e.g., refusing to perform assigned work or to comply with written or verbal instruction of the supervisors;

17.     committing safety violations;

18.     threatening, intimidating, or coercing employees or supervisors;

19.     engaging in unauthorized political activity;

20.     engaging in discriminatory harassment;

21.     being convicted of a Afelony@ within the meaning of R.C. 124.34, even if prior discipline has been issued for the underlying conduct.

22.     failure to report a workplace accident or illness;

23.     committing a breach of confidentiality.

**Original Adoption Date**         **Revision Date**

      3/92

## LORAIN COUNTY
## RECORD OF INSTRUCTION AND CAUTIONING

Employee's Name: _____

Employee's Classification: _____

Date Violation Occurred: _____

Location Where Violation Occurred: _____

### VIOLATION

Type of Violation: _____

Description Of Violation: _____

_____

_____

_____

_____

_____

(Attach Additional Sheet If Necessary)

Instruction & Cautioning is issued as a corrective measure in an effort to help you improve your conduct.  Any further violations may result in more severe disciplinary actions.

_____          _____
Signature Of Supervisor or Manager          Signature of Appointing Authority


I hereby acknowledge that a copy of the above Record Of Instruction & Cautioning has been given to me this day.

_____          _____
Signature Of Employee                        Date

cc:      Employee
         Employee's Personnel File

## LORAIN COUNTY
## RECORD OF WRITTEN REPRIMAND

Employee's Name: _____

Employee's Classification: _____

### VIOLATION

Date Violation Occurred: _____

Dates of Prior Instruction & Cautioning _____

Location Where Violation Occurred: _____

Description Of Violation: _____

_____

_____

_____

_____

_____

_____

_____

_____

(Attach Additional Sheet If Necessary)
_____

This written reprimand is issued as a corrective measure in an effort to help you improve your conduct.   Any further violations may result in more severe disciplinary actions.

_____        _____
Signature Of Person Issuing Reprimand        Signature of Appointing Authority

I hereby acknowledge that a copy of the above Record Of Written Reprimand has been given to me this day.

_____        _____
Signature Of Employee        Date

cc:    Employee
        Employee's Personnel File

LDS000221

**LORAIN COUNTY**
**RECORD OF SUSPENSION OF TWENTY-FOUR (24) HOURS OR LESS**

Employee's Name: _____

Employee's Classification: _____

VIOLATION

Date Violation Occurred: _____

Location Where Violation Occurred: _____

Dates Of Prior Instruction & Cautioning: _____

Dates Of Prior Written Reprimands: _____

Type Of Violation:          Group _____ Number _____

_____ Incompetency              _____ Neglect Of Duty
_____ Inefficiency              _____ Failure of Good Behavior
_____ Dishonesty                _____ Misfeasance
_____ Drunkenness               _____ Malfeasance
_____ Immoral Conduct           _____ Nonfeasance
_____ Insubordination           _____ Conviction of a Felony
_____ Discourteous Treatment Of The Public    _____ Other (Explain Below)

Description Of Violation: _____
_____
_____
_____
_____

(Attach Additional Sheet If Necessary)

Date(s) That Suspension From Duty Without Pay Will Occur (If Applicable)

_____          _____          _____

This suspension is issued as a corrective measure in an effort to help you improve your conduct. Any further violations may result in more severe disciplinary actions.

_____
Signature Of Appointing Authority

I hereby acknowledge that a copy of the above Order has been given to me this day.

_____        _____
Signature Of Employee                   Date

cc:    Employee; Employee's Personnel File

**PREDISCIPLINARY CONFERENCE**

SECTION 8.3
Page 1 of 2

A.  Whenever the Employer or his/her designee determines that a classified employee may be disciplined for cause (suspensions, fines, reductions, or terminations), a predisciplinary conference will be scheduled to give the employee an opportunity to offer an explanation for the alleged misconduct.

B.  Predisciplinary conferences will be conducted by the Employer or his/her designee.

C.  Not less than twenty-four (24) hours prior to the scheduled starting time of the conference, the Employer will provide to the employee a written outline of the charges which may be the basis for disciplinary action.  The employee must choose to:  (1) appear at the conference to present an oral or written statement in his or her defense; or (2) elect in writing to waive the opportunity to have a predisciplinary conference.

D.  At the predisciplinary conference the Employer or designee will ask the employee to respond to the allegations of misconduct which were outlined to the employee.  The employee must answer all questions truthfully.  If it is proven in a subsequent hearing that the employee's responses to questions were not truthful, such dishonesty may result in disciplinary action.  Employees refusing to answer direct questions may be subject to additional disciplinary action for insubordination.

E.  At the conference the employee may speak on his/her own behalf in order to explain whether or not the alleged misconduct occurred.  The employee may, if he is in a bargaining unit, request that he be accompanied by his union representative (predisciplinary conference procedures for bargaining unit employees are governed by the applicable collective bargaining agreement).

**PREDISCIPLINARY CONFERENCE**
**(Continued)**

F.     The Employer will decide what discipline, if any, is appropriate.

G.     Predisciplinary conference procedures for bargaining unit employees are governed by the applicable collective bargaining agreement.

| Original Adoption Date | Revision Date |
|---|---|
| 3/92 | 11/2009 |

LDS000224

# LORAIN COUNTY
## NOTICE OF PREDISCIPLINARY CONFERENCE

This notice is provided to you to advise that a predisciplinary conference will be held at _____ *(time)* at _____ *(location)* on _____ *(date)* to provide you with an opportunity to respond to the following allegations of misconduct:

_____

_____

_____

_____

You have the right to:  (1) appear at the conference to present an oral or written statement in your defense; or (2) elect in writing to waive your opportunity to have a predisciplinary conference. You must answer all questions truthfully.  If it is proven in a subsequent hearing that your responses to questions were not truthful, such dishonesty may result in disciplinary action.  Any refusal to answer direct questions may be subject to additional disciplinary action for insubordination.

At the conference you may speak on your behalf in order to explain whether or not the alleged misconduct occurred.  You may, if you are in a bargaining unit, request that you be accompanied by your union representative.

No conference will be delayed more than twenty-four (24) hours to enable your representative to attend.  After the predisciplinary conference the Employer will decide what discipline, if any, is appropriate.

The predisciplinary conference will be conducted by _____ *(name)*.

If you have any questions in regard to this procedure, please contact the above-named individual immediately or refer to the Employer's Personnel Policy Manual.

_____
Signature of Appointing Authority or Designee

| APPEALS | SECTION 8.4 |
| --- | --- |
| | Page 1 of 1 |

A.  Personnel actions such as dismissals, suspensions of over twenty-four (24) hours, fines of twenty-four (24) hours or more pay, demotions, and layoffs may be appealed by classified employees to the State Personnel Board of Review[1].  Suspensions of less than twenty-four (24) hours and fines of less than twenty-four (24) hours pay may be appealed to the Employer through the internal complaint procedure.  Disciplinary action based on conviction of a "felony" within the meaning of R.C. 124.34 may not be appealed to the State Personnel Board of Review.

B.  Appeals to the State Personnel Board of Review from removal, demotion, fines, or suspension must be filed within ten (10) days of the date the employee is served with the order.  Appeals from layoffs must be made within ten (10) days of the receipt of the notice of the layoff.

C.  The State Personnel Board of Review maintains authority to decide whether an appeal warrants a hearing.  When an appeal is heard, the Board may affirm, disaffirm, or modify personnel decisions made by the Employer.

D.  Bargaining unit employees shall have the right to appeal disciplinary action or layoff through the grievance procedure set forth in the applicable collective bargaining agreement.

| Original Adoption Date | Revision Date |
| --- | --- |
| 3/92 | 11/2009 |

---

[1] If the employee is exempt from the payment of overtime compensation, he/she may not appeal a suspension of less than forty (40) hours or a fine of less than forty (40) hours pay.

LDS000226

**COMPLAINT PROCEDURE**                          **SECTION 8.5**
                                                  **Page 1 of 2**

When people work together, there are bound to be occasional differences arising out of interpretations of rules or other problems stemming from conditions of employment.

In order to afford employees an orderly process by which to seek resolution of such differences, the Employer has established the following system:

<u>Complaint Procedure</u>

Step 1.    Any employee having a complaint may file his or her complaint verbally with the immediate supervisor.  In order for the complaint to be recognized, it must be filed within five (5) working days after the date the alleged complaint occurred.  Within five (5) working days from the date the complainant first presented his/her complaint, the supervisor will attempt to resolve the matter.

Step 2.    If the complaint is not resolved in Step 1, the complainant may pursue the matter by reducing the complaint to writing and presenting such to the department head within five (5) working days after the reply received in Step 1.  The department head shall, if it is deemed necessary, meet with those concerned and otherwise attempt to resolve the matter.

Step 3.    If the complaint is not resolved in Step 2, the complainant may pursue the matter by submitting the complaint in writing to the Appointing Authority, or designee, within five (5) working days after the reply received in Step 2.  The Appointing Authority or designee shall, within ten (10) working days, meet with and/or conduct the necessary investigations to resolve the matter.

**COMPLAINT PROCEDURE**　　　　　　　　　　　**SECTION 8.5**
**(Continued)**　　　　　　　　　　　　　　　　**Page 2 of 2**

The Appointing Authority shall respond in writing to the complainant within three (3) working days following the conclusion of the investigation.  The decision rendered in this step is final.

In the event of extenuating circumstances, a time limit may be extended by mutual agreement, in writing, by the parties.

Complaints not processed to the next step of the procedure within the specified time limits or any written extension thereof shall be considered to have been resolved on the basis of the decision at the previous step.

Any complaint not answered by management within the prescribed time limit or extension thereof shall be considered to have been answered in the negative and may be advanced to the next step.

Any complaint by a bargaining unit member that alleges a breach, misinterpretation, or improper application of the collective bargaining agreement must be processed in accordance with the contractual grievance procedure.

**Original Adoption Date**　　　　　　　　　　**Revision Date**
　　　3/92

**LORAIN COUNTY**
**COMPLAINT FORM**

**\*Step 2 – Division Head**

Name of Employee _____

Department _____

Classification _____

Date of Occurrence _____ Date First Presented _____

Nature of Complaint; What is the Issue or Allegation?  What Has Been Violated?

_____

_____

_____

_____

_____

_____

Statement of Facts: _____

_____

_____

_____

_____

_____

Names of Any Witnesses: _____

Relief Requested:  _____

_____

Employee Signature:

If complaint is a group complaint, all employees in the group shall sign on the back of the form.
The employee whose name appears in the above space shall process the complaint.  Complaint
must be filed with the department head within five (5) working days after receipt of answer in
Step 1.

Department Head/Date Received _____

Date Department Head Answer is Due _____ (Response to be issued within five [5]
working days after the date on which the complaint was submitted.)

\*        This step occurs after complaint is first lodged verbally with the employee=s immediate
         supervisor.

# SECTION 9

## NON-DISCIPLINARY SEPARATION

LDS000230

| RESIGNATION | SECTION 9.1 |
| --- | --- |
| | Page 1 of 1 |

A.   Employees who plan to resign voluntarily must notify their immediate supervisor at least two (2) weeks (fourteen [14] calendar days) in advance of the effective date of termination.   A formal letter of resignation shall be required by the Employer.  Failure to provide proper notice will result in the following:

    1.   The loss of certain accrued but unused time (see Sections 5.4 and 6.4 of this manual).

    2.   Ineligibility for re-employment.

B.   The County-provided health care coverage will cease to be effective upon separation for any employee who terminates or is terminated from employment on or before the 15th of any month.  Such coverage will continue until the end of the month for any employee who terminates or is terminated from employment after the 15th of any month.

C.   Upon formal resignation, employees shall be required to turn over all property belonging to the Employer (vehicles, keys, equipment, identification card, uniforms, etc.).  A person who resigns in good standing may be reinstated, at the discretion of the Employer, in his or her former type of position within one (1) year following resignation, provided the person remains qualified to perform the duties of the position and such reinstatement would be in the best interest of the Employer's Office.

| Original Adoption Date | Revision Date |
| --- | --- |
| _____3/92_____ | _____ |

LDS000231

| EXIT INTERVIEW | SECTION 9.2 |
|---|---|
| | **Page 1 of 1** |

A.   When an employee has resigned, or otherwise voluntarily terminated employment, the employee is requested to complete an exit interview questionnaire, and to personally discuss the questionnaire with the Employer or designee.

B.   The exit interview is an opportunity for the employee to offer constructive criticism and insights to the Employer relative to the operation of the office as well as to be advised regarding the continuation of health care benefits and other matters associated with the termination of employment.

| **Original Adoption Date** | **Revision Date** |
|---|---|
| 3/92 | |

LDS000232

## LORAIN COUNTY
## EXIT INTERVIEW FORM

Name _____ Department _____

Job Title_____ Termination Date_____

Date Interviewed_____ By_____ Employment Date_____

Reason for Separation_____

_____

### Employee's Evaluation of the Job

|  | Excellent | Satisfactory | Fair | Poor | Unsatisfactory |
|---|---|---|---|---|---|
| **Interest Job Held** |  |  |  |  |  |
| **Performance Recognition** |  |  |  |  |  |
| **Supervisory Fairness** |  |  |  |  |  |
| **Chance for Advancement** |  |  |  |  |  |
| **Wages and Benefits** |  |  |  |  |  |
| **Rapport with Fellow Workers** |  |  |  |  |  |
| **Training Received on Job** |  |  |  |  |  |
| **Description of Position Compared to Actual Work** |  |  |  |  |  |
| **Communication between Employees & Management** |  |  |  |  |  |
| **General Working Conditions** |  |  |  |  |  |

Employee's Comments_____

_____

Interviewer's Comments_____

_____

_____

Appointing Authority's and Supervisor's Final Evaluation of Employee_____

_____

Would We Rehire?  ❑ Yes  ❑ No

_____/_____
Signature of Appointing Authority or Designee  /Date

LDS000233

| LAYOFF AND RECALL | SECTION 9.3 |
|---|---|
| | Page 1 of 3 |

A.   The Employer maintains the legal right to layoff employees whenever a reduction is necessary due to:

    1.   lack of work;

    2.   lack of funds or projected lack of funds; and

    3.   job abolishment.

B.   Layoff shall substantially comply with the requirements specified in Section 124.321 through 124.328 of the Ohio Revised Code, and 123:1-41-01 of the Ohio Administrative Code.

C.   Each Employer (Engineer, Board of County Commissioners, Treasurer, etc.) is an autonomous layoff jurisdiction, and layoff, displacement and reinstatement rights and procedures shall apply only within the jurisdiction affected by the layoff. Layoffs shall not be considered disciplinary actions.

D.   Whenever a reduction in the work force is necessary, the Employer maintains the legal right to determine the classification(s) in which the layoff(s) will occur, and the number of employees to be laid off within each classification.  The Employer shall follow the systematic procedure outlined in the Administrative Code to determine the order of layoff.   Such systematic procedures include consideration of each employee's classification assignment, appointment type, status, and date of continuous service.

**LAYOFF AND RECALL**                                    SECTION 9.3
(Continued)                                                 Page 2 of 3

E.    An employee subject to layoff shall be notified, in person, of the action at least fourteen (14) days prior to its effective date.  An employee shall be notified at least seventeen (17) days prior to the effective date in cases where the layoff notice is sent by certified mail.

F.    An employee who is to be laid off or whose job has been abolished may, at his or her option, exercise his or her rights to displace another employee or fill an available vacancy in the same or lower classification, in accordance with provisions outlined in the Administrative Code.

G.    A person who was laid off may be reinstated at any time within one (1) year after the effective date of layoff, provided the person remains qualified to perform the duties of the position.  Reinstatement of laid off employees shall comply with the provisions outlined in the Administrative Code.  Each employee eligible to be recalled from layoff shall be notified of the offer of reinstatement by certified letter.

H.    A laid off employee shall be responsible for keeping a current address on file with the Employer.  Failure to do so may result in the inability to notify the laid off employee of his or her eligibility for reinstatement.  Each recalled employee shall be allowed ten (10) calendar days from the date of receipt of the certified letter to return to work, except in the event of approved extenuating circumstances.

I.    Any employee accepting or declining reinstatement to the same classification from which the layoff or displacement initially occurred shall be removed from eligibility for further recall, except as otherwise provided for by law.

LDS000235

{4/19/2005 PLLORBC 00018186.DOC }

**LAYOFF AND RECALL**          **SECTION 9.3**
**(Continued)**          **Page 3 of 3**

J.       If not removed previously, the name of any laid off or displaced employee shall be removed from eligibility for recall one calendar year after the employee was first laid off or displaced from his or her original classification.

K.       The layoff and recall rights and procedures of bargaining unit employees are governed by the applicable collective bargaining agreement.

**Original Adoption Date**          **Revision Date**

_____ 3/92 _____          _____

LDS000236

{4/19/2005 PLLORBC 00018186.DOC }