IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **HARRY WILLIAMSON,**<br><br>                    *Plaintiff,*<br><br>v.<br><br>**LORAIN COUNTY,** *et al.*,<br><br>                    *Defendants.* | Case No.: 1:23-cv-01507-DAR<br><br>Judge David A. Ruiz<br><br>Magistrate Judge Jennifer Dowdell<br>    Armstrong |
| **PLAINTIFF HARRY WILLIAMSON'S MOTION FOR RECONSIDERATION** | |

Plaintiff Harry Williamson respectfully moves for reconsideration of the Court's orders striking his amended complaint, granting Defendants' motion to strike evidence supporting his opposition to summary judgment, and granting their motion for summary judgment. As laid out below, those orders departed from standard practice governing those motions, unfairly hobbling Mr. Williamson by limiting which claims he may bring, which defendants he may bring them against, and which evidence he may access to prove them.

I.      **The Court should reconsider its denial of Mr. Williamson's motion to amend and supplement his complaint.**

"When a Plaintiff is granted leave to file an amended complaint, that complaint supersedes the preceding complaint and becomes the 'legally operative complaint' in the matter." *Braun v. Coulter Ventures, LLC*, No. 2:19-CV-5050, 2020 WL 5909004, at *3 (S.D. Ohio Oct. 5, 2020) (quoting *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)).

While there do exist some courts that require plaintiffs to file their proposed amended complaint yet again as a separate docket entry once leave has been granted,[1] it has long been routine practice in the Northern District to deem an amended pleading to be filed as of the date the Court grants leave.[2] This approach is the only one that makes sense:

- With the parties, their counsel, the Court and the clerk already in possession of the amended complaint, there is no purpose in burdening all of them with a duplicative filing.

- Deeming the already-filed amendment to be operative avoids the delays inherent in granting the plaintiff additional time to refile a second copy of the same document, which necessarily pushes back the deadline for the defendant to file a responsive Rule 12 motion, necessarily pushing back the deadline to oppose that motion, and so on.

- Deeming the already-filed amendment to be operative avoids the risk of a newly filed complaint with either inadvertently or surreptitiously added changes, thus sparing the Court and opposing counsel the time and effort involved in line-by-line comparisons.[3]

Although such a practice is supported by both experience and logic, the Court explicitly rejected it in this case, but with no explanation why.[4] It refused to treat the amendment attached

---

[1] *See, e.g.*, D.Ore. L.R. 15(c) ("On entry of an order granting the motion to amend, the moving party must file and serve a complete clean copy of the amended pleading within 10 days.").

[2] *See, e.g.*, Order, *Howard v. Falgiani*, No. 4:24-cv-01841 (N.D. Ohio) (Jan. 13, 2025); Order, *Donahue v. Travelers Companies, Inc.*, No. 5:24-cv-01141 (N.D. Ohio) (Oct. 21, 2024); Order, *Mason v. Hard*, No. 2:23-cv-02307 (N.D. Ohio) (Oct. 18, 2024); Order, *Patterson v. HG Ohio Employee Holding Corp.*, No. 1:23-cv-00681 (N.D. Ohio) (July 18, 2024); Order, *Patterson v. Kent State Univ.*, No. 5:22-cv-02052-JRA (N.D. Ohio) (Jan. 18, 2024); Order, *Durbin v. Foundations Health Solutions, LLC*, No. 1:22-cv-01719 (N.D. Ohio) (Nov. 13, 2023); Order, *Union Home Mortgage Corp. v. Jenkins*, No. 1:20-cv-02690 (N.D. Ohio) (June 28, 2021); Order, *Sharqawi v. Kirby Company*, No. 1:20-cv-00271 (N.D. Ohio) (Apr. 26, 2021); Order, *Dagustino v. DeWine*, No. 3:20-cv-01375 (N.D. Ohio) (Dec. 16, 2020); Order, *Fulgenzi v. Pliva, Inc.*, No. 5:09-cv-01767 (N.D. Ohio) (Nov. 29, 2010); Order, *Warren v. Abbott Laboratories, Inc.*, No. 5:09-cv-02990 (N.D. Ohio) (Mar. 22, 2010); Order, *Ohio Valley Energy Sys. v. Am. Int'l Specialty Lines Ins. Co.*, No. 4:09-cv-01972 (N.D. Ohio) (Mar. 11, 2010); Order, *Pavlov v. Continental Casualty Co.*, No. 5:07-cv-02580 (N.D. Ohio) (Apr. 4, 2008).

[3] *See, e.g.*, *In re Keithley Instruments, Inc., Derivative Litig.*, 599 F. Supp. 2d 908, 913 (N.D. Ohio 2009) ("[T]he new causes of action must be stricken because their inclusion in the TAC far exceeded the scope of leave granted by the Court.").

[4] While the Court alluded to its discussion of the deadlines during the case-management conference, counsel has no recollection of any statements during that conference that would have suggested it would not follow the normal practice. Mr. Williamson's understanding at the end of that conference was that the

to his motion for leave (ECF #15-1) as the operative complaint and then went on to strike his separately filed amended complaint (ECF # 22) based on prejudice Defendants would purportedly suffer by as a result of their earlier Rule 12 motions being mooted. But even if that constitutes "prejudice" for the purposes of evaluating an amendment, that prejudice can't be causally connected to any delay resulting from the confusion about the Court's order: because the Court had already agreed to allow an amendment, it had already agreed to moot those motions; they would not have been made any more moot by denying the motion to strike and accepting either ECF #15-1 or ECF #22 as the operative complaint.

But rejecting the amended and supplemental complaint worked obvious, actual prejudice to Mr. Williamson. It allowed Lorain County to escape liability entirely based on a naming error that the amendment would have corrected. It allowed all parties to escape liability on Mr. Williamson's equal-protection claim based on the absence of allegations that the amendment would have clarified. And it barred Mr. Williamson from pursuing claims for abuse of process and malicious prosecution that had only ripened after he filed his original complaint.

Because the Court was required to liberally construe Rule 15 to permit amendments and supplements but instead struck Mr. Williamson's amendments based on its unannounced and unforeseeable deviation from normal practice, the Court should reconsider and grant Mr. Williamson's motion for leave to amend and supplement his complaint.

## II. The Court should reconsider its decision constructively denying Mr. Williamson's motion for Rule 56(d) relief.

When the nonmoving party does not have access to "facts essential to justify its opposition" to a motion for summary judgment, Rule 56(d) provides a vehicle for obtaining

---

Court had accepted his amended pleading and set an April 24 deadline for any *further* amendments, whether from Mr. Williamson or from Defendants.

additional time to gather that evidence. In most circumstances, a motion under Rule 56(d) "should be granted almost as a matter of course." *Schobert v. CSX Transportation Inc.*, 504 F. Supp. 3d 753, 802 (S.D. Ohio 2020).

For instance, in *Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011), the plaintiff in a First Amendment–retaliation case sought to delay consideration of motions for summary judgment because the defendants had not responded to any of his discovery demands. The district court denied his motion and granted summary judgment, holding that the plaintiff had failed to sufficiently identify what discovery he needed or why. But the Sixth Circuit reversed, holding that denying the motion was an abuse of discretion because the disputed discovery demands were already in the record and had "obvious potential" to inform the trial court's decision on summary judgment.

The case for reversal would be even stronger here, where the Court granted summary judgment for Defendants without addressing Mr. Williamson's Rule 56(d) request *at all*. And even if it had, the Court could not have denied the motion based on any of the factors relied on in *Siggers*, as Mr. Williamson had repeatedly laid out what discovery he still needed and why, having moved to compel discovery (ECF #28), having filed the outstanding discovery demands on the docket (ECF #28-1–8), having filed a supplement to his motion to compel (ECF #40); and having again highlighted several of the most important missing pieces of discovery in his Rule 56(d) motion (ECF #29, pp. 13–14).

Nor could there be any argument that the outstanding discovery Mr. Williamson was seeking was anything other than central to his case. For instance, the Court granted Defendants Lundy and Moore summary judgment based on Mr. Williamson's inability to present sufficient evidence that they "voted to terminate Plaintiff Williamson due to his protected speech" (ECF

#42, p. 32–33), while ignoring Mr. Williamson's request for time to obtain testimony showing that their justifications for the termination were a pretext by contrasting his case with those of similarly situated employees.

None of the other factors courts often look to, *Doe v. City of Memphis*, 928 F.3d 481, 491 (6th Cir. 2019), would have counseled against granting Mr. Williamson's motion, either. He was not dilatory in his discovery efforts, as his motion to compel laid out his protracted campaign to coax Defendants into voluntary compliance with their discovery obligations (ECF #28, 1–2). The discovery period was not so long that Mr. Williamson can be faulted for failing to obtain the necessary evidence; Defendants moved for summary judgment less than three months after the Court's order allowing discovery into September, and *discovery was still open* when the Court granted summary judgment in spite of the Rule 56(d) motion. Nor could Defendants credibly claim that they had been responsive to discovery efforts, as Defendants Lundy, Moore and Cordes moved for summary judgment without producing any documents for inspection, and having objected to virtually all their interrogatories.

As in *Doe*, where the trial court denied the Rule 56(d) motion without even acknowledging the factors that it was required to consider, the Court has committed reversible error by denying Mr. Williamson's motion without even acknowledging *the motion itself*. The Court should therefore reconsider and grant that motion to avoid revisiting this case with a different slate of defendants after an appeal.

## III. The Court should reconsider its decision striking portions of the Williamson and Hung declarations.

On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

But the Court's ruling striking portions of the Williamson and Hung Declarations repeatedly ran afoul of its obligation to draw all justifiable inferences in favor of the nonmoving party. For instance:

- **Williamson Declaration, ¶ 5:** The Court struck testimony that Tracy Lopez, the director of the 911 center, said that Defendant Cordes had banned Mr. Williamson from the 911 center, holding that it was inadmissible double hearsay. But striking that statement requires the Court to ignore the reasonable and obvious inference that as Cordes's director of the 911 center, statements about who "her boss" had prohibited from entering the 911 center were within the scope of her employment relationship with that boss. Fed. R. Evid. 801(d)(2)(D).[5]

- **Williamson Declaration, ¶ 13:** The Court struck testimony that Defendant Williams, the county administrator, "made it clear" that he and Commissioner Moore knew about the relationship between Mr. Williamson and Commissioner Hung, holding that it was hearsay because Williams was "speaking on behalf of" Defendant Moore. But striking that statement requires the Court to ignore the reasonable and obvious inference that as Commissioner Moore's direct report, Defendant Williams was both "authorized to make a statement on the subject" and that his statement was "within the scope of that [employment] relationship." Fed. R. Evid. 801(d)(2)(C–D).[6]

- **Hung Declaration, ¶ 10:** The Court struck testimony that the County's labor counsel knew of and had not objected to Mr. Williamson's relationship with Commissioner Hung, holding that it was hearsay because it was made by a non-party. But striking that statement requires the Court to ignore the reasonable and obvious inference that a lawyer Defendants Lundy and Moore had hired to advise them "on labor and employment matters" was both "authorized to make a statement on the subject" of an employment decision and that her statement was "within the scope of that [employment] relationship." Fed. R. Evid. 801(d)(2)(C), (E).

- **Hung Declaration, ¶ 14:** The Court struck testimony about why the Board tasked Mr. Williamson with identifying misspent funds, holding that there was no basis for

---

[5] This ruling also required the Court to draw inferences *against* Mr. Williamson that the Defendant Cordes banned Mr. Williamson through an out-of-court statement, rather than through an act, such as placing his name on a list or revoking his security credentials.

[6] More fundamentally, Mr. Williamson's testimony as to "Williams's out-of-court statement" is not hearsay, because Williams is himself an opposing party. And this ruling again drew inferences against Mr. Williamson by assuming that Defendant Williams could only testify to Defendant Moore's knowledge and motives based on Defendant Moore's out-of-court statements, as opposed to Defendant Moore's behavior.

concluding that Commissioner Hung had "personal knowledge of the Lorain County Board of Commissioner's motives." But striking that statement requires the Court to ignore the reasonable and obvious inference that Ms. Hung, as the *president of the board of commissioners* is aware of her fellow commissioners' motives for their official actions because they are legally obligated to disclose them to each other in public meetings. Ohio Rev. Code § 121.22(A) (requiring public officials "to take official action and to conduct all deliberations upon official business only in open meetings").

- **Hung Declaration, ¶¶ 31–32:** The Court struck testimony about what the board knew about other executives' romantic relationships subordinates, holding that there was no basis for concluding that Commissioner Hung had personal knowledge of what the Board knew. But again, striking that statement requires the Court to ignore the reasonable and obvious inference that a president of a county board of commissioners knows what her fellow members know because they are required to hold all their discussions and deliberations in open meetings.

Because the statements in those declarations could only be deemed hearsay by failing to draw reasonable inferences in Mr. Williamson's favor as the non-moving party, the Court should reconsider and deny Defendants' motion to strike them.

**IV.  Because it explicitly conceded a genuine issue of material fact as to his liability, the Court should reconsider granting summary judgment in favor of Defendant Moore.**

Even if the Court does not grant any of the other relief requested, it should still reconsider its decision granting summary judgment to Defendant Moore. Despite denying Mr. Williamson access to the evidence he needs to prove his claims, and despite construing what little evidence remained against him, the Court explicitly acknowledged that Mr. Williamson had demonstrated a triable issue as to Defendant Moore's liability. Noting that Commissioner Hung had testified that her relationship with Mr. Williamson was so public that it would have been "obvious" to Moore, the Court conceded that a jury would have to evaluate whether Moore's justification for terminating Mr. Williamson was a pretext:

> This raises an issue of fact as to whether Defendant Commissioner Moore would have fired Williamson for his affair with an indirect supervisor, regardless of

Defendant Williams's influence. A jury could find that Moore earlier knew of the affair and took no action against Williamson. The jury should decide whether Plaintiff Williamson would have been fired, regardless of his protected speech.

ECF #42, 30–31.

Despite this concession, the Court granted summary judgment for Defendant Moore based on a conclusion that there was simultaneously *no* admissible evidence that he had caused Mr. Williamson's injuries. Its discussion focused on the absence of direct evidence of animus, but—as it had just acknowledged a page earlier—Mr. Williamson doesn't need direct evidence to prove animus because he can rely instead on the temporal proximity "between Williamson's claimed refusal to move on the radio contract and his termination."

Because the evidence currently in the record currently creates a genuine issue of material fact as to Defendant Moore's liability, the Court should reconsider and deny his motion for summary judgment.

### CONCLUSION

The Court's order on the amended complaint and on the motion for summary judgment deprived Mr. Williamson of any fair chance to prosecute his case. The Court should reconsider those motions and grant him an honest opportunity to gather evidence and win his case.

Respectfully submitted,

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Plaintiff Harry Williamson*

**I.**     **Because ▚▚▚ , the Court has authority to reconsider its interlocutory rulings.**

    **A.**     **Rule:**

Fed.R.Civ.P. 54 (b) explicitly grants district courts the authority to reconsider any interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

    **B.**     **Explanation:**

For instance, in *In re Saffady*, 524 F.3d 799, 802–03 (6th Cir. 2008), the district court in a property dispute granted the plaintiffs' motion for summary judgment but for unknown reasons failed to docket its order. When the court vacated that order, *sua sponte*, before it was made final, the plaintiffs objected that they could not be obligated to relitigate a case they had already won without so much as a motion requesting that relief, but the district court held that because the order had not yet been docketed, it was not final and could still be revisited. The Sixth Circuit agreed, holding that a district court has the inherent authority to vacate a summary-judgment order at any time before entering final judgment:

The district court had the power to vacate the summary judgment because a final judgment had not yet been entered in the case. As this court has explained, "district courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. Therefore, the order vacating the summary judgment was simply an exercise of the district court's inherent power to reopen part of a case prior to entry of the final judgment.

    **C.**     **Application:**

    **D.**     **Conclusion:**

## II.      Standing in the shoes

On several points, the conclusion that striking these statements was error is reinforced by the recent amendments to Rule 801, which clarify that "[i]f a party's claim, defense, or potential liability is directly derived from a declarant or the declarant's principal, a statement that would be admissible against the declarant or the principal under this rule is also admissible against the party." Because each defendant was sued in his official capacity, their liability is derived from the County, which is "the declarant's principal" with respect to any statements made by any other defendant. In turn, this means that any statements admissible against the County for purposes of the hearsay rule are "also admissible against" each individual defendant.

For instance, the Court struck Williamson Declaration, ¶ 13, because it concluded that it was attempting to offer Defendant Williams' statements about what

"is directly derived a declarant's prin

In some cases, the Court suggested that it was deeming statements to be inadmissible hearsay because they were made by one party but not offered against the "same party."[7] But the word "same" is not actually part of the test under Fed. R. Evid. 801(d)(2)(A), and the recent amendments to Rule 801 clarify that the rule is not meant to be applied in that way, stating that "If a party's claim, defense, or potential liability is directly derived from a declarant or the declarant's principal, a statement that would be admissible against the declarant or the principal under this rule is also admissible against the party."

Williamson Declaration, ¶ 13, offers a clean application of the rule. While the Court conceded that it was admissible against Defendant Williams because he made the statement himself, it said that it was not admissible against Defendant Moore without evidence he had authorized the statement. But the amendment clarifies that that is not the end of the inquiry; instead, the Court must ask where Moore's liability comes from. In this case, because he is sued in his official capacity, his liability "is directly derived from the County"

says the opposite: Because Moore's liability is directly derived from the County, a statement that would be admissible against the County under this rule is also admissible against Moore.

---

[7] E.g., ECF #42, 6.

Here, Mr. Williamson brought individual-capacity claims against each defendant, as well as official-capacity claims, in which the employee stands in the shoes of the governmental body. So if Williamson Declaration, ¶ 13, offers testimony that Defendant Williams said that Defendant Moore (who is standing in for Lorain County on the official-capacity claim) knew about the Williamson-Hung relationship,

as an example, then, because Moore's liability is therefore directly derived from the County, "a statement that would be admissible against [the County] under this rule is also admissible against [Moore]." So in Williamson Declaration, ¶ 5, a

a statement that would be admissible against the County is also admissible against Moore.

. is

if a party's liability is derived from a declarant's principal, a statement that would be admissible against the declarant or the principal

**III.**