IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **HARRY WILLIAMSON,** | |
| Plaintiff, | CASE NO. 1:23-CV-01507 |
| vs. | JUDGE DAVID A. RUIZ |
| **LORAIN COUNTY, et al.,** | |
| Defendants. | |

**DEFENDANTS DAVID MOORE, MATT LUNDY, AND JAMES CORDES' OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

**INTRODUCTION**

Defendants David Moore, Matt Lundy, and James Cordes (collectively, "Defendants") request that this Court deny Plaintiff Harry Williamson's Motion for Reconsideration (Doc. 55) (the "Motion"). Plaintiff's Motion asks this Court to reconsider two of its orders: its June 24, 2024 Order striking his amended complaint (Doc. 25), and its September 27, 2024 Order granting summary judgment in Defendants' favor (Doc. 42) (both collectively, the "Orders"). Plaintiff's undue delays and failure to prosecute have become common themes in this action.[1] Staying true to those themes, Plaintiff brings his Motion **477** days after the Court struck his amended complaint and **382** days after the Court granted summary judgment in Defendants' favor. Aside from being egregiously

---

[1] *See, e.g.,* Doc. 25, at PageID #326 ("Any further delays by Plaintiff may result in dismissal for lack of prosecution."); Motion to Dismiss for Lack of Prosecution (Doc. 19); Supplemental Filing in Support of Motion to Dismiss (Doc. 20); Motion to Strike Plaintiff's First Amended Complaint (Doc. 24).

untimely, Plaintiff's attempt to resurrect claims that have been dismissed for over a year has no legal basis. As such, his motion should be denied.

## LAW AND ARGUMENT

### A. Legal Standard

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Courts may reconsider interlocutory orders when "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id*. (citing *Reich v. Hall Holding Co.,* 990 F. Supp. 955, 965 (N.D. Ohio 1998)). Importantly, "[m]otions for reconsideration do not allow the losing party to repeat arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier." *Owner-Operator Indep. Drivers Assn v. Arctic Express, Inc.*, 288 F. Supp. 2d 895, 900 (S.D. Ohio 2003) (citing *Am. Marietta Corp. v. Essroc Cement Corp.,* 59 F. App'x. 668, 672 (6th Cir. Feb. 19, 2003)).

Because this Court's Orders did not adjudicate all claims against all parties in this action, they are interlocutory orders, and their reconsideration is subject to these standards. *See Rodriguez*, *supra* and Fed. R. Civ. P. 54(b). Plaintiff does not offer an intervening change of law or any new evidence. Instead, he merely expresses disagreement with the Court's analysis and rulings without demonstrating any clear error or manifest injustice. Plaintiff's attempt to relitigate the Court's decision should be rejected along with his Motion for Reconsideration.

### B. The Orders do not contain any error, let alone clear error, and do not result in manifest injustice.

2

      i.    <u>Plaintiff's First Amended Complaint was properly stricken.</u>

Plaintiff attempts to excuse his failure to comply with the Court's April 17, 2024 Order (Doc. 17) by arguing that this Court deviated from "experience and logic" when it struck his First Amended Complaint (the "FAC"). (Doc. 55, at Page ID# 1170). Plaintiff then accuses this Court of having "no explanation" as to why it did not accept his prior filing (Doc. 15-1), and, in a footnote, explains what he perceived to occur at the April 17, 2024 case management conference. *Id*. Regardless of Plaintiff's alleged misperception, this Court's April 17, 2024 Order was clear and required Plaintiff to file his amended complaint by April 24, 2024. (Doc. 17). Moreover, on May 2, 2024, Defendants moved to dismiss Plaintiff's action based, in part, on his failure to timely file his proposed FAC. (Doc. 19). Despite this clear notice, Plaintiff waited an additional 31 days, until June 3, 2024, to file his FAC without leave or explanation for the blatant missed deadline. (Doc. 22). Plaintiff's failure to timely file his proposed FAC is his own fault, and the Court was well within the parameters of applicable law when it struck the FAC.

A scheduling order may only be modified for good cause and with the Court's consent. Fed. R. Civ. P. 16(b)(4). "Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). Failure to obey a scheduling order may result in sanctions. Fed. R. Civ. P. 16(f).

Rule 16(b)(4)'s "good cause" standard is primarily measured by "the moving party's diligence in attempting to meet the case management order's requirements." *Satterwhite v. Ashtabula Cty. Metroparks*, 514 F. Supp. 3d at 1021-22 (quoting *Inge v. Rock Fin. Grp.*, 281 F.3d 613, 625 (6th Cir. 2002)). Also relevant is "the importance of the

3

[modification], and the prejudicial impact of the modification on the nonmoving parties." *West v. Jindall*, No. 2:21-cv-10225, 2024 U.S. Dist. LEXIS 51814, at *5-6 (E.D. Mich. Mar. 22, 2024) (citing *Springboards to Education, Inc. v. Houston Ind. Sch. Dist.*, 912 F.3d 805, 819 (5th Cir. 2019) (internal quotation marks omitted). Put another way, the movant must demonstrate "that the original deadline could not reasonably have been met despite due diligence and that the opposing party will not suffer prejudice by virtue of the amendment." *Ross v. Am. Red Cross*, 567 F.App'x 296, 306 (6th Cir. 2014).

Plaintiff admits that an amended complaint was attached as an exhibit to his motion to amend (Doc. 15), which was filed on April 16, 2024. (Doc. 55, at Page ID# 1171-72). Because an amended complaint had already been drafted on April 16, 2024, Plaintiff could have easily met the Court's deadline of April 24, 2024. Plaintiff tries to blame his failure to do so on his apparent perception of what was discussed at the case management conference, but his misperception could have been rectified by simply conferring with the parties or the Court once the April 17, 2024 order was entered.[2] In other words, Plaintiff's failure to meet this deadline and instead wait until June 3, 2024 to file his FAC is nothing more than a complete lack of diligence.

Moreover, in striking Plaintiff's untimely FAC, this Court noted that Defendants "would be faced with having to defend new claims weeks before the dispositive motion deadline." (Doc. 25, at Page ID# 323). This Court further found that Defendants had already "briefed two motions to dismiss the original complaint," and as such would be

---

[2] Plaintiff claims that he understood that the Court had accepted his amended pleading and "set an April 24th deadline for any *further* amendments," yet, the language of this Court's April 17, 2024 Order (Doc. 17) does not support Plaintiff's allegation. *See* Doc. 17 ("Deadline to Add Parties or Amend Pleadings: April 24, 2024"). Thus, once Plaintiff received a service copy of the Court's order, he could have inquired further if he truly misunderstood the deadline.

4

prejudiced by the FAC. (*Id.*, at Page ID# 321). Plaintiff filed this action on August 2, 2023 but waited over ***eight months*** before he first sought leave to amend his complaint. This occurred after Plaintiff waited several months before he even attempted to serve his complaint and two months after Defendants filed their first motions to dismiss. Taking all of this into consideration, there was no "good cause," and this Court was justified in denying Plaintiff's untimely amendment.

Further, Plaintiff argues that because this Court struck his FAC, it allowed all defendants to escape liability and barred him from pursuing new claims that "had only ripened after he filed his original complaint." (Doc. 55, at Page ID# 1171). This line of argument is disingenuous, and the Court has already demonstrated the futility of Plaintiff's proposed amendments. (*See* Doc. 25, at Page ID# 323-326). Moreover, leave to amend may be denied if there is "undue delay, bad faith, or dilatory motive on the part of the movant," and, Plaintiff's tactics throughout this entire action have consisted of nothing but undue delays.[3] *Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Consequently, Plaintiff has not demonstrated clear error or manifest injustice with respect to this Court's order striking his FAC.

    ii.   This Court properly entered Summary Judgment in Defendants' favor.

In sections II and IV of his Motion, Plaintiff argues that this Court should reconsider its decision to grant summary judgment in favor of Defendants on two grounds. First, Plaintiff asserts that this Court improperly and constructively denied Plaintiff Fed. R. Civ. P. 56(d) relief. (Doc. 55, at Page ID# 1171-72). Second, he asserts that, specific to Defendant Moore, this Court conceded that there was a genuine issue of

---

[3] This is, of course, exacerbated by the fact that Plaintiff waited 477 days to file for reconsideration of this Court's June 24, 2024 order striking his FAC.

5

material fact, and as such summary judgment should not have been granted. (*Id.*, at Page ID# 1175). Neither of these arguments presents a "clear error" or "manifest injustice."

        iii.        <u>Plaintiff's request for Fed. R. Civ. P. 56(d) relief was properly disregarded.</u>

Recycling tired arguments from before, Plaintiff also requests that the Court reconsider his request for Fed. R. Civ. P. 56(d) relief. (*See* Doc. 29, at Page ID# 486-488). Rule 56(d) provides that "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." A district court's ruling on such a request is discretionary and only reversed on a finding of abuse of discretion. *Siggers v. Campbell*, 652 F.3d 681, 696 (6th Cir. 2011). There is no such abuse here. The Court, recognizing the meritless nature of Plaintiff's argument, chose option (3), and issued an order granting summary judgment to Defendants.

When the Rule 56(d) request was made, Plaintiff asserted that Defendants had "more or less refused to provide any meaningful response" to his discovery requests but failed to explain exactly what discovery was needed or why. (Doc. 29, at Page ID# 487). "It is not an abuse of discretion for the district court to deny [a] discovery request [under Rule 56(d)] when the party makes only general and conclusory statements in its affidavit regarding the need for more discovery. Fairness does not blindly require a district court to grant a non-movant an opportunity for discovery where…the non-movant does not in any detail describe what discovery []he needs or what material facts []he hopes to discover. Additionally, [i]t is not enough to state that discovery is needed without explaining why it is needed." *St. John v. Cuyahoga Metro. Hous. Auth.*, No. 1:21CV2198,

6

2024 U.S. Dist. LEXIS 14827, at *37 (N.D. Ohio Jan. 26, 2024) (internal citations and quotations omitted).

Further, the declaration submitted in support of the 56(d) request was woefully deficient[4] with only a single, boilerplate paragraph referencing the issue. (*See* Doc. 29-1, at ¶ 22). Notwithstanding these critical deficiencies, Plaintiff also chose to omit that over 36,000 pages of documents were provided to him in response to substantively similar discovery requests in the underlying state court case, which Plaintiff ultimately dismissed in February of 2023 after the court ordered him to produce unredacted text messages between himself and Commissioner Hung. (*See* Doc. 30 and Doc. 32, at Page ID# 556-57; *see also* Doc. 19, at Page ID# 192 and Doc. 20-1). The Court did not commit "clear error" by rejected Plaintiff's baseless Rule 56(d) request, particularly given that Plaintiff was already in possession of tens of thousands of documents and chose not to do any depositions in this matter.[5] Plaintiff possessed sufficient discovery to address Defendants' dispositive motion and there was no amount of discovery that would have enabled Plaintiff's claims to survive summary judgment. As such, there was no "manifest injustice" as a result of the Court's Orders.

    iv.   <u>This Court properly entered summary judgment in favor of Defendant Moore.</u>

---

[4] The declaration was required to "indicate the need for discovery, what material facts may be uncovered, and why the information has not been previously discovered." *Siggers v. Campbell*, 652 F.3d 681, 696 (6th Cir. 2011). It failed to do so.

[5] "The party opposing a motion for summary judgment . . . possesses no absolute right to additional time for discovery under Rule 56 . . . Similarly, a district court has discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019) (internal quotations and citations omitted). Because tens of thousands of documents were already produced in the state court case, it would have been unduly burdensome for Defendants to do so once more only because of a change in forum.

With respect to his claims against Defendant Moore, Plaintiff bizarrely asserts that this Court contradicted itself when it granted summary judgment, arguing that the Court's analysis of the claims against Defendant Williams should have dictated the ruling as to Moore. (Doc. 55, at Page ID# 1175-76). What Plaintiff ignores, however, is the actual evidence submitted.

Plaintiff was an at-will employee engaged in an undisclosed extramarital affair with a sitting county commissioner that included sexual intercourse inside County buildings. After Commissioner Hung finally disclosed the affair to her fellow Commissioners, Moore and Lundy voted to terminate Williamson's employment as a violation of County policy. (Doc. 27-1, 27-2, attaching Ulmer Memo; *see also* Doc. 32-1, Joint Statement). Williamson's conduct was not only inappropriate but disruptive to his public employment and undeniably would have resulted in his termination regardless of any alleged constitutionally protected activity.

That evidence undisputedly demonstrates that Defendant Moore's vote to terminate his employment was based on Plaintiff's extramarital affair with a sitting County Commissioner. (*See* Doc. 27-2). Plaintiff produced no evidence in rebuttal other than his self-serving declaration, which the Court struck portions of based on its failure to adhere to the standards required by Fed. R. Civ. P. 56, and the declaration of Commissioner Hung, with whom he had the secret affair. (*See* Docs. 29-1 and 37-1). Critically, Plaintiff did not put forth any genuine evidence that Moore's decision to terminate Plaintiff's employment was pretextual.

Because Plaintiff's declarations set forth no admissible evidence supporting that the affair was a pretext for Defendant Moore's termination of Plaintiff, Plaintiff failed "to make a sufficient showing of an essential element of his case on which he bears the burden

8

of proof,"[6] and, as such, summary judgment was proper. *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012). For these reasons, this Court did not commit "clear error" when considering the evidence submitted in support of and in opposition to summary judgment, and its ruling in favor of Defendant Moore did not create "manifest injustice."

      v.   <u>This Court properly struck portions of the declarations submitted in opposition to summary judgment.</u>

Ignoring the standards applicable to declarations submitted at the summary judgment stage, Plaintiff argues that this Court's orders striking portions of Doc 29-1 and 37-1 "ran afoul of its obligation to draw all justifiable inferences in favor of the nonmoving party." (Doc. 55, Page ID# 1174). While district courts must "accept [the non-movant's] evidence as true and draw all reasonable inferences in [the non-movant's] favor," the evidence submitted must still comply with the parameters of Fed. R. Civ. P. 56. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). To that end, "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(C)(4); *See also U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997) (recognizing that hearsay evidence "must be disregarded" at the summary judgment stage and noting that "evidence submitted in opposition to a motion for summary judgment must be admissible.").

---

[6] All three of Plaintiff's claims against Defendant Moore required Plaintiff to demonstrate that the affair was not the reason for his termination. (*See* Doc. 27 and Doc. 32; *See also* Doc 29 at Page ID # 477-478, noting that "the key allegations are essentially the same" for all of Plaintiff's claims, and that the affair being a pretext for Plaintiff's termination is one of these allegations).

9

Plaintiff blatantly ignores these standards in his motion for reconsideration and incorrectly implying that they are inapplicable since this Court had to draw reasonable inferences in his favor. Nevertheless, the Court's analysis adhered to these standards, and it properly disregarded portions of the declarations that were hearsay or otherwise inadmissible. (*See* Doc. 42, at Page ID# 814-823). Though Plaintiff now advances arguments purporting to demonstrate the admissibility of the stricken portions, this effort is futile because "[m]otions for reconsideration do not allow the losing party to . . . raise new legal theories that should have been raised earlier." *Owner-Operator Indep. Drivers Assn, supra*. Plaintiff should have submitted these arguments in response to Defendants' motions to strike or in his opposition to summary judgment, and his attempts to do so now are futile.

C. **Plaintiff does not assert a Change in Law or the Availability of New Evidence.**

Plaintiff has not shown that there has been "an intervening change of controlling law" or that "new evidence [has become] available" that would necessitate this Court's reconsideration of the Orders. *Rodriguez, supra*. Rather, the entirety of Plaintiff's Motion refers the Court to evidence already in the record or argues that existing legal standards dictate a different result.[7] Mere disagreement with the Court's analysis is insufficient to reopen interlocutory orders, and "[m]otions for reconsideration do not allow the losing party to repeat arguments previously considered and rejected…" *Owner-Operator Indep.*

---

[7] *See, e.g.,* Motion at 1170-71 (noting a "routine" and "normal" practice of the Northern District concerning the amendment of pleadings); at 1171-73 (acknowledging well-settled case law concerning R. 56(d) relief); at 1175 ("Because the statements *in those declarations* could only be deemed hearsay by failing to draw reasonable inferences . . .") (emphasis added.); at 1176 ("Because the evidence *currently in the record* creates a genuine issue of material fact . . .") (emphasis added.).

10

*Drivers Assn v. Arctic Express, Inc., supra*. As such, Plaintiff has also failed to demonstrate the applicability of the other two *Rodriguez* factors.

## CONCLUSION

For the reasons discussed, Defendants respectfully request that this Court deny Plaintiff's Motion for Reconsideration.

Respectfully submitted,

GEMBALA, McLAUGHLIN
& PECORA CO., LPA

*/s/ Stephen M. Bosak, Jr.*
Stephen M. Bosak, Jr. (0092443)
5455 Detroit Road
Sheffield Village, Ohio 44054
Tel:   (440) 930-4001
Fax:   (440) 934-7208
Email: sbosak@gmpfirm.com

*Counsel for Defendants*