IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **HARRY WILLIAMSON,**<br>*Plaintiff,*<br>v.<br>**LORAIN COUNTY,** *et al.,*<br>*Defendants.* | Case No.: 1:23-cv-01507-DAR<br><br>Judge David A. Ruiz<br><br>Magistrate Judge Jennifer Dowdell Armstrong |
| **REPLY IN SUPPORT OF PLAINTIFF HARRY WILLIAMSON'S<br>MOTION FOR RECONSIDERATION** | |

Plaintiff Harry Williamson respectfully submits this reply in support of his motion for reconsideration of the Court's orders striking his Amended Complaint, granting Defendants' motions to strike evidence supporting his opposition to summary judgment, and granting their motion for summary judgment (ECF #55).

**I.    Mr. Williamson satisfied Rule 16's "good cause" standard, so the Court should allow his amendment.**

As laid out in the motion for reconsideration, Mr. Williamson sought to amend his complaint to address a naming error, to raise two new claims that had only ripened well after the complaint was filed, and to clarify the factual and legal basis for his Equal Protection claim. Although the Court allowed the amendment, its order did not explicitly address whether it would treat the already-filed amendment as the operative complaint or instead wanted a duplicate copy of that complaint to be filed on the docket. Based on that order—and based on the Northern District's routine practice of treating proposed Amended Complaints as operative once leave has been granted—Mr. Williamson moved ahead under the understanding that he had already complied with the Court's requirements.

Defendants continue to press their argument that the Amended Complaint ought never have been allowed, relying exclusively on Fed.R.Civ.P. 16(b)(4), which allows modifications to the Court's scheduling orders "for good cause." As they concede, the Sixth Circuit requires the Court to evaluate good cause primarily by looking at "the moving party's diligence in attempting to meet the case management order's requirements."[1] But their analysis breaks down from there, as it looks only at whether Mr. Williamson *actually* met the deadline.

But the question is not whether Mr. Williamson actually met the amendment deadline, it is whether Mr. Williamson was diligent in *attempting* to meet it. And on that point, they never dispute any of the facts demonstrating that Mr. Williamson did attempt to meet the amendment deadline as he understood it. They do not dispute that Mr. Williamson filed his proposed amendment on April 16, 2024—before any deadline had been set. They do not dispute Mr. Williamson's characterization of the off-the-record discussion at the case-management conference and its absence of any suggestion that he needed to file a redundant copy of his Amended Complaint. Nor do they dispute that that discussion—or the Court's case-management order that followed—could reasonably have been interpreted to set a deadline for further amendments to *their* pleadings, rather than requiring more copies of the Amended Complaint that the Court had already received and reviewed.

Defendants do argue that Mr. Williamson could have done *more* to attempt to meet the amendment deadline, but the same could be said of any party who has ever sought any modification to any case-management deadline. What they never dispute, though, is that Mr. Williamson did, in fact, *attempt* to comply with the court's deadlines by filing his amendment.

---

[1] Br. in Opp. to Mot. for Reconsideration, 3 (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)).

Nor do they dispute that striking Mr. Williamsons' Amended Complaint resulted in major prejudice. While they argue that the two new claims Mr. Williamson sought to raise were futile, they never dispute that striking the Amended Complaint allowed the Lorain County Board of Commissioners to dodge liability on a technicality. Likewise, they never dispute that the amendment resulted in the Court discarding Mr. Williamson's Equal Protection claim, even though it could have survived based on the additional factual allegations raised in the Amended Complaint.

Instead, they fall back on a half-baked argument that *they* were the ones prejudiced when the Court agreed to allow the amendment in the first place, because they had already moved to dismiss the original complaint. But that fact was already baked into the Court's order *granting* the motion for leave to amend; Defendants never dispute that the Court had already concluded that that prejudice was not sufficient to overcome Mr. Williamson's need to amend his complaint, nor do they explain how accepting either the proposed Amended Complaint or the subsequently filed duplicate Amended Complaint would have added any prejudice beyond what the Court had already ordered them to bear.

In the end, there is no dispute that Mr. Williamson was diligent in *attempting* to timely amend his Complaint. Nor is there any dispute that rejecting that amendment based on an apparent misinterpretation of a vague order worked serious prejudice to Mr. Williamson, or that allowing the amendment would not have worked any new prejudice to Defendants, who had already been ordered to respond to the Amended Complaint at the case-management conference.

Because Mr. Williamson diligently attempted to satisfy the Court's order and because rejecting the amendment worked lopsided prejudice to his case, the Court should reconsider its order striking his Amended Complaint.

**II.     Because it denied Mr. Williamson a fair opportunity to present his case, the Court should reconsider its order granting summary judgment.**

**A.     The Court denied Mr. Williamson a fair opportunity to present his case by ignoring motion for relief under Fed. R. Civ. P. 56(d).**

As Mr. Williamson's motion for reconsideration noted, Rule 56(d) motions should be granted "as a matter of course," so an unjustified or unjustifiable denial is reversible error. *Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011). "Typically, when the parties have no opportunity for discovery, denying the Rule 56(f) motion and ruling on a summary judgment motion is likely to be an abuse of discretion." *Siggers* at 696.

Defendants themselves present *Siggers* as the controlling standard on this question, but they make no apparent effort to distinguish its facts from those in this case or otherwise explain why this case would not likewise require a reversal, where both cases involved First Amendment–retaliation victims who fell victim to summary judgment while waiting for defendants to produce discovery. Instead, they offer a fact-free, precedent-free argument that denying Mr. Williamson's motion was not an abuse of discretion because the Court had concluded the motion was "meritless." Even if the record contained anything to support that preimse,[2] that would still call for reversal under *Siggers*, where the Sixth Circuit reversed summary judgment despite the trial court's conclusion that the motion for Rule 56(d) relief was meritless, given its doubts the evidence in question existed or that it would be relevant even if it did exist.

The rest of Defendants' argument makes the same error, relying on arguments that *Siggers* explicitly rejects. They say the motion was properly denied because it "failed to explain

---

[2] It does not.

exactly what discovery was needed or why."[3] Again, that is false—Mr. Williamson's motion explicitly laid out a series of facts that Mr. Williamson was still trying to learn, along with their relevance to his case—but even if it were true, *Siggers* still reversed a Rule 56(d) denial premised on the plaintiff's purported failure "to identify with any specificity either the particular discovery that he needs or how that discovery is essential to his opposition."

Defendants also argue the motion was properly denied because Mr. Williamson's declaration "was woefully deficient with only a single, boilerplate paragraph referencing the issue."[4] But again, *Siggers* reversed where the moving party failed to produce *any affidavit at all*, holding that his motion's reference to discovery demands that were already in the record was sufficient. The same is true here: Defendants do not dipsute that Mr. Williamson had already briefed the issue of outstanding discovery demands in his motion to compel, that the discovery requests were already in the record, or that Mr. Williamson's affidavit incorporated those materials by pointing the Court to the facts already "laid out in my motion to compel."[5] Under these facts, *Siggers* requires reconsideration in the trial court or reversal on appeal.

Defendants rely on *Doe v. City of Memphis*, 928 F.3d 481, 491 (6th Cir. 2019) to justify the Court's failure to address the Rule 56(d) motion, but they strangely fail to address even a single one of the factors that the *Doe* court said should control the decision on this motion:

1. Defendants never dispute that Mr. Williamson was "was diligent in pursuing discovery." Indeed, Mr. Williamson had been pressing them for months to turn over discovery, as laid out in his motion to compel.[6]
2. Defendants never dispute that "the desired discovery would have changed the ruling below." Indeed, Mr. Williamson was seeking discovery on questions central to proving his case, such as the identity and treatment of similarly situated employees.

---

[3] Br. in Opp. to Mot. for Reconsideration, 6.

[4] Br. in Opp. to Mot. for Reconsideration, 7.

[5] ECF #29-1, ¶ 22.

[6] ECF #28.

3. Defendants never dispute that relief was justified given "how long the discovery period had lasted." As Mr. Williamson noted, Defendants moved for summary judgment only two and a half months after the case-management conference, and with 90 days still on the clock for discovery.

Defendants do not dispute that *Siggers* controls the outcome of this case, do not dispute that the facts here are materially indistinguishable from *Siggers*, or that any of the factors actually relevant to the Court's inquiry counsel in favor of a different outcome. The Court should therefore reconsider and grant Mr. Williamson's motion for Rule 56(d) relief.

**B.     The Court denied Mr. Williamson a fair opportunity to present his case by striking his declarations based on inferences drawn in favor of the moving party.**

As laid out in Mr. Williamson's motion, the Court erred in refusing to draw eminently reasonable inferences in his favor when interpreting the evidence he marshalled to oppose Defendants' motion for summary judgment.

Defendants do not dispute that the Court had the obligation to draw all reasonable inferences in Mr. Williamson's favor, they merely argue that Mr. Williamson somehow rejects the precedents establishing that rule. Their conclusion is a curious one, given that Mr. Williamson explicitly invoked and applied those rules to this case, yet they never bother to explain how it could be true. Instead, they say the Court should ignore all Mr. Williamson's arguments because he should have raised them earlier. But Mr. Williamson *did* raise them earlier; Defendants merely chose to ignore that fact.[7]

Tellingly, Defendants dedicate exactly zero sentences to disputing the merits of Mr. Williamson's argument on the admissibility of these statements. They do not dispute that the

---

[7] *See, e.g.*, Williamson Opp. to Motion to Strike, ECF #34, p. 2 ("[T]his testimony is not hearsay because Ms. Lopez was relaying Defendant Cordes's orders, meaning that the statement is both "made by a person whom the party authorized to make a statement on the subject" and "made by the party's agent or employee on a matter within the scope of that relationship.")

supposed hearsay came from people authorized to make them, that they were made within the scope of their employment, that they had personal knowledge of the relevant facts, and so on. And to the extent the affidavits failed to spell out each of those facts in excruiating detail, Defendants never dispute that drawing those inferences was reasonable, nor do they dispute that the Court was required to do so.

Because the Court had the duty to draw all reasonable inferences in Mr. Williamson's favor but instead granted judgment against him based on unreasonable inferences drawn against him, the Court should reconsider and deny Defendants' motions to strike the Williamson and Hung affidavits.

### C. The Court denied Mr. Williamson a fair opportunity to present his case by granting summary judgment despite a genuine issue of material fact.

Despite granting him summary judgment, the Court's order correctly identified the existence of "an issue of fact as to whether Defendant Commissioner Moore would have fired Williamson for his affair with an indirect supervisor" and concluded that "[t]he jury should decide whether Plaintiff Williamson would have been fired, regardless of his protected speech."

While Defendant Moore disagrees by pointing to (and misrepresenting) various pieces of evidence that he claims Mr. Williamson has been unable to rebut, that is not an argument that summary judgment was proper—it is proof that the Court should have granted Mr. Williamson's motion for Rule 56(d) relief.

Because the Court identified a genuine issue of material fact as Defendant Moore's liability, it committed clear error in granting his motion for summary judgment and should therefore reconsider that order.

### III.     Conclusion

The Court's orders deprived Mr. Williamson of any fair chance to prosecute his case. The Court should therefore reconsider and deny Defendants' motion to strike his amended complaint, their motion to strike the Hung and Williamson declarations, and their motion for summary judgment.

Respectfully submitted,

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Plaintiff Harry Williamson*
